## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## AMARILLO DIVISION

|  |  |  |
|---|---|---|
| STATE OF TEXAS,<br>STATE OF MISSOURI, | ) ) ) ) | |
| *Plaintiffs*, | ) ) | |
| v. | ) ) | Civil Action No. 2:21-cv-00067-Z |
| JOSEPH R. BIDEN, JR.,<br>in his official capacity as<br>President of the United States, *et al.*, | ) ) ) ) | |
| *Defendants*. | ) ) ) | |

## DEFENDANTS' MOTION TO TRANSFER VENUE

BRIAN M. BOYNTON
Acting Assistant Attorney General

WILLIAM C. PEACHEY
Director
Office of Immigration Litigation
District Court Section

EREZ REUVENI
Assistant Director

JOSEPH A. DARROW
Trial Attorney

FRANCESCA GENOVA
Trial Attorney
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel.: (202) 305-1062
Francesca.M.Genova@usdoj.gov

## TABLE OF CONTENTS

I.      INTRODUCTION...................................................................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND....................................................3

III.    LEGAL STANDARD...............................................................................................7

IV.     ARGUMENT..........................................................................................................9

        A.      Venue is Proper in the Southern District of Texas ..............................................10

        B.      The Private Interest Factors Favor the Southern District of Texas,
                Brownsville Division ........................................................................................11

        C.      The Public Interest Factors Favor Transfer to the Southern District of
                Texas...............................................................................................................17

V.      CONCLUSION .....................................................................................................20

CERTIFICATE OF CONFERNCE..............................................................................21

CERTIFICATE OF SERVICE .....................................................................................21

# TABLE OF AUTHORITIES

*Armstrong v. Lumpkin*,
 No. 7:18-CV-356, 2020 WL 8188422 (S.D. Tex. Sept. 8, 2020), *report and recommendation adopted*, No. 7:18-CV-00356, 2021 WL 179600 (S.D. Tex. Jan. 19, 2021) ..........................14

*BJI Indus., Inc. v. Old Dominion Freight Line, Inc.*,
 No. 3:96-cv-2533, 1997 WL 148035 (N.D. Tex. Mar. 25, 1997)...........................................15

*Chapman v. Dell, Inc.*,
 No. EP-09-CV-7-KC, 2009 WL 1024635 (W.D. Tex. Apr. 15, 2009) ........................8, 15, 16

*Chung v. Chrysler Corp.*,
 903 F. Supp. 160 (D.D.C. 1995) ......................................................................................18

*Coons v. Am. Horse Show Assoc., Inc.*,
 533 F. Supp. 398 (S.D. Tex. 1982) ...................................................................................15

*Cooper v. Pied Piper Mills, Inc.*,
 No. 3:98-cv-1309, 1998 WL 713270 (N.D. Tex. Oct. 5, 1998) .............................................15

*DeLacerda v. Dir., TDCJ*,
 No. 4:06-cv-236, 2006 WL 1720606 (E.D. Tex. 2006).......................................................16

*Diocesan Migrant & Refugee Servs., Inc. v. United States Immigr. & Customs Enf't*, No. EP-19-CV-00236-FM,
 2020 WL 7706275 (W.D. Tex. Oct. 19, 2020) ...................................................................19

*EJRO v. McLane*,
 No. SA-20-CV-1157-JKP, 2020 WL 7342664 (W.D. Tex. Dec. 14, 2020)...........................19

*El Paso Cty., Texas v. Trump*,
 982 F.3d 332 (5th Cir. 2020) ..........................................................................................19

*Fla. Nursing Home Ass'n v. Page*,
 616 F.2d 1355 (5th Cir. 1980) .........................................................................................11

*Garrett v. Hanson*,
 429 F. Supp. 3d 311 (E.D. Tex. 2019) ................................................................................9

*Gray Cas. & Sur. Co. v. Lebas*,
 No. CIV.A. 12-2709, 2013 WL 74351 (E.D. La. Jan. 7, 2013).............................................14

*Greiner v. Am. Motor Sales Corp.*,
 645 F. Supp. 277 (E.D. Tex. 1986) ...................................................................................15

*Icon Indus. Controls Corp. v. Cimetrix, Inc.*,
   921 F. Supp. 375 (W.D. La. 1996) ........................................................................ 8

*In re Radmax, Ltd.*,
   720 F.3d 285 (5th Cir. 2013) ............................................................................... 17

*In re Volkswagen of Am., Inc.*,
   545 F.3d 304 (5th Cir. 2008) ..........................................................8, 12, 15, 17

*Jam Strait, Inc. v. Am. Prods. Co., Inc.*,
   No. 02-2055, 2002 WL 31246566 (E.D. La. 2002)..........................................8, 16

*Kafack v. Primerica Life Ins. Co.*,
   934 F. Supp. 3 (D.D.C. 1996) ............................................................................. 18

*Martinez v. City of Fort Worth*,
   No. 3:02-cv-2286, 2003 WL 21289654 (N.D. Tex. May 28, 2003) ......................15

*Mendez v. Poitevent*,
   No. DR-13-CV-0065-AM-VRG, 2014 WL 12639318 (W.D. Tex. Sept. 30, 2014), *aff'd*, 823
   F.3d 326 (5th Cir. 2016) ..................................................................................... 19

*Norwood v. Kirkpatrick*,
   349 U.S. 29 (1955) .............................................................................................. 9

*Reuben H. Donnelly Corp. v. FTC*,
   580 F.2d 264 (7th Cir. 1978) ............................................................................... 11

*Smith v. Magnolia Marine Transp. Co.*,
   No. 10-cv-964, 2010 WL 3418242 (E.D. La. Aug. 24, 2010)...............................16

*Spiegelberg v. Collegiate Licensing Co.*,
   402 F. Supp. 2d 786 (S.D. Tex. 2005) .................................................................15

*Terrebonne v. Blackburn*,
   646 F.2d 997 (5th Cir. 1981) ............................................................................... 4

*United States v. Canales-Rosales*,
   67 F. Supp. 3d 791 (S.D. Tex. 2014) ...................................................................19

*United States v. Compian*,
   No. 2:16-CR-1045, 2017 WL 1650185 (S.D. Tex. May 2, 2017), *aff'd*, 730 F. App'x 275 (5th
   Cir. 2018)............................................................................................................19

*United States v. Vasquez-Guttierez*,
   No. 2:14-CR-793-1, 2015 WL 429735 (S.D. Tex. Feb. 2, 2015)...........................19

