**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**AMARILLO DIVISION**

| | | |
|---|---|---|
| THE STATE OF TEXAS and | § | |
| | § | |
| THE STATE OF MISSOURI, | § | |
| | § | |
| Plaintiffs, | § | Case No. 2:21-cv-00067-Z |
| | § | |
| v. | § | |
| | § | |
| JOSEPH R. BIDEN, JR., in his official | § | |
| capacity as President of the United States | § | |
| of America, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO
TRANSFER VENUE**

TABLE OF CONTENTS

Table of Contents.....................................................................................................i

Table of Authorities ...............................................................................................ii

Introduction............................................................................................................1

Legal Standard .......................................................................................................1

Argument ...............................................................................................................3

    I.      Private Interest Factors .............................................................................3

        A.     The Relative Ease of Access to Sources of Proof......................5

        B.     The Availability of Compulsory Process to Secure the Attendance of Witnesses ...............................................................7

        C.     The Cost of Attendance for Willing Witnesses .........................8

        D.     All Other Practical Problems That Make Trial of a Case Easy, Expeditious, and Inexpensive ...................................................9

    II.     Public Interest Factors.............................................................................11

        A.     The Administrative Difficulties Flowing from Court Congestion............11

        B.     The Local Interest in Having Localized Interests Decided at Home ........12

        C.     The Familiarity of the Forum with the Law That Will Govern the Case . 13

        D.     The Avoidance of Unnecessary Problems of Conflicts of Laws or in the Application of Foreign Law...................................................14

Conclusion ...........................................................................................................15

Certificate of Service ...........................................................................................17

TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Barton v. C. R. Bard, Inc.*,
No. 2:19-cv-181-Z, 2020 WL 1809702 (N.D. Tex. Apr. 9, 2020) (Kacsmaryk,
J.)........................................................................................................................11

*BJI Indus., Inc. v. Old Dominion Freight Line, Inc.*,
No. 396-cv-2533-D, 1997 WL 148035 (N.D. Tex. Mar. 25, 1997) .......................................10

*Chapman v. Dell, Inc.*,
No. EP-09-cv-7-KC, 2009 WL 1024635 (W.D. Tex. Apr. 15, 2009) ...............................10, 11

*Click v. General Motors LLC*,
No. 2:18-cv-0455, 2020 WL 9075078 (S.D. Tex. Mar. 17, 2020) ................................4, 7, 10

*Coons v. Am. Horse Show Ass'n, Inc.*,
533 F. Supp. 398 (S.D. Tex. 1982) ........................................................................10

*Dagel v. Resident News, LLC*,
No. 3:11-cv-00663-L, 2011 WL 3518281 (N.D. Tex. Aug. 10, 2011)
(Lindsay, J.) ..............................................................................................7

*Doe v. Kanakuk Ministries*,
No. 3:11-cv-524-G, 2012 WL 715980 (N.D. Tex. Mar. 5, 2012) (Fish, J.) ..........................15

*Dupre v. Spanier Marine Corp.*,
810 F. Supp. 823 (S.D. Tex. 1993) .........................................................................4

*Ecofactor, Inc. v. Google LLC*,
No. 6-20-cv-75-ADA, 2021 WL 1535413 (W.D. Tex. Apr. 16, 2021)..............................7, 10

*ESI/Emp. Sols., L.P. v. City of Dallas*,
No. 4:19-cv-570-SDJ, 2019 WL 5684668 (E.D. Tex. Oct. 31, 2019)................................8, 15

*Garrett v. Hanson*,
429 F. Supp. 3d 311 (E.D. Tex. 2019) .....................................................................2

*Greiner v. Am. Motor Sales Corp.*,
645 F. Supp. 277 (E.D. Tex. 1986) ........................................................................10

*Hidden Values, Inc. v. Sandoval*,
No. 3:09-cv-34-B, 2009 WL 10677477 (N.D. Tex. June 26, 2009) (Boyle, J.) .....................14

*Jam Strait, Inc. v. Am. Prods. Co.*,
    No. 02-2055, 2002 WL 31246566 (E.D. La. Oct. 4, 2002) ...................................................10

*LeBlanc v. C.R. Eng., Inc.*,
    961 F. Supp. 2d 819 (N.D. Tex. 2013) (Boyle, J.)................................................................12

*Martinez v. City of Fort Worth, Texas*,
    No. 3:02-cv-2286-M, 2003 WL 21289654 (N.D. Tex. 2003) ...............................................10

*Mateos v. Montemayor*,
    919 F. Supp. 2d 817 (W.D. Tex. 2013)..................................................................................14

*McGinnis v. Eli Lilly & Co.*,
    181 F. Supp. 2d 684 (S.D. Tex. 2002) .....................................................................................4

