IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

|  |  |  |
|---|---|---|
| STATE OF TEXAS,<br>STATE OF MISSOURI,<br><br>    *Plaintiffs,*<br><br>    v.<br><br>JOSEPH R. BIDEN, JR.,<br>in his official capacity as<br>President of the United States, *et al.*,<br><br>    *Defendants.* | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. 2:21-cv-00067-Z |

**<u>DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO TRANSFER VENUE</u>**

BRIAN M. BOYNTON
Acting Assistant Attorney General

WILLIAM C. PEACHEY
Director
Office of Immigration Litigation
District Court Section

EREZ REUVENI
Assistant Director

JOSEPH A. DARROW
Trial Attorney

FRANCESCA GENOVA
Trial Attorney
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel.: (202) 305-1062
Francesca.M.Genova@usdoj.gov

## I.     INTRODUCTION

The government explained that transfer to the Southern District of Texas was warranted under both the private and public interest factors that courts apply in considering transfer motions. ECF 11. Nothing in Plaintiffs' response changes this analysis. ECF 38. Plaintiffs' arguments against transfer rely on an incorrect and heightened standard than both Fifth Circuit and Supreme Court precedent dictates, focus on the government's supposed lack of specificity in identifying the sources of proof and witnesses in this case when they have told this Court that they anticipate potential discovery that would concern the Southern District of Texas, and understate the Southern District of Texas's interest in this litigation. *See generally id.* For the reasons stated here and in the government's opening brief, the Court should transfer the case under 28 U.S.C. § 1404 to the Southern District.

## II.     ARGUMENT

### A.     The States Apply an Unduly Heightened Standard to Determine Whether Transfer is Appropriate

Plaintiffs' main argument is that their choice of forum is entitled to deference simply because they chose it: "Defendants do not get to pick the venue. Plaintiffs do." ECF 38 at 1. But they misconstrue the law governing transfer motions under 28 U.S.C. § 1404, holding the movant to a standard higher than the required "good cause" standard and fail to justify why their choice of forum is entitled to deference.

"The underlying premise of § 1404(a) is that courts should prevent plaintiffs from abusing their privilege under § 1391 by subjecting defendants to venues that are inconvenient under the terms of § 1404(a)." *In re Volkswagen of Am., Inc. (Volkswagen II)*, 545 F.3d 304, 313 (5th Cir. 2008). In actions brought against the federal government, venue is proper in the judicial district "in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions

giving rise to the claim occurred . . . , or (C) the plaintiff resides if no real property is involved." 28 U.S.C. § 1391(e). As the government explained, ECF 11 at 7-9, once the movant has shown that venue is proper in the transferee district, the movant must show "good cause" that transfer to that location "is clearly more convenient." *Volkswagen II*, 545 F.3d at 315.

Neither Texas nor Missouri argue that venue is proper here under 28 U.S.C. § 1391(e). First, neither State claims that it resides in the Northern District of Texas. *See generally* ECF 38 (not making this claim). And as the government explained, Texas has vigorously argued that it is only properly venued in Austin. ECF 11 at 14, 14 n.10; *see* ECF 38 at 6 (discussing declarations from Austin). As such, this choice of forum is entitled to less deference. Second, they do not argue the federal government "resides" in the Northern District, 28 U.S.C. § 1391(e), and admit that the locus of decisionmaking was in Washington, D.C. ECF 38 at 1 ("[T]his case is about agency action taken in Washington, D.C. . . . ."); *id.* at 3 ("It is about Defendants' arbitrary and capricious decision to suspend MPP in a memorandum issued from Washington, D.C."); *id.* ("This case turns on … an agency memorandum issued from Washington, D.C. . . . ."); *id.* at 6 (alleging that the records are kept in Washington, D.C.). As previously explained, ECF 11 at 11 n.6, the federal government is generally deemed to reside in Washington, D.C., and Plaintiffs now concede that they view Washington, D.C., as where the challenged activity occurred, not the Northern District of Texas, and do not dispute that the relevant implementation of that policy occurred on the border. Third, Plaintiffs do not argue that a "substantial part of the acts or omissions giving rise to the litigation" took place in this jurisdiction per 28 U.S.C. § 1391(e). Instead, they admit that the memorandum was issued in Washington, D.C., and now disclaim any relevance of actions taken along the border.

