IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| THE STATE OF TEXAS, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | 2:21-CV-067-Z |
| | § | |
| JOSEPH R. BIDEN, JR. *et al.*, | § | |
| | § | |
| Defendants. | § | |

**ORDER**

Before the Court is Defendants' Motion to Transfer Venue (ECF No. 11). After considering the Motion, related pleadings, and the applicable law, the Court **DENIES** the Motion.[1]

**BACKGROUND**

This is a civil action originally filed in this Court by Plaintiffs Texas and Missouri. Plaintiffs allege that Defendants'[2] suspension of the Migrant Protection Protocols ("MPP") violated the federal government's Agreement with Texas, the Administrative Procedure Act, 8 U.S.C. § 1225, and the Constitution. Defendants move to transfer the suit to Southern District of Texas in either the Brownsville or McAllen Divisions under 28 U.S.C. § 1404(a).

**LEGAL STANDARDS**

Under 28 U.S.C. § 1404(a), courts have broad discretion to transfer "any civil action to any other district or division where it might have been brought" initially when it is "[f]or the convenience of parties and witnesses, in the interest of justice. 28 U.S.C. § 1404(a); *In re*

---

[1] Because Defendants' Motion to Stay (ECF No. 33) was predicated on the pendency of the Motion to Transfer, the resolution of the transfer motion renders the stay motion **MOOT**. Accordingly, the Motion to Stay is **DENIED**.
[2] Defendants are the United States of America; President Biden in his official capacity; the Department of Homeland Security ("DHS") and Acting DHS Secretary Mayorkas in his official capacity; the United States Customs and Border Protection ("CBP") and Acting Commissioner of CBP Troy Miller in his official capacity; the United States Immigration and Customs Enforcement "ICE" and Acting ICE Director Tae Johnson; and the United States Citizenship and Immigration Services ("CIS") and Acting CIS Director Tracy Renaud in her official capacity.

*Volkswagen of Am., Inc.*, 545 F.3d 304, 314 (5th Cir. 2008) ("*Volkswagen II*") (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 (1981) (noting the "relaxed standards for transfer")).

The moving party bears the burden to show that there is "good cause" for transfer and must demonstrate "that the transferee venue is clearly more convenient," and "in the interest of justice." *Volkswagen II*, 545 F.3d at 315. In transfer cases, courts must weigh private and public interest factors. *Id.* The private interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*") (citing *Piper Aircraft*, 454 U.S. at 241 n.6). The public interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id.*

While these factors "are not necessarily exhaustive or exclusive," the Fifth Circuit notes that "none . . . can be said to be of dispositive weight." *Volkswagen II*, 545 F.3d at 315 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947); *Action Indus., Inc. v. U.S. Fid. & Guar. Corp.*, 358 F.3d 337, 340 (5th Cir. 2004)). "Public and private factors aside, a court must also independently consider how much weight to assign a plaintiff's choice of forum." *Seramur v. Fed. Ins. Co.*, 2019 WL 3253369, at *2 (N.D. Tex. June 19, 2019) (citing *Davis v. City of Fort Worth*, 2014 WL 2915881, at *2 (N.D. Tex. June 25, 2014).[3] Therefore, "within the district court's sound discretion,

---

[3] The parties dispute exactly how much weight should be given to Plaintiffs' choice of forum. But the parties *do agree* that the movant's burden is to show "good cause" that transfer "is clearly more convenient." ECF No. 43 at 3; ECF No. 38 at 15. The Court does not need to decide which standard to apply because, even under Defendants' less-deferential-to-plaintiff standard, Defendants have not shown another district "is clearly more convenient."

exercised in light of the particular circumstances of the case . . . the court must balance the two categories of interest — private and public — to resolve whether the movant has carried his burden." *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Lauren Engineers & Constructors, Inc.*, No. 3:19-CV-1742-S, 2019 WL 6071073, at *1 (N.D. Tex. Nov. 14, 2019) (internal marks omitted).

