# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# AMARILLO DIVISION

| | |
|---|---|
| THE STATE OF TEXAS and THE STATE OF MISSOURI, <br><br> *Plaintiffs*, <br><br> v. <br><br> JOSEPH R. BIDEN, JR., in his official capacity as President of the United States of America, *et al.*, <br><br> *Defendants*. | Case No. 2:21-cv-00067-Z |

## Plaintiffs' First Amended Complaint

# EXHIBIT C

Secretary
U.S. Department of Homeland Security
Washington, DC 20528

# Homeland Security

June 1, 2021

MEMORANDUM FOR:   Troy A. Miller
Acting Commissioner
U.S. Customs and Border Protection

Tae D. Johnson
Acting Director
U.S. Immigration and Customs Enforcement

Tracy L. Renaud
Acting Director
U.S. Citizenship and Immigration Services

FROM:   Alejandro N. Mayorkas
Secretary

SUBJECT:   **Termination of the Migrant Protection Protocols Program**

On January 25, 2019, Secretary of Homeland Security Kirstjen Nielsen issued a memorandum entitled "Policy Guidance for Implementation of the Migrant Protection Protocols." Over the course of the Migrant Protection Protocols (MPP) program, the Department of Homeland Security and its components issued further policy guidance relating to its implementation. In total, approximately 68,000 individuals were returned to Mexico following their enrollment in MPP.[1]

On January 20, 2021, then-Acting Secretary David Pekoske issued a memorandum suspending new enrollments in MPP, effective the following day.[2] On February 2, 2021, President Biden issued Executive Order 14010, 86 Fed. Reg. 8267, *Creating a Comprehensive Regional Framework To Address the Causes of Migration, To Manage Migration Throughout North and Central America, and To Provide Safe and Orderly Processing of Asylum Seekers at the United States Border.* In this Executive Order, President Biden directed me, in coordination with the Secretary of State, the Attorney General, and the Director of the Centers for Disease Control and Prevention, to "promptly

---

[1] *See* "Migrant Protection Protocols Metrics and Measures," Jan. 21, 2021, available at https://www.dhs.gov/publication/metrics-and-measures.

[2] Memorandum from David Pekoske, Acting Sec'y of Homeland Sec., *Suspension of Enrollment in the Migrant Protection Protocols Program* (Jan. 20, 2021).

Subject: Termination of the Migrant Protection Protocols Program
Page 2

consider a phased strategy for the safe and orderly entry into the United States, consistent with public health and safety and capacity constraints, of those individuals who have been subjected to MPP for further processing of their asylum claims," and "to promptly review and determine whether to terminate or modify the program known as the Migrant Protection Protocols."[3]

On February 11, the Department announced that it would begin the first phase of a program to restore safe and orderly processing at the Southwest Border of certain individuals enrolled in MPP whose immigration proceedings remained pending before the Department of Justice's Executive Office for Immigration Review (EOIR).[4]  According to Department of State data, between February 19 and May 25, 2021, through this program's first phase approximately 11,200 individuals were processed into the United States.  The Department is continuing to work with interagency partners to carry out this phased effort and to consider expansion to additional populations enrolled in MPP.

Having now completed the further review undertaken pursuant to Executive Order 14010 to determine whether to terminate or modify MPP, and for the reasons outlined below, I am by this memorandum terminating the MPP program.  I direct DHS personnel to take all appropriate actions to terminate MPP, including taking all steps necessary to rescind implementing guidance and other directives or policy guidance issued to implement the program.

**Background**

Section 235(b)(2)(C) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1225(b)(2)(C), authorizes DHS to return to Mexico or Canada certain noncitizens who are arriving on land from those contiguous countries pending their removal proceedings before an immigration judge under Section 240 of the INA, 8 U.S.C. § 1229a.  Historically, DHS and the legacy Immigration and Naturalization Service primarily used this authority on an ad-hoc basis to return certain Mexican and Canadian nationals who were arriving at land border ports of entry, though the provision was occasionally used for third country nationals under certain circumstances provided they did not have a fear of persecution or torture related to return to Canada or Mexico.

On December 20, 2018, the Department announced the initiation of a novel program, the Migrant Protection Protocols, to implement the contiguous-territory-return authority under Section 235(b)(2)(C) on a wide-scale basis along the Southwest Border.  On January 25, 2019, DHS issued policy guidance for implementing MPP, which was subsequently augmented a few days later by guidance from U.S. Customs and Border Protection, U.S. Immigration and Customs Enforcement, and U.S. Citizenship and Immigration Services.  During the course of MPP, DHS and its components continued to update and supplement the policy, including through the "Supplemental Policy Guidance for Implementation of the Migrant Protection Protocols" issued on December 7,

---

[3] Executive Order 14010, *Creating a Comprehensive Regional Framework To Address the Causes of Migration, To Manage Migration Throughout North and Central America, and To Provide Safe and Orderly Processing of Asylum Seekers at the United States Border*, 86 Fed. Reg. 8267 (Feb. 2, 2021), available at https://www.federalregister.gov/documents/2021/02/05/2021-02561/creating-a-comprehensive-regional-framework-to-address-the-causes-of-migration-to-manage-migration.

[4] U.S. Department of Homeland Security, *DHS Announces Process to Address Individuals in Mexico with Active MPP Cases*, Feb. 11, 2021, available at https://www.dhs.gov/news/2021/02/11/dhs-announces-process-address-individuals-mexico-active-mpp-cases.

Subject: Termination of the Migrant Protection Protocols Program
Page 3

2020 by the Senior Official Performing the Duties of the Under Secretary for Strategy, Policy, and Plans.

Under MPP, it was DHS policy that certain non-Mexican applicants for admission who arrived on land at the Southwest Border could be returned to Mexico to await their removal proceedings under INA Section 240. To attend removal proceedings, which were prioritized by EOIR on the non-detained docket, DHS facilitated program participants' entry into and exit from the United States. Due to public health measures necessitated by the ongoing COVID-19 pandemic, however, DHS and EOIR stopped being able to facilitate and conduct immigration court hearings for individuals enrolled in MPP beginning in March 2020.[5]

Following the Department's suspension of new enrollments in MPP, and in accordance with the President's direction in Executive Order 14010, DHS has worked with interagency partners and facilitating organizations to implement a phased process for the safe and orderly entry into the United States of certain individuals who had been enrolled in MPP.

**Determination**

In conducting my review of MPP, I have carefully evaluated the program's implementation guidance and programmatic elements; prior DHS assessments of the program, including a top-down review conducted in 2019 by senior leaders across the Department, and the effectiveness of related efforts by DHS to address identified challenges; the personnel and resource investments required of DHS to implement the program; and MPP's performance against the anticipated benefits and goals articulated at the outset of the program and over the course of the program. I have additionally considered the Department's experience to date carrying out its phased strategy for the safe and orderly entry into the United States of certain individuals enrolled in MPP. In weighing whether to terminate or modify the program, I considered whether and to what extent MPP is consistent with the Administration's broader strategy and policy objectives for creating a comprehensive regional framework to address the root causes of migration, managing migration throughout North and Central America, providing alternative protection solutions in the region, enhancing lawful pathways for migration to the United States, and—importantly—processing asylum seekers at the United States border in a safe and orderly manner consistent with the Nation's highest values.

As an initial matter, my review confirmed that MPP had mixed effectiveness in achieving several of its central goals and that the program experienced significant challenges.

- I have determined that MPP does not adequately or sustainably enhance border management in such a way as to justify the program's extensive operational burdens and other shortfalls. Over the course of the program, border encounters increased during certain periods and decreased during others. Moreover, in making my assessment, I share the belief that we can only manage migration in an effective, responsible, and durable manner if we approach the issue comprehensively, looking well beyond our own borders.

---

[5] *See* "Joint DHS/EOIR Statement on MPP Rescheduling," Mar. 23, 2020, available at https://www.dhs.gov/news/2020/03/23/joint-statement-mpp-rescheduling.

- Based on Department policy documents, DHS originally intended the program to more quickly adjudicate legitimate asylum claims and clear asylum backlogs. It is certainly true that some removal proceedings conducted pursuant to MPP were completed more expeditiously than is typical for non-detained cases, but this came with certain significant drawbacks that are cause for concern. The focus on speed was not always matched with sufficient efforts to ensure that conditions in Mexico enabled migrants to attend their immigration proceedings. In particular, the high percentage of cases completed through the entry of *in absentia* removal orders (approximately 44 percent, based on DHS data) raises questions for me about the design and operation of the program, whether the process provided enrollees an adequate opportunity to appear for proceedings to present their claims for relief, and whether conditions faced by some MPP enrollees in Mexico, including the lack of stable access to housing, income, and safety, resulted in the abandonment of potentially meritorious protection claims. I am also mindful of the fact that, rather than helping to clear asylum backlogs, over the course of the program backlogs increased before both the USCIS Asylum Offices and EOIR.

- MPP was also intended to reduce burdens on border security personnel and resources, but over time the program imposed additional responsibilities that detracted from the Department's critically important mission sets. The Department devoted resources and personnel to building, managing, staffing, and securing specialized immigration hearing facilities to support EOIR; facilitating the parole of individuals into and out of the United States multiple times in order to attend immigration court hearings; and providing transportation to and from ports of entry in certain locations related to such hearings. Additionally, as more than one-quarter of individuals enrolled in MPP were subsequently re-encountered attempting to enter the United States between ports of entry, substantial border security resources were still devoted to these encounters.

A number of the challenges faced by MPP have been compounded by the COVID-19 pandemic. As immigration courts designated to hear MPP cases were closed for public health reasons between March 2020 and April 2021, DHS spent millions of dollars each month to maintain facilities incapable of serving their intended purpose. Throughout this time, of course, tens of thousands of MPP enrollees were living with uncertainty in Mexico as court hearings were postponed indefinitely. As a result, any benefits the program may have offered are now far outweighed by the challenges, risks, and costs that it presents.

In deciding whether to maintain, modify, or terminate MPP, I have reflected on my own deeply held belief, which is shared throughout this Administration, that the United States is both a nation of laws and a nation of immigrants, committed to increasing access to justice and offering protection to people fleeing persecution and torture through an asylum system that reaches decisions in a fair and timely manner. To that end, the Department is currently considering ways to implement long-needed reforms to our asylum system that are designed to shorten the amount of time it takes for migrants, including those seeking asylum, to have their cases adjudicated, while still ensuring adequate procedural safeguards and increasing access to counsel. One such initiative that DHS recently announced together with the Department of Justice is the creation of a Dedicated Docket to

Subject: Termination of the Migrant Protection Protocols Program
Page 5

process the cases of certain families arriving between ports of entry at the Southwest Border.[6] This process, which will take place in ten cities that have well-established communities of legal service providers, will aim to complete removal proceedings within 300 days—a marked improvement over the current case completion rate for non-detained cases.  To ensure that fairness is not compromised, noncitizens placed on the Dedicated Docket will receive access to legal orientation and other supports, including potential referrals for pro bono legal services. By enrolling individuals placed on the Dedicated Docket in Alternatives to Detention programs, this initiative is designed to promote compliance and increase appearances throughout proceedings.  I believe these reforms will improve border management and reduce migration surges more effectively and more sustainably than MPP, while better ensuring procedural safeguards and enhancing migrants' access to counsel.  We will closely monitor the outcomes of these reforms, and make adjustments, as needed, to ensure they deliver justice as intended: fairly and expeditiously.

In arriving at my decision to now terminate MPP, I also considered various alternatives, including maintaining the status quo or resuming new enrollments in the program.  For the reasons articulated in this memorandum, however, preserving MPP in this manner would not be consistent with this Administration's vision and values and would be a poor use of the Department's resources.  I also considered whether the program could be modified in some fashion, but I believe that addressing the deficiencies identified in my review would require a total redesign that would involve significant additional investments in personnel and resources.  Perhaps more importantly, that approach would come at tremendous opportunity cost, detracting from the work taking place to advance the vision for migration management and humanitarian protection articulated in Executive Order 14010.

Moreover, I carefully considered and weighed the possible impacts of my decision to terminate MPP as well as steps that are underway to mitigate any potential negative consequences.

- In considering the impact such a decision could have on border management and border communities, among other potential stakeholders, I considered the Department's experience designing and operating a phased process, together with interagency and nongovernmental partners, to facilitate the safe and orderly entry into the United States of certain individuals who had been placed in MPP.  Throughout this effort, the Department has innovated and achieved greater efficiencies that will enhance port processing operations in other contexts.  The Department has also worked in close partnership with nongovernmental organizations and local officials in border communities to connect migrants with short-term supports that have facilitated their onward movement to final destinations away from the border.  The Department's partnership with the Government of Mexico has been an integral part of the phased process's success.  To maintain the integrity of this safe and orderly entry process for individuals enrolled in MPP and to encourage its use, the Department has communicated the terms of the process clearly to all stakeholders and has continued to use, on occasion and where appropriate, the return-to-contiguous-territory authority in INA Section 235(b)(2)(C) for MPP enrollees who nevertheless attempt to enter between ports of entry instead of through the government's process.

---

[6] *See* U.S. Department of Homeland Security, "DHS and DOJ Announce Dedicated Docket Process for More Efficient Immigration Hearings," May 28, 2011, available at https://www.dhs.gov/news/2021/05/28/dhs-and-doj-announce-dedicated-docket-process-more-efficient-immigration-hearings.

- In the absence of MPP, I have additionally considered other tools the Department may utilize to address future migration flows in a manner that is consistent with the Administration's values and goals. I have further considered the potential impact to DHS operations in the event that current entry restrictions imposed pursuant to the Centers for Disease Control and Prevention's Title 42 Order are no longer required as a public health measure. At the outset, the Administration has been—and will continue to be—unambiguous that the immigration laws of the United States will be enforced. The Department has at its disposal various options that can be tailored to the needs of individuals and circumstances, including detention, alternatives to detention, and case management programs that provide sophisticated wraparound stabilization services. Many of these detention alternatives have been shown to be successful in promoting compliance with immigration requirements. This Administration's broader strategy for managing border processing and adjudicating claims for immigration relief—which includes the Dedicated Docket and additional anticipated regulatory and policy changes—will further address multifaceted border dynamics by facilitating both timely and fair final determinations.

- I additionally considered the Administration's important bilateral relationship with the Government of Mexico, our neighbor to the south and a key foreign policy partner. Over the past two-and-a-half years, MPP played an outsized role in the Department's engagement with the Government of Mexico. Given the mixed results produced by the program, it is my belief that MPP cannot deliver adequate return for the significant attention that it draws away from other elements that necessarily must be more central to the bilateral relationship. During my tenure, for instance, a significant amount of DHS and U.S. diplomatic engagement with the Government of Mexico has focused on port processing programs and plans, including MPP. The Government of Mexico was a critically important partner in the first phase of our efforts to permit certain MPP participants to enter the United States in a safe and orderly fashion and will be an important partner in any future conversations regarding such efforts. But the Department is eager to expand the focus of the relationship with the Government of Mexico to address broader issues related to migration to and through Mexico. This would include collaboratively addressing the root causes of migration from Central America; improving regional migration management; enhancing protection and asylum systems throughout North and Central America; and expanding cooperative efforts to combat smuggling and trafficking networks, and more. Terminating MPP will, over time, help to broaden our engagement with the Government of Mexico, which we expect will improve collaborative efforts that produce more effective and sustainable results than what we achieved through MPP.

Given the analysis set forth in this memorandum, and having reviewed all relevant evidence and weighed the costs and benefits of either continuing MPP, modifying it in certain respects, or terminating it altogether, I have determined that, on balance, any benefits of maintaining or now modifying MPP are far outweighed by the benefits of terminating the program. Furthermore, termination is most consistent with the Administration's broader policy objectives and the Department's operational needs. Alternative options would not sufficiently address either consideration.

Therefore, in accordance with the strategy and direction in Executive Order 14010, following my review, and informed by the current phased strategy for the safe and orderly entry into the United States of certain individuals enrolled in MPP, I have concluded that, on balance, MPP is no longer a

necessary or viable tool for the Department.  Because my decision is informed by my assessment that MPP is not the best strategy for implementing the goals and objectives of the Biden-Harris Administration, I have no intention to resume MPP in any manner similar to the program as outlined in the January 25, 2019 Memorandum and supplemental guidance.

Accordingly, for the reasons outlined above, I hereby rescind, effective immediately, the Memorandum issued by Secretary Nielsen dated January 25, 2019 entitled "Policy Guidance for Implementation of the Migrant Protection Protocols," and the Memorandum issued by Acting Secretary Pekoske dated January 20, 2021 entitled "Suspension of Enrollment in the Migrant Protection Protocols Program."  I further direct DHS personnel, effective immediately, to take all appropriate actions to terminate MPP, including taking all steps necessary to rescind implementing guidance and other directives issued to carry out MPP.  Furthermore, DHS personnel should continue to participate in the ongoing phased strategy for the safe and orderly entry into the United States of individuals enrolled in MPP.

The termination of MPP does not impact the status of individuals who were enrolled in MPP at any stage of their proceedings before EOIR or the phased entry process describe above.

*   *   *   *   *

This memorandum is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person.


CC:   Kelli Ann Burriesci
      Acting Under Secretary
      Office of Strategy, Policy, and Plans