# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# AMARILLO DIVISION

| | |
|---|---|
| THE STATE OF TEXAS and <br><br> THE STATE OF MISSOURI, <br><br> Plaintiffs, <br><br> v. <br><br> JOSEPH R. BIDEN, JR., in his official capacity as President of the United States of America, *et al.*, <br><br> Defendants. | Case No. 2:21-cv-00067-Z |

## JOINT STATUS REPORT

As this Court has noted, "[o]n June 1, 2021, the Department of Homeland Security published a memo" that "rescinded the January 20, 2021 memo . . . which had been the focus of this lawsuit." ECF 46. The Court ordered the parties "to file a joint status update on the effect of the June 1 memo on the disposition of this case." *Id.* The parties have conferred in good faith, but they have not been able to agree on the effect of the June 1 memo. As a result, they submit their separate positions below.

### Plaintiffs' Position

The June 1 memo is more of the same. On January 20, Defendants "suspend[ed] new enrollment in the Migrant Protection Protocols (MPP)." ECF 1-1. On June 1, Defendants issued a new memo implementing the same decision. It purports to constitute "[t]he termination of MPP," but it "does not impact the status of individuals who were enrolled in MPP" previously. *See* Ex. A. Thus, the result appears materially indistinguishable from the original memo. Both memos irreparably injure Plaintiffs in the same ways.

That irreparable injury motivated Plaintiffs' motion for preliminary injunction. ECF 30. Recognizing the urgency of this matter, the Court ordered Defendants to file the administrative record and their response more quickly than they timeframe they originally proposed. ECF 37. One day after filing a one-page administrative record, ECF 45, Defendants issued their new memo.

Defendants have not filed a new or supplemental administrative record for the June 1 memo. On Wednesday, June 2, Plaintiffs asked Defendants to produce the administrative record by Friday, June 4. Defendants advised they could not commit to a particular date for production of the record. As a result, this Court should consider the motion for preliminary injunction based on the administrative record as it exists right now, namely, the June 1 memo itself and the administrative record Defendants identified for the January 20 memo. *See, e.g., Franciscan All., Inc. v. Burwell*, 7:16-cv-108-O, 2016 WL 9281524, at *3 (N.D. Tex. Nov. 1, 2016) (O'Connor, J.) (setting a briefing schedule "to consider the pending motion for preliminary injunction" despite "no administrative record" and deferring consideration of summary judgment so that the court could consider the "administrative record in the normal course of this litigation"); *Doe v. Trump*, 3:19-cv-1743, 2020 WL 1853657, at *3 (D. Or. Apr. 13, 2020) (noting that the court relied on a "partial record produced before the preliminary injunction" and then set a later deadline "to supplement the administrative record" after the preliminary injunction decision).

Defendants cited their new memo and the potential new record as reasons to suspend the current briefing schedule and extend any new briefing schedule. But Defendants' decision to double down on an unlawful decision does not justify delaying judicial review. Plaintiffs propose adhering as closely as possible to the original schedule while still addressing the June 1 memo. To adhere to that schedule, Plaintiffs propose the following:

- Plaintiffs amended their complaint to address the June 1 memo on June 3, 2021.

- Plaintiffs can file a supplement to their motion for preliminary injunction early next week (no later than Tuesday, June 8).[1]

- Defendants should file their response to the motion for preliminary injunction within seven days of Plaintiffs' filing of their supplement.

- Plaintiffs would file their reply brief no later than June 18, 2021, which matches the current schedule. ECF 37.

Adhering to the current schedule as much as possible will limit the irreparable harm to Plaintiffs and the public. These deadlines are feasible because most of the facts and legal argument are unchanged. Plaintiffs have standing to challenge the June 1 memo for the same reasons they had standing to challenge the January 20 memo. And the two memos suffer from the same legal defects: They violate the Administrative Procedure Act, the Immigration and Nationality Act, the Constitution, and DHS's agreement with Texas.

Defendants have undoubtedly already made substantial progress on their response to Plaintiffs' original motion for preliminary injunction, which is due today, June 4, 2021, considering defense counsel's representation that they were not aware of Defendants' new memo until the last minute.

Finally, Defendants suggest that Plaintiffs' challenge to the January 20 memo is moot. Plaintiffs disagree. Defendants have a high burden of showing mootness through voluntary cessation: They "must show that subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Texas v. EEOC*, 933 F.3d 433, 449 (5th Cir. 2019) (quotation marks omitted). But Defendants' wrongful behavior has already

---

[1] Plaintiffs believe that a short supplement to the current motion for preliminary injunction would best conserve judicial and party resources and avoid repetition. Of course, if the Court would find it more convenient for Plaintiffs to instead file a new, replacement motion for preliminary injunction, Plaintiffs are happy to do so.

recurred. The June 1 memo adopts the same unlawful policy as the January 20 memo. And at the very least, because Plaintiffs challenge the validity of the June 1 memo, which rescinds the January 20 memo, they must continue to challenge the January 20 memo to ensure that any relief against the June 1 memo does not reinstate the January 20 memo.

### Defendants' Position

On April 13, 2021, Plaintiffs, the States of Texas and Missouri, filed this lawsuit challenging a January 20, 2021 Department of Homeland Security ("DHS") memorandum titled "Suspension of Enrollments in the Migrant Protection Protocols Programs," *see generally* Compl., ECF No. 1, which paused enrollments in the Migrant Protection Protocols ("MPP") while the new administration reviewed MPP.[2] The January 20 memorandum was followed by an Executive Order issued by President Biden directing the Secretary of DHS to "promptly consider a phased strategy for the safe and orderly entry into the United States, consistent with public health and safety and capacity constraints, of those individuals who have been subjected to MPP for further processing of their asylum claims," and "to promptly review and determine whether to terminate or modify the program known as the Migrant Protection Protocols." Executive Order 14010, 86 Fed. Reg. 8267, Creating a Comprehensive Regional Framework To Address the Causes of Migration, To Manage Migration Throughout North and Central America, and To Provide Safe and Orderly Processing of Asylum Seekers at the United States Border (Feb 2, 2021).

On June 1, 2021, the Secretary of Homeland Security announced that DHS had completed its review of the program, and issued a new memorandum that terminated MPP and rescinded the January 20 memorandum Plaintiffs challenge in this lawsuit, as well as the January 25, 2019

---

[2] MPP itself was simply a memorandum providing guidance on how the agency would implement its discretionary authority under the statute. *See* 8 U.S.C. § 1225(b)(2)(C) (providing that the agency "*may* return the alien" in certain circumstances (emphasis added)).

memorandum that implemented MPP. *Id*. at 7. *See* "Termination of the Migrant Protection Protocols Program" (June 1, 2021), at 7, available at: https://www.dhs.gov/sites/default/files/publications/21_0601_termination_of_mpp_program.pdf. All of Plaintiffs' claims in their original complaint related exclusively to the now-rescinded and inoperative January 20 memorandum. *See* ECF No. 1, Compl. ¶¶ 85-114 (challenging the January 20 memorandum as violating the Administrative Procedure Act, a purported agreement with Texas, the Immigration and Nationality Act, and the Take Care Clause); *see also id*. at 39 (Prayer for Relief) (requesting that the Court "[h]old unlawful and set aside the January 20 Memorandum," "[d]eclare" the memorandum "unlawful," and enjoin Defendants "from enforcing and implementing the January 20 Memorandum").

Accordingly, this Court cannot grant Plaintiffs the relief they sought in their original complaint or motion for a preliminary injunction—an order setting aside the January 20 memorandum—because the memorandum has already been rescinded and is no longer in effect, and all of Plaintiffs' claims challenging that memorandum are now moot. *See Payne v. Progressive Fin. Servs.*, 748 F.3d 605, 607 (5th Cir. 2014) ("[a] live controversy must exist at every stage of the litigation," and "[i]f an intervening circumstance deprives a plaintiff of a personal stake in the outcome of the action or makes it impossible for the court to grant any effectual relief whatever to the prevailing party, the case must be dismissed as moot" (citation omitted)); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

Plaintiffs indicate that they intend to challenge the Secretary's June 1 memorandum, and have filed an amended complaint raising for the first time claims related to that new agency decision. ECF No. 48, Amend. Compl. ¶¶ 101-06, 109-12, 116-18, 123, 134, 139. Plaintiffs have

also indicated that they intend to seek preliminary injunctive relief related to the June 1 memorandum. However, as noted in the government's response to Plaintiffs' prior motion for a preliminary injunction, because the earlier preliminary injunction motion relates exclusively to claims raised in the initial complaint, and those claims are now all moot, that motion must be denied as well.[3] So any request for preliminary injunctive relief would require an entirely new motion based on whatever new claims Plaintiffs assert in their amended complaint. *See, e.g.*, *Bucklew v. St. Clair*, No. 3:18-CV-2117-N (BH), 2019 WL 2251109, at *2 (N.D. Tex. May 15, 2019), *report and recommendation adopted*, 2019 WL 2249719 (N.D. Tex. May 24, 2019) (A "request for preliminary injunction must [ ] be based on allegations related to the claims in the complaint.").

Once Plaintiffs file a new preliminary injunction motion, and the government has an opportunity to review whatever new claims Plaintiffs may raise, Defendants can assemble an administrative record for the June 1 memorandum. If Plaintiffs challenge the June 1 memorandum, Defendants anticipate that the record for the June 1 memorandum may be voluminous and will take a significant amount of time—an absolute minimum of 14 days—to compile, certify, and produce.[4] When the parties conferred in advance of drafting this joint status report on Wednesday,

---

[3] This is true as to any claims in the amended complaint challenging the January 20 memorandum as well.

[4] A 14-day timeline to produce an administrative record after a motion for preliminary injunction is filed is itself a very accelerated timeline. Although this Court does not have a local rule governing when an administrative record should be produced, fellow district courts usually do not require the production of an administrative record until Defendants file an answer to a complaint. *See*, *e.g.*, D.D.C. L. Civ. R. 7(n)(1) (filing of administrative record after answer); D. Kansas L. Civ. R. 83.1(c)(1) (filing of administrative record with answer); D. Utah L. Civ. R. 7-4(a)(4–5) (filing of administrative record after ruling on motion to dismiss); N.D. Cal. Local Rule 16-5 (in cases seeking "District Court review on an administrative record, the defendant must serve and file an answer, together with a certified copy of the transcript of the administrative record, within 90 days of receipt of service of the summons and complaint"); *cf.* *St. Louis Grp., Inc. v. Metals & Additives Corp.*, 275 F.R.D. 236, 240 (S.D. Tex. 2011) (noting that expedited discovery

June 2, Plaintiffs demanded that Defendants produce the administrative record for the June 1 memorandum by Friday, June 4, just two days later. Defendants explained that they would need time to compile a record and would need to see what claims Plaintiffs raise in their amended complaint before being able to do so, and that two days' time without the benefit of an amended complaint or any pending motion with respect to the new memorandum was unreasonable and not feasible. Nonetheless Plaintiffs now argue that the Court should proceed without the benefit of the voluminous administrative record for the June 1 memorandum that Plaintiffs now challenge and review the memorandum and Plaintiffs' preliminary injunction motion based only on the record from the now-rescinded January 20 memorandum. The Court should reject this extraordinary and baseless argument. There is no legal authority for requiring the government to produce a record related to a new policy in a case that raises no claims related to that policy, or that the government should be bound to a record produced in response to a claim challenging one policy if new claims are later raised challenging an entirely different policy. Plaintiffs cite no cases holding that the government waives its ability to produce a record in support of a policy if it does not do so before claims challenging that policy have even been filed.

Equally untenable is Plaintiffs' argument that their challenge to the January 20 memorandum is not moot because the June 1 memorandum represents "voluntary cessation." In order to establish voluntary cessation, Plaintiffs would have to show that it is likely that DHS would reinstate the January 20 memorandum temporarily suspending new enrollments in MPP, whose express purpose was to permit "review of the program," ECF No. 45 at 001, by the agency.

---

"is not the norm"); *Gale v. O'Donohue*, No. 17-cv-12172, 2018 WL 618739, at *5 (E.D. Mich. Jan. 30, 2018) (declining to order expedited discovery simply because plaintiff had filed a complaint and an accompanying request for injunctive relief), *aff'd* 751 F. App'x 876 (6th Cir. 2018).

Now that the June 1 memorandum has announced that DHS has completed that review, permanently ended MPP, and clarified that it has "no intention to resume MPP in any manner similar to the program as outlined in the January 25, 2019 Memorandum and supplemental guidance," Termination of the Migrant Protection Protocols Program" (June 1, 2021), at 7, there is no basis for DHS to reinstate the January 20 memorandum pausing new enrollments in MPP and no basis to argue a voluntarily cessation exception to mootness. *See, e.g.*, *Spell v. Edwards*, 962 F.3d 175, 178-79 (5th Cir. 2020) ("A matter is moot when it is impossible for a court to grant any effectual relief" such as in a case challenging a "statute, executive order," or other government action that "has expired or been repealed." (internal citations omitted)); *Veasey v. Abbott*, 888 F.3d 792, 799 (5th Cir. 2018) ("Ordinarily, a[n] [action] challenging a statute would become moot by the legislature's enactment of a superseding law."); *see also Yarls v. Bunton*, 905 F.3d 905, 911 (5th Cir. 2018) (holding that "voluntary governmental cessation" of a policy is entitled to a "presumption of good faith" and that, unlike with "private parties," "formally announced changes to official governmental policy" are assumed not to be "mere litigation posturing").

"It is hardly improper for an agency head to come into office with policy preferences and ideas, discuss them with affected parties, sound out other agencies for support, and work with staff attorneys to substantiate the legal basis for a preferred policy." *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2575 (2019). That is similar to what happened here—the agency temporarily suspended new enrollments in MPP to evaluate the program, the President then directed the agency to consider modifying or rescinding the program, and then the agency issued an entirely new decision following that review. Plaintiffs apparently take issue with the timing of the new memorandum, but the possibility that their challenges to the January 20 memorandum—which by its nature was always intended to be temporary—would become moot was a known risk given that

8

they waited nearly three months to file suit and nearly four months to move for a preliminary injunction.

In sum, because the administrative record is likely to be substantial and Defendants' response to any preliminary injunction motion will likely need to address that administrative record, which may take some time given its potential size, Defendants respectfully request a reasonable amount of time after the record is finalized and produced before having to respond to any new motion for a preliminary injunction. Accordingly, if Plaintiffs file a new motion for preliminary injunction, the government suggests that briefing proceed in the normal course, on a schedule similar to what the Court previously ordered, *see* ECF No. 37:

- Once Plaintiffs file a new motion for preliminary injunction, Defendants produce an administrative record at least 14 days after Plaintiffs move for a preliminary injunction. Should Plaintiffs file a new motion for preliminary injunction, it should be limited to 30 pages.

- Defendants file a response "no longer than 40 pages" within 21 days of when the motion for preliminary injunction is filed. *See* ECF No. 37, at 2 (citing N.D. Tex. L.R. 7.2(c)).

- Within five days of Defendants filing a response to the motion, the parties shall meet, confer, and file a joint statement regarding the parties' positions on the necessity of discovery and consolidation of the motion with resolution of the merits under Fed. R. Civ. P. 65(a)(2). If necessary, the parties shall propose a briefing schedule for resolving any remaining disputes.

- Unless the Court orders a different schedule after receiving the parties' joint statement, Plaintiffs will file a reply of no longer than 25 pages within 14 days of Defendants' response to the motion. ECF No. 37, at 2 (citing N.D. Tex. L.R. 7.2(c)).

Plaintiffs have no basis to request a shorter schedule or expedited production of an administrative record on the basis of earlier claims that are now moot, a point Plaintiffs implicitly acknowledge by filing an amended complaint raising new claims and challenging an entirely different agency action. Nor would proceeding in the normal course unduly prejudice any party. Again, Plaintiffs waited nearly three months after the January 20, 2021 memorandum was issued

to initiate this suit, and another full month before filing their initial motion for preliminary injunction. Plaintiffs offer no justification for that delay. Four and a half months have now elapsed since January 20, 2021, and Plaintiffs offer no compelling justification for why their as-of-yet unfiled new motion should proceed on a far more expedited schedule than is called for under the local rules.

| | |
|---|---|
| Date: June 4, 2021 | Respectfully submitted. |
| | |
| ERIC S. SCHMITT<br>Attorney General of Missouri | KEN PAXTON<br>Attorney General of Texas |
| | |
| /s/ *D. JOHN SAUER*<br>D. JOHN SAUER, #58720MO*<br>Solicitor General | BRENT WEBSTER<br>First Assistant Attorney General |
| | |
| JESUS A. OSETE, #69267MO*<br>Deputy Solicitor General | JUDD E. STONE II<br>Solicitor General<br>Texas Bar No. 24076720 |
| | |
| OFFICE OF THE ATTORNEY GENERAL<br>Supreme Court Building<br>207 West High Street<br>P.O. Box 899<br>Jefferson City, Missouri 65102<br>Tel. (573) 751-8870<br>Fax (573) 751-0774<br>John.Sauer@ago.mo.gov | PATRICK K. SWEETEN<br>Deputy Attorney General for Special Litigation<br>Texas Bar No. 00798537<br><br>*/s/ William T. Thompson*<br>WILLIAM T. THOMPSON<br>Deputy Chief, Special Litigation Unit<br>*Attorney-in-Charge*<br>Texas Bar No. 24088531 |
| | |
| *Counsel for Plaintiff State of Missouri* | RYAN D. WALTERS<br>Special Counsel<br>Texas Bar No. 24105085 |
| *Admitted pro hac vice | |
| | OFFICE OF THE ATTORNEY GENERAL<br>SPECIAL LITIGATION UNIT<br>P.O. Box 12548 (MC-009)<br>Austin, Texas 78711-2548<br>Tel.: (512) 463-2100<br>Fax: (512) 457-4410<br>patrick.sweeten@oag.texas.gov<br>will.thompson@oag.texas.gov<br>ryan.walters@oag.texas.gov |
| | *Counsel for Plaintiff State of Texas* |

PRERAK SHAH
*Acting United States Attorney*

BRIAN W. STOLZ
*Assistant United States Attorney*

BRIAN M. BOYNTON
*Acting Assistant Attorney General*

WILLIAM C. PEACHEY
*Director*
Office of Immigration Litigation
District Court Section

EREZ REUVENI
*Assistant Director*

FRANCESCA GENOVA
JOSEPH A. DARROW
*Trial Attorneys*

/s/ *Brian C. Ward*
BRIAN C. WARD
*Senior Litigation Counsel*
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel.: (202) 616-9121
brian.c.ward@usdoj.gov


*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I certify that on June 4, 2021, a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) and served on all counsel of record.

*/s/ William T. Thompson*
William T. Thompson