IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION



| | § | |
|---|---|---|
| THE STATE OF TEXAS, *et al.*, | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | 2:21-CV-067-Z |
| | § | |
| JOSEPH R. BIDEN, JR. *et al.*, | § | |
| | § | |
| Defendants. | § | |

**ORDER**

Before the Court is Defendants' Motion to Strike Plaintiff's Extra Record Material (ECF No. 62). After considering the Response, Reply, and the applicable law, the Court **DENIES** the Motion. Plaintiffs' related Motion to Introduce Extra-Record Evidence (ECF No. 73) is **GRANTED**.

**BACKGROUND**

This case is scheduled for a consolidated hearing and bench trial under Rule 65 on Thursday, July 22, 2021. The parties are familiar with the facts, so a cursory overview will suffice.

The States of Texas and Missouri brought this suit challenging the federal government's decision to first suspend, then terminate the Migrant Protection Protocols ("MPP"). Plaintiff States argue the termination of MPP violates the Administrative Procedure Act ("APA"), the Immigration and Nationality Act ("INA"), the Constitution, and a binding agreement ("Agreement") made between Defendants and Texas.

Plaintiff States filed this case on April 13, 2021, challenging the federal government's temporary suspension of enrollment of aliens in MPP while the new presidential administration reviewed the program. ECF No 1-1. On May 14, Plaintiff States moved for a preliminary

injunction. But on June 1, the federal government completed its review of MPP and decided to permanently end the program. *See* ECF No. 46. The Court held that this action mooted Plaintiff States' motion and directed Plaintiff States to refile its motion — this time challenging the federal government's June 1 memo. ECF No. 52.

On June 8, Plaintiff States filed their renewed Motion for Preliminary Injunction with an appendix in support. ECF Nos. 53, 54. On June 22, Defendants filed the Administrative Record, ECF No. 61. Then, on June 25, Defendants filed their Response. ECF No. 63. On the same day, Defendants also filed the instant Motion to Strike Plaintiff's Appendix in Support. ECF No. 63. Defendants' Motion to Strike argues that Plaintiff's attached appendix violates the record rule.

On June 29, the Court ordered expedited briefing on the Motion to Strike. ECF No. 69. On July 9, Plaintiff States filed a Response to the Motion to Strike, ECF No. 72, and filed their own motion to introduce extra-record evidence. ECF No. 73. On July 16, Defendants filed their Reply, ECF No. 74, and a Response to Plaintiffs' Motion. ECF No. 75. Fully briefed, the Motion to Strike is now ripe for determination.

LEGAL STANDARDS

In reviewing an agency's action, the Administrative Procedure Act requires a court to review "the whole record or those parts of it cited by a party." 5 U.S.C. § 706. Courts must generally limit their review to the administrative record before the agency at the time the decision was made. *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 420 (1971). This principle is often referred to as the record rule.

"Supplementation of the administrative record is not allowed unless the moving party demonstrates 'unusual circumstances justifying a departure' from the general presumption that review is limited to the record compiled by the agency." *Medina Cnty. Envir. Action Ass'n v.*

*Surface Transp. Bd.*, 602 F.3d 687, 706 (5th Cir. 2010) (quoting *Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1002 (D.C. Cir. 2008)). Supplementation is allowed when: "(1) the agency deliberately or negligently excluded documents that may have been adverse to its decision, . . . (2) the district court needed to supplement the record with "background information" in order to determine whether the agency considered all of the relevant factors, or (3) the agency failed to explain administrative action so as to frustrate judicial review." *Id.*

But *Medina* did not "purport to overrule prior decisions concerning exceptions." *Gulf Coast Rod Reel & Gun Club, Inc. v. U.S. Army Corps of Engineers*, No. 3:13-CV-126, 2015 WL 1883522, at *3 (S.D. Tex. April 20, 2015). District courts in this circuit routinely allow extra-record evidence to be introduced under the following "*Davis Mountains*" circumstances:

1. When agency action is not adequately explained in the record before the court;

2. When the agency failed to consider factors which are relevant to its final decision;

3. When an agency considered evidence which it failed to include in the record;

4. When a case is so complex that a court needs more evidence to enable it to understand the issues clearly;

5. In cases where evidence arising after the agency action shows whether the decision was correct or not;

6. In cases where agencies are sued for a failure to take action;

7. In cases arising under NEPA; and

8. In cases where relief is at issue, especially at the preliminary injunction stage.

*NFIB v. Perez*, No. 5:16-CV-066-C, 2016 WL 3766121, at *23 (N.D. Tex. June 27, 2016) (quoting *Davis Mts. Trans-Pecos Heritage Ass'n v. United States Air Force*, 249 F. Supp. 2d 763, 776 (N.D. Tex. 2003) (citation omitted), *vacated sub nom. on other grounds, Davis Mts. Trans-Pecos Heritage Ass'n. v. Fed. Aviation Admin.*, 116 Fed. App'x 3 (5th Cir. 2004)).

"Courts within the Fifth Circuit have concluded that '[m]ost, and perhaps all, of the eight *Davis Mountains* exceptions fit within the three broader categories in *Medina*' and 'it does not seem that there will often be a significant practical distinction between the eight exceptions listed in *Davis Mountains* and the three listed in *Medina*.'" *Id.* at n. 9 (quoting *Gulf Coast*, 2015 WL 1883522, at *3); *Gulf Coast*, 2015 WL 1883522, at *3 ("[*Medina* was not] a sea change in this circuit's law on extra-record evidence.").

But even when considering extra-record evidence, "its use by the reviewing court should be limited to the purpose which justified a departure from the record rule." *Gulf Coast*, 2015 WL 1883522, at *4.

**ANALYSIS**

Relying on the record rule, Defendants moved to strike "Plaintiffs' extra record evidence . . . in the form of Plaintiffs' Appendix . . . [b]ecause Plaintiffs' Appendix constitutes irrelevant and extra-record evidence." ECF No. 62 at 1. As an initial matter, Defendants' Motion is overly broad for several reasons.

**A. The record rule does not apply to standing.**

Although Defendants initially moved to strike Plaintiffs' entire appendix, the record rule does not apply to non-merit issues such as standing. This type of evidence does not run afoul of the record rule because courts consider it "not in order to supplement the administrative record on the merits, but rather to determine [their own] jurisdiction." *Nw. Envir. Def. Ctr. v. Bonneville Power Admin.*, 117 F.3d 1520, 1528 (9th Cir. 1997). Courts routinely rely on extra-record evidence to support standing in APA cases. *See, e.g., Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 153–54 (2010) (relying on declarations to find that plaintiffs had

Article III standing in an APA case); *Theodore Roosevelt Conservation P'ship v. Salazar*, 616 F.3d 497, 507 (D.C. Cir. 2010) (same).

Without the ability to introduce evidence of standing, it would be impossible to challenge unlawful agency action. An administrative record certified by a federal agency has no reason to include evidence of standing. And even if the agency had reason to consider particular would-be plaintiffs, "Article III's standing requirement does not apply to agency proceedings," so there is "no reason to include facts sufficient to establish standing as a part of the administrative record." *Nw. Envir. Def. Ctr.*, 117 F.3d at 1527–28. Only when a plaintiff "later seeks judicial review, [does] the constitutional requirement that it have standing kick[] in." *Sierra Club v. EPA*, 292 F.3d 895, 899 (D.C. Cir. 2002). Accordingly, a plaintiff must "supplement the record to the extent necessary to explain and substantiate its entitlement to judicial review." *Id.* at 899–900. Thus, where Plaintiffs are relying on the Appendix to establish standing, Defendants' Motion is misguided. *See* ECF No. 53 at 21–28; ECF No. 67 at 12–16.

**B. The record rule does not apply to remedies.**

Similar to issues of standing, the record rule also does not limit the evidence this Court can consider when determining the propriety of injunctive relief. The APA permits courts to assess "the balance of the equities and the public interest" for injunctive relief using extra-record evidence. *East Bay Sanctuary Covenant v. Trump*, 354 F. Supp. 3d 1094, 1106–08 (N.D. Cal. 2018), *aff'd*, 950 F.3d 1242 (9th Cir. 2020), *aff'd sub nom. East Bay Sanctuary Covenant v. Biden*, 993 F.3d 640 (9th Cir. 2021). This is because "injunctive relief is generally not raised in the administrative proceedings below and, consequently, there usually will be no administrative record developed on these issues." *Eco Tour Adventures, Inc. v. Zinke*, 249 F. Supp. 3d 360, 369 n.7 (D.D.C. 2017) (quotation omitted). "Thus, it will often be necessary for a court to take new

evidence to fully evaluate claims of irreparable harm and claims that the issuance of the injunction is in the public interest." *Id.* (quotation omitted).

Plaintiffs note that Defendants implicitly recognized this rule when they submitted extra-record evidence regarding the propriety of injunctive relief. *See* ECF No. 64. But Defendants nonetheless moved to strike Plaintiffs' evidence regarding whether the public interest favors injunctive relief. *See* ECF No. 62 at 6 (arguing the Polaris Project report should be stricken because it was not "considered by Defendants"); ECF No. 53 at 33–34 (citing the Polaris Project report to show that the public interest in preventing human trafficking favors injunctive relief). Accordingly, Plaintiffs' use of their Appendix regarding remedies is allowable.[1]

**C. The record rule does not apply to several of Plaintiffs' claims.**

Plaintiffs contend the June 1 memo violated, in addition to the APA, (1) the Constitution, (2) a statute, and (3) a binding Agreement between Texas and the federal government. Plaintiffs further contend that these claims do not implicate the record rule because they do not turn on or challenge the judgment of the agency. ECF No. 72 at 8–9. In response, Defendants aver that, no matter the cause of action, Plaintiffs can not avoid the structure and limitations of APA review. The Court finds that the record rule does not implicate Plaintiff's constitutional, statutory, or Agreement-based claims.

*1. Circuit precedent allows extra-record evidence for constitutional claims.*

Initially, the Court notes that Fifth Circuit has long held that a court reviewing the constitutionality of agency action must make "an independent assessment of a citizen's claim of constitutional right." *Porter v. Califano*, 592 F.2d 770, 780 (5th Cir. 1979). Accordingly, courts

---

[1] Defendants did not specify which parts of the Appendix should be struck until their Reply. The lack of specificity in the original motion to strike meant that Plaintiff had to attempt to defend the entire appendix. This lack of specificity provides an alternative basis to deny the motion, but the Court prefers to rule on the merits of the argument.

6

have allowed the introduction of extra-record evidence on constitutional claims. *See, e.g.*, *Rydeen v. Quigg*, 748 F. Supp. 900, 903–04, 906 (D.D.C. 1990) (citing *Porter* and distinguishing between the record reviewed in relation to plaintiff's APA claims and the record reviewed in relation to plaintiff's constitutional claims); *Grill v. Quinn*, No. 2:10-CV-757, 2012 WL 174873, at *2 (E.D. Cal. Jan. 20, 2012) ("A direct constitutional challenge is reviewed independent of the APA. As such the court is entitled to look beyond the administrative record into this claim.") (citing *Porter*, 592 F.2d at 781).

Defendants argue that *Porter*'s "independent assessment" only referred to the standard of deference a district court employs when reviewing agency action and *not* to the factual record. The Court disagrees. *Porter* states:

> Moreover, [the plaintiff] would of course have a right to sue directly under the constitution to enjoin her supervisors and other federal officials from violating her constitutional rights. In that case there would be *no statutory reason* for the court to defer to agency *findings or rulings*. Whether [plaintiff] sues directly under the constitution to enjoin agency action, or instead asks a federal court to "set aside" the agency actions as "contrary to (her) constitutional right(s)" under § 706(2)(B), the role of the district court is the same.

*Porter*, 592 F.3d at 781 (emphasis added).

Defendants also cite to other district court cases which refused to allow a plaintiff to supplement the record even for a constitutional claim, including a well-reasoned D.C. District Court case. *Bellion Spirits, LLC v. United States*, 335 F. Supp. 3d 32 (D.D.C. 2018).

In *Bellion Spirits*, the district court was faced with deciding whether to allow extra-record evidence on a First Amendment claim that was substantially similar to plaintiff's APA claims. *Id.* at 43. ("[T]he gravamen of [plaintiff's] constitutional complaint in Count I faults a decision made by an administrative agency — namely, its conclusion that [Plaintiff's] health claims are misleading."). The district court proceeded by noting that "[t]he caselaw on a plaintiff's ability to

supplement an administrative record to support a constitutional cause of action is sparse and in some tension." *Id.* at 41.

After reviewing several cases, the district court observed that the "common thread" in cases where the district court *denied* the introduction of extra-record evidence was "when a constitutional challenge to agency action require[d] evaluating the *substance* of an agency's decision made on an administrative record." *Id.* at 43 (emphasis added).[2] Concluding its analysis, the district "decline[d] to adopt any bright line or categorical rule" because of the "dearth of caselaw on point." *Id.*

Here, the Court finds that Plaintiffs' constitutional claim does not implicate the record rule. First, as noted above, circuit precedent allows for extra-record evidence on constitutional claims. Second, even adopting the Defendants' proposed standard from *Bellion Spirits*, the Court finds that Plaintiffs' constitutional challenge does not challenge the "substance" of the agency's decision. Rather, Plaintiff's constitutional challenge focuses on the *effect* of the June 1 memo on the federal government's ability to fulfill its duties under federal law. *See* ECF No. 53 at 16–19.

   *2. Plaintiffs' claims can be brought apart from the APA.*

Additionally, Plaintiffs argue that their claims, except for their arbitrary-and-capricious claim, could be brought outside of the APA, so the record rule does not apply to them. ECF No. 72 at 9. Defendants aver that is not possible, because Plaintiffs have not identified a waiver of sovereign immunity for their claims. The Court agrees with Plaintiffs. As detailed below, the *Larson* doctrine is a well-established line of cases that lets plaintiffs sue, in effect, the United States even without an explicit waiver of sovereign immunity.

---

[2] The district court even noted that *Rydeen v. Quigg*, the case cited by Plaintiffs, was probably correctly decided. *Id.*

Plaintiffs argue they have a cause of action "at equity." ECF No. 53 at 19 (citing *Green Valley Special Util. Dist. v. City of Schertz*, 969 F.3d 460, 475 (5th Cir. 2020). This "cause of action" has long allowed federal courts to enjoin federal officers from violating the Constitution and statutory limitations on their power. *Id.* (citing *Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320, 327–28 (2015) (discussing "a long history of judicial review of illegal executive action, tracing back to England.")). The equitable power to enjoin federal officials and the limitations on that power have come to be known as the *Larson* doctrine.

Under the *Larson* doctrine, there are two types of suits that can proceed against federal officers in their official capacities: (1) suits alleging a federal official acted *ultra vires* of statutorily delegated authority; and (2) suits alleging the officer acted in an unconstitutional manner or pursuant to an unconstitutional grant of authority. *Leal v. Azar*, No. 2:20-CV-185, 2020 WL 7672177, at *6 (N.D. Tex. Dec. 23, 2020) (citing *Larson v. Domestic & Foreign Com. Co.*, 337, U.S. 682, 689–90 (1949)); *see also Dugan v. Rank*, 373 U.S. 609, 621–22 (1963). As the Supreme Court stated, "in case of an injury threatened by his illegal action, the officer cannot claim [sovereign] immunity from injunction process." *Larson*, 337 U.S. at 690 (quoting *Philadelphia Co. v. Stimson*, 223 U.S. 605, 620 (1912)).

Here, Plaintiffs' constitutional claim falls squarely within this Court's equitable power to enjoin unconstitutional action. Plaintiffs' statutory and "contract" claims do as well. First, Plaintiffs' statutory claim alleges that Defendants are violating the INA by failing to either detain or return aliens to Mexico as required by 8 U.S.C § 1225. ECF No. 53 at 17. And Plaintiffs further allege that Defendants are, as a result, being forced to abuse the parole system, which is an allegation of *ultra vires* activity. *Id.* at 18.

Second, Plaintiffs allege that the federal government has violated the binding Agreement with Texas. This "claim also falls within the ambit of *Larson*. Defendants cite *Ala. Rural Fire Ins. Co. v. Naylor* for the proposition that "the United States has not waived sovereign immunity for contract claims seeking specific performance. 530 F.2d 1221, 1229–30 (5th Cir. 1976). But *Naylor* actually supports *Plaintiffs'* position.

*Naylor* contains a detailed description of *Larson* and the *ultra vires* exception to sovereign immunity. *Id.* at 1226–28. In fact, *Naylor* held that the rescission of a contract could be challenged via *Larson* and the court's equitable power if "[plaintiff could] show that the [officers] in rescinding the award of the contract exceeded their statutory authority." *Id.* at 1226.

Here, Plaintiffs allege Defendants entered into a binding Agreement pursuant to the Secretary of the Department of Homeland Security's authority to "develop a process for receiving meaningful input from State and local government to assist the development of the national strategy for combating terrorism and other homeland security activities." 6 U.S.C. § 361(b)(4). This Agreement was allegedly authorized by the Secretary's power to "perform such other acts as he deems necessary for carrying out his authority under the provisions of this chapter." 8 U.S.C. § 1103(a)(3).

By failing to follow the notice-and-consultation portions of the Agreement, Plaintiffs allege that acting DHS Secretary Pekoske acted *ultra vires* as he had no statutory authority to undo his predecessor's Agreement unilaterally. *See* ECF No. 67 at 9–12 (detailing how the Agreement functioned as an informal procedural rule enforceable by a federal court).

Accordingly, Plaintiffs' constitutional, statutory, and Agreement-based claims do not arise within the APA context and are therefore not bound by the statutorily created record rule.

### D. The remaining portions of Plaintiffs' Appendix fall within select exceptions to the record rule.

Plaintiffs' remaining claim is that Defendants' termination of MPP was arbitrary and capricious under the APA. *See* 5 U.S.C. § 706(2)(A) ("The reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."). The role of the record rule is to ensure that "[a]gency action is to be upheld, if at all, on the basis of the record before the agency at the time it made its decision." *Lousiana ex rel. Guste v. Verity*, 853 F.2d 322, 327 n. 8 (5th Cir. 1988); *see also Overton Park*, 401 U.S. at 420 ("[R]eview is to be based on the full administrative record that was before the Secretary at the time he made his decision.").

This rule though is subject to well-established exceptions. *See infra*, p. 2–4. Here, two exceptions are most pertinent: (1) extra record evidence is needed to determine whether the agency "considered all the relevant factors" and (2) extra-record evidence is needed "to enable effective judicial review." *Envtl. Def. Fund, Inc. v. Costle*, 657 F.2d 275, 285 (D.C. Cir. 1981); *Gulf Coast*, 2015 WL 1883522, at *2. "[A]n adequate record can sometimes only be determined 'by looking outside the [administrative record] to see what the agency may have ignored.'" *Davis Mts.*, 249 F. Supp. 2d at 776 (quoting *City of Suffolk v. Sec'y of Interior*, 562 F.2d 1368, 1384 (2d Cir. 1977)).

The main thrust of Plaintiffs' argument in this case is that Defendants ignored critical factors, such as Defendants' own previous analyses of MPP, that should have been reviewed during the administrative process. *See, e.g.* ECF no. 67 at 2–3. The only means for "ignored" factors to come before the Court is for Plaintiffs to supplement the record.

As another example, Plaintiffs allege Defendants' termination of MPP is unlawful and violates 8 U.S.C. § 1225 because of how the termination of MPP interacts with Defendants' detention and parole practices. *See* ECF No. 53 at 16–18; ECF No. 67 at 6–7. The Administrative

Record does not include information about Defendants' detention practices. This information will be required by the Court to rule on Plaintiffs' statutory (and related Take Care Clause) claims.

Defendants arguments to the contrary fall short. For example, Defendants argue that "extrinsic evidence of internal detention practices . . . is irrelevant." ECF No. 74 at 10. But Plaintiffs' statutory claim is directly predicated on the interaction between MPP and Defendants' detention practices. ECF No. 53 at 16–18. Defendants may argue the evidence shows that there is no statutory violation, but the evidence is certainly relevant to that determination.

Another of Defendants' arguments is that *Medina* required the presence of "unusual circumstances" *in addition to* the presence of one of the exceptions. ECF No. 74 at 8. But Defendants misread the case. The "unusual circumstance" *is* the presence of an exception. It is not a stand-alone requirement. *See Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1002 (D.C. Cir. 2008) (equating the "unusual circumstances" with the exceptions).[3]

### E. Plaintiffs are not estopped from moving to supplement the record.

In response to Plaintiffs' Motion to Introduce Extra-Record Evidence, Defendants argue Plaintiffs should be estopped from making the motion because Plaintiff attached the Appendix and cited it in its Motion for Preliminary Injunction *before* Plaintiffs asked the Court to introduce the evidence. The Court disagrees for two reasons.

One, when Plaintiffs filed their Motion for Preliminary Injunction on June 8, there was no administrative record. In fact, the Administrative Record was not filed until June 22 because the Court granted Defendants' request for extra time to produce said record. ECF No. 52 at 4. Plaintiffs simply could not move to "supplement" or "complete" a record that did not yet exist.

---

[3] Because the Court finds Plaintiff's proffered evidence fits within the exceptions to the record rule, the Court need not decide whether Rule 12(f) is the appropriate vehicle for enforcing the record rule.

Two, Defendants have suffered no prejudice by Plaintiff's filing of the Appendix. Defendants have filed *three* briefs arguing to strike the Appendix. ECF Nos. 62, 74, 75. If Plaintiff had moved to supplement the record, Defendant would have been limited to *one* brief to explain why the Court should not view the evidence.

CONCLUSION

For the reasons stated above, the Court **DENIES** Defendants' Motion to Strike (ECF No. 62). Because the "use [of extra-record evidence] by the reviewing court should be limited to the purpose which justified a departure from the record rule." *Gulf Coast*, 2015 WL 1883522, at *4, the Court retains the right to refuse to evaluate evidence if th eCourt ascertains it is being used for an improper purpose. Subject to that caveat, Plaintiff's Motion to Introduce Extra-Record Evidence (ECF No. 73) is **GRANTED**.

**SO ORDERED**.

July 19, 2021.

MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE

13