# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# AMARILLO DIVISION

| | |
|---|---|
| THE STATE OF TEXAS and <br><br> THE STATE OF MISSOURI, <br><br> Plaintiffs, <br><br> v. <br><br> JOSEPH R. BIDEN, JR., in his official capacity as President of the United States of America, *et al.*, <br><br> Defendants. | Case No. 2:21-cv-00067-Z |

## PLAINTIFFS' MOTION TO EXCLUDE EVIDENCE OR, IN THE ALTERNATIVE, REQUIRE PRODUCTION OF WITNESSES FOR LIVE TESTIMONY

The Court should reject Defendants' last-minute attempt to backfill a glaring omission from their own previously filed administrative record and to derail the final trial on the merits set for tomorrow. The Court and the Plaintiffs relied on the Defendants' production of the administrative record prior to completion of briefing to justify consolidation of the preliminary injunction with final trial on the merits. Defendants have no justification for attempting to file a "corrected" administrative record at this late date, and the vague declaration they have submitted, replete with passive-voice evasions, provides no clear explanation. Regardless, Defendants' actions should not be allowed to delay the trial in this case. If their submitted "corrected" administrative record is allowed, the Court should require them to produce live witnesses at the hearing with first-hand knowledge both to prove that the Secretary considered the disputed document and to explain the process that led to it now being included in the filed administrative record. These witnesses should include Secretary Mayorkas, the author of the June 1 memorandum terminating MPP, and Juliana Blackwell, the custodian who submitted a declaration regarding the supplementation of the record.

### I.    The "Corrected" Administrative Record Should Be Excluded from Consideration

On June 7, the Court noted that "a new scheduling order is needed to process Plaintiffs' forthcoming motion for preliminary injunction," explaining that

> Defendants maintain that at least fourteen days will be needed to assemble the new administrative record. The Court will grant that request as the Court finds that the inclusion of the administrative record will provide a firm basis for the Court's analysis of Plaintiffs' APA claims. Furthermore, this should allow for the consolidation of the preliminary injunction motion with the resolution of the trial on the merits. Fed. R. Civ. P. 65(a)(2).

ECF No. 52 at 4. The Court then ordered that "Defendants shall produce the administrative record by Tuesday, June 22." ECF No. 52 at 4. Defendants produced the administrative record

on that date.  ECF No. 61.  Just two days ago, the Court noted that the "Administrative Record was not filed until June 22 because the Court granted Defendants' request for extra time to produce said record."  ECF No. 76 at 12.

Defendants' attempt to file a "corrected" administrative record long after the Court's ordered deadline—less than 48 hours before the trial on the merits—required seeking leave of the Court.  In *Phoenix Mgmt., Inc. v. United States*, for example, the government filed a motion to amend the administrative record first and then, only when the court granted its request, did the government file its notice of filing the corrected administrative record.  107 Fed. Cl. 58, 63 (2012), *aff'd*, 516 F. App'x 927 (Fed. Cir. 2013).  This is the standard way agencies proceed to amend or correct the administrative record.  *See, e.g., Gen. Dynamics Mission Sys., Inc. v. United States*, 137 Fed. Cl. 493, 508 (2018).  But Defendants did not do so here.  They did not file a motion for leave, but instead simply relied on a "notice" of the "corrected" administrative record as a backend around Federal Rule of Civil Procedure 16(b).

It is no wonder that Defendants avoided that route, as they would not be able to show the propriety of their submission on the eve of trial. "A schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4).  Rule 16(b) "allows a scheduling modification only for good cause . . . [t]o allow plaintiff to add more material now and create essentially a new report would prejudice the defendants, who would then have to get an expert to address these last-minute conclusions, and thus disrupt the trial date in this case." *Reliance Ins. Co. v. La. Land & Expl. Co.*, 110 F.3d 253, 257–58 (5th Cir. 1997)  There are four factors in determining whether there is good cause to allow late evidence: "(1) the explanation for the failure to [submit a complete report on time]; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice."

3

*Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir. 1990).

The first, third, and fourth prongs weigh heavily against deviating from the Court's scheduling order here. Defendants have offered no specific explanation or justification to support the idea that the document at issue was considered by the Secretary when he made the decision to terminate MPP, or to explain why they waited so long to submit the "corrected" administrative record. Notably, the document receives no mention at all in the Secretary June 1, 2021 memorandum terminating MPP. The entirety of the Defendants' "explanation" is:

> In June of 2021 when the documents for the Administrative Record submitted in this case were collected, the *Assessment of the Migrant Protection Protocols (MPP)*, October 28, 2019 was included in those documents. However, it was mistakenly not included in the final Administrative Record.
>
> On or about July 15, 2021, it was brought to my attention that the administrative record erroneously omitted the final version of the *Assessment of the Migrant Protection Protocols (MPP)*. Until this was brought to my attention, I did not realize that the administrative record needed correction.

ECF No. 78-3 at ¶¶ 2–3. The use of the passive voice ("it was mistakenly not included … it was brought to my attention," *id.*) here is a giveaway—we have no idea what the circumstances were that led to the failure to include this document, or how the custodian was informed of this. Such vague, evasive language fails to provide good cause to excuse the prejudicial delay.

The prejudice to Plaintiffs is also apparent, as there is no time for discovery on this issue due to tomorrow's trial date. *See Peterson v. AT&T Umbrella Benefits Plan No. 1*, 2011 WL 5882877, at *9 (N.D. Cal. Nov. 23, 2011) (remarking that production "on the eve of trial" of a critical document "without offering any justification for its failure to produce the document other than 'inadvertence'" after "Defendant represented to the Court that it had produced the entire administrative record," would be inappropriate and prejudicial); *Conservation Cong. v. United*

4

*States*, No. 2:13-CV-00934-JAM-DB, 2021 WL 1966302, at *5–6 (E.D. Cal. May 17, 2021) (denying motion to supplement the administrative record that was filed beyond the court-ordered deadline where opposing party had already completed its briefing, and no good cause for the delay had been shown).

Plaintiffs would be prejudiced, as they briefed the administrative record that was filed by the Court's scheduled deadline. And they forswore any need for discovery based on the filed administrative record. *Cf. Novolipetsk Steel Pub. Joint Stock Co. v. United States*, 503 F. Supp. 3d 1329, 1340 (Ct. Int'l Trade 2021) (finding prejudice when "a litigant has been deprived of an opportunity which it cannot now be restored").

Further, Plaintiffs would also be prejudiced by a last-minute continuance of the trial date. Plaintiffs suffer from irreparable injury on a daily basis, and the ongoing border crisis inflicts humanitarian costs on migrants and the public as well. Defendants' last-minute dilatory tactic should not be rewarded with a delay of the trial date under any circumstances.

Defendants filed their "corrected" administrative record on July 20, despite admitting that they knew about the purported missing document on July 15. ECF No. 78-3. Indeed, on July 16—*after* they discovered that the administrative record was purportedly incomplete—Defendants filed their Reply in Support of their Motion to Strike that, though directly related to the issue of the proper scope of the administrative record, failed to mention this supposed flaw. *See* ECF No. 74. That filing even referred to the document at issue, stating that "Plaintiffs only point to prior DHS analyses of MPP as adverse material or critical factors that DHS allegedly failed to consider. ECF No. 74 at 9 (citations omitted). Indeed, Plaintiffs had earlier—on June 30—explicitly noted the failure to consider this particular document, and its absence from the filed administrative record, in their Reply in Support of their Motion for Preliminary Injunction filed. ECF No. 67 at 2–3. It

is inexcusable for Defendants to be filing their "corrected" administrative record, consisting of the addition of this document, at this late stage given these facts.

Instead of being candid with Plaintiffs and the Court in their Reply in Support of their Motion to Strike—which criticized what Defendants saw as Plaintiffs' attempts to go beyond the filed administrative record—Defendants instead waited *four days* from when they admit they knew about the omission to correct the record. Note that Defendants even waited until 3:27 p.m. two days before the hearing to file this corrected administrative record, despite the declaration of the custodian being electronically signed at 5:14 p.m. Eastern time the day before. ECF No. 78-3. There is no excuse for this sandbagging in violation of the Court's scheduling order.

This belated submission not only violated the Court's scheduling order without seeking leave—it also violated the Court's Local Rules, which require that "[al]l exhibits that a party intends to offer at trial, except those offered solely for impeachment . . . must be exchanged with opposing parties at least 14 days before the scheduled date for trial." N.D. Tex. Loc. R. 26.2. As the Court has previously noted, the scheduled hearing is a "trial on the merits." ECF No. 66 at 1 (citing 11A WRIGHT & MILLER, FED. PRAC. & PROC. § 2950 ("[A consolidated hearing] really is a trial on the merits.") (alteration in original)). This rule therefore applied here.

On July 6, the Court scheduled the hearing for trial on the merits for Thursday, July 22—16 days in advance. ECF No. 69. Combined with N.D. Tex. Loc. R. 26.2, the context of the Court's scheduling order made clear that it was not expecting new evidence to be filed, at least not without its express permission. Defendants agreed, joining a statement to the Court on June 28 where they informed it that "[t]he parties have conferred and agree that the motion for preliminary injunction, ECF No. 53, can be resolved on the basis of the record filed with the Court. Accordingly, the parties agree that there is no need for discovery at this time." ECF No. 65 at 1. "The parties

6

generally agree that consolidation of the motion for preliminary injunction with resolution on the merits under Fed. R. Civ. P. 65(a)(2) would be appropriate," ECF No. 65 at 1, and Defendants noted that their "position is that the merits of the claims at issue must be resolved on the basis of the administrative record filed with the Court."  ECF No. 65 at 3.

> II. **If the "Corrected" Administrative Record Is Accepted, Defendants Should Be Required to Produce Live Witnesses at the Hearing, Including Secretary Mayrokas and Julianna Blackwell.**

The Supreme Court has "recognized a narrow exception to the general rule against inquiring into the mental processes of administrative decisionmakers. On a strong showing of bad faith or improper behavior, such an inquiry may be warranted and may justify extra-record discovery." *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2573–74 (2019) (cleaned up).

Compelled testimony of high-ranking government officials is justified under "exceptional circumstances." *Lederman v. N.Y. City Dep't of Parks & Recreation*, 731 F.3d 199, 203 (2d Cir. 2013). Plaintiffs may satisfy this standard by demonstrating one of several alternative showings, including (1) "that the official has unique first-hand knowledge related to the litigated claims," or (2) "that the necessary information cannot be obtained through other, less burdensome or intrusive means." *Id*.  Plaintiffs can demonstrate exceptional circumstances under either of these grounds.

Secretary Mayorkas, of course, is the most relevant official to testify as to whether he in fact considered the document at issue here.  See *Sherrod v. Breitbart*, 304 F.R.D. 73, 76 (D.D.C. 2014) (authorizing deposition of Secretary of Agriculture where "the Secretary has information not available elsewhere."). As in *Sherrod*, Secretary Mayorkas is the author of the June 1 memorandum, and "[t]he Secretary alone has precise knowledge of what factors he considered." 304 F.R.D. at 76

Cabinet Secretaries have frequently been ordered to testify about their decisions at

deposition and trial. *See, e.g., D.C. Fed'n of Civic Ass'ns v. Volpe*, 316 F. Supp. 754, 760 nn.12 & 36 (D.D.C. 1970) (deposition and trial testimony required from the Secretary of Transportation in APA case), *rev'd on other grounds sub nom. D.C. Fed'n of Civic Ass'ns v. Volpe*, 459 F.2d 1231 (D.C. Cir. 1971); *Moreland Corp. v. United States*, 76 Fed. Cl. 268, 270 n.2, 276–77 (2007) (trial testimony of former Secretary of Veterans Affairs); *McDonnell Douglas Corp. v. United States*, 35 Fed. Cl. 358, 365–66 n.9 (1996) (deposition and trial testimony of Secretary of Defense), *rev'd in part on other grounds*, 182 F.3d 1319 (Fed. Cir. 1999); *Cobell v. Babbitt*, 91 F.Supp.2d 1, 6 & n.1 (D.D.C. 1999) (reaching a decision after a trial at which the Secretary of the Interior testified—shortly after being held in civil contempt for violating the Court's discovery order); *Am. Broad. Cos. v. U.S. Info. Agency*, 599 F.Supp. 765, 768-69 (D.D.C. 1984) (requiring a deposition of the head of the United States Information Agency); *Union Sav. Bank of Patchogue, N.Y. v. Saxon*, 209 F. Supp. 319, 319-20 (D.D.C. 1962) (compelling a deposition of the Comptroller of the Currency); *see also Volpe*, 459 F.2d at 1237-38 (approving of the district court's decision to require the Secretary's testimony).

In addition to the question of whether Secretary Mayorkas in fact considered this document included in the "corrected" administrative record, the Court should hear testimony from the custodian who certified the administrative record, Juliana Blackwell, who submitted a vague and evasive declaration about the circumstances surrounding the original omission and the updated filing. Blackwell has both first-hand knowledge about the disputed issue of the administrative record, and, given that the option of discovery is foreclosed due to the impending trial, her testimony is the least burdensome way to obtain this information. *See Sigmatech, Inc. v. United States*, 126 Fed. Cl. 388, 389 (2016) (mem.) (noting that "the Government's actions, *i.e.*, filing a corrected Administrative Record more than 55 days after it was due and after Plaintiff completed

briefing, warranted granting Plaintiff's request to conduct the deposition of the Contracting Officer concerning the compilation of the Administrative Record and potential inconsistencies in the documents produced," and sanctioning defendants for forcing plaintiffs "to prepare briefs that were based on an incomplete administrative record").

## CONCLUSION

The Court has been "presented, in other words, with an explanation for agency action that is incongruent with what the record reveals about the agency's priorities and decisionmaking process." *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2575 (2019). The Court is "not required to exhibit a naiveté from which ordinary citizens are free." *Id.* (quoting *United States v. Stanchich*, 550 F.2d 1294, 1300 (2d Cir. 1977) (Friendly, J.)). It should therefore deny the attempt to amend the administrative record, or, at least require Defendants to justify it under oath.

Dated: July 21, 2021

ERIC S. SCHMITT
Attorney General of Missouri

/s/ D. JOHN SAUER
D. JOHN SAUER, #58720MO*
Solicitor General

JESUS A. OSETE, #69267MO*
Deputy Solicitor General

OFFICE OF THE ATTORNEY GENERAL
Supreme Court Building
207 West High Street
P.O. Box 899
Jefferson City, Missouri 65102
Tel. (573) 751-8870
Fax (573) 751-0774
John.Sauer@ago.mo.gov

*Counsel for Plaintiff State of Missouri*

*Admitted pro hac vice

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

JUDD E. STONE II
Solicitor General
Texas Bar No. 24076720

PATRICK K. SWEETEN
Deputy Attorney General for Special Litigation
Texas Bar No. 00798537

WILLIAM T. THOMPSON
Deputy Chief, Special Litigation Unit
*Attorney-in-Charge*
Texas Bar No. 24088531

/s/ Ryan D. Walters
RYAN D. WALTERS
Special Counsel
Texas Bar No. 24105085

OFFICE OF THE ATTORNEY GENERAL
SPECIAL LITIGATION UNIT
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Tel.: (512) 463-2100
Fax: (512) 457-4410
patrick.sweeten@oag.texas.gov
will.thompson@oag.texas.gov
ryan.walters@oag.texas.gov

*Counsel for Plaintiff State of Texas*

### CERTIFICATE OF CONFERENCE

I certify that, on July 21, 2021, I conferred with Defendants' counsel, who represented that Defendants oppose this motion.

/s/ Ryan D. Walters
RYAN D. WALTERS

### CERTIFICATE OF SERVICE

I certify that on July 21, 2021, a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) and served on all counsel of record.

/s/ Ryan D. Walters
RYAN D. WALTERS