**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION**

| | |
|---|---|
| STATE OF TEXAS,<br>STATE OF MISSOURI,<br><br>    *Plaintiffs,*<br><br>v.<br><br>JOSEPH R. BIDEN, JR.,<br>in his official capacity as<br>President of the United States, *et al.*,<br><br>    *Defendants.* | Civil Action No. 2:21-cv-00067-Z |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE**

The Court should deny the Plaintiffs' extraordinary motion requesting that the Court consider only a partially complete administrative record in resolving this case, and demanding that the Court order testimony from two high-level agency officials, including the Secretary of Homeland Security on less than 16 hours' notice. The Court has ordered the government to respond to this motion in two hours' time, while two of its attorneys are en route via air to Amarillo. The government has done its best to respond to the arguments raised by Texas in that limited amount time, and respond as follows.

On July 20, 2021, the government filed a notice of filing of a corrected administrative record, along with a new certification of the record and a document missing from the administrative record, after learning that the document was missing from the record. *See* Dkt. 78. According to Julianna Blackwell the Deputy Executive Secretary responsible for the oversight and management of the Office of the Executive Secretary (which maintains official Department of Homeland Security (DHS) records, including the administrative record in this case), the document, "Assessment of the Migrant Protection Protocols (MPP), October 28, 2019," was inadvertently omitted by the Department of Homeland Security from the administrative record compiled on an expedited schedule and submitted to the Court on June 22, 2021. *See* Dkt. 78-3, Declaration of Julianna Blackwell, ¶¶ 2-3; *see also* Dkt. 78-1, Certification. As Ms. Blackwell explained under penalty of perjury in her declaration, "On or about July 15, 2021, it was brought to my attention that the administrative record erroneously omitted the final version of the Assessment of the Migrant Protection Protocols (MPP). Until this was brought to my attention, I did not realize that the administrative record needed correction." Dkt. 78-3, ¶ 3. DHS then moved with dispatch to correct the mistake, submitting the correction and an explanation for the correction three business days and five total days later, on July 20, 2021. Dkt. 78.

## I.    The Government Properly Corrected the Record

Plaintiffs contend that DHS's prompt actions to correct a mistake should be rejected because the government did not file an affirmative motion to seek leave of Court to correct the record, Mot. 3, because the filing in their view seeks to delay the hearing tomorrow, Mot. 3, and because DHS's actions evince an absence of "cand[or]" to the Court, Mot. 6. None of these arguments are persuasive. To begin, it is settled law that the government *must* submit to the reviewing Court the full administrative record that was before [the agency] at the time [it] made [its] decision." *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971). As has been the practice in this Court for decades, the full record includes 'all documents and materials directly or indirectly considered by agency decision-makers,' including evidence contrary to the agency's position." *Exxon Mobil Corp. v. Mnuchin*, No. 3:17-CV-1930-B, 2018 WL 10396585, at *2 (N.D. Tex. June 26, 2018), *objections overruled*, No. 3:17-CV-1930-B, 2018 WL 4103724 (N.D. Tex. Aug. 29, 2018) (quoting *Exxon Corp. v. Dep't of Energy*, 91 F.R.D. 26, 33 (N.D. Tex. 1981) (Higginbotham, J.)). Thus "[a]n agency may not unilaterally determine what constitutes the Administrative Record" by excluding non-privileged information that was considered in reaching a final decision. *See Bar MK Ranches v. Yuetter*, 994 F.2d 735, 739 (10th Cir. 1993); *City of Dallas, Tex. v. Hall*, Nos. 3:07-CV-0060-P & 3:07-CV-0213-P, 2007 WL 3257188, at *4 (N.D. Tex. Oct. 29, 2007). Put differently, the government was obligated to correct the record once it learned that it had inadvertently omitted a document that was considered directly or indirectly by the Secretary in reaching his decision in this case, and is thus by definition part of the administrative record.

There was no obligation to seek leave from the Court before submitting a correction to the record. As explained, once the government learned of the mistake, it was obligated to correct it, and it did so with dispatch. Court after court allows the certifier of the record to correct mistakes, and does not reject that correction based on the absence of a formal motion.[1] To do otherwise would require the Court to decide this case at this juncture without the benefit of the complete record, but with the benefit of documents Texas submitted separate and apart from the record. Such an artificial representation of the record would be unfair to the parties and the Court, and would result in a decision based on less than the "the full administrative record that was before [the agency] at the time [it] made [its] decision." *Volpe*, 401 U.S. at 420. Moreover, it would violate the settled rule that "courts are not free to impose upon agencies specific procedural requirements that have no basis in the APA." *Pension Ben. Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 654 (1990). Nevertheless, out of an abundance of caution, Defendants will file a motion for leave to correct the record after the filing of this brief.[2]

---

[1] *E.g.*, *Treadwell Corp. v. United States*, 133 Fed. Cl. 371, 379 (2017), aff'd, 726 F. App'x 826 (Fed. Cir. 2018); *Hill v. Comm'r of Soc. Sec.*, No. 2:20-CV-2270, 2021 WL 2430938, at *1 (S.D. Ohio June 15, 2021), report and recommendation adopted, No. 2:20-CV-2270, 2021 WL 2716203 (S.D. Ohio July 1, 2021; *D.C. v. United States Dep't of Agric.,* 496 F. Supp. 3d 213, 226 (D.D.C. 2020), *appeal dismissed*, No. 20-5371, 2021 WL 1439861 (D.C. Cir. Mar. 23, 2021); *Zeidman Techs., Inc. v. United States*, 141 Fed. Cl. 726, 728 (2019); *Grabowski v. Berryhill*, No. 16-CV-00592F, 2018 WL 5076921, at *6 (W.D.N.Y. Oct. 17, 2018); *Fourth Corner Credit Union v. Nat'l Credit Union Admin.*, No. 15-CV-01634-RM-KMT, 2016 WL 9735755, at *1 (D. Colo. Dec. 6, 2016); *Abreu-Battle v. Comm'r of Soc. Sec.*, No. 1:11-CV-1328, 2013 WL 1213843, at *10 (W.D. Mich. Mar. 4, 2013), *report and recommendation adopted*, No. 1:11-CV-1328, 2013 WL 1213706 (W.D. Mich. Mar. 25, 2013); *Goldman v. BCBSM Found.*, No. 11-14043, 2012 WL 4513657, at *3 (E.D. Mich. Oct. 2, 2012). A search for "corrected administrative record" in the limited time provided to the Government to write this brief on westlaw reveals at least 62 cases.

[2] Defendants note that Plaintiffs similarly moved after the fact to submit extra-record evidence "[f]or the avoidance of doubt," Dkt. 73, a motion the Court granted.

4

Plaintiffs' contention (Mot. 3) that the submission of a corrected record somehow seeks to delay the hearing tomorrow fares no better. The government has not requested—and does not request—delay of the hearing tomorrow. The government's attorneys are presently in the air and en route to Amarillo at the time of this filing and will be fully prepared to address all issues present before the Court, including any argument pertaining to the correction of the administrative record. Plaintiffs contend that Fed. R. of Civ. P. 16(b) nevertheless requires the court to reject the government's efforts to correct the administrative record, but no scheduling order was ever issued in this case. Indeed no answer has been filed, and discovery has commenced. Instead, Plaintiffs have filed a motion for preliminary injunction, which is now being adjudicated as a trial on the merits under Rule 65. Rule 16(b) has no bearing on whether the administrative record before the court can or should be corrected at this stage of proceedings.

Plaintiffs' allegations of lack of candor likewise fail. As Ms. Blackwell explained, the government moved with dispatch and corrected a mistake when it learned of it. Ms. Blackwell learned of the mistake on July 15, and the government updated the Court on July 20. Defendants certainly regret the timing of the error and its discovery, but Plaintiffs' contention that the government acted in bad faith is belied by the speed with which the government corrected that mistake.

At bottom, Plaintiffs appear to contend that the Court should decide this case with an incomplete record, because Plaintiffs believe that agencies should not be allowed to correct the record after Plaintiffs have filed their briefs. But the rule Plaintiffs ask this Court to adopt would be perverse. No government entity, federal, state, or local, would be able to promptly correct the record if mistakes were found, discouraging candor to the court and the public. Instead, in Plaintiffs' view, the government should refrain from correcting the record, at least until granted

permission to do so, and certainly never after a party files its briefs in a case. That is contrary to blackletter administrative law, and the Court should reject it.

## II.   There is no Basis to Order Testimony Tomorrow on Several Hours' Notice

Plaintiffs next contend that if the Court considers the corrected record when deciding this case, it should nevertheless order that either Secretary Mayorkas or Ms. Blackwell be compelled to appear before the Court tomorrow at 10 AM to present testimony. Mot. 7. The Court should reject this extraordinary request.

First, as already explained in the government's motion to strike, "the designation of the administrative record, like any established administrative procedure, is entitled to a presumption of administrative regularity." *City of Dallas, Tex. v. Hall,* No. CIV.A. 307CV0060-P, 2007 WL 3257188, at *4 (N.D. Tex. Oct. 29, 2007) (citing *Bar MK Ranches v. Yeutter, 994 F.2d 735, 740 (10th Cir. 1993)); Oceana, Inc. v. Ross,* 920 F.3d 855, 865 (D.C. Cir. 2019) (same). "The court assumes the agency properly designated the administrative record absent clear evidence to the contrary." Id. (citing *Bar MK Ranches*, 994 F.2d at 740); *accord, e.g., In re United States,* 875 F.3d 1200, 1206 (9th Cir.) ("The administrative record submitted by the government is entitled to a presumption of completeness which may be rebutted by clear evidence to the contrary."), vacated on other grounds, 138 S. Ct. 443 (2017); *In re United States Dep't of Def.*, No. 15-3751, 2016 WL 5845712, at *2 (6th Cir. Oct. 4, 2016) (same); *CESC Plaza Ltd. P'ship v. U.S. Dep't of Com.,* 215 F.3d 1317 (4th Cir. 2000) (same)*; Cone v. Caldera,* 223 F.3d 789, 793 (D.C. Cir. 2000) (same); *see also Butler v. Principi*, 244 F.3d 1337, 1339 (Fed. Cir. 2001) (presumption of regularity in discharge of official duties); *Kephart v. Richardson,* 505 F.2d 1085, 1090 (3d Cir. 1974) (same). Plaintiffs do not mention the presumption, let alone offer any argument or citation to cases

6

supporting ignoring that presumption where, as here, the government attests under penalty of perjury that it has submitted the corrected full and complete administrative record.

Second, Plaintiffs' requested testimony to explore the thought processes of either the Secretary or Ms. Blackwell—including what they considered and what weight they gave it—is protected by the deliberative process privilege. "The deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance the quality of agency decisions, by protecting open and frank discussion among those who make them within the Government." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8–9, (2001). Such deliberations are not part of the administrative record, and likewise are not subject to testimony concerning how the administrative record was compiled. *Oceana, Inc. v. Ross*, 920 F.3d 855, 865 (D.C. Cir. 2019) ("[A]bsent a showing of bad faith or improper behavior, '[a]gency deliberations not part of the record are deemed immaterial.'"). Plaintiffs' contrary request would "improperly probe the thought and decision making processes of administrators." *Morgan v. United States*, 304 U.S. 1, 18 (1938).

Third, Plaintiffs' demand that Secretary Mayorkas and the Deputy Executive Secretary testify is especially inappropriate and violates the settled rule, under the "apex doctrine" that high-ranking government officials, both current and former, should not—absent exceptional circumstances—be deposed or called to testify regarding their reasons for taking official action. *See, e.g., Franklin Sav. Ass'n v. Ryan*, 922 F.2d 209, 211 (4th Cir. 1991); *Lederman v. N.Y.C. Dep't of Parks & Recreation*, 731 F.3d 199, 203–04 (2d Cir. 2013); *Bogan v. City of Boston*, 489 F.3d 417, 423 (1st Cir. 2007); *Simplex Time Recorder Co. v. Sec'y of Labor*, 766 F.2d 575, 586–87 (D.C. Cir. 1985). In *Morgan*, the Supreme Court countermanded the district court's order

permitting the deposition of the Secretary of Agriculture on his process in reaching an official decision, admonishing that he "should have never been subjected to this examination" because it was improper "to probe [his] mental processes." 313 U.S. at 421–22. It is this "a settled rule in this circuit that 'exceptional circumstances must exist before the involuntary depositions of high agency officials are permitted," and "it will be the rarest of cases . . . in which exceptional circumstances can be shown where the testimony is available from an alternate witness." *In re FDIC*, 58 F.3d at 1060, 1062. "[T]op executive department officials should not, absent extraordinary circumstances, be called to testify regarding their reasons for taking official actions." *Simplex Time Recorder Co. v. Sec'y of Labor*, 766 F.2d 575, 586-87 (D.C. Cir. 1985); *see also In re Cheney*, 544 F.3d 311, 314 (D.C. Cir. 2008) ("The duties of high-ranking executive officers should not be interrupted by judicial demand for information that could be obtained elsewhere.").

Accordingly, the Fifth Circuit and other Court have applied this doctrine to issue writs of mandamus to preclude depositions or testimony by high-ranking executive branch officials. *See, e.g.*, *In re FDIC*, 58 F.3d 1055, 1063 (5th Cir. 1995) (members of the Board of Directors of the Federal Deposit Insurance Corporation); *In re McCarthy*, 636 F. App'x at 145 (EPA Administrator); *In re Commodity Future Trading Comm'n*, 941 F.3d 869, 875 (7th Cir. 2019) (CFTC chairman, commissioners, and staff); *In re Cheney*, 544 F.3d 311, 314 (D.C. Cir. 2008) (Vice President's Chief of Staff); *In re United States ("Holder")*, 197 F.3d 310, 316 (8th Cir. 1999) (Attorney General and Deputy Attorney General); *In re United States ("Kessler")*, 985 F.2d 510, 513 (11th Cir. 1993) (per curiam) (FDA Commissioner).

Like the record rule and the deliberative process privilege, the apex doctrine is designed to protect constitutional separation of powers principles, and to prevent revealing the thoughts and mental processes by which high-ranking agency officials exercise their official discretion. See

8

*Morgan*, 313 U.S. at 422 ("Just as a judge cannot be subjected to such a scrutiny, . . . so the integrity of the administrative process must be equally respected." (citations omitted)); *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 268 n.18 (1977) ("[J]udicial inquiries into . . . executive motivation represent a substantial intrusion into the workings of other branches of government."). The Supreme Court has thus repeatedly confirmed that, absent "a strong showing of bad faith or improper behavior," discovery into "the mental processes of administrative decisionmakers" is unwarranted. *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2573–74 (2019) (citation omitted); *see also In re Dep't of Commerce*, 139 S. Ct. 16 (2018) (staying the district court's order authorizing the deposition of the Secretary of Commerce about his decision-making).

Moreover, subjecting Mr. Mayorkas or Ms. Blackwell to testimony concerning their agencies in a civil proceeding--particularly testimony 14 hours from now—would impede the exercise of official duties by exerting a chilling effect on official decision-making. *See In re FDIC*, 58 F.3d 1055, 1060 (5th Cir. 1995) ("High ranking government officials have greater duties and time constraints than other witnesses."); *In re United States*, 985 F.2d 510, 512 (11th Cir. 1993) ("[t]he reason for requiring exigency before allowing the testimony of high officials is obvious. High ranking government officials have greater duties and time constraints than other witnesses"). That is because "subjecting officials to interrogation about how they reached particular decisions would impair that decision-making process by making officials less willing to explore and discuss all available options, no matter how controversial." *Walker v. NCNB Nat'l Bank of Fla.*, 810 F. Supp. 11, 12 (D.D.C. 1993); *In re Stone*, 986 F.2d 898, 904 (5th Cir. 1993) ("[h]igh-ranking officials of cabinet agencies could never do their jobs if they could be subpoenaed for every case involving their agency."); *see also Sykes v. Brown*, 90 F.R.D. 77, 78 (E.D. Pa. 1981) ("Should the

agency head be subject to deposition in every resulting case and be repeatedly required to explain the various mental steps he took to reach his decision, the decision may be his last."). Plaintiffs demand that the Secretary of a critical law enforcement agency or its Deputy Executive Secretary appear tomorrow in Amarillo to testify would severely undermine either individuals ability to do their critical jobs and senior officials in the Executive Branch, and should be rejected.

Plaintiffs have not come close to demonstrating the extraordinary circumstances requires to circumvent these longstanding rules that protect agency deliberations, government resources, and the separation of powers. Moreover, the Court has a perfectly acceptable alternative source of information for why the record was corrected—the corrected certification and the declaration of Ms. Blackwell. *FDIC*, 58 F.3d at 1060-62. Those documents—again, entitled to a presumption of regularity—explain the government's actions in correcting the record and are entitled to a presumption of regularity. Accordingly, Plaintiffs have shown "exceptional circumstances" warranting additional testimony, and they certainly have not shown that this is the "rarest of cases" where testimony from Ms. Blackwell in her declaration submitted to the Court is not sufficient. *In re FDIC*, 58 F.3d at 1060, 1062.

Accordingly, for the reasons provided here, the government respectfully requests that the court deny Plaintiffs' motion. Shortly after the filing of this document, the government will also file a motion to correct the record, out of an abundance of caution.

//

//

Date:  July 20, 2021

PRERAK SHAH
*Acting United States Attorney*

BRIAN W. STOLZ
*Assistant United States Attorney*

Respectfully submitted,

BRIAN M. BOYNTON
*Acting Assistant Attorney General*

WILLIAM C. PEACHEY
*Director*
Office of Immigration Litigation
District Court Section

BRIAN WARD
Senior Litigation Counsel

JOSEPH A. DARROW
*Trial Attorney*

EREZ REUVENI
*Assistant Director*

*/s/ Joseph A. Darrow*
JOSEPH A. DARROW
*Trial Attorney*
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel.: (202) 598-7537
Joseph.a.darrow@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on July 20, 2021, I electronically filed the foregoing document with the Clerk of the Court for the United States District Court for the Northern District of Texas by using the CM/ECF system. Counsel in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

*/s/ Joseph A. Darrow*
JOSEPH A. DARROW
Trial Attorney
United States Department of Justice
Civil Division