Exhibit B

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF TEXAS

AMARILLO DIVISION

| | |
|---|---|
| STATE OF TEXAS, STATE OF MISSOURI, | Civil Action No. 2:21-cv-00067-Z |
| Plaintiffs, | **DECLARATION OF PRINCIPAL DEPUTY CHIEF IMMIGRATION JUDGE DANIEL H. WEISS** |
| v. | |
| JOSEPH R. BIDEN, JR., IN HIS OFFICIAL CAPACITY AS PRESIDENT OF THE UNITED STATES, ET AL., | |
| Defendants. | |

I, **DANIEL H. WEISS**, do hereby declare under penalty of perjury that the following statements are true and correct to the best of my knowledge, information, and belief:

1. I am the Principal Deputy Chief Immigration Judge ("PDCIJ") for the Executive Office for Immigration Review ("EOIR") for all immigration courts nationwide. I work for EOIR's Office of the Chief Immigration Judge ("OCIJ") which provides overall program direction and articulates policies and procedures for the immigration courts nationwide. As PDCIJ, my responsibilities include supervising and managing the dockets and daily activity in the immigration courts.

2. I was appointed as PDCIJ in January 2021. Prior to my appointment as PDCIJ, I served as an Assistant Chief Immigration Judge from September 2017-January 2021, Acting Chief of Staff, from April 2019-July 2019, and as an immigration judge at the Dallas Immigration Court from January 2016-September 2017.

3. As PDCIJ, I have knowledge of the policies and practices relating to immigration court

DECLARATION OF DANIEL H. WEISS
No. 2:21-cv-00067-Z

1

operations, including operations of all detained and non-detained immigration courts and immigration adjudication centers[1] nationwide.  I am familiar with the lawsuit that the States of Texas and Missouri have filed in the United States District Court in the Northern District of Texas, and the court's Memorandum Opinion and Order granting the Plaintiffs' request for a preliminary injunction and vacating the Defendant Department of Homeland Security's ("DHS") June 1 Memorandum terminating the Migrant Protection Protocols (MPP) program, *Texas, et al., v. Biden, et al.*, No. 2:21-cv-00067-Z (N.D. Texas Aug. 13, 2021) ("Court's Order").

4. I am aware that when the Court's Order becomes effective, it requires that Defendant's DHS enforce and implement MPP in good faith until such a time as it has been lawfully rescinded in compliance with the Administrative Procedures Act ("APA") and until such a time as the federal government has sufficient detention capacity to detain all aliens subject to mandatory detention under Section 1225 of the Immigration and Nationality Act ("INA") without releasing any non-citizen because of a lack of detention resources. A consequence of the Court's Order would be to resume enrollment of new individuals in MPP, who are placed in removal proceedings. Those cases would then require processing, in addition to the 26,000 individuals in Mexico with active cases.[2]

5. I have prepared this declaration to explain the burden this Court's Order places on EOIR's immigration courts. From my role as PDCIJ, I have personal knowledge of the facts stated in this declaration.

## A. Overview of the Immigration Courts' Dockets

6.There are currently 66 Immigration Courts nationwide, and three Immigration Adjudication Centers. When MPP was in operation, EOIR heard cases for MPP enrollees at four Immigration Courts: El Paso, Harlingen, San Antonio and San Diego. Hearings for MPP enrollees were conducted in-person before an immigration judge within the United States in El Paso and San Diego, with DHS transporting individuals to their hearings by bus, and virtually from Immigration Hearing Facilities (IHFs), temporary

---

[1] An immigration adjudication center is a facility where immigration judges preside over immigration proceedings via video teleconference.
[2] Dkt. 64, Declaration of David Shahoulian, APP 6 (indicating that restarting MPP would require providing information about updated hearing times and locations to up to 26,000 individuals in Mexico with active cases.").

DECLARATION OF DANIEL H. WEISS
No. 2:21-cv-00067-Z

2

1   structures constructed and operated by DHS at the southern border in Brownsville and Laredo, Texas,

2   with immigration judges appearing by video from San Antonio and San Diego. Cases involving MPP

3   enrollees were given priority scheduling – similar to the treatment of cases for persons who are detained

4   – and were scheduled to avoid disrupting existing dockets.

5       7. In March 2020, EOIR paused hearing cases, including MPP matters, at the non-detained

6   immigration courts due to the COVID-19 pandemic. Beginning in June of 2020, the non-detained courts

7   resumed hearing cases and by July 6, 2021, all non-detained immigration courts have resumed hearing

8   cases, although the operational levels vary at each court due to the ongoing pandemic. As of August 13,

9   2021, only four immigration courts nationwide are operating at 100 percent staffing capacity.[3] The

10  remaining courts and IACs continue to operate at a reduced capacity, with twenty-six (26) locations

11  operating at less than sixty percent (60%) capacity – that is more than 36% of locations operating with

12  significant staffing shortages.

13      8. The court closures on account of the COVID-19 pandemic have significantly impacted EOIR's

14  adjudicatory functions. As a result of the long-term closures, hundreds of thousands of cases have been

15  postponed and most have still have not had a hearing since the non-detained dockets have resumed. As of

16  August 6, 2021, only 17 locations have docket availability in 2021 for merits hearings. Twelve have

17  availability in 2022, but 35 locations do not have availability until 2023, two of which do not have

18  availability until 2025. As such, most new cases will not receive a hearing on the merits and subsequent

19  decision for several years. As of August 13, 2021, the Office of the Chief Immigration Judge had

20  1,348,787 pending matters.

21      9. In cases where an individual remains in Department of Homeland Security ("DHS") custody

22  during the pendency of immigration proceedings, EOIR seeks to minimize detention (and the costs

23  associated with detention) by prioritizing detained cases over non-detained cases. In 20 of those courts,

24  Immigration Judges preside over detained cases only; in 38 of those courts, Immigration Judges preside

25  over both detained and non-detained cases; and in 10 of those courts, Immigration Judges preside over

26

27  [3] The four locations are the detained court at Batavia, NY; the hybrid courts (that maintain both a non-detained and detained dockets) at Tucson, AZ and Saipan; and the newly opened Immigration Adjudication Center in Richmond, VA.

DECLARATION OF DANIEL H. WEISS

28  No. 2:21-cv-00067-Z

non-detained cases only. The three IAC locations hear both detained and non-detained cases. Therefore, the majority of EOIR's immigration courts and the Immigration Judges assigned to them have dockets that conduct hearings for detained cases only or at least some detained cases. As such, EOIR is limited in the resources it can divert to non-detained cases, including MPP cases.

10. Assuming DHS resumes the use of Immigration Hearing Facilities (IHFs), along the southwest border, there are only a limited number of such facilities where Immigration Judges can conduct hearings. In-person cases are also limited to those locations that are nearest to the border where DHS can transport individuals for their proceedings. DHS is responsible for physically bringing an MPP enrollee to their immigration court hearings, or facilitating their appearance from the IHF by video-teleconference ("VTC"). It is my understanding that DHS also has a finite number of VTC units and secure space for use for immigration court hearings. While the VTC units are able to connect to any immigration courtroom across the country, consideration must be given to allow counsel for the parties, any witnesses, and often an interpreter to be able to also appear before the immigration court for a given hearing when selecting a hearing location.

11. Due to space and resource constraints, EOIR could not immediately dedicate additional Immigration Judges to MPP dockets without great disruption to existing dockets and the expenditure of already reduced resources. Even if the government could construct and bring online additional IHFs and VTC units to facilitate the docketing of additional MPP cases, to do so would likely require the realignment of dockets at courts across the country for the 1,348,787 pending matters (excluding the detained cases), to make room for new MPP cases, further pushing out pending cases to 2025 and beyond.[4] As such, implementing these changes on a nationwide or widespread basis is not immediately possible. EOIR also has a policy in place to ensure that all courtrooms across the country are used at all times and because of this policy, there are generally no courtrooms sitting vacant that could be utilized for these hearings. *See* Executive Office for Immigration Review, Office of the Director, Policy Memorandum 19-11, "No Dark Courtrooms," (May 1, 2019), *available at* https://www.justice.gov/eoir/office-of-policy.

---

[4] Currently, nineteen courts have dockets out to 2024 and two courts have dockets out to 2025.

DECLARATION OF DANIEL H. WEISS
No. 2:21-cv-00067-Z

4

Even when a courtroom is not in use because the adjudicator and the parties are able to appear remotely, the immigration court has to flex that space to use it for social distancing on account of the pandemic where a hearing is taking place in-person, resulting in fewer courtrooms available for other hearings.

12. Beyond the space and judicial resource limitations, EOIR lacks sufficient administrative support staff to promptly create, docket, assign and schedule new MPP cases to be heard nationwide within a very short time frame.[5] The immigration courts are experiencing significant staffing shortages in most courts across the county, and as such the agency does not have additional resources at other locations to immediately reassign to these tasks so as to be able to immediately re-implement MPP nationwide. Because the MPP program was discontinued, EOIR decreased the number of contract administrative staff employed to manage MPP cases. As a result, new staff would need to be recruited and trained to resume hearing MPP dockets. Immigration Judges are generally supported by court staff and a court administrator. As indicated above, only four locations are currently at full administrative staffing levels for the number of Immigration Judges presiding over cases, and many are without a permanent Court Administrator. For example, as of August 13, 2021, Harlingen was at 50% of its operational capacity; San Antonio was at 60%; San Diego was at 52%; and El Paso was at 90%, but without the contract administrative staff previously dedicated to MPP.

**B. Impact of the Court's Order**

13. The COVID-19 pandemic creates unique burdens on the immigration court to implement MPP. Prior to the pandemic, MPP enrollees could be transported in substantial numbers to the San Diego and El Paso courts by van and awaited their hearings in crowded waiting areas or courtrooms. Because of the pandemic, current social distancing protocols prohibit such close contact and enforcing those necessary measures would necessarily require fewer individuals to appear in person at the court, limiting the efficiency of hearing time and ultimately resulting in delays in scheduling MPP cases, and further delays in scheduling preexisting non-MPP matters. Re-implementing MPP cases at this time during the pandemic would require court administrative staff to schedule and generate thousands of hearing notices for

---

[5] Administrative staff are responsible for creating an alien's electronic and paper record of proceedings, scheduling initial master calendar and bond hearings, and ensuring that there is sufficient docket space for required hearings.

DECLARATION OF DANIEL H. WEISS
No. 2:21-cv-00067-Z

5

1  individuals, some of whom DHS would be unable to transport to their hearings because they exhibit

2  COVID symptoms. This would require re-scheduling and reissuance of new hearing notices, which places

3  an additional administrative burden on the immigration courts. As indicated above, the significant judicial

4  and administrative resource shortages would make it severely difficult for the government to immediately

5  re-implement MPP nationwide on an orderly basis. Social distancing protocols would also limit the

6  number of MPP enrollees who can appear at the courts and IHFs. Overall, the reduced numbers of MPP

7  matters that can be heard due to social distancing protocols may result in significantly delayed hearings

8  for MPP enrollees and, as a consequence, cause further delays of displaced non-MPP cases.

9      14. Given the large number of cases already on the Immigration Court's dockets and the limited

10  space and resources available, it will be difficult and disruptive to resume dedicated dockets for MPP

11  cases. As noted, there is restricted space to hold VTC hearings along the southwest border and more than

12  half of the courts have calendars set into 2023. Requiring additional Immigration Judges to assist is not

13  feasible due to space restrictions and would result in continuances and further delays of cases on the

14  judges' dockets, who would be required to assist with these hearings. More importantly, cases currently

15  docketed during this time would need to be rescheduled to accommodate these cases. As stated above in

16  paragraph 11, EOIR has instituted a policy that requires that all courtrooms be utilized for immigration

17  hearings at all times. Therefore, in order to hold space open for these cases, EOIR would necessarily need

18  to reschedule already-scheduled hearings.

19      15. Rescheduling cases will have an adverse impact on all cases because other hearings would be

20  deferred to later dates, resulting in the further delay of those individuals who have been waiting for several

21  years for their day in court. Many noncitizens would therefore face longer overall removal proceedings

22  due to delays in order to make room to conduct hearings for MPP enrollees.

23      16. Further, rescheduling currently docketed cases will create a ripple effect on the dockets.

24  Rescheduling requires re-serving notices of hearings to the parties and their attorneys and the rescheduled

25  dates, in turn, may result in new scheduling conflicts that would require still further rescheduling. The

26  resulting delays would likely contribute to the number of cases pending at the courts. Such delays would

27

DECLARATION OF DANIEL H. WEISS
28  No. 2:21-cv-00067-Z

1   also substantially interfere with EOIR's goal of expediting other priority dockets, including the detained

2   docket, if there are less resources available to assist overall with fluctuating detention numbers and surges

3   in new arrivals who are not eligible for MPP enrollment.

4       17. Beginning in May 2021, EOIR and DHS implemented "Dedicated Dockets" in 11 cities,

5   including El Paso and San Diego. The dedicated docket process is intended to allow the agency to more

6   expeditiously and fairly make decisions in immigration cases of families who arrive between ports of entry

7   at the Southwest Border. [6]  This new process is intended to significantly decrease the amount of time it

8   takes for migrants to have their cases adjudicated while still providing fair hearings for families seeking

9   asylum at the border. Under the Dedicated Docket, IJ's are expected to generally issue a decision within

10  300 days of the initial master calendar hearing. To facilitate such timeliness while providing due process,

11  these cases are only scheduled before immigration judges who generally have docket time available to

12  manage a case on that timeline, recognizing that unique circumstances of each case may impact the ability

13  to issue a decision within that period. [7]  These dockets are anticipated to grow to 80,000 individuals and

14  are priority matters for adjudication. Given the limited judicial resources, the resumption of MPP matters

15  as an additional priority, particularly in cities that are designated for the Dedicated Docket, will likely

16  result in delays of existing cases and any new non-priority cases.

17      18. It is difficult to estimate how much time the Immigration Courts would need to docket and

18  schedule new hearings for MPP cases because the size is relatively unknown and constantly changing.

19  DHS opines that as of June 2021, there were 26,000 individuals in Mexico with active cases, and the

20  Court's Order provides that for "May and June 2021, for example, CBP recorded over 180,000 and

21  188,000 encounters, respectively, at the southwest border." Court's Order at footnote 7. In my opinion, if

22  the government were required by court order to re-implement MPP immediately as it existed prior to

23  January 20, 2021, and to utilize MPP for all applicants for admission who are not detained, the requirement

24  to manage an influx of 100,000 new MPP cases or more each month would likely push out all non-priority

25

26  [6] *See* DHS and DOJ Announce Dedicated Docket Process for More Efficient Immigration Hearings, May 28, 2021 available
    at https://www.justice.gov/opa/pr/dhs-and-doj-announce-dedicated-docket-process-more-efficient-immigration-hearings
    [7] *See* EOIR Policy Memorandum, PM 21-23, Dedicated Docket, available at

27  https://www.justice.gov/eoir/book/file/1399361/download
    DECLARATION OF DANIEL H. WEISS

28  No. 2:21-cv-00067-Z

                                        7

1  dockets for at least another calendar year or more, and continue to push the cases out as needed based on
2  the number of new receipts. Alternatively, if MPP cases are not prioritized, individuals could wait years
3  for their merit hearings to take place.
4
5  I affirm, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge and
6  belief. Executed in Dallas, Texas.
7
8  Dated: August 16, 2021

DANIEL WEISS   Digitally signed by DANIEL WEISS
Date: 2021.08.16 15:29:55 -05'00'

Daniel H. Weiss
Principal Deputy Chief Immigration Judge
Executive Office for Immigration Review

DECLARATION OF DANIEL H. WEISS
No. 2:21-cv-00067-Z

8