**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION**

| | |
|---|---|
| STATE OF TEXAS,<br>STATE OF MISSOURI,<br><br>    *Plaintiffs,*<br><br>    v.<br><br>JOSEPH R. BIDEN, JR.,<br>in his official capacity as<br>President of the United States, *et al.*,<br><br>    *Defendants.* | Civil Action No. 2:21-cv-00067-Z |

**DEFENDANTS' NOTICE OF
COMPLIANCE WITH INJUNCTION**

On August 13, 2021, the Court entered an injunction requiring Defendants to, *inter alia*, "enforce and implement [the Migrant Protection Protocols] *in good faith*." ECF No. 94 at 52; *see also State v. Biden*, No. 21-10806, 2021 WL 3674780 at *13 (5th Cir. Aug. 19, 2021). Defendants submit this notice to update the Court on Defendants' compliance with the injunction. As explained below, Defendants are actively engaged in attempting to re-implement MPP in good faith in accordance with the Court's order, but MPP is not yet operational.

1.     **Defendants Are Taking Steps To Re-Implement MPP**

Defendants are in the process of taking numerous steps to re-implement MPP in compliance with the Court's order.

First, the U.S. Government is actively engaged in discussions with the Government of Mexico regarding re-implementation of MPP. Implementing MPP requires diplomatic engagement and concurrence from Mexico to accept individuals returned from the United States to Mexico. AR152-53. Mexico "reaffirmed its sovereign right to admit or reject the entry of foreigners into its territory," when MPP was first announced, AR149 (Statement from Government of Mexico), and again following the injunction, *see* https://www.gob.mx/sre/prensa/posicionamiento-sobre-resolucion-de-los-ee-uu-respecto-de-la-implementacion-de-la-seccion-235-b-2-c-de-su-ley-de-inmigracion-y-nacionalidad. Mexico's Ministry of Foreign Affairs issued a press release on August 25 stating it was not bound by the Court's decision, but that it would enter a technical discussion with the United States regarding orderly, safe, and regular migration. *Id*.

Discussions with Mexico are ongoing and are proceeding in good faith, but, as of yet, Mexico has not yet agreed to accept returns under the Court-ordered restart of MPP. *See* Ex. A, Declaration of Blas Nuñez-Neto, ¶ 4. In order to restart MPP, the two governments must reach agreement on a number of foundational matters, including: the make-up of individuals who are

amenable to MPP, in what circumstances and locations returns to Mexico and reentry into the United States to attend court hearings can occur, how many individuals can be enrolled in given locations, and the types of support these individuals will receive in Mexico. *Id*. All of these topics, and others, remain under active negotiation. *Id*.

Importantly, MPP cannot function without Mexico's agreement to accept individuals returned from the United States under the program. *See State*, No. 21-10806, 2021 WL 3674780 at *14 (noting that "if the Government's good-faith efforts to implement MPP are thwarted by Mexico, it nonetheless will be in compliance with the district court's order…"). A prerequisite to being placed into MPP is placement into removal proceedings under 8 U.S.C. § 1229a. *See* 8 U.S.C. § 1225(b)(2)(C). And individuals need to be physically in the United States to be placed in § 1229a removal proceedings; those physically outside the United States cannot be processed for removal proceedings. Accordingly, MPP cannot function without individuals first coming to the United States and then being returned to Mexico. Return to territory is an essential element of the program.

As previously implemented, MPP was contingent upon Mexico's willingness to provide legal and procedural protections under applicable domestic and international law and certain commitments by Mexico to provide temporary status for the pendency of the stay in Mexico that, among other things, allowed individuals to apply for a work permit and ensured access to information and legal services, and allowed them to reenter and return from the United States for their court hearings. *See* AR151-54 (2019 Policy Guidance for Implementation of MPP). The U.S. Government is actively engaging with Mexico to seek this cooperation. Ex. A, ¶¶ 3-4.

Second, the U.S. Government is actively working on rebuilding infrastructure and reorganizing resources and personnel along the southwest border that are necessary to operate

MPP. Ex. A, ¶¶ 5-8. To assist with these efforts, DHS has created an interagency Task Force comprised of the various DHS components involved in MPP as well as the Executive Office for Immigration Review at the Department of Justice and the Department of State. *Id.* at ¶ 5. The Task Force is meeting regularly to rebuild the infrastructure and reapportion the staffing required to reimplement MPP. *Id.* This includes identifying funding and obtaining contracts to rebuild court hearing facilities used for immigration court hearings for individuals in MPP. *Id.* at ¶¶ 7-8. The previously existing facilities have been repurposed and demobilized as court facilities and would need to be rebuilt with COVID-19 transmission mitigation concerns taken into account. *Id.* at ¶ 7. Already, DHS has identified funds to contract for the IHFs, which will cost approximately $14.1 million to construct and $10.5 million per month to operate. *Id.* at ¶ 8. In line with the actions taken by the previous Administration, DHS plans to execute the contract for the IHFs as soon as an agreement is reached with Mexico. *Id*.

Third, the Executive Office for Immigration Review (EOIR) is working to make space available on immigration court dockets to schedule hearings for individuals in MPP. Ex. A., ¶ 6. Before individuals can be placed into MPP, they must be placed into removal proceedings under 8 U.S.C. § 1229a, *see id.* § 1225(b)(2)(C), which is done by issuing the charging document (the notice to appear) that ideally sets a hearing date. *id.* § 1229(a). This requires coordination between DHS and EOIR—coordination that is now well underway. Ex. A., ¶ 6.

Fourth, DHS is engaged in extensive planning regarding how to operationalize MPP at the southwest border, given changed conditions, including the ongoing risks posed by COVID-19 and the Defendants' obligation to implement the Center for Disease Control and Prevention's (CDC) Title 42 Order, which temporarily prohibits the introduction into the United States of certain noncitizens traveling from Canada or Mexico into the United States. *See* Order Suspending the

Right to Introduce Certain Persons From Countries Where a Quarantinable Communicable Disease Exists, 86 Fed. Reg. 42,828 (Aug. 5, 2021); *see also* 85 Fed. Reg. 65806 (Oct. 16, 2020) (CDC Order). These changed circumstances require the updating of internal guidance and documents, development of necessary health protocols, and provision of this updated information to third parties, including the noncitizens who will be placed into MPP. Ex. A., ¶ 9. Not only must the U.S. Government ensure that MPP is implemented consistent with the Title 42 order, it must ensure that the policies and procedures underlying MPP operations protect the safety and health of U.S. law enforcement, noncitizens, and U.S. communities. *Id.* at ¶¶ 10-11.

      2.     **MPP Has Not Yet Been Re-Implemented**

Despite Defendants' extensive and continuing efforts, MPP has not yet been operationally re-implemented. Because MPP is not yet operational, the U.S. Government is continuing to use other means of processing individuals arriving at the border as DHS had previously done, including by expelling individuals pursuant to the CDC's Title 42 order. Ex. A., ¶ 11. Single adults, and families to the extent possible, continue to be expelled pursuant to CDC's Title 42 authorities. *Id.*; *see* https://www.cbp.gov/newsroom/stats/cbp-enforcement-statistics/title-8-and-title-42-statistics. Individuals expelled pursuant to the Title 42 Order are not processed under Title 8 and as a result would not be subject to MPP even if MPP were currently operational.

There are, however, limits to the application of the CDC order, and there are various circumstances in which DHS is unable to apply the CDC Order for "a range of factors, including, most notably, restrictions imposed by foreign governments." 86 Fed. Reg. at 42,841, 42,836 & nn.82-83. In particular, Mexico "has placed certain nationality- and demographic-specific restrictions on the individuals it will accept for return via the Title 42 expulsion process." *Id.* at 42,836. "With limited exceptions, the Mexican government will only accept the return of Mexican and Northern Triangle nationals." *Id*. And "along sections of the border, Mexican officials refuse to accept the return of any

4

non-Mexican family with children under the age of seven." *Id*.

In addition, the CDC Order allows for the exception of persons whom the U.S. Government determines "should be excepted from this Order based on the totality of the circumstances, including consideration of significant law enforcement, officer and public safety, humanitarian, and public health interests." 86 Fed. Reg. at 42,841. Pursuant to that exception, DHS has been working with select non-governmental organizations (NGOs) to identify individuals who meet specified vulnerability criteria that merit such exceptions from Title 42. Ex. A., ¶ 11.

To the extent noncitizens are not covered by, are exempted from, or otherwise cannot be expelled pursuant to the CDC Order, they are processed instead under Title 8 and put into removal proceedings, in accordance with prior practices predating the Court's order. Ex. A., ¶ 12. Pursuant to these pre-existing policies, DHS may use its "discretion" under 8 U.S.C. § 1182(d)(5)(A) to "parole an alien into the United States" in certain circumstances, or under 8 U.S.C. § 1226 to "release" a noncitizen pending a decision on whether the noncitizen is to be removed "on 'bond' or 'conditional parole,'" *State*, 2021 WL 3674780, at *13. DHS also has discretion to place certain inadmissible noncitizens in expedited removal proceedings under 8 U.S.C. § 1225. DHS intends to continue the exercise of its pre-existing policies and practices as it continues to work in good faith to re-implement MPP. Ex. A., ¶ 12.

Dated: September 15, 2021              Respectfully submitted,

PRERAK SHAH                            BRIAN M. BOYNTON
*Acting United States Attorney*        *Acting Assistant Attorney General*

BRIAN W. STOLZ                         WILLIAM C. PEACHEY
*Assistant United States Attorney*     *Director*
                                       Office of Immigration Litigation
                                       District Court Section

                                       EREZ REUVENI
                                       *Assistant Director*

                                       JOSEPH A. DARROW
                                       *Trial Attorney*

                                       /s/ *Brian C. Ward*
                                       BRIAN C. WARD
                                       *Senior Litigation Counsel*
                                       U.S. Department of Justice
                                       Civil Division
                                       Office of Immigration Litigation
                                       District Court Section
                                       P.O. Box 868, Ben Franklin Station
                                       Washington, DC 20044
                                       Tel.: (202) 616-9121
                                       brian.c.ward@usdoj.gov


                                       *Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on September 15, 2021, I electronically filed the foregoing document with the Clerk of the Court for the United States District Court for the Northern District of Texas by using the CM/ECF system. Counsel in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

/s/ *Brian C. Ward*
BRIAN C. WARD
U.S. Department of Justice

7