# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

|  |  |
|---|---|
| STATE OF TEXAS, <br> STATE OF MISSOURI, <br><br> *Plaintiffs,* <br><br> v. <br><br> JOSEPH R. BIDEN, JR., <br> in his official capacity as <br> President of the United States, *et al.*, <br><br> *Defendants.* | Civil Action No. 2:21-cv-00067-Z |

**DECLARATION OF BLAS NUÑEZ-NETO**

I, Blas Nuñez-Neto, pursuant to 28 U.S.C. § 1746, and based upon my personal knowledge, and documents and information made known or available to me from official records and reasonably relied upon in the course of my employment, hereby declare as follows:

1. I am the Chief Operating Officer at U.S. Customs and Border Protection (CBP), within the Department of Homeland Security (DHS), and have been in this role since March 5, 2021. Since August 24, 2021, I have been serving as the Vice Chair for the Secretary of Homeland Security's Southwest Border Taskforce. I also previously served at DHS as an Advisor to CBP Commissioner Gil Kerlikowske from January 12, 2015 to January 16, 2017.

2. Pursuant to this Court's August 13, 2021, order, DHS has taken a number of steps to reimplement the Migrant Protection Protocols (MPP). These steps include (1) engaging with the Government of Mexico (GOM); (2) creating an interagency task force; (3) initiating the

1

processes required to rebuild needed infrastructure and reorganize resources; and (4) reviewing and updating MPP related policies in light of Title 42 and COVID-19.

3. Most importantly, DHS and the Department of State (DOS) are holding diplomatic engagements with the Government of Mexico (GOM) and have already held several high-level meetings to advance negotiations related to restarting MPP. Because the U.S. Government cannot implement MPP without GOM's concurrence, these negotiations—which are ongoing— are critical.

4. Though the specific details of ongoing diplomatic engagements are sensitive, at this point GOM has not yet agreed to accept individuals returned to Mexico under the court-ordered restart of MPP. Prior to implementation, our two governments must reach agreement on a number of foundational matters, to include: the demographic make-up of individuals who can be returned to Mexico pursuant to MPP; in what circumstances and locations returns and reentry for court-related matters can occur; how many individuals can be enrolled in given locations; and what kind of support these individuals will receive while in Mexico. All of these topics, and others, are being actively discussed with the GOM.

5. DHS is not waiting for these negotiations to conclude, however, before taking steps to reimplement MPP. DHS has created an interagency task force comprised of the various DHS components involved in MPP as well as the Executive Office for Immigration Review (EOIR) at the Department of Justice (DOJ) and DOS. The task force is meeting regularly to quickly and efficiently rebuild the infrastructure and reapportion the staffing required to reimplement MPP.

6. The task force is, among other things, coordinating with EOIR regarding dockets and management of removal proceedings. Before individuals can be placed into MPP, they must be placed into removal proceedings, which is done by issuing the charging document (the notice to

appear) that ideally sets a hearing date. EOIR is, as a result, working to make space available on immigration court dockets to schedule hearings for individuals in MPP. These ongoing efforts will allow the government to be able to rapidly implement MPP once an agreement is reached with GOM.

7. Restarting MPP requires operational adjustments. DHS is taking steps to rebuild the infrastructure needed for MPP and redeploy resources as needed. Importantly, MPP requires space near the border to hold immigration court proceedings. Although there are some immigration courts near the border, under the previous iteration of MPP these were not sufficient to meet the program's needs. To supplement the existing courts, DHS utilized soft-sided Immigration Hearing Facilities (IHFs) in Laredo and Brownsville, Texas. These IHFs, however, were largely dismantled and repurposed to facilitate processing at the ports of entry (POEs) when MPP was terminated. These IHFs now need to be restructured and rebuilt built to accommodate court proceedings, and these new facilities must be designed and constructed with robust mitigation measures for COVID-19. In addition, the POEs will need to find another space to process the migrants currently being processed in the repurposed facilities in order to not adversely impact POE operations.

8. DHS has identified funds to contract for the IHFs, which will cost approximately $14.1 million to construct and $10.5 million per month to operate. In line with the actions taken by the previous Administration, DHS plans to execute the contract for the IHFs as soon as an agreement is reached with GOM.[1] DHS estimates that once the contracting process has been completed the

---

[1] During the previous administration, the IHFs were not built until after the June 7, 2019 joint declaration between the U.S. Government and the Government Of Mexico. The June 7th agreement permitted further expansion of MPP.

building of the IHFs and the installation of necessary information technology will take approximately 30 days.

9. Among other efforts, the Task Force is reviewing MPP-related policies and procedures in light of two developments that were not at issue when MPP was initiated: first, the ongoing risk posed by COVID-19, and second, the continued role that DHS plays in enforcing the Center of Disease Control's (CDC's) Title 42 Order, which temporarily prohibits the entry of certain noncitizens traveling from Canada or Mexico into the United States.  Both of these developments require updates to past protocols and practices, as well as updated guidance to the workforce.

10. The current COVID-19 pandemic greatly affects how MPP is reimplemented.  In March 2020, immigration court proceedings were paused indefinitely because of COVID-19.  DHS is currently reviewing the necessary and critical measures to be taken at each step of MPP processing to protect our officers, communities, and the migrants from the spread of COVID-19 (e.g., face coverings, social distancing, disinfecting, testing, vaccines, etc.). Given these protocols, DHS is evaluating how many people can safely be processed for court hearings on a daily basis, which will in turn affect the setting of court dates and issuance of the requisite Notices to Appear.  These changed circumstances require updating of internal guidance and procedures, developing necessary health protocols, and putting plans in place to provide this updated information to third parties, including the noncitizens who will be placed into MPP. Lastly, as noted above, the IHF facilities must include COVID mitigation measures in their redesign.

11. In addition, when MPP was first implemented, DHS was not implementing the CDC's Title 42 public health order, which restricts the entry of non-citizens into the United States for public health reasons and takes precedence over the use of Title 8 authorities (such as expedited

4

removal or MPP returns) at the land border. DHS is actively assessing the interplay of this authority with the reimplementation of MPP and developing appropriate guidance to the field to clarify this interplay. Importantly, individuals who are subject to Title 42 will continue to be expelled when MPP is reimplemented. However, the Title 42 order has always included exceptions for humanitarian reasons, and DHS has been working with non-governmental partners to identify individuals who meet specified vulnerability criteria that merit such exceptions from Title 42. In other cases, individuals who are covered by Title 42 cannot be expelled because of the GOM does not accept the return of certain nationalities or demographics at certain parts of the border. There is no guarantee that the GOM will accept via MPP those whom it has refused to allow to be expelled pursuant to Title 42.

12. Those individuals who are not covered by, are exempted from, or cannot be expelled pursuant to Title 42 are put into Title 8 removal proceedings.. DHS also has the discretion to place certain inadmissible noncitizens into expedited removal. DHS intends to continue the exercise of its pre-existing policies and practices as it continues to work in good faith to re-implement MPP.

13. These actions demonstrate that DHS has been working, and will continue to work, in good faith to reimplement the MPP, as required by the court's injunction.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief. Executed on this 15th day of September, 2021

_____
Blas Nuñez-Neto
Vice Chair, Southwest Border Taskforce
Department of Homeland Security
Chief Operating Officer
U.S. Customs and Border Protection