IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| STATE OF TEXAS,<br>STATE OF MISSOURI,<br><br>    *Plaintiffs,*<br><br>    v.<br><br>JOSEPH R. BIDEN, JR.,<br>in his official capacity as<br>President of the United States, *et al.*,<br><br>    *Defendants.* | Civil Action No. 2:21-cv-00067-Z |

## **DEFENDANTS' MONTHLY REPORT PURSUANT TO COURT'S INJUNCTION**

On August 13, 2021, the Court entered an injunction requiring Defendants to, *inter alia*, "enforce and implement [the Migrant Protection Protocols (MPP)] *in good faith*." ECF No. 94 at 52; *see State v. Biden*, No. 21-10806, 2021 WL 3674780 at *13 (5th Cir. Aug. 19, 2021). "To ensure compliance with this order," the Court provided, "starting September 15th, 2021, the Government must file with the Court on the 15th of each month, a report stating

> (1) the total monthly number of encounters at the southwest border; (2) the total monthly number of aliens expelled under Title 42, Section 1225, or under any other statute; (3) Defendants' total detention capacity as well as current usage rate; (4) the total monthly number of "applicants for admission" under Section 1225; (5) the total monthly number of "applicants for admission" under Section 1225 paroled into the United States; and (6) the total monthly number of "applicants for admission" under Section 1225 released into the United States, paroled or otherwise.

ECF No. 94 at 52-53.

Defendants submit the following Report in compliance with this requirement. Given the monthly nature of this reporting, Defendants will supply the data for the complete preceding month on the 15th of the following month. Accordingly, this September 15th report reflects data from August 1 through 31; next month's report will reflect data from September 1 through 30; etc.

As explained in the Notice of Compliance Defendants also filed, ECF No. 105, Defendants are actively engaged in attempting to re-implement MPP in accordance with the Court's order, but MPP is not yet operational.

**1. Total Monthly Number of Encounters at the Southwest Border**

For the month of August 2021, DHS reported 208,887 total encounters at the Southwest Border. Ex. A at 1 (CBP Report – August 2021). This figure combines statistics reported by the U.S. Customs and Border Protection's Office of Field Operations (OFO), which deals with noncitizens seeking to enter at land ports of entry (POE), with statistics from the U.S. Border Patrol (USBP), which apprehends noncitizens seeking to enter between POEs.

1

2. **Total Monthly Number of Aliens Expelled Under Title 42, Section 1225, or Under Any Other Statute**

For the month of August 2021, DHS reported 98,476 total noncitizens expelled under Title 42 and removed or returned under Title 8 authorities (including 8 U.S.C. § 1225). This figure includes 93,414 Title 42 expulsions and 3,859 Title 8 removals and returns reported by CBP, Ex. A at 2, and 1,203 removals under 8 U.S.C. § 1225 reported by U.S. Immigration and Customs Enforcement (ICE)[1], Ex. B (ICE Removals Under Section 1225 – August 2021). As explained in Exhibit A, CBP's Title 8 removals and returns include several categories of removals and returns conducted by OFO and USBP, including expedited removals, reinstated orders of removal, voluntary returns, returns pursuant to 8 U.S.C. § 1225(b)(2)(C), withdrawals of applications for admission, etc. Ex. A at 2-3.

3. **Total Detention Capacity and Current Usage Rate**

For the month of August 2021, DHS reported that its total detention capacity was approximately 32,555, a figure combining CBP's average holding capacity of 5,755, Ex. A at 3-4, and ICE's current approximate funded detention capacity of 26,800,[2] Ex. C (ICE Detention Capacity – August 2021). CBP's approximate holding capacity is the sum of OFO's approximate holding capacity, 1,005, and USBP's average holding capacity, 4,750. Ex. A at 3-4 & n.11.

DHS reported that the current average daily usage rate throughout August for CBP

---

[1] ICE removals include noncitizens processed for Expedited Removal (ER) or Voluntary Return (VR) that are turned over to ICE Enforcement and Removal Operations (ERO) for detention. Noncitizens processed for ER and not detained by ERO or VR after June 1, 2013 and not detained by ERO are primarily processed by CBP, and would be included within CBP's data. Ex. B.

[2] ICE has approximately 34,000 funded detention beds available nationwide but its full inventory of bedspace is severely limited to 75% capacity, or approximately 26,800 beds, due to various court orders limiting the intake of noncitizen detainees, an increase in detention facility contract terminations, detention facility contract modifications, and the ongoing COVID-19 pandemic. *See, e.g.*, *Fraihat v. ICE*, 445 F. Supp. 3d 709 (C.D. Cal. Apr. 20, 2020).

detention was 14.45% for OFO facilities and 208.15% for Border Patrol facilities, Ex. A at 3-4 & n.11, and approximately 93.9% for ICE detention facilities. *See* Ex. C (rate equals average daily population of 25,162 for the month of August 2021 over the current approximate total detention capacity of 26,800).

### 4. Total Monthly Number of Applicants for Admission Under § 1225

For the month of August 2021, DHS reported that the total number of applicants for admission under Section 1225 encountered[3] by CBP was 115,473. Ex. A at 4-5. This figure is consistent with CBP's total number of noncitizen encounters subtracting its Title 42 expulsions. *See* Ex. A at 4 n.12; *supra* §§ 1, 2.

### 5. Total Monthly Number of Applicants for Admission Under § 1225 Paroled Into the United States

For the month of August 2021, DHS reported that the total number of applicants for admission under Section 1225 paroled into the United States was 12,469, a figure reflecting 11,901 USBP Apprehensions with a Parole Disposition and 568 OFO Inadmissible Aliens with a Parole Disposition. Ex. A. at 5.

### 6. Total Monthly Number of Applicants for Admission Under § 1225 Released Into the United States, Paroled or Otherwise

For the month of August 2021, DHS reported that the total number of applicants for

---

[3] An applicant for admission is defined as "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters)." 8 U.S.C. § 1225(a)(1). Thus, an applicant for admission may include noncitizens that have never been encountered by CBP. At this time, CBP does not have a mechanism to track applicants for admission in the United States that are not encountered by CBP. Ex. A at 4 n.12. All references in this document to "applicants for admission" refer to noncitizen applicants for admission encountered at or in-between POEs by CBP.

admission under Section 1225 released into the United States, paroled or otherwise, was 65,766,[4] a figure reflecting CBP's monthly total of releases comprising all categories. Ex. A at 5.[5]

| | |
|---|---|
| Dated: September 15, 2021 | Respectfully submitted, |
| | |
| PRERAK SHAH | BRIAN M. BOYNTON |
| *Acting United States Attorney* | *Acting Assistant Attorney General* |
| | |
| BRIAN W. STOLZ | WILLIAM C. PEACHEY |
| *Assistant United States Attorney* | *Director* |
| | Office of Immigration Litigation |
| | District Court Section |
| | |
| | EREZ REUVENI |
| | *Assistant Director* |
| | |
| | BRIAN C. WARD |
| | *Senior Litigation Counsel* |
| | |
| | /s/ *Joseph A. Darrow* |
| | JOSEPH A. DARROW |
| | *Trial Attorney* |
| | U.S. Department of Justice |
| | Civil Division |
| | Office of Immigration Litigation |
| | District Court Section |
| | P.O. Box 868, Ben Franklin Station |
| | Washington, DC 20044 |
| | Tel.: (202) 598-7537 |
| | Joseph.a.darrow@usdoj.gov |
| | |
| | *Counsel for Defendants* |

---

[4] CBP transfers a certain number of encountered noncitizens to ICE each month. At the time of this filing, we have not yet been provided precise data about how many of those transferred noncitizens are released or detained each month. We are endeavoring to obtain that data from the relevant agency and will file it with the court as soon as possible.

[5] This report does not include data on unaccompanied alien children (UCs), as defined in 6 U.S.C. § 279(g), who the Court recognized are not amenable to MPP, ECF No. 94 at 9, and who are subject to special processing and are transferred to U.S. Department of Health and Human Services Custody pursuant to the Trafficking Victims Protection Reauthorization Act. *See* 8 U.S.C. §§1232(a)(5)(D), 1232(b)(3), 1232(c)(2)(A), 1232(c)( 3); see also CBP, Southwest Border Encounters, https://www.cbp.gov/newsroom/stats/southwest-land-border-encounters (providing statistics on UCs encountered by CBP).

## CERTIFICATE OF SERVICE

I hereby certify that on September 15, 2021, I electronically filed the foregoing document with the Clerk of the Court for the United States District Court for the Northern District of Texas by using the CM/ECF system. Counsel in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

/s/ *Joseph A. Darrow*
JOSEPH A. DARROW
U.S. Department of Justice