*Venable's Constr. Inc. v. Oneok Arbuckle II Pipeline, LLC*,
   No. 2:20-CV-018-Z-BR, 2020 WL 2841398 (N.D. Tex. June 1, 2020) ................................11

*Veterans Peace Convoy, Inc. v. Schultz*,
   722 F. Supp. 1425 (S.D. Tex. 1988) .........................................................................19

*Zhang v. Chertoff*,
   2008 WL 5271995 (N.D. Cal. Dec. 15, 2008) ...................................................................11

**STATUTES**

8 U.S.C. § 1225(b)(2)(C) .....................................................................................1, 3

8 U.S.C. § 1391(c)(2) ...........................................................................................11

28 U.S.C. § 1391(b) ...............................................................................................10

28 U.S.C. § 1391(e) .....................................................................................8, 10, 11

28 U.S.C. § 1391(e)(1)(3) .......................................................................................11

28 U.S.C. § 1391(e)(1)(A) ......................................................................................11

28 U.S.C. § 1391(e)(1)(B) .......................................................................................10

28 U.S.C. 1404(a) ........................................................................................1, 3, 8

**FEDERAL RULES OF CIVIL PROCEDURE**

Fed. R. Civ. P. 45(c)(1)(A)........................................................................................15

**FEDERAL RULES OF EVIDENCE**

Fed. R. Evid. 201.................................................................................................2, 3

**MISCELLANEOUS**

Charles Alan Wright & Arthur R. Miller,
   *Federal Practice and Procedure* § 3805 (4th ed. 2013) .........................................................11

Texas, Google Maps, https://www.google.com/maps/place/Texas/@31.1002379,-104.5724304,6z/data=!3m1!4b1!4m5!3m4!1s0x864070360b823249:0x16eb1c8f1808de3c!8m2!3d31.9685988!4d-99.9018131 (last visited Apr. 29, 2021) ..............................................13

TRAC Immigration, *Details on MPP (Remain in Mexico) Deportation Proceedings*, https://trac.syr.edu/phptools/immigration/mpp/ (last visited May 3, 2021).........................6, 12

U.S. Customs and Border Protection, *Southwest Land Border Encounters (By Component)*, https://www.cbp.gov/newsroom/stats/southwest-land-border-encounters-by-component (last visited Apr. 28, 2021) ...........................................................................................................4, 5

U.S. Customs and Border Protection, *Border Patrol Sectors*, https://www.cbp.gov/border-security/along-us-borders/border-patrol-sectors (last visited Apr. 28, 2021) ..........................7

U.S. Customs and Border Protection, *Del Rio Sector*, (Feb. 5, 2021), https://www.cbp.gov/border-security/along-us-borders/border-patrol-sectors/del-rio-sector-texas (last visited Apr. 28, 2021) .......................................................................................7

U.S. Customs and Border Protection, *El Paso Sector*, (Feb. 11, 2021), https://www.cbp.gov/border-security/along-us-borders/border-patrol-sectors/el-paso-sector-texas (last visited Apr. 28, 2021) .......................................................................................6

U.S. Customs and Border Protection, *El Paso Field Office*, https://www.cbp.gov/contact/ports/field-office/el-paso (last visited May 3, 2021) .................8

U.S. Customs and Border Protection, *Laredo Field Office*, https://www.cbp.gov/contact/ports/field-office/laredo (last visited May 3, 2021) ...................8

U.S. Customs and Border Protection, *Laredo Sector*, (Feb. 5, 2021), https://www.cbp.gov/border-security/along-us-borders/border-patrol-sectors/laredo-sector-texas (last visited Apr. 28, 2021) .......................................................................................7

U.S. Customs and Border Protection, *Marfa Sector*, (Feb. 10, 2021), https://www.cbp.gov/border-security/along-us-borders/border-patrol-sectors/big-bend-sector-texas (last visited Apr. 28, 2021) .......................................................................................6

U.S. Customs and Border Protection, *Rio Grande Valley Sector*, (Feb. 11, 2021), https://www.cbp.gov/border-security/along-us-borders/border-patrol-sectors/rio-grande-valley-sector-texas (last visited Apr. 28, 2021) .................................................................................7

U.S. Customs and Border Protection, *Texas Ports of Entry*, https://www.cbp.gov/contact/ports/tx (last visited May 3, 2021) ...........................................................................................................8

U.S. Courts, *Table D—U.S. District Courts–Criminal Federal Judicial Caseload Statistics (March 31, 2020)*, (Mar. 31, 2020), https://www.uscourts.gov/statistics/table/d/federal-judicial-caseload-statistics/2020/03/31 (last visited Apr. 28, 2021)........................................................17

U.S. Courts, *Table C-1—U.S. District Courts–Civil Federal Judicial Caseload Statistics* (March 31, 2020), (Mar. 31, 2020), https://www.uscourts.gov/statistics/table/c-1/federal-judicial-caseload-statistics/2020/03/31 (last visited Apr. 28, 2021) ....................................................17

U.S. Gov't Accountability Office, *Report to the Chairwoman, Subcommittee on Immigration and Citizenship, Committee on the Judiciary, House of Representatives, Immigration Enforcement: Immigration-Related Prosecutions Increased from 2017 to 2018 in Response to U.S. Attorney General's Direction (Dec. 2019),* https://www.gao.gov/assets/gao-20-172.pdf (last visited Apr. 28, 2021) ...........................................................................................................19

## I.      INTRODUCTION

This action should be transferred to the U.S. District Court for the Southern District of Texas, Brownsville Division, which has the closest nexus to the allegations concerning the Migrant Protection Protocols ("MPP") raised in this lawsuit, or, in the alternative, the Southern District of Texas, McAllen Division. The Rio Grande Valley, in the Southern District of Texas, was and remains the single largest hub of the activities challenged in this lawsuit; most relevant witnesses are likely to be found there; and the Southern District of Texas also includes Laredo, a secondary site of border activity related to MPP.[1] 28 U.S.C. § 1404(a). In contrast, this District has virtually no connection to MPP or its implementation at the United States-Mexico border, which is the focus of this suit.

Plaintiffs the States of Texas and Missouri challenge the Department of Homeland Security's ("DHS") suspension of "new enrollments in [MPP], pending further review of the program" through a memorandum issued by then-Acting Secretary of Homeland Security David Pekoske. Pls.' Compl. Ex. A. MPP is policy guidance issued by then-Secretary of Homeland Security Kirstjen Nielsen explaining when immigration officers inspecting certain applicants for admission arriving in the United States from Mexico either at or between ports of entry may exercise "their prosecutorial discretion," *see* Policy Guidance for Implementation of the Migrant Protection Protocols (Jan. 25, 2019), under 8 U.S.C. § 1225(b)(2)(C), which provides that DHS officers "may return" noncitizens "arriving on land … from a foreign territory contiguous to the United States … to that territory" pending removal proceedings "under section 1229a." "[N]ew

---

[1] Defendants expressly reserve and do not waive any and all objections as to jurisdiction and service. In no way should the filing of this motion be construed as consenting to jurisdiction or service.

1

enrollments in [MPP] pending further review of the program" were temporarily suspended on January 20, 2021. Pls.' Compl. Ex. A.

As explained below, since its inception in January 2019, MPP has been applied exclusively to noncitizen applicants for admission arriving in the United States from Mexico at the southern border, with the largest percentage of apprehensions and inspections of noncitizens and enrollments in MPP occurring in Texas. The Southern District of Texas and the Western District of Texas cover the whole border, with the Southern District of Texas accounting for 28,185 MPP enrollments and the Western District of Texas accounting for 22,029[2] MPP enrollments. Declaration of LaToya Morgan, Acting Director for the CBP STAT Division, Defs.' Ex. A, ¶¶ 6-7, ¶ 4 n.1, App. 002-04. The largest number of those apprehensions and enrollments took place in the Rio Grande Valley Sector of U.S. Customs and Border Protection ("CBP"), U.S. Border Patrol ("USBP"), which is in the Southern District of Texas; thus, transfer to the Brownsville Division or, in the alternative, the McAllen Division is warranted. No MPP enrollments have occurred in the Northern District of Texas generally or in the Amarillo Division specifically. Thus, the vast majority if not all of the effects of any suspension of new enrollments in MPP have their locus in the Southern District of Texas, with a secondary effect in the Western District of Texas, mostly in

---

[2] Footnote 1 of the Declaration of LaToya Morgan lists the stations that comprise each U.S. Border Patrol ("USBP") Sector and the land ports of entry that comprise each U.S. Customs and Border Protection Office of Field Operations ("OFO") Field Office in Texas where MPP enrollments were processed. *See* Defs.' Ex. A ¶ 4 n.1, App. 002. This Court may take judicial notice that the stations for Big Bend, Del Rio, and El Paso Sectors of USBP and the El Paso OFO land ports of entry are in the Western District of Texas, while the stations for the Rio Grande Valley and Laredo Sectors and the Laredo OFO ports of entry are in the Southern District of Texas. Fed. R. Evid. 201. For all data contained in this brief and Defendants' Exhibit A, figures from USBP Stations within the El Paso Sector and OFO Ports of Entry within the El Paso Field Office located in the state of New Mexico are not included in the totals.

the El Paso Division.  Indeed, the majority of litigation concerning MPP in Texas to date has arisen in the Southern District of Texas, Brownsville Division.

Given that the events giving rise to the alleged harms raised in this lawsuit occurred almost exclusively along the southern border, and, with respect to Texas, largely in the Southern District of Texas in the Rio Grande Valley, and that the Brownsville Division has the most familiarity with MPP cases, venue is most appropriate in the Southern District of Texas and litigation of this case in that district would be more convenient to the parties and witnesses and in the interests of justice. *See* 28 U.S.C. § 1404(a). Accordingly, the Court should transfer this case to the Southern District of Texas, Brownsville Division, or, in the alternative, the McAllen Division. Failing that, it should transfer this case to the Western District of Texas, El Paso Division.[3]

## II.        FACTUAL AND PROCEDURAL BACKGROUND

MPP is policy guidance issued by then-Secretary of Homeland Security Kirstjen Nielsen during the prior administration explaining when immigration officers may exercise "their prosecutorial discretion," *see* Policy Guidance for Implementation of the Migrant Protection Protocols (Jan. 25, 2019), under 8 U.S.C. § 1225(b)(2)(C), which provides that DHS officers "may return" noncitizens "arriving on land … from a foreign territory contiguous to the United States … to that territory" pending a determination in removal proceedings "under section 1229a" concerning their admissibility to the United States. Nothing in section 1225(b)(2)(C) or the MPP

---

[3] The Western District of Texas, El Paso Division, also has high numbers of MPP enrollments, so the Government is not opposed to transfer to the Western District of Texas, El Paso Division, as well. The critical factor, however, is that this border-related case should be heard in a court on the border at one of the locations where the bulk of MPP enrollments actually happened and where any alleged impacts of suspending enrollments in MPP would be most felt.

policy guidance requires immigration officers to return noncitizens to Mexico.[4] "[N]ew enrollments in [MPP] pending further review of the program" were temporarily suspended on January 20, 2021. Pls.' Compl. Ex. A.

Since its inception in January 2019, MPP has been applied exclusively on the southern border. During the relevant period (January 2019 through March 2021), CBP data indicates that 1,125,541 individuals were determined to be inadmissible or expelled at Texas land ports of entry or apprehended or encountered attempting to enter Texas at or between the ports of entry. *See* Defs.' Ex. A, ¶¶ 8-9, App. 004-05. Many such noncitizens could potentially have been processed under MPP, *see* Policy Guidance for Implementation of the Migrant Protection Protocols (Jan. 25, 2019). Within Texas, according to CBP data, the largest number, 28,185, of apprehended or inadmissible noncitizens resulting in MPP enrollments occurred in the Southern District of Texas, with 22,029 in the Western District of Texas. Defs.' Ex. A, ¶¶ 6-7, ¶ 4 n.1, App. 002-04. According to CBP's data, no MPP enrollments have ever occurred in the Northern District of Texas generally or in the Amarillo Division specifically, because those enrollments take place in the stations and land ports of entry on the border. Defs.' Ex. A, ¶ 4 n.1, App. 002 (showing that the stations processing MPP are in cities and towns that are in the Western and Southern Districts of Texas).

Moreover, most of the border apprehensions or expulsions between the ports of entry (processed by USBP) and persons determined to be inadmissible or expelled noncitizens appearing at land ports of entry (processed by OFO) in Texas since the inception of MPP have taken place

---

[4] The Court may take judicial notice of the fact that the two major areas of MPP processing on the Texas border are the Rio Grande Valley Sector and the El Paso Sector. Defs.' Ex. A, App. 001-06; Fed. R. Evid. 201 (judicial notice can be taken for facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"); *Terrebonne v. Blackburn*, 646 F.2d 997, 1000 n. 4 (5th Cir. 1981) ("Absent some reason for mistrust, courts have not hesitated to take judicial notice of agency records and reports.").

in the Rio Grande Valley Sector. Specifically, according to CBP data, there has been 528,971 USBP apprehensions and expulsions in the Rio Grande Valley Sector and 61,554 OFO deemed inadmissible and expelled noncitizens at land ports of entry in the Laredo Field Office, in the Southern District of Texas, from January 2019 to March 2021, as compared to 369,139 USBP apprehensions and expulsions at the USBP sectors in the Western District of Texas and 30,589 OFO deemed inadmissible and expelled noncitizens appearing at Texas land ports of entry in the El Paso Field Office, which is in the Western District. *See* Defs.' Ex. A, ¶¶ 8-9, App. 004-05.

In addition, available data shows that no immigration court hearings for noncitizens in MPP has taken place within the U.S. District Court for the Northern District of Texas, Amarillo Division. Instead, the overwhelming majority of hearings involving noncitizens enrolled in MPP occurred in jurisdictions along the southern border. *Details on MPP (Remain in Mexico) Deportation Proceedings*, TRAC Immigration, https://trac.syr.edu/phptools/immigration/mpp/ (last visited May 3, 2021) (showing as of "initial filing" 24,626 hearings in "MPP Court El Paso," 17,333 hearings at "MPP Brownsville Gateway International Bridge," and 13,732 at "MPP Laredo, Texas – Port of Entry"). Indeed, Plaintiffs' own citations show that the vast majority of all MPP hearings along the entire southern border occurred in El Paso, Brownsville, and Laredo. *Id.*; *see* Compl. ¶ 6 n.1 (citing this webpage). To the extent that any hearings in Texas seem as if they occurred elsewhere, those numbers are marginal. *Id.* (showing "current status" next-largest Texas location as Dallas with a mere 298 hearings). Thus, the vast majority if not all of the effects of any temporary suspension of new enrollments in MPP have their locus in the Southern District of Texas, in the Rio Grande Valley in the Brownsville and McAllen Divisions, and the Laredo Division, with a secondary effect in the Western District, in El Paso. *See supra*. Those impacts do not arise in the Northern District of Texas.

Further, the Chief Border Patrol Agents responsible for the oversight of immigration enforcement by USBP or between ports of entry, including overseeing implementation of MPP in their jurisdictions, are located in the Western and Southern Districts of Texas: in El Paso (El Paso Sector), Marfa (Big Bend Sector), Del Rio (Del Rio Sector), Laredo (Laredo Sector), and Edinburg (Rio Grande Valley Sector). *See* U.S. Customs and Border Protection, *El Paso Sector* (Feb. 11, 2021), https://www.cbp.gov/border-security/along-us-borders/border-patrol-sectors/el-paso-sector-texas; U.S. Customs and Border Protection, *Marfa Sector* (Feb. 10, 2021), https://www.cbp.gov/border-security/along-us-borders/border-patrol-sectors/big-bend-sector-texas; U.S. Customs and Border Protection, *Del Rio Sector* (Feb. 5, 2021), https://www.cbp.gov/border-security/along-us-borders/border-patrol-sectors/del-rio-sector-texas; U.S. Customs and Border Protection, *Laredo Sector* (Feb. 5, 2021), https://www.cbp.gov/border-security/along-us-borders/border-patrol-sectors/laredo-sector-texas; U.S. Customs and Border Protection, *Rio Grande Valley Sector* (Feb. 11, 2021), https://www.cbp.gov/border-security/along-us-borders/border-patrol-sectors/rio-grande-valley-sector-texas. All of the U.S. Border Patrol stations in Texas other than those in Dallas are in the Southern and Western Districts. *See* U.S. Customs and Border Protection, *Border Patrol Sectors* https://www.cbp.gov/border-security/along-us-borders/border-patrol-sectors (last visited April 22, 2021).

Similarly, the Port Directors responsible for oversight of screening individuals seeking admission at land Ports of Entry, including overseeing implementation of MPP in their jurisdictions, are located in the Western and Southern Districts of Texas: in El Paso (El Paso Field Office) and Laredo (Laredo Field Office). *See* U.S. Customs and Border Protection, *El Paso Field Office*, https://www.cbp.gov/contact/ports/field-office/el-paso (last visited May 3, 2021); U.S. Customs and Border Protection, *Laredo Field Office*, https://www.cbp.gov/contact/ports/field-

office/laredo (last visited May 3, 2021). All of the land ports of entry are in the Southern and Western Districts of Texas. *See* U.S. Customs and Border Protection, *Texas Ports of Entry*, https://www.cbp.gov/contact/ports/tx (last visited May 3, 2021). None of those locations are in the Northern District or the Amarillo Division more specifically. *See id.*

On January 20, 2021, then-Acting Secretary of Homeland Security David Pekoske suspended new enrollments in MPP pending further review of the program, but he did not eliminate the program altogether, and many migrants remain subject to it. *See* Pls.' Compl. Ex. A. About three months after MPP was suspended, on April 13, 2021, the States of Texas and Missouri filed this suit in the Northern District of Texas, Amarillo Division, challenging the suspension of MPP under the Administrative Procedure Act ("APA") and the Take Care Clause of the Constitution. Compl. ¶¶ 85-114. Notably, the Complaint makes no allegations that any specific action has taken place in the Amarillo Division or the Northern District of Texas generally, instead focusing on actions taken at the border and their effect on Texas and Missouri writ large. *See generally* Compl.

### III.     LEGAL STANDARD

Under section 1404, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). "The underlying premise of § 1404(a) is that courts should prevent plaintiffs from abusing their privilege under § 1391 by subjecting defendants to venues that are inconvenient under the terms of § 1404(a)." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 313 (5th Cir. 2008).

"The preliminary question under § 1404(a) is whether a civil action 'might have been brought' in the destination venue." *Id.* at 312. In actions brought against the federal government, venue is proper in the judicial district "in which (A) a defendant in the action resides, (B) a

substantial part of the events or omissions giving rise to the claim occurred … , or (C) the plaintiff resides if no real property is involved." 28 U.S.C. § 1391(e). Then, the Court must determine whether the party that "seeks the transfer" has shown "good cause," meaning that it has "demonstrate[d] that the transferee venue is clearly more convenient." *Volkswagen*, 545 F.3d at 315. Deference to a plaintiff's choice of forum is lessened when it does not reside in the chosen forum and when "'the operative facts of the dispute occur[red] outside the [Plaintiffs'] chosen forum.'" *Chapman v. Dell, Inc.*, No. EP-09-CV-7-KC, 2009 WL 1024635, at *4 (W.D. Tex. Apr. 15, 2009) (quoting *Icon Indus. Controls Corp. v. Cimetrix, Inc.*, 921 F. Supp. 375, 383 (W.D. La. 1996)); *Jam Strait, Inc. v. Am. Prods. Co., Inc.*, No. 02-2055, 2002 WL 31246566, at *2 (E.D. La. 2002) (holding that when "plaintiff has not brought suit on its 'home turf' … the quantum of inconvenience to defendant needed to tip the balance in favor of transfer is concomitantly reduced") (internal quotation marks and citation omitted).

The Court may consider any number of factors, including "private interest factors" such as "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen*, 545 F.3d at 315. The Court may also consider "public interest factors," such as "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id.* These factors "are not necessarily exhaustive or exclusive" and "none … can be said to be of dispositive weight." *Id.*

Since "under § 1404(a) a court does not have authority to dismiss the case," the "Supreme Court has said" that "Congress … intended to permit courts to grant transfers upon a lesser showing of inconvenience." *Id.* at 313 (quoting *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955)). "When deciding a motion to transfer under § 1404(a), the court may consider undisputed facts outside of the pleadings such as affidavits or declarations." *Garrett v. Hanson*, 429 F. Supp. 3d 311, 317 (E.D. Tex. 2019).

## IV.    ARGUMENT

The Court should transfer this case to the Southern District of Texas, Brownsville Division, or alternatively the McAllen Division, because that is where the majority of the factual allegations underlying Plaintiffs' APA challenge purportedly took place.[5] The Complaint's claims and allegations of harm specifically arise from a policy carried out at the United States' southern border, which is not located in the Northern District of Texas. To the extent that any discovery were ordered or witnesses were necessary, the private interest factors support transfer to the Southern District of Texas, where any sources of proof and witnesses are likely to be found.[6]

Further, the public interest factors weigh in support of transfer. Plaintiffs' choice of forum should not be accorded any deference for this case because there is nothing in the Complaint that mentions any government action taken within the Northern District of Texas or describes any effect in the Northern District of Texas that does not apply generally throughout the State of Texas,

---

[5] As a second alternate, as explained, the court may transfer the case to the Western District of Texas, El Paso Division, because a minority of the events relevant to this case occurred there.

[6] To be sure, because this is a challenge brought subject to the APA, Defendants maintain that no discovery is warranted. But Plaintiffs may seek discovery nevertheless, as they have in similar cases, and evidence could be required with respect to Article III standing, the States' harms, and any remedy in any event. *See, e.g.*, Scheduling Order, *Texas v. Biden*, Case No. 6:21-cv-3, ECF 44 (S.D. Tex. Jan. 30, 2021) (ordering limited discovery).

or more specifically in jurisdictions on the border with Mexico. Meanwhile, the Complaint itself extensively focuses on actions taken by the government in processing persons on the border and the alleged impacts of decisions made at the border, and data collected by CBP shows that all of MPP enrollments in Texas took place on the southern border, with the highest number of MPP enrollments in the USBP Rio Grande Valley Sector, followed by the USBP El Paso Sector. Defs.' Ex. A, ¶ 6, App. 003-04. As such, transfer to the Southern District of Texas, Brownsville Division, is warranted, or, alternatively, the McAllen Division. Failing that, the court should transfer this case to the Western District of Texas, El Paso Division. [7]

## A.     Venue is Proper in the Southern District of Texas

Venue is proper in the Southern District of Texas because a substantial part of the actions implementing the suspension of new MPP enrollments were taken at the southern border, specifically in the Rio Grande Valley. *See* 28 U.S.C. § 1391(e)(1)(B). At the outset, Plaintiffs incorrectly rely on the general venue provision at 28 U.S.C. § 1391(b), Compl. ¶ 47, but suits against the federal government are governed by 28 U.S.C. § 1391(e). That section provides that in any civil action "in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority," venue is proper in any judicial district in which (1) a defendant in the action resides, (2) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) the plaintiff resides if no real property is involved in the action." As explained, the majority of encounters of noncitizens at or between the Texas ports of entry resulting

---

[7] For reasons described herein regarding MPP processing numbers, hearings, and border apprehensions, the Government maintains that the Southern District of Texas is the most appropriate border location; however, if this Court were to determine that the factors weighed more strongly toward the Western District of Texas, the Government is not opposed to transfer there.

in MPP enrollments, the return of eligible noncitizens to Mexico, the processing of noncitizens for entry to the country without enrollment in MPP, and field decisions concerning implementation and application of MPP by relevant supervisors of officers and agents responsible for border enforcement occurred in the Southern District of Texas, primarily in the Rio Grande Valley. Venue is thus proper in the Southern District. *See, e.g.*, *Venable's Constr. Inc. v. Oneok Arbuckle II Pipeline, LLC*, No. 2:20-CV-018-Z-BR, 2020 WL 2841398, at *2 (N.D. Tex. June 1, 2020).[8]

**B.     The Private Interest Factors Favor the Southern District of Texas, Brownsville Division**

The private interest factors all favor transfer to the Southern District of Texas, Brownsville Division, or the McAllen Division in the alternative. Should discovery be ordered, all the private factors support transfer because: (1) the sources of proof for this case will be located on the southern border, primarily within the Southern District of Texas; (2) any witnesses are almost certainly to be from the border region, specifically the Rio Grande Valley, with no clearly

---

[8] Venue is not proper here or the Southern District of Texas under section 1391(e)(1)(A) because "[f]ederal defendants are generally deemed to reside in the District of Columbia." *Zhang v. Chertoff*, 2008 WL 5271995, at *3 (N.D. Cal. Dec. 15, 2008) (collecting cases); *accord Fla. Nursing Home Ass'n v. Page*, 616 F.2d 1355, 1360 (5th Cir. 1980), *rev'd on other grounds, Fla. Dep't of Health & Rehab. Servs. v. Fla. Nursing Home Ass'n*, 450 U.S. 147 (1981) ("The general rule in suits against public officials is that a defendant's residence for venue purpose[s] is the district where he performs his official duties."); *Reuben H. Donnelly Corp. v. FTC*, 580 F.2d 264, 267 (7th Cir. 1978) (reasoning that "to hold that a federal agency can be sued ... wherever it maintains an office would, as a practical matter, render [§ 1391(e)'s other subsections] superfluous" as most federal agencies likely maintain offices in "most, if not all, judicial districts"). Nor is venue here or the Southern District of Texas proper under section 1391(e)(1)(C), because, as Texas has previously conceded, where a State sovereign brings suit, the sovereign resides in the judicial district in which its capital is. *See infra* at 12 & n.8; *see also* 8 U.S.C. § 1391(c)(2) ("For all venue purposes ... an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, ... if a plaintiff, only in the judicial district in which it maintains its principal place of business."); Wright & Miller, 14D Federal Practice and Procedure § 3805 (4th ed.) ("[R]eference to 'the' and the singular 'its principal place of business' compels the conclusion that an entity plaintiff (unlike an entity defendant) can reside in only one district at a time.").

identifiable witnesses from the Amarillo Division; (3) the cost of attendance for those witnesses would be lowered because they would not need to travel far to testify in any hearings; and (4) other practical problems would be made easier, more expeditious, and less expensive if this case were conducted in the jurisdiction where the most MPP actions were taken, and where the suspension of MPP has had the most effect. *See Volkswagen*, 545 F.3d at 315.

All private interest factors support transfer to the Southern District of Texas, Brownsville Division. Should there be discovery ordered, it is substantially more convenient to litigate this case where the events giving rise to the claim allegedly occurred and sources of proof would be present, rather than in a district where none of the alleged actions apparently occurred. According to Texas's own submissions, no immigration court hearings for noncitizens in MPP have taken place within the U.S. District Court for the Northern District of Texas, Amarillo Division. TRAC Immigration, *Details on MPP (Remain in Mexico) Deportation Proceedings*, https://trac.syr.edu/phptools/immigration/mpp/. Moreover, according to data as described in the Declaration of LaToya Morgan, the majority, 28,185, of MPP enrollments in Texas have taken place in the Southern District of Texas, in the OFO Laredo Field Office, and USBP Rio Grande Valley and Laredo Sectors. Defs.' Ex. A ¶¶ 6-7, App. 003-04. According to CBP data, the USBP Rio Grande Valley Sector has also seen a high number of apprehensions and expulsions since MPP's inception, from January 2019 to March 2021. Defs.' Ex. A ¶¶ 8-10, App. 004-06 (stating that the Rio Grande Valley Sector has the highest FY2021 apprehensions and expulsions thus far through March 2021). Thus, the effects of the suspension of MPP have their locus in the Southern District of Texas, and the impact of the actions taken to pause new enrollments in MPP are most felt within that jurisdiction. And according to information that Plaintiffs themselves cite in support, the largest number of immigration court hearings for noncitizens in MPP occurred within the

jurisdiction of the Southern District of Texas, respectively the Brownsville and Laredo Divisions, with the El Paso Division of the Western District of Texas having a similar amount. TRAC Immigration, *Details on MPP (Remain in Mexico) Deportation Proceedings*, https://trac.syr.edu/phptools/immigration/mpp/ (showing as of "initial filing" 24,626 hearings in "MPP Court El Paso," 17,333 hearings at "MPP Brownsville Gateway International Bridge," and 13,732 at "MPP Laredo, Texas – Port of Entry" and similar numbers for "current status"); *see* Compl. ¶ 6 n.1 (citing this website). Indeed, Texas has previously conceded the Southern District of Texas as the proper venue to bring suit in immigration challenges by choosing to sue in that jurisdiction when the bulk of immigration-related activity challenged "has been concentrated in the Rio Grande Valley." *See* Complaint, *Texas v. United States*, 1:14-cv-254, ECF 1, ¶ 35 (S.D. Tex. filed Dec. 3, 2014), App. 037.

Meanwhile, Texas alleges general harms that apply across the state, Compl. ¶¶ 13, 19-29, and makes no specific reference to harms within the Northern District of Texas that do not apply to the other jurisdictions within Texas. Instead, the Complaint extensively discusses the border, evidencing that venue is more appropriate at a courthouse in a border jurisdiction. *See, e.g.*, *id.* ¶¶ 1, 2, 3, 4, 5, 6, 8, 9, 11, 13, 31, 69, 70, 74. The Complaint even quotes a former U.S. Marshal in El Paso, *id.* ¶ 73. To the extent that Texas and Missouri reference traffic patterns from the border in support, this Court may take judicial notice that the main highway routes from El Paso, Laredo, and Brownsville do not cross the Amarillo Division. *See* Texas, Google Maps, https://www.google.com/maps/place/Texas/@31.1002379,-104.5724304,6z/data=!3m1!4b1!4m5!3m4!1s0x864070360b823249:0x16eb1c8f1808de3c!8m2!

3d31.9685988!4d-99.9018131.[9]  And presumably, based on the CBP data, any alleged harms that Texas suffers would be more pronounced on the border where the vast majority of migrants are processed. *See generally* Defs.' Ex. A, App. 001-06.  Therefore, any specific information regarding harms to Texas exists within the Southern District of Texas, not the Northern District, and all actions tied to the alleged harms that Texas suffers arise exclusively on the border where the vast majority of migrants are processed and would be far more pronounced there. *See generally id.*

Indeed, as the State of Texas has itself maintained in another suit, "any argument that venue can lie in a 'place of injury,' which Plaintiffs could allege is in any part of the [sic] Texas, 'is contrary to the venue statute and the weight of jurisprudence.'" Texas's Mem. of Law in Supp. of Defs.' Mot. to Dismiss or Transfer the Consolidated Case ("Texas's Mem."), *City of El Cenizo v. Texas*, Case No. 5:17-cv-404-OG,  ECF 32-1, at 4 (W.D. Tex. filed June 8, 2017) (quoting *Gray Cas. & Sur. Co. v. Lebas*, No. CIV.A. 12-2709, 2013 WL 74351, at *2 (E.D. La. Jan. 7, 2013)), Ex. B, App. 015; *see id.* at 10 (arguing that venue is improper when Plaintiffs "assert no particular facts about the operation of [the challenged law] in their municipalities  or counties").[10] But even without that concession in prior litigation,  the States' choice of forum is not entitled to deference given the absence of any events relevant to this suit occurring there. *See, e.g., Chapman*, 2009 WL

---

[9] Courts have routinely taken judicial notice of and referenced Google Maps in their opinions. *See, e.g., Armstrong v. Lumpkin*, No. 7:18-CV-356,  2020 WL 8188422,  at *19 n.26 (S.D. Tex. Sept. 8, 2020), *report and recommendation adopted*, No. 7:18-CV-00356,  2021 WL 179600 (S.D. Tex. Jan. 19, 2021) (relying on Google Maps as an appendix and citing cases taking judicial notice of Google Maps).

[10] In that motion, Texas argued vigorously that the sole venue for its suit was in Austin because that is where the Defendants "perform their official duties." Texas's Mem., *City of El Cenizo v. Texas*, ECF 32-1, at 5. The federal government is not arguing for transfer to the U.S. District Court for the District of Columbia, but notes that under Texas's own logic, because the only named defendants in this suit are government officials located in the District of Columbia, it should have filed suit there.

1024635, at *4 (deference less warranted when Plaintiffs do not reside in district and the locus of events leading to suit did not occur there); *Spiegelberg v. Collegiate Licensing Co.*, 402 F. Supp. 2d 786, 792 (S.D. Tex. 2005) ("[B]ecause Houston lacks any legally relevant factual nexus with Plaintiff or the claims in this case, Plaintiff's choice of the Houston forum receives less deference."); *Martinez v. City of Fort Worth*, No. 3:02-cv-2286, 2003 WL 21289654, at *2 (N.D. Tex. May 28, 2003) (citing *Cooper v. Pied Piper Mills, Inc*., No. 3:98-cv-1309, 1998 WL 713270, at *1 (N.D. Tex. Oct. 5, 1998)) (similar); *BJI Indus., Inc. v. Old Dominion Freight Line, Inc*., No. 3:96-cv-2533, 1997 WL 148035, at *2 (N.D. Tex. Mar. 25, 1997) (similar); *Greiner v. Am. Motor Sales Corp*., 645 F. Supp. 277, 279 (E.D. Tex. 1986) (similar); *Coons v. Am. Horse Show Assoc., Inc.*, 533 F. Supp. 398, 400 (S.D. Tex. 1982)) (similar).

Moreover, any necessary interviews or testimony from agents or officers allegedly involved with processing or not processing noncitizens under MPP or apprehending noncitizens who have entered the United States through the southern border eligible for MPP would be best conducted in the Southern District of Texas, where U.S. Border Patrol has many stations and ports of entry at which agents and officers processing MPP cases are located. The cost of attendance for these persons would thus be lowered there because of the decreased need for travel, and compulsory process would be possible, if such process were to be necessary. Indeed, any non-party witnesses subject to MPP, or who are otherwise located on the other side of the border, lie outside of this Court's 100-mile subpoena authority under Fed. R. Civ. P. 45(c)(1)(A). *See Volkswagen,* 545 F.3d at 316. Similarly, it would likely take less time and expense for potential CBP witnesses overseeing or implementing MPP stationed at or near the border to travel to Brownsville for proceedings than Amarillo. *See, e.g.*, *Smith v. Magnolia Marine Transp. Co.*, No. 10-cv-964, 2010 WL 3418242, at *2 (E.D. La. Aug. 24, 2010) ("Witnesses and parties would have

to journey over 200 miles to reach Plaintiff's chosen venue, while Defendant's requested venue would provide ease and convenience to most witnesses and parties."); *see also DeLacerda v. Dir., TDCJ*, No. 4:06-cv-236, 2006 WL 1720606, at *1 (E.D. Tex. 2006).

The States of Texas and Missouri would not be inconvenienced by this transfer. *See Chapman*, 2009 WL 1024635, at *4 (noting that "the normal deference to Plaintiffs' choice of forum would receive is tempered" when "Plaintiffs do not live in the" division where they sued and "the operative facts of the dispute occurred outside the plaintiff's chosen forum"); *Jam Strait, Inc.*, 2002 WL 31246566, at *2 (holding that when "plaintiff has not brought suit on its 'home turf' … the quantum of inconvenience to defendant needed to tip the balance in favor of transfer is concomitantly reduced"). The Southern District of Texas is within the State of Texas, and the seat of State government is in Austin, which is located in the Western District of Texas. *See* Texas's Mem. at 5 (arguing that the State of Texas is properly venued solely in Austin), *id.* at 11 (arguing that because "only one of the many Plaintiffs reside in this Division" it would "make little practical difference" to those plaintiffs for the case to be transferred). The Complaint focuses on alleged harms to Texas as a state from the suspension of new enrollments in MPP, Compl. ¶¶ 13, 19-29, with no mention of harms specific to the Amarillo Division, *see generally* Compl. The State of Missouri, meanwhile, is equally inconvenienced by any choice of forum outside its boundaries; moreover, it premises its alleged harms on travel that must have originated at some point along the U.S.-Mexico border, with no reference to a nexus located within the Northern District of Texas, Amarillo Division, or the Northern District of Texas overall. *See* Compl. ¶¶ 13-15.

Finally, this case was only filed twenty days ago. The Court has not yet held hearings, authorized discovery, or been called on to adjudicate issues in this case in any way. Accordingly, transfer would not meaningfully affect judicial economy. *See In re Radmax, Ltd.*, 720 F.3d 285,

288, 289 (5th Cir. 2013) ("[G]arden variety delay associated with transfer is not to be taken into consideration when ruling on a § 1404(a) motion to transfer.").

Therefore, the private interest favors weigh heavily in favor of transfer to the Southern District, Brownsville Division, or alternatively the McAllen Division.

**C.      The Public Interest Factors Favor Transfer to the Southern District of Texas**

The public interest factors also favor transfer. While the Government was unable to find publicly available statistics regarding court congestion in the Brownsville Division as compared to the Amarillo Division and conflict-of-laws concerns do not apply in this case, two public interest factors clearly support transfer.[11] First, there is a "local interest in having localized interests decided at home," *Volkswagen*, 545 F.3d at 315, with the suspension of MPP enrollments and MPP generally having a more direct effect in the Southern District than in the Northern District of Texas. *See generally* Defs.' Ex. A, App. 001-06. Second, the Southern District of Texas, Brownsville Division, is more likely to have familiarity with law applicable to the case, as cases involving MPP have already been transferred to that district that remain ongoing, and it is more routinely involved in adjudicating international border issues.

First, Plaintiffs have made no suggestion that the Northern District of Texas has any particular interest in the subject matter of this litigation beyond the generalized interest that any other part of Texas would have in it. *See generally* Compl. They have simply pleaded that a

---

[11] The Government notes that as of March 31, 2020, the Northern District of Texas (2,211 criminal cases pending and 13,195 civil cases pending), has roughly the same caseloads as the Southern District of Texas (9,032 criminal cases pending and 5,639 civil cases pending), but more civil cases. *See Table D—U.S. District Courts–Criminal Federal Judicial Caseload Statistics (March 31, 2020)*, U.S. Courts (Mar. 31, 2020), https://www.uscourts.gov/statistics/table/d/federal-judicial-caseload-statistics/2020/03/31; *Table C-1—U.S. District Courts–Civil Federal Judicial Caseload Statistics (March 31, 2020)*, U.S. Courts (Mar. 31, 2020), https://www.uscourts.gov/statistics/table/c-1/federal-judicial-caseload-statistics/2020/03/31.

"substantial part of the events or omissions giving rise to this complaint occurred and continue to occur within the Northern District of Texas" without making any more specific claims in their Complaint beyond that. Compl. ¶ 47; *see generally id*. But the parties' claims center on the effects of certain types of immigration enforcement at the southern border. The relevant actions take place on that border. A district court that sits in the sector that was most involved in the subject of Plaintiffs' allegations—specifically, the Southern District of Texas, along the southern border— has a much greater connection to the events alleged in the Complaint, has a much greater interest in the parties, and would have a much greater interest in the alleged activities occurring there, as the challenged suspension is being carried out there. Accordingly, "deference [to the plaintiff's choice of forum] is mitigated where [that forum] has 'no meaningful ties to the controversy and no particular interest in the parties or subject matter.'" *Kafack v. Primerica Life Ins. Co.*, 934 F. Supp. 3, 6 (D.D.C. 1996) (quoting *Chung v. Chrysler Corp.*, 903 F. Supp. 160, 165 (D.D.C. 1995)). In contrast, the Southern District of Texas "possesses a significant interest in this suit because [the majority of] the material events that constitute the factual predicate for the [Plaintiffs'] claims occurred there." *Id*. (emphasis added).

Second, the Southern District of Texas, Brownsville Division, is more likely to be most familiar with law applicable in this case because it has had multiple cases involving MPP. *KPPR v. Wolf*, No. 1:21-cv-7 (S.D. Tex.) (class action challenge to MPP on statutory and APA grounds); *Turcios v. Wolf*, No. 1:20-cv-00093 (S.D. Tex.) (similar, transferred to Brownsville Division from Houston Division); *Jane Doe v. Barr*, No. 1:19-cv-213 (S.D. Tex.) (MPP case transferred to the Brownsville Division from the McAllen Division).[12] It is also on the border and so has overseen a

---

[12] To the extent that the Court considers transfer to the Western District of Texas as well, that court also sees a large amount of border-related litigation, including cases involving MPP. *See Diocesan Migrant & Refugee Servs., Inc. v. United States Immigr. & Customs Enf't*, No. EP-19-CV-00236-

higher rate of border-related litigation, both civil and criminal. *See, e.g.*, *Veterans Peace Convoy, Inc. v. Schultz*, 722 F. Supp. 1425, 1427 (S.D. Tex. 1988); *United States v. Vasquez-Guttierez*, No. 2:14-CR-793-1, 2015 WL 429735 (S.D. Tex. Feb. 2, 2015); *United States v. Canales-Rosales*, 67 F. Supp. 3d 791 (S.D. Tex. 2014); *United States v. Compian*, No. 2:16-CR-1045, 2017 WL 1650185, at *1 (S.D. Tex. May 2, 2017), *aff'd*, 730 F. App'x 275 (5th Cir. 2018); *see also* U.S. Gov't Accountability Office, Report to the Chairwoman, Subcommittee on Immigration and Citizenship, Committee on the Judiciary, House of Representatives, *Immigration Enforcement: Immigration-Related Prosecutions Increased from 2017 to 2018 in Response to U.S. Attorney General's Direction* (Dec. 2019), at 29, 34, https://www.gao.gov/assets/gao-20-172.pdf (showing that the largest number of alien smuggling and improper-entry charges in the nation from 2014-18 were brought in the Southern District of Texas). This indicates that the Southern District of Texas has a significant interest in issues arising from the MPP and activities occurring at and near the border generally.

Thus, the public interest factors weigh in favor of the Southern District of Texas, Brownsville Division, deciding a suit challenging events that have most of their impact in the Rio Grande Valley along the Texas border.

---

FM, 2020 WL 7706275, at *1 (W.D. Tex. Oct. 19, 2020) (FOIA action seeking MPP records); *EJRO v. McLane*, No. SA-20-CV-1157-JKP, 2020 WL 7342664, at *2 (W.D. Tex. Dec. 14, 2020) (addressing a claim that a return to Mexico under the MPP constitutes a removal); *see also El Paso Cty., Texas v. Trump*, 982 F.3d 332, 335 (5th Cir. 2020) (appeal from Western District case challenging construction of wall on southern border); *Mendez v. Poitevent*, No. DR-13-CV-0065-AM-VRG, 2014 WL 12639318, at *1 (W.D. Tex. Sept. 30, 2014), *aff'd*, 823 F.3d 326 (5th Cir. 2016) (wrongful death suit arising from shooting by Border Patrol agent at a southern border crossing).

## V.      CONCLUSION

For the foregoing reasons, the Court should transfer this action to the U.S. District Court for the Southern District of Texas, Brownsville Division or, alternatively the McAllen Division. The Court may also transfer the case to the Western District of Texas, El Paso Division.

Date: May 3, 2021                              Respectfully submitted,

BRIAN M. BOYNTON
*Acting Assistant Attorney General*

WILLIAM C. PEACHEY
*Director*
Office of Immigration Litigation
District Court Section

EREZ REUVENI
*Assistant Director*

JOSEPH A. DARROW
*Trial Attorney*

*/s/ Francesca Genova*
FRANCESCA GENOVA
*Trial Attorney*
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel.: (202) 305-1062
Francesca.M.Genova@usdoj.gov

## CERTIFICATE OF CONFERNCE

This is to certify that I have conferred with counsel for Plaintiffs about the relief requested herein and they oppose this motion.

/s/ Francesca Genova
Francesca Genova
Trial Attorney
United States Department of Justice
Civil Division


## CERTIFICATE OF SERVICE

I hereby certify that on May 3, 2021, I electronically filed the foregoing document with the Clerk of the Court for the United States District Court for the Northern District of Texas by using the CM/ECF system. Counsel in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

/s/ Francesca Genova
Francesca Genova
Trial Attorney
United States Department of Justice
Civil Division