*McNew v. C.R. Bard, Inc.*,
    No. 1:19-cv-195-H, 2020 WL 759299 (N.D. Tex. Feb. 14, 2020) (Hendrix, J.)..............4, 5, 7

*Monarch Networking Sols. LLC v. Cisco Sys., Inc.*,
    No. 2:20-cv-00015-JRG, 2021 U.S. Dist. LEXIS 1551 (E.D. Tex. Jan. 5,
    2021) .................................................................................................................................4, 5, 7

*SITO Mobile R&D IP v. Hulu, LLC*,
    No. 6-20-cv-00472-ADA, 2021 WL 1166772 (W.D. Tex. Mar. 24, 2021) .........................4, 8

*Spiegelberg v. Collegiate Licensing Co.*,
    402 F. Supp. 2d 786 (S.D. Tex. 2005) ...................................................................................10

*Texas v. United States*,
    809 F.3d 134 (5th Cir. 2015) .................................................................................................12

*TitanUrbi21, LLC v. GS Oilfield Servs., LLC*,
    No. 2:20-cv-069-Z, 2020 WL 5066943 (N.D. Tex. Aug. 27, 2020)
    (Kacsmaryk, J.) .......................................................................................................................7

*Venable's Constr. Inc. v. Oneok Arbuckle II Pipeline, LLC*,
    No. 2:20-cv-018-Z-BR, 2020 WL 2841398 (N.D. Tex. June 1, 2020)
    (Kacsmaryk, J.) ............................................................................................................ *passim*

*In re Volkswagen AG* (*Volkswagen I*),
    371 F.3d 201 (5th Cir. 2004) ...................................................................................................2

*In re Volkswagen of Am. Inc.* (*Volkswagen II*),
    545 F.3d 304 (5th Cir. 2008) (en banc) ......................................................................... *passim*

**Statutes**

28 U.S.C. § 1404(a) .....................................................................................................2, 9, 10

## INTRODUCTION

Defendants do not get to pick the venue. Plaintiffs do. And Plaintiffs' choice of venue must be respected unless Defendants can prove that venue elsewhere is "clearly more convenient." *In re Volkswagen of Am. Inc.* (*Volkswagen II*), 545 F.3d 304, 315 (5th Cir. 2008) (en banc). Defendants argue that litigating this case in the Northern District of Texas is inconvenient for the parties and witnesses, but they fail to support their argument with relevant evidence and the specificity required to carry their burden. Defendants' arguments depend almost exclusively on speculation about unidentified sources of proof located on the border and unidentified witnesses having to travel to Amarillo, even though Defendants oppose all discovery and allowing any witnesses to testify.

Defendants' main argument seems to be that all immigration disputes should be decided in courts that touch the border. But Defendants' unlawful suspension of the Migrant Protection Protocols ("MPP") has far-reaching, nationwide effects. No one disputes that it affects the area along the border. But it also harms communities much farther north. That is why the State of Missouri is a plaintiff in this very case.

In the end, this case is about agency action taken in Washington, D.C., which harms communities nationwide. This Court is more than qualified to decide the legal issues that will govern the outcome of this case, and this Court is capable of doing so in a timely manner. This case should remain in the Northern District of Texas, and the Court should deny Defendants' motion.

## LEGAL STANDARD

"[A] district court may transfer any civil action to any other district or division where it might have been brought" "[f]or the convenience of the parties and witnesses, in the interest of

1

justice." 28 U.S.C. § 1404(a). The movant bears the burden to show good cause for transfer. *Volkswagen II*, 545 F.3d at 315. "[T]o show good cause means that a moving party . . . must satisfy the statutory requirements and clearly demonstrate that a transfer is '[f]or the convenience of parties and witnesses, in the interest of justice.'" *Id.* (quoting § 1404(a)). Defendants must, therefore, show that the transferee venue is "clearly more convenient" than the Northern District of Texas. *Id.* "[W]hen the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected." *Id.*

Courts first determine whether the movant has shown that "the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG* (*Volkswagen I*), 371 F.3d 201, 203 (5th Cir. 2004). Courts then examine eight private and public interest factors. *Id.*

> The private interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive."

*Volkswagen II*, 545 F.3d at 315 (quoting *Volkswagen I*, 371 F.3d at 201).

> The public interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflicts of laws [or in] the application of foreign law."

*Id.* (alteration in original). These factors are not exhaustive or exclusive, and no one factor is dispositive. *Id.*

The Court "may consider undisputed facts outside of the pleadings such as affidavits or declarations, but it must draw all reasonable inferences and resolve factual conflicts in favor of the non-moving party." *Garrett v. Hanson*, 429 F. Supp. 3d 311, 317 (E.D. Tex. 2019). "[D]istrict courts have 'broad discretion in deciding whether to order a transfer'" pursuant to § 1404(a).

*Volkswagen II*, 545 F.3d at 311 (quoting *Caldwell v. Palmetto State Sav. Bank,* 811 F.2d 916, 919 (5th Cir. 1987)).

**ARGUMENT**

This case should remain in the Northern District of Texas because Defendants have not shown that another district is clearly more convenient. Defendants' arguments rest on a fundamental misunderstanding of this case. It is not about the actions of individual agents along the border. It is about Defendants' arbitrary and capricious decision to suspend MPP in a memorandum issued from Washington, D.C. Defendants' speculation and generalizations about how this case could be litigated if it focused on different issues should carry no weight. In reality, no public or private interest factor supports transfer in derogation of Plaintiffs' choice of venue, while the lack of congestion in this Court weighs heavily in favor of this case being tried where it was filed. Consequently, the Court should deny Defendants' motion.

## I.     Private Interest Factors

This case turns on whether an agency memorandum issued from Washington, D.C., complied with the Administrative Procedure Act ("APA"), the Immigration and Nationality Act ("INA"), the U.S. Constitution, and an agreement between the Department of Homeland Security ("DHS") and Texas. It is about a nationwide policy with nationwide effect.

Obscuring the nature of this case, Defendants focus on individual "enrollments" into MPP, which had previously taken place along the border. ECF 11 at 4–5, 12. But those individual enrollments should not affect the venue analysis, not only because this is a challenge to nationwide agency action, but also because they are no longer occurring. This case also does not turn on facts related to particular immigration court hearings occurring along the border. Defendants, however, base their analysis of the private interest factors on the location of these hearings. *Id.* at 5, 12–13.

3

Moreover, Defendants' analysis of the private interest factors is based entirely on speculation regarding Plaintiffs requesting, and the Court ordering, discovery that Defendants contend is unwarranted. *See Id.* at 9 ("To the extent that any discovery were ordered or witnesses were necessary, the private interest factors support transfer . . . ."), 9 n.6 ("Defendants maintain that no discovery is warranted."), 11 ("Should discovery be ordered, all the private interest factors support transfer . . . ."), 12 ("Should there be discovery ordered, it is substantially more convenient . . . .").

Transfer should be denied because Defendants' motion is based purely on speculation and is devoid of specificity. *See, e.g.*, *SITO Mobile R&D IP v. Hulu, LLC*, No. 6-20-cv-00472-ADA, 2021 WL 1166772, at *6 (W.D. Tex. Mar. 24, 2021) ("Without such specific information, the Court cannot assess the convenience of each venue for unidentified, unknown witnesses."); *Monarch Networking Sols. LLC v. Cisco Sys., Inc.*, No. 2:20-cv-00015-JRG, 2021 U.S. Dist. LEXIS 1551, at *9 (E.D. Tex. Jan. 5, 2021) ("[P]arties must specifically identify sources of proof, explain their relevance, and specifically identify the location of those sources.") (App.004–016); *McNew v. C.R. Bard, Inc.*, No. 1:19-cv-195-H, 2020 WL 759299, at *2 (N.D. Tex. Feb. 14, 2020) (Hendrix, J.) ("[P]arties must specifically identify each witness and provide an overview of their testimony . . . ."); *Click v. General Motors LLC*, No. 2:18-cv-0455, 2020 WL 9075078, at *4 (S.D. Tex. Mar. 17, 2020) ("In connection with motions to transfer, 'The movant must specifically identify the key witnesses and outline the substance of their testimony.'" (quoting *Bevil v. Smit Americas, Inc.*, 883 F. Supp. 168, 170 (S.D. Tex. 1995))); *McGinnis v. Eli Lilly & Co.*, 181 F. Supp. 2d 684, 688 (S.D. Tex. 2002) ("At an absolute minimum, Defendant must identify key witnesses and provide a brief summary of their likely testimony . . . ."); *Dupre v. Spanier Marine*

4

*Corp.*, 810 F. Supp. 823, 825 (S.D. Tex. 1993) ("The movant must specifically identify the key witnesses and outline the substance of their testimony.").

When the private interest factors are properly analyzed, they are neutral.

**A.  The Relative Ease of Access to Sources of Proof**

Defendants have not established that "the relative ease of access to sources of proof" favors another court. To do so, Defendants would have had to "specifically identify sources of proof, explain their relevance, and specifically identify the location of those sources." *Monarch Networking Sols.*, 2021 U.S. Dist. LEXIS 1551, at *9. But Defendants did not "specifically identify sources of proof," because they are not even sure that any proof is necessary. Defendants argue that "sources of proof would be present" in other districts "[s]hould there be discovery ordered," ECF 11 at 12, but they "maintain that no discovery is warranted" "because this is a challenge brought subject to the APA," *Id.* at 9 n.6.

That is fatal to Plaintiffs' argument under this factor. For example, in *Venable's Construction*, this Court held that, "[a]t best, this factor is neutral" where the defendant "fail[ed] to identify *specific* evidence [that] will be more accessible" in the transferee venue "or inaccessible in Amarillo." *Venable's Constr. Inc. v. Oneok Arbuckle II Pipeline, LLC*, No. 2:20-cv-018-Z-BR, 2020 WL 2841398, at *3 (N.D. Tex. June 1, 2020) (Kacsmaryk, J.). In *McNew*, Judge Hendrix held that this factor weighed against transfer where the movant, McNew, did not identify witnesses or "elaborate on why their testimony is important to th[e] dispute." 2020 WL 759299, at *2. Judge Hendrix explained that "Courts do not afford significant weight to general allegations that a particular forum would be more convenient for unspecified witness" and that the "parties must specifically identify each witness and provide an overview of their testimony so that court can evaluate whether a particular forum would be more convenient for them as wall as their importance to the case." *Id.*

5

Even if generalized theories of evidence that might be relevant could suffice under the first factor, Defendants' arguments in this case would fail. *First*, Defendants acknowledge that "evidence could be required with respect to Article III standing" and "the States' harms." ECF 11 at 9 n.6. But Defendants do not provide any reason to think that these sources of such proof will be in the Brownsville Division or the McAllen Division.[1] Indeed, Plaintiffs have already provided proof of standing and irreparable injury. *See* ECF 30 at 17–25, 28–29. Plaintiffs provided declarations from state employees in Austin, Texas, and Jefferson City, Missouri, *see, e.g.*, ECF 31-1, Ex. A; ECF 31-2, Exs. B, D-I, but Defendants do not argue for transfer to Austin or Missouri.

*Second*, Defendants focus on "MPP processing numbers, hearings, and border apprehensions," ECF 11 at 10 n.7, but to the extent any of those things are relevant, it would be through aggregate numbers reflected in records found online and, as Plaintiffs understand it, in the records of the CBP STAT Division in Washington, D.C.[2] Defendants, however, are "not arguing for transfer to the U.S. District Court for the District of Columbia." ECF 11 at 14 n.10. Nor do they explain how such documentary evidence would be more accessible in the Brownsville or McAllen Divisions than in the Amarillo Division.

Once again, Defendants' fail to carry their burden to prove that the Southern District of Texas is clearly more convenient. *See, e.g.*, *Ecofactor, Inc. v. Google LLC*, No. 6-20-cv-75-ADA,

---

[1] Defendants primarily seek transfer of this case to the Southern District of Texas. *E.g.*, ECF 11 at 1. Accordingly, Plaintiffs focus their response on the Southern District. But Defendants also say that they are "not opposed to transfer" to the Western District of Texas. *See id.* at 3 n.3. Transfer to the Western District would be inappropriate for the same reasons that transfer to the Southern District would be inappropriate.

[2] *See* U.S. Customs and Border Protection, *Stats and Summaries*, https://www.cbp.gov/newsroom/media-resources/stats; ECF 11 at 2 (relying on information from the "Acting Director for the CBP STAT Division"); Jay Visconti, LINKEDIN, https://www.linkedin.com/in/borderk9 (showing that the "Director of CPB STAT Division" is located in "Washington, District Of Columbia").

2021 WL 1535413, at *2 (W.D. Tex. Apr. 16, 2021) (finding "vague and conclusory argument regarding physical documents" unpersuasive); *TitanUrbi21, LLC v. GS Oilfield Servs., LLC*, No. 2:20-cv-069-Z, 2020 WL 5066943, at *5 (N.D. Tex. Aug. 27, 2020) (Kacsmaryk, J.) (finding that documents are "easily accessible by electronic means" and "equally accessible in either venue"); *Venable's Constr.*, 2020 WL 2841398, at *3 ("Defendant fail[ed] to show that sources of proof such as documentary and electronically-stored data is less accessible with venue in Amarillo.").

Defendants also speculate about potential interviews or testimony from agents or officers involved in processing or apprehending inadmissible aliens near the border, ECF 11 at 12, 15, but they do not explain the relevance of such potential testimony. Defendants' speculation and failure to explain the relevance of these unidentified witnesses are further evidence of their failure to meet their burden of proving that the Southern District of Texas is clearly more convenient. *E.g.*, *Dagel v. Resident News, LLC*, No. 3:11-cv-00663-L, 2011 WL 3518281, at *8 (N.D. Tex. Aug. 10, 2011) (Lindsay, J.) ("Because Defendants fail to identify actual witnesses or the role they may play in the case; rather than merely make conclusory statements regarding their inconvenience, Defendants have failed to 'demonstrate[] that the transferee venue is clearly more convenient.'" (quoting *Volkswagen II*, 545 F.3d at 315)); *see also Monarch Networking*, 2021 U.S. Dist. LEXIS 1551, at *9; *McNew*, 2020 WL 759299, at *2; *Click*, 2020 WL 9075078, at *4. In addition, Defendants fail to explain why these agents or officer would be required to travel to Amarillo to provide evidence. *See Venable's Constr.*, 2020 WL 2841398, at *3 (explaining that "there is no requirement that these witnesses must travel to Amarillo . . . to provide evidence").

This factor is, therefore, neutral.

**B.  The Availability of Compulsory Process to Secure the Attendance of Witnesses**

"The second private interest factor . . . favors transfer when a transferee district has absolute subpoena power over a greater number of non-party witnesses." *Id.* at *4 (quoting *Moore*

*v. Payson Petroleum Grayson, LLC*, No. 3:17-cv-1436-M-BH, 2018 WL 514258, at *5 (N.D. Tex. Jan. 23, 2018) (Ramirez, Mag.)). "[T]he party seeking transfer must 'specifically identify the key witnesses and outline the substance of their testimony.'" *Id.* (quoting *Moore*, 2018 WL 514258, at *5). Defendants fail to specifically identify any unwilling, non-party witnesses in the transferee district or the substance of their testimony. That precludes Defendants from relying on this factor. *See ESI/Emp. Sols., L.P. v. City of Dallas*, No. 4:19-cv-570-SDJ, 2019 WL 5684668, at *4 (E.D. Tex. Oct. 31, 2019) ("To undertake a convenience analysis, however, a court must have some information about the witnesses to consider."). As a result, this factor is also neutral.

### C. The Cost of Attendance for Willing Witnesses

The Fifth Circuit has "set a 100-mile threshold" that is used to assess "the factor of inconvenience to witnesses" and how such inconvenience increases "in direct relationship to . . . additional distance to be traveled." *Volkswagen II*, 545 F.3d at 317 (quoting *Volkswagen I*, 371 F.3d at 204–05). Specificity is also required to assess this third private interest factor. *See, e.g.*, *SITO Mobile*, 2021 U.S. Dist. LEXIS 58394, at *16–17 ("Hulu's failure to identify specific third-party witnesses results in this factor weighing against transfer . . . ."); *Venable's Constr.*, 2020 WL 2841398, at *4 (rejecting consideration of witnesses in the convenience analysis due to lack of specificity). Instead of providing specifics, Defendants again resort to speculation and generalities in arguing that, "[s]hould discovery be ordered," the costs of attendance would be lowered for unnamed witnesses, agents, or officers from the border region. ECF 11 at 11–12, 15. Defendants' unsupported allegations that unnamed parties "*might* testify," not that they "are *expected* to testify," are "generalizations [that] do not qualify as identifying witnesses and outlining their testimony with specificity," and they should be given no weight. *See Venable's Constr.*, 2020 WL 2841398, at *4–5 (citing *BNSF Ry. Co. v. OOCL (USA), Inc.*, 667 F. Supp. 2d 703, 711 (N.D. Tex.

2009) (Means, J.); *Bevil v. Smit Americas, Inc.* 883 F. Supp. 168, 170 (S.D. Tex. 1995)). This factor is also neutral.

### D.  All Other Practical Problems That Make Trial of a Case Easy, Expeditious, and Inexpensive

The fourth private interest factor "is the catchall of 'all other practical problems that make trial of a case easy, expeditious and inexpensive.'" *Venable's Constr.*, 2020 WL 2841398, at *5 (quoting *Volkswagen I*, 371 F.3d at 203, citing *Moore*, 2018 WL 514258, at *7). Because Defendants combined their analysis of the four private interest factors, it is difficult to decipher precisely what they contend falls within this catchall that has not previously been addressed in relation to the first three private interest factors. To the extent Defendants argue that Plaintiffs "would not be inconvenienced by this transfer" and that Plaintiffs' choice of venue "is not entitled to deference," Defendants misstate the law in an attempt to have the Court apply a lesser burden to their motion. *See* ECF 11 at 14, 16.

In *Volkswagen II*, the Fifth Circuit addressed the deference to be given to a plaintiff's choice of venue. The Court explained that "he who seeks the transfer must show good cause" and that "[t]his 'good cause' burden reflects the appropriate deference to which the plaintiff's choice of venue is entitled." *Volkswagen II*, 545 F.3d at 315 (quoting *Humble Oil & Refining Co. v. Bell Marine Servs., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963)). The Fifth Circuit then held that, "in the context of § 1404(a), to show good cause means that a moving party, in order to support its claim for a transfer, must satisfy the statutory requirements and clearly demonstrate that a transfer is '[f]or the convenience of the parties and witnesses, in the interest of justice.'" *Id.* (quoting 28 U.S.C. § 1404(a)). "Thus, when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected." *Id.* In sum, the deference to be given to the plaintiff's choice of venue is embodied in the "clearly more convenient" burden that

a movant must satisfy. *See, e.g.*, *Ecofactor, Inc. v. Google LLC*, No. 6-20-cv-00075-ADA, 2021 WL 1535413, at *2 (W.D. Tex. Apr. 16, 2021) ("[R]espect for the plaintiff's choice of forum is encompassed in the movant's elevated burden to 'clearly demonstrate' that the proposed transferee forum is 'clearly more convenient' than the forum in which the case was filed." (citing *In re Vistaprint Ltd.*, 628 F.3d 1342, 1344–45 (Fed. Cir. 2010))); *cf. Click*, 2020 WL 9075078, at *2 (holding that "[n]o more and no less weight is accorded to Plaintiffs' choice of forum" than embodied in the movant's burden to show "that the transferee forum is clearly more convenient"). *Volkswagen II* did not suggest that there are situations when a movant bears a lesser burden.

Defendants cite several district court cases as supporting their argument that a movant seeking transfer may face a lesser burden than that identified in *Volkswagen II*. ECF 11 at 8, 14–15. None of these cases overrule or supersede *Volkswagen II*. Almost all of the cited cases pre-date the 2008 *Volkswagen II* decision. *See Spiegelberg v. Collegiate Licensing Co.*, 402 F. Supp. 2d 786 (S.D. Tex. 2005); *Martinez v. City of Fort Worth, Texas*, No. 3:02-cv-2286-M, 2003 WL 21289654 (N.D. Tex. 2003); *Jam Strait, Inc. v. Am. Prods. Co.*, No. 02-2055, 2002 WL 31246566 (E.D. La. Oct. 4, 2002); *BJI Indus., Inc. v. Old Dominion Freight Line, Inc.*, No. 396-cv-2533-D, 1997 WL 148035 (N.D. Tex. Mar. 25, 1997); *Greiner v. Am. Motor Sales Corp.*, 645 F. Supp. 277 (E.D. Tex. 1986); *Coons v. Am. Horse Show Ass'n, Inc.*, 533 F. Supp. 398 (S.D. Tex. 1982).

Defendants cite only one case decided after *Volkswagen II*, but it too provides no support for lessening Defendants' burden. In *Chapman v. Dell, Inc.*, No. EP-09-cv-7-KC, 2009 WL 1024635 (W.D. Tex. Apr. 15, 2009), the district court did not analyze whether a lesser burden than announced in *Volkswagen II* was appropriate in certain circumstances. The *Chapman* court's citation to cases pre-dating *Volkswagen II* demonstrates that it did not consider the question or qualify the en banc holding in *Volkswagen II*. *See Chapman*, 2009 WL 1024635, at *4. As held in

*Volkswagen II*, Defendants bear the burden of showing that the Southern District of Texas is clearly more convenient than the Northern District of Texas, and they cannot lower that burden by citing to district court cases that pre-date the Fifth Circuit's en banc decision.

## II.   Public Interest Factors

The public interest factors favor keeping this case in the Northern District of Texas, Amarillo Division. Defendants raise no argument about court congestion, but this Court's previous decisions and publicly available statistics support allowing this Court to expeditiously decide the case. The remaining factors cannot support transfer because this Court has a legitimate local interest in this case and because this Court is just as capable of interpreting federal law as any other court.

### A.   The Administrative Difficulties Flowing from Court Congestion

Defendants offer no argument on court congestion because they were "unable to find publicly available statistics regarding court congestion in the Brownsville Division as compared to the Amarillo division." ECF 11 at 7. Instead, Defendants state that the Northern and Southern Districts of Texas have "roughly the same caseloads." *Id.* at 17 n.11. Therefore, at a minimum, this factor is neutral.

This Court, however, has recently (and on several occasions) confirmed that it "is not strained or backlogged" and that it is prepared to "properly and promptly address all difficulties that may arise during the course of [the] case." *Venable's Constr.*, 2020 WL 284198, at *6; *Barton v. C. R. Bard, Inc.*, No. 2:19-cv-181-Z, 2020 WL 1809702, at *5 (N.D. Tex. Apr. 9, 2020) (Kacsmaryk, J.). Moreover, statistics from the Administrative Office of the U.S. Courts confirm that the Amarillo Division is a superior venue for litigating this case in a timely manner. For example, as of the last Civil Justice Reform Act reporting period, the Amarillo Division had zero motions pending for more than six months, while the Brownsville Division had two, and the

McAllen Division had thirteen. App.017–024 (CJRA Table 8—Report of Motions Pending Over Six Months For Period Ending March 31, 2020). Similarly, the Amarillo Division had only one civil case pending for more than three years (a capital habeas case, which is *sui generis*), but the Brownsville and McAllen Divisions had eighteen and twenty-one, respectively. App.025–033 (CJRA Table 7—Report of Civil Cases Pending Over Three Years For Period Ending March 31, 2020). In light of these statistics and the Court's statements about its lack of any backlog, this factor weighs heavily against transfer.

### B.  The Local Interest in Having Localized Interests Decided at Home

When assessing this public interest factor, courts examine whether there is "a relevant factual connection between the events and the venue" and "those actually affected—directly or indirectly—by the controversies and events giving rise to a case." *Volkswagen II*, 545 F.3d at 318; *LeBlanc v. C.R. Eng., Inc.*, 961 F. Supp. 2d 819, 832–33 (N.D. Tex. 2013) (Boyle, J.). Because this case focuses on a federal policy with nationwide effects, it is not tied to any one district or division.

Defendants contend that "Plaintiffs have made no suggestion that the Northern District of Texas has any particular interest in the subject matter of this litigation," ECF 11 at 17, but Defendants' unlawful suspension of MPP certainly affects the Northern District generally and the Amarillo Division in particular. Illegal aliens allowed into the country are "free to move among states" and within states. *Texas v. United States*, 809 F.3d 134, 188 (5th Cir. 2015). Defendants cannot credibly maintain that the effects of illegal aliens crossing the border are limited to border areas. *See* ECF 31-2, Ex. B-8 (App.362–63) (showing that significant numbers of noncitizens move between Texas counties and to Texas from other States).

Thus, it is no surprise that between 10,000 and 20,000 illegal aliens resided in the City of Amarillo as of 2016. App.035 (Pew Research Center). Those are significant numbers, especially

12

for a city with fewer than 200,000 residents. App.038 (U.S. Census Bureau). Of course, other parts of the Northern District, such as the Dallas-Fort Worth-Arlington metroplex, have even more illegal aliens. App.042 (Pew Research Center). Defendants provide no reason to think that aliens released into the United States will remain at the border rather than make their way to places like Northern District of Texas and Amarillo. To the contrary, the Texas Panhandle is known to attract illegal aliens in search of work in, for example, the region's meat processing facilities.[3]

Consequently, the Northern District of Texas and the Amarillo Division have a keen interest in the surge of illegal aliens headed their direction thanks to Defendants' unlawful suspension of MPP. That "localized interest" supports having the case decided here. Of course, other areas would have similar localized interests, so this factor is, at worst, neutral. It therefore cannot support Defendants' motion.

### C.  The Familiarity of the Forum with the Law That Will Govern the Case

Defendants assert that "the Southern District of Texas, Brownsville Division, is more likely to be most familiar with the law applicable in this case because it has had multiple cases involving MPP." ECF 11 at 18. Defendants cite three cases from the Southern District of Texas allegedly "involving MPP," but they do not explain how those cases make the Southern District of Texas

---

[3] *See, e.g.*, Alexa Ura, *Meatpacking Workers in Texas Panhandle Have Little Power to Avoid the Coronavirus*, Texas Tribune, Apr. 27, 2020, https://www.texastribune.org/2020/04/27/meatpacking-texas-coronavirus-panhandle/; John Burnett, *Unskilled Jobs Draw Migrants, Changing Face of Small Towns Across America*, NPR, Nov. 4, 2019, https://www.npr.org/2019/11/04/776087010/unskilled-jobs-draw-migrants-changing-face-of-small-towns-across-america; Nick Miroff, *At a Texas Meatpacking Plant, Jobs Americans Won't Take*, Chicago Tribune, Mar. 5, 2018, https://www.chicagotribune.com/business/ct-biz-texas-meatpacking-plant-immigrant-jobs-20180305-story.html.

more qualified to address the issues presented in this case. None of those cases addressed the issue in this case—the arbitrary and capricious and unlawful suspension of the MPP.[4]

Defendants' general allegations regarding the amount of "border-related litigation" in the Southern District of Texas (and the Western District of Texas) are similarly unavailing, because Plaintiffs fail to explain how those cases make the transferee district more qualified than this Court to answer the questions presented in this case. ECF 11 at 18–19, 18 n.12.

Federal law controls this case. The judges of the Northern and Southern Districts are equally capable of interpreting and applying federal law. *See, e.g.*, *Mateos v. Montemayor*, 919 F. Supp. 2d 817, 825 (W.D. Tex. 2013) (citing *J&J Sports Prods., Inc. v. Riviera*, No. 4:10-cv-1138, 2010 WL 3447719, at *3 (S.D. Tex. Aug. 30, 2010)); *Hidden Values, Inc. v. Sandoval*, No. 3:09-cv-34-B, 2009 WL 10677477, at *6 (N.D. Tex. June 26, 2009) (Boyle, J.). This factor is neutral.

## D.   The Avoidance of Unnecessary Problems of Conflicts of Laws or in the Application of Foreign Law

Plaintiffs agree with Defendants that this case does not raise conflict-of-law concerns. ECF 11 at 17. This fourth factor is neutral.

\*   \*   \*

Defendants have not shown that the Southern District of Texas is a clearly more convenient venue than the Northern District of Texas. After misstating the burden, Defendants' motion fails

---

[4] The first case was active for a little over three months before the plaintiffs voluntarily dismissed the case as moot before the court took any action. Notice of Voluntary Dismissal Without Prejudice, ECF No. 25, *K.P.P.R v. Mayorkas*, No. 1:21-cv-7 (S.D. Tex. Apr. 27, 2021) (App.044–047). The only issue decided in the second case (before it too was voluntarily dismissed as moot) was that the plaintiffs could not be removed to Mexico because the MPP was inconsistent with the Immigration and Nationality Act.  Order at 2–3, ECF No. 39, *Turcios v. Wolf*, No. 1:20-cv-93 (S.D. Tex. Oct. 16, 2020) (App.048–055). Much of the docket in the third case is sealed, or otherwise unavailable, but what is publicly available provides no indication that the case, which was on the docket for less than four months before being dismissed, has any bearing on the present lawsuit. *Doe v. Barr*, No. 1:19-cv-213 (S.D. Tex.) (App.056–060).

14

to individually analyze each of the private and public interest factors. The arguments it does make rest on speculation and generalizations instead of specific evidence. Accordingly, the arguments should not be given any weight. Because each factor either is neutral or weighs against transfer, Plaintiffs' choice of venue should be respected. *See, e.g.*, *ESI/Emp. Sols.*, No. 4:19-cv-570-SDJ, 2019 WL 5684668, at *5 (E.D. Tex. Oct. 31, 2019) (denying transfer because "the total weight of the factors in this case only slightly favors transfer"); *Doe v. Kanakuk Ministries*, No. 3:11-cv-524-G, 2012 WL 715980, at *4 (N.D. Tex. Mar. 5, 2012) (Fish, J.) (denying transfer even though "some of the factors suggest that the case should be transferred" because "most suggest that it either should not be transferred, or that transfer would not yield any substantial private or public benefit").

## CONCLUSION

Plaintiffs respectfully request that the Court deny Defendants' motion.

Date: May 24, 2021

ERIC S. SCHMITT
Attorney General of Missouri

/s/ D. John Sauer
D. JOHN SAUER, #58720MO*
Solicitor General

JESUS A. OSETE, #69267MO*
Deputy Solicitor General

OFFICE OF THE ATTORNEY GENERAL
Supreme Court Building
207 West High Street
P.O. Box 899
Jefferson City, Missouri 65102
Tel. (573) 751-8870
Fax (573) 751-0774
John.Sauer@ago.mo.gov

*Counsel for Plaintiff State of Missouri*

*Admitted pro hac vice

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

JUDD E. STONE II
Solicitor General
Texas Bar No. 24076720

PATRICK K. SWEETEN
Deputy Attorney General for Special Litigation
Texas Bar No. 00798537

/s/ William T. Thompson
WILLIAM T. THOMPSON
Deputy Chief, Special Litigation Unit
*Attorney-in-Charge*
Texas Bar No. 24088531

RYAN D. WALTERS
Special Counsel
Texas Bar No. 24105085

JEFFREY M. WHITE
Special Counsel
Texas Bar No. 24064380

OFFICE OF THE ATTORNEY GENERAL
SPECIAL LITIGATION UNIT
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Tel.: (512) 463-2100
Fax: (512) 457-4410
patrick.sweeten@oag.texas.gov
will.thompson@oag.texas.gov
ryan.walters@oag.texas.gov
jeff.white@oag.texas.gov

*Counsel for Plaintiff State of Texas*

**CERTIFICATE OF SERVICE**

I certify that on May 24, 2021, a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) and served on all counsel of record.

/s/ *William T. Thompson*
WILLIAM T. THOMPSON

17