The States maintain that their choice of forum is entitled to weight simply because they chose it. Plaintiffs identify no limiting principle to their supposition that a border-related suit may

2

be brought anywhere where noncitizens might be present. In contrast, the government's position—rooted in express statutory text and common sense— is that a case challenging actions occurring exclusively on the border should be brought in a border jurisdiction, where a "substantial part of the acts or omissions giving rise to the litigation" took place. *See* ECF 38 at 1 ("Defendants' main argument seems to be that all immigration disputes should be decided in courts that touch the border. … No one disputes that it affects the area along the border. But it also harms communities much farther north."); *id*. (MPP's suspension of new enrollments "harms communities nationwide"); *id*. at 3 (The suit "is about a nationwide policy with nationwide effect."); *id*. at 12 (this case "is not tied to any one district or division"); *id*. (discussing generalized "effects" in Amarillo that would apply to virtually any other part of the country); *id*. at 13 ("Of course, other areas would have similar localized interests … .").

Plaintiffs presume that their choice of venue is entitled to weight. They mistakenly allege, however, that the lessened deference to choice of forum, when that forum is neither where plaintiffs reside nor where the challenged activities occurred, is no longer the standard after *Volkswagen II*. ECF 38 at 9-11. First, a plaintiff's choice of venue is only entitled to independent weight in the *forum non conveniens* context, not section 1404: "because transfer through § 1404(a) avoids dismissal[,] … the choice of forum … receives far less weight from courts in the venue transfer analysis … because the 'good cause' burden inherently takes into account 'the appropriate deference to which the plaintiff's choice of venue is entitled.'" *SITO Mobile R&D IP v. Hulu, LLC*, No. 6-20-CV-00472-ADA, 2021 WL 1166772, at *2 (W.D. Tex. Mar. 24, 2021) (quoting *Volkswagen II*, 545 F.3d at 515); *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 253 (1981) ("District courts were given more discretion to transfer under § 1404(a) than they had to dismiss on grounds of *forum non conveniens*."). "[T]he Fifth Circuit has cautioned district courts against 'giving

3

inordinate weight to the plaintiff's choice of venue.'" *Woodruff v. Three Mile Drydock & Repair, LLC*, No. CV 19-13446, 2020 WL 3577480, at *4 (E.D. La. July 1, 2020) (quoting *Volkswagen II*, 545 F.3d at 315). *Volkswagen II* itself acknowledges that the plaintiff's choice of forum is not its own factor carrying its own weight; rather, the good cause standard "reflects the appropriate deference to which the plaintiff's choice of venue is entitled." *Volkswagen II*, 545 F.3d at 315. "The plaintiff's choice of venue is not a factor in this analysis." *McKee v. Grantham*, No. 2:16-CV-0184-RSP, 2016 WL 3567038, at *1 (E.D. Tex. July 1, 2016); *see Eltayeb v. Deli Mgmt., Inc.*, No. 4:20-CV-00385, 2020 WL 6781549, at *2 (E.D. Tex. Nov. 18, 2020) (same); *Uniloc 2017 LLC v. Blackboard Inc.*, No. A-17-CV-0753-LY, 2020 WL 4578702, at *2 (W.D. Tex. May 15, 2020) (similar).

Second, "the Supreme Court has repeatedly held that [a plaintiff's] choice is entitled to less deference when the plaintiff brings its claims in a venue that is not its home forum." *Valeo, Inc. v. Fed.-Mogul Corp.*, No. EP-13-CV-115-PRM, 2013 WL 8480673, at *3 (W.D. Tex. Oct. 17, 2013) (citing *Sinochem Int'l Co. v. Malaysia Intern. Shipping Corp.*, 549 U.S. 422, 430 (2007), & *Piper Aircraft Co.*, 454 U.S. at 256). "When the plaintiff's choice is not its home forum …, the presumption in the plaintiff's favor 'applies with less force,' for the assumption that the chosen forum is appropriate is in such cases 'less reasonable.'" *Sinochem Int'l Co.*, 549 U.S. at 430 (quoting *Piper Aircraft Co.*, 454 U.S. at 255-56). "[A] plaintiff's choice of forum is accorded less deference where, as here, the chosen forum has little connection to the facts of the case and the plaintiff does not reside in the chosen forum." *Dufort v. Aqueos Corp.*, No. CV 20-345, 2020 WL 1953949, at *5 (E.D. La. Apr. 23, 2020) (citing *Cormier v. Blue Marlin Support Servs., LLC*, No. 11-3170, 2012 WL 3027099, at *4 (E.D. La. July 24, 2012) & *Ray Mart, Inc. v. Stock Bldg. Supply of Texas, LP*, 435 F. Supp. 2d 578, 594 (E.D. Tex. 2006)); *Morgan v. City of Fort Worth*,

4

No. 3:18-CV-2978-B, 2018 WL 6591664, at *2 (N.D. Tex. Dec. 14, 2018) (similar) (citing *Davis v. City of Fort Worth*, 2014 WL 2915881, at *1-2 (N.D. Tex. June 25, 2014) (similar); *see Payne v. Grayco Cable Servs., Inc.*, No. 1:11-CV-487, 2011 WL 13076902, at *9 (E.D. Tex. Dec. 8, 2011) (similar). As Defendants previously explained, this District does not include either Plaintiff State's capital, is not the States' home forum, and has little connection to MPP implementation at the border. Accordingly, this Court should apply a lesser presumption.

**B.    The States Require the Government to Forecast What Discovery the States May Seek in Analyzing the Private Interest Factors and Gloss over the Significant Locus of Activity Related to the Suspension of New Enrollments in MPP on the Texas Border as Opposed to Amarillo**

Plaintiffs claim that private interest factors are "neutral" because the government's analysis of potential discovery "is based entirely on speculation." ECF 38 at 3-5. Plaintiffs overlook, however, that the government put forth extensive evidence why private interest factors support transfer because MPP was applied exclusively on the southern border. Further, Plaintiffs fault the government for not positing what type of discovery that the Plaintiffs would seek over the government's objection, while simultaneously arguing in their preliminary-injunction motion that they may want discovery.

As the government explained, ECF 11 at 11-16, all the private factors support transfer because, if Plaintiffs seek discovery, or Defendants seek jurisdictional discovery or discovery concerning the States' alleged harm: (1) the sources of proof will be on the southern border, and primarily within the Southern District; (2) any witnesses would most likely be from the border region; (3) travel expenses for witnesses would be less; and, (4) other practical problems could be addressed more easily, more expeditiously, and less expensively. *See Volkswagen II*, 545 F.3d at 315.

5

Plaintiffs seek to both preserve their ability to seek expedited discovery, ECF 35 at 1-2, and fault the government's inability to specifically forecast what discovery Plaintiffs might seek. ECF 38 at 4-10. While the government maintains that merits discovery is unwarranted, Plaintiffs contend that this Administrative Procedure Act case cannot be decided solely on the administrative record, and that discovery will be necessary if the government disagrees with Plaintiffs' framing of their case: "it is possible that Defendants' response to the Motion for Preliminary Injunction may necessitate expedited discovery" if "Defendants … dispute the basic factual contentions regarding how Defendants are implementing the January 20 Memorandum and the effect that implementation is having on the number of illegal aliens in the United States" or "Defendants submit an administrative record with unexpected material or attempt to defend the January 20 Memorandum with material outside the administrative record." ECF 35 at 1-2. Plaintiffs' position in similar cases indicates they will make the same argument here. *See, e.g.*, Scheduling Order, *Texas v. Biden*, Case No. 6:21-cv-3, ECF 44 (S.D. Tex. Jan. 30, 2021) (ordering limited discovery).

As the government explained, ECF 11, evidence and testimony regarding "how Defendants are implementing the January 20 Memorandum and the effect that implementation is having on the number of illegal aliens in the United States," ECF 35 at 1-2, are more likely to exist on the southern border than in Amarillo. Since its inception in January 2019, MPP has been applied exclusively at the southern border, with the largest percentage of apprehensions and inspections of noncitizens and enrollments in the Rio Grande Valley Sector of U.S. Border Patrol, in the Southern District of Texas. Plaintiffs do not dispute that no MPP enrollments have occurred in the Northern District of Texas generally, or in the Amarillo Division specifically, and Plaintiffs admit that "no one disputes that [MPP's suspension of new enrollments] affects the area along the border." ECF 38 at 1. Nonetheless, Plaintiffs cite outdated Pew Research Center data from 2016, estimating

6

"between 10,000 and 20,000 illegal aliens resided in the City of Amarillo," and reference news articles providing anecdotal accounts of migrants in the Texas Panhandle, unrelated to MPP. ECF 38 at 12-13. By contrast, Plaintiffs do not illustrate the effect of MPP's suspension of new enrollments in the Amarillo Division. When Plaintiffs are the ones who are threatening discovery, they cannot argue that the government has not met its burden of specificity in arguing that discovery would likely be on the border, where MPP *was actually implemented*.

Plaintiffs also fault the government for failing to foresee the contents of their preliminary injunction motion that post-dated the venue transfer motion, arguing that "Plaintiffs provided declarations from state employees in Austin, Texas, and Jefferson City, Missouri, *see, e.g.*, ECF 31-1, Ex. A; ECF 31-2, Exs. B, D-I, but Defendants do not argue for transfer to Austin or Missouri." ECF 38 at 6. Notwithstanding, the government did recognize that Plaintiffs' stance that venue was proper in the Northern District of Texas contradicted Texas's arguments elsewhere that Austin is its only proper venue. ECF 11 at 14, 14 n.10. The government also noted that Missouri is inconvenienced by suit in any Texas district. *Id.* at 16. Further, preliminary-injunction evidence, filed after the transfer motion, provides more evidence that the Northern District of Texas is a much less convenient venue. Notably, no declarations in support of the preliminary injunction are from the Northern District of Texas, the news articles provided discuss events in the Southern District of Texas,; and Plaintiffs point to no evidence that discusses the Amarillo Division. *See* ECF 31-1 at App.046 (discussing Donna, Texas); App.081-82 (discussing the Rio Grande Valley and Mission); App.112-16 (discussing trafficking in South Texas); *id.* Ex. A; ECF 31-2, Exs. B, D-I.

Because the private factors warrant transfer and nothing that Plaintiffs have claimed changes that analysis, this Court should transfer this case.

7

C. **Plaintiffs Understate the Southern District of Texas's Familiarity with Border Litigation and Overstate the Amarillo Division's Non-Particularized Interest in Immigration in Analyzing the Public Interest Factors**

In arguing that the public interest factors are neutral or weigh slightly in favor of the Northern District of Texas, Plaintiffs understate the Southern District of Texas's familiarity with litigation concerning the border and overstate the Amarillo Division's generalized interest in the suspension of new enrollments in MPP. As the government explained, ECF 11 at 17-19, and Plaintiffs admit, ECF 38 at 13, this Court has no particularized interest in this litigation. By contrast, the suspension of new enrollments in MPP provides a localized interest in the Southern District of Texas, which has substantial experience with MPP and other border-related issues. ECF 11 at 18-19. Public interest factors, therefore, warrant transfer.

There are a number of "public interest factors" that this court can consider. *Volkswagen II*, 545 F.3d at 315. Plaintiffs incorrectly claim that court congestion, local-interest, and familiarity factors all weigh against transfer. ECF 38 at 11-14. As the government explained, the court-congestion factor is neutral and the localized-interest and familiarity factors weigh in favor of transfer. ECF 11 at 17-19.

First, Plaintiffs allege that the court-congestion factor weighs "heavily against transfer" based on stale data from March 2020 showing that the Amarillo Division had no motions pending for six months, in contrast to the two in the Brownsville Division, and 18 civil cases pending in the Brownsville Division for more than three years, in contrast to one in the Amarillo Division. ECF 38 at 11-12. This Court should not rely on this outdated data, from before the pandemic. ECF 38 at App.017-024. Further, because the Brownsville Division has two judges, the existence of two pending motions and 18 pending civil cases over three years old is not significantly different than the status in Amarillo. *See* Brownsville Division, U.S. District Court for the Southern District

8

of Texas, https://www.txs.uscourts.gov/offices/brownsville-division (last visited May 26, 2021). Moreover, as this Court is well aware, the number of pending motions is more dispositive of a court's congestion than whether cases may be pending; without pending dispositive motions, the fact that a case may be in years-long discovery or pending appeal does not greatly affect a district court's docket. Therefore, this factor is neutral. ECF 38 at 11.

Second, Plaintiffs admit that there is no localized interest here in the suspension of new enrollments in MPP: "[b]ecause this case focuses on a federal policy with nationwide effects, it is not tied to any one district or division" and "other areas would have similar localized interests." ECF 38 at 12. Their reference to outdated data that there were "between 10,000 and 20,000 illegal aliens" in Amarillo in 2016, does not address any effect of the suspension of new enrollments in MPP, and only references in a footnote how immigrants and refugees work in the meat processing facilities. *Id.* at 12, 13 n.3. Plaintiffs' paucity of data cannot outweigh the extensive evidence that MPP processing had its locus in the Southern District of Texas, which Plaintiffs admit. ECF 11 at 3-7; ECF 38 at 1 ("No one disputes that it affects the area along the border."). Indeed, Plaintiffs do not explain why they failed to file in the Southern District of Texas, where Texas has previously challenged immigration policies. ECF 12 at App. 037.

Third, Plaintiffs claim that, because "[f]ederal law controls this case," the Southern District of Texas's familiarity with border litigation does not weigh in favor of transfer. ECF 38 at 13-14. In doing so, Plaintiffs underplay the amount of prior border-related litigation in the Southern District of Texas. "Although all federal courts are presumptively competent to decide issues of federal law," courts also may consider "the courts' respective knowledge of the parties and facts as well as any considerable experience the transferee court may have in a particular area of the law." *Mandan, Hidatsa & Arikara Nation v. United States Dep't of the Interior*, 358 F. Supp. 3d

9

1, 9 (D.D.C. 2019). Plaintiffs admit, as they must, that the Southern District of Texas has ruled on MPP before, ECF 38 at 14 n.4, indicating that Court has pre-existing knowledge of the actors and facts involved in the implementation of MPP and the governing body of law. *See id*. Plaintiffs nonetheless claim that this case does not demonstrate familiarity with MPP because it did not address "the arbitrary and capricious and unlawful suspension of the MPP." *Id*. at 14. Reading the familiarity factor so narrowly, however, implies that a district would not have familiarity with that law unless the precise suit had been filed there previously. Because the Southern District of Texas is more familiar with the facts and law involved in MPP and other border-related litigation, this factor weighs in favor of transfer.

Because the government has demonstrated that the public interest factors support transfer, this Court should transfer the case to the Southern District of Texas, Brownsville Division.

### III.   CONCLUSION

For the foregoing reasons and those that the government described in its motion to transfer, ECF 11, this Court should transfer this case to the Southern District of Texas.

Date: May 28, 2021                                   Respectfully submitted,

                                                      BRIAN M. BOYNTON
*Acting Assistant Attorney General*

WILLIAM C. PEACHEY
*Director*
Office of Immigration Litigation
District Court Section

EREZ REUVENI
*Assistant Director*

JOSEPH A. DARROW
*Trial Attorney*

*/s/ Francesca Genova*
FRANCESCA GENOVA
*Trial Attorney*
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel.: (202) 305-1062
Francesca.M.Genova@usdoj.gov

11

## CERTIFICATE OF SERVICE

I hereby certify that on May 28, 2021, I electronically filed the foregoing document with the Clerk of the Court for the United States District Court for the Northern District of Texas by using the CM/ECF system. Counsel in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

                                          */s/ Francesca Genova*
                                          Francesca Genova
                                          Trial Attorney
                                          United States Department of Justice
                                          Civil Division