## ANALYSIS

The parties do not dispute, and the Court concludes, Plaintiffs could have originally brought this action in the Southern District of Texas.[4] Before turning to the balance of the private and public factors, the Court first notes that Defendants misunderstand the nature of this case.

Defendants focus on individual enrollments into MPP, which had previously taken place along the border. But that is not relevant to this case. This case does not turn on facts related to any particular immigration court hearing that occured along the border. Nor does the case turn on the testimony of agents and officers involved with processing aliens under MPP.

Rather, this is case challenging whether agency action issued from Washington, D.C. complied with the APA, the INA, or the Constitution. As Plaintiffs note, this case "is about a nationwide policy with nationwide effect." Whether the agency action challenged in this case is

---

[4] In their Reply, Defendants state that "[n]either Texas nor Missouri argue that venue is proper here under 28 U.S.C. § 1391(e)." ECF No. 43 at 3. To the extent Defendants are arguing that venue is improper in this district, there are three preliminary problems. First, Plaintiffs are "not required to include allegations showing the venue to be proper." 14D CHARLES ALLEN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3826 (4th ed. 2021). Second, Defendants have neither brought a motion nor cited caselaw under the Rule 12(b)(3) or Section 1406 standards governing dismissal or transfer of cases brought in an improper venue. By failing to do so, Defendants have not put Plaintiffs on-notice that Defendants are alleging this Court to be an improper venue. *Id.* Third, by filing the Motion to Transfer under Section 1404, Defendants have effectively conceded that venue is proper in this district. "[Section] 1404(a) operates on the premises that the plaintiff has properly exercised his venue privilege," *Van Dusen v. Barrack*, 376 U.S. 612, 634 (1964). By filing a motion to transfer venue based upon convenience and failing to assert that venue was improper in that motion, Defendants have waived any argument that venue is improper.

lawful will not turn on facts and testimony found on the border. Rather, this case will turn on the administrative record, *see* ECF No. 45, and the application of legal standards to agency action.

### A. Private Factors for the Convenience of the Parties

#### *1. Relative Ease of Access to Sources of Proof*

The first private interest factor concerns the relative ease of access to sources of proof. *Volkswagen I*, 371 F.3d at 203. Defendants argue the Southern District of Texas is more convenient by relying on the fact that immigration court hearings for MPP have taken place by the border. But, as stated above, this argument reflects a misunderstanding of the case. Defendants have not shown how "MPP processing numbers, hearings, and border apprehensions," ECF No 11 at 10 n. 7, are relevant to the legality of the agency action challenged here. Further, any data related to MPP can be found in the records of CBP STAT Division in Washington, D.C. Defendants do not explain how such evidence would be more accessible in the Brownsville or McAllen Divisions than in the Amarillo Division.

Moreover, Defendants have failed to identify any *specific* evidence that would be more accessible in the Southern District or inaccessible in Amarillo. Therefore, Defendant does not persuade the Court that this factor weighs in favor of transfer. The Court finds this factor is neutral. *See Bedrock Logistics, LLC v. Braintree Labs., Inc.*, 2017 WL 1547013, at *2 (N.D. Tex. Apr. 28, 2017) (finding this factor to be neutral because "neither party describes specific documents that will be more accessible if the case is tried in Texas instead of Massachusetts"); *see also SEC v. Blackburn*, 2015 WL 11120724, at *2 (E.D. Tex. June 30, 2015) (finding this factor to be neutral because there was "little dispute that most of the relevant documents in this action are available or are capable of being produced electronically").

4

### 2. *Availability of Compulsory Process to Secure the Attendance of Witnesses*

The second private interest factor favors transfer when a transferee district has absolute subpoena power over a greater number of non-party witnesses. *Venable's Constr. Inc. v. ONEOK Arbuckle II Pipeline, LLC*, 2020 WL 2841398, at *4 (N.D. Tex. June 1, 2020). "A subpoena may command a person to attend a trial, hearing, or deposition" if it is "within 100 miles of where the person resides, is employed, or regularly transacts business in person . . . ." *Id.* (quoting FED. R. CIV. P. 45(c)(1)(a)). However, the party seeking transfer must specifically identify the key witnesses and outline the substance of their testimony. *Id.* Defendants fail to specifically identify any unwilling, non-party witnesses in the transferee district or the substance of their testimony. As a result, this factor is neutral.

### 3. *The Cost of Attendance for Willing Witnesses*

The third private interest factor is the cost of attendance for willing witnesses. This factor "primarily concerns the convenience of nonparty witnesses." *See e.g.*, *USPG Portfolio Two, LLC v. John Hancock Real Estate Fin., Inc.*, 2011 WL 1103372, at *4 (N.D. Tex. Mar. 25, 2011) (declining to consider parties' employees under third factor). "A party seeking a transfer must identify the 'key witnesses and the general content of their testimony." *Davis*, 2014 WL 2915881, at *3 (quoting *Sargent v. SunTrust Bank, N.A.*, 2004 WL 1630081, at *3 (N.D. Tex. July 20, 2004)).

Here, Defendants speculate about potential interviews or testimony from agents or officers involved in processing or apprehending inadmissible aliens near the border.[5] Although Defendant is unable to specify individual witnesses who would have to travel, any potential witness would be an employee of one of the various agencies being sued. Accordingly, the Court declines to

---

[5] The Court understands Defendants' argument that because Defendants do not seek discovery, they are forced to speculate in part on who possible witnesses might be. ECF No. 43 at 6. Accordingly, it is difficult for Defendants to be specific in identifying witnesses who would testify.

5

calculate the burden on party witnesses. *See Sivertson v. Clinton*, 2011 WL 4100958, at *6 (N.D. Tex. 2011) ("[T]he only persons whom Sivertson mentions specifically in her complaint . . . are employees of [Secretary Hillary Clinton], so their convenience should not be considered."). Furthermore, "it is conceivable that this case can be decided on motions, on a paper record." *USPG Portfolio*, 2011 WL 1103372, at *4. The Court holds that this factor is neutral. *Id.*

   4. *All other Practical Problems for an Easy, Expeditious, and Inexpensive Trial*

The fourth private interest factor examines the practical problems that make trial easy, expeditious, and inexpensive. Defendants combined their analysis of the four private interest factors and the Court is unable to locate any argument that falls under this factor. Accordingly, the Court deems this factor to be neutral.

**B. Public Factors in the Interest of Justice**

   1. *Administrative Difficulties Flowing from Court Congestion*

Defendants offer no argument on court congestion because they were "unable to find publicly available statistics regarding court congestion in the Brownsville Division as compared to the Amarillo Division." ECF No. 11 at 17. Instead, Defendants state that the Northern and Southern Districts of Texas have "roughly the same caseloads." *Id.* at n.11. Therefore, this factor should be considered neutral.

First, "this factor does not apply to *district* congestion—and certainly not to a district as large and diverse as the Northern District of Texas." *Venable's Constr.*, 2020 WL 2841398, at *6 As the language clearly states, this factor applies to *court* congestion. *Volkswagen I*, 371 F.3d at 203. This Court has recently confirmed that it "is not strained or backlogged" and that it is prepared to "properly and promptly address all difficulties that may arise during the course of this case." *Id.*

6

Second, "courts commonly consider the Federal Judicial caseload statistics" to determine "whether one court's docket is more congested than another's." *USPG Portfolio*, 2011 WL 1103372, at *5. Since the parties filed their instant responses and replies, the Administrative Office of the United States Courts released its most recent caseload report, which is current as of September 2020.

That report shows that the Amarillo Division had zero motions pending for more than six months, while the Brownsville Division had two, and the McAllen Division had eleven. ADMINISTRATIVE OFFICE OF THE UNITED STATES COURTS, CJRA REPORT, Table 8 (2021).[6] Similarly, the Amarillo Division had only one case pending for more than three years (a capital case, which is *sui generis*), while the Brownsville and McAllen Divisions had nineteen each. *Id.* Table 7. Thus, this factor slightly weighs against transfer.

### 2. Local Interest in Having Localized Interests Decided at Home

The second public interest factor is "the local interest in having localized interests decided at home." *Volkswagen I*, 371 F.3d at 203. The Court therefore considers "those actually affected — directly and indirectly — by the controversies and events giving rise to a case." *Volkswagen II*, 545 F.3d at 318.

Defendants contend that "Plaintiffs have made no suggestion that the Northern District of Texas has any particular interest in the subject matter of this litigation." ECF No. 11 at 17. But Defendants' allegedly unlawful suspension of MPP affects the Northern District in general and the Amarillo Division in particular. Illegal aliens allowed into the country are "free to move among states" and within states. *Texas v. United States*, 809 F.3d 134, 188 (5th Cir. 2015). Defendants cannot show that the effects of illegal aliens crossing the border are limited to areas along the

---

[6] The Court can also confirm that the next Administrative Office CJRA Report will show that, *once again*, the Amarillo Division had zero pending motions over six months as of March 31, 2021.

border. Thus, while border divisions are certainly immediately affected by aliens crossing the border, other divisions certainly are just as affected by immigration.

Defendants seize on Plaintiffs' assertion that "[b]ecause this case focuses on a federal policy with nationwide effects, it is not tied to any one district or division" and "other areas would have similar localized interests." ECF No. 43 at 10 (quoting ECF No. 38 at 12). But an admission that other areas also have an interest in the correct application of federal immigration and administrative law is *not* the same thing as admitting that Amarillo has *no* localized interest of its own. This is not an Article III standing question concerning generalized grievances. It is a question of whether a local interest is involved in the outcome of this litigation. The Court finds Amarillo has a local interest just as the McAllen and Brownsville also have a local interest in the outcome of this litigation. This factor is therefore neutral.

### 3. *Familiarity of the Forum with the Law that will Govern the Case*

Defendants assert that "the Southern District of Texas, Brownsville Division, is more likely to be most familiar with the law applicable in this case because it has had multiple cases involving MPP." ECF 11 at 18. Defendants cite three cases from the Southern District of Texas "involving MPP," but they do not explain how those cases are relevant to the claims before this Court. As Plaintiffs note:

> The first case was active for a little over three months before the plaintiffs voluntarily dismissed the case as moot before the court took any action. The only issue decided in the second case (before it too was voluntarily dismissed as moot) was that the plaintiffs could not be removed to Mexico because the MPP was inconsistent with the Immigration and Nationality Act. Much of the docket in the third case is sealed, or otherwise unavailable, but what is publicly available provides no indication that the case, which was on the docket for less than four months before being dismissed, has any bearing on the present lawsuit.

ECF No. 38 at 18 n.4 (internal citations omitted).

8

The question in this case is whether agency action, which took place in Washington, D.C., violated the federal government's Agreement with Texas, the Administrative Procedure Act, 8 U.S.C. § 1225, or the Constitution. These claims require the application of federal law, which the judges of the Northern and Southern Districts are equally capable of interpreting and applying. *Hidden Values, Inc. v. Sandoval*, 2009 WL 10677477, at *6 (N.D. Tex. June 26, 2009). The cases cited by Defendants do not supply the Southern District with an expertise in applying administrative or constitutional law that the Northern District lacks. The Court finds this factor to be neutral.

### 4. Avoidance of Unnecessary Problems of Conflicts of Law

Plaintiffs agree with Defendants that this case does not raise conflict-of-law concerns. This fourth factor is neutral.

#### CONCLUSION

The Court considers the private and public factors together and does not assign dispositive weight to any one factor. *See Volkswagen I*, 371 F.3d at 203. The Court found six factors to be neutral, one factor to weigh slightly against transfer, and one factor to not apply. Considering the factors holistically, the Court concludes that the case should be not be transferred to the Southern District of Texas. In sum, Defendants' evidence, taken as a whole, does not establish that the convenience of the parties and witnesses will be enhanced by transferring this case. Accordingly, the Court **DENIES** Defendants' Motion to Transfer Venue (ECF No. 11). Defendants' Motion to Stay (ECF No. 33) is **DENIED** as **MOOT**.

**SO ORDERED**.

June **3**, 2021.

MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE