**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION**

|  |  |  |
|---|---|---|
| STATE OF TEXAS,<br>STATE OF MISSOURI,<br><br>*Plaintiffs,*<br><br>v.<br><br>JOSEPH R. BIDEN, JR.,<br>in his official capacity as<br>President of the United States, *et al.,*<br><br>*Defendants.* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 2:21-cv-00067-Z |

<u>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO ENFORCE
INJUNCTION AND FOR EXPEDITED DISCOVERY**</u>

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................iii

INTRODUCTION ..........................................................................................................1

BACKGROUND ............................................................................................................2

STANDARD..................................................................................................................3

ARGUMENT ................................................................................................................4

    I.   Plaintiffs Fail to Show Defendants Are Not Re-Implementing
        MPP in Good Faith ............................................................................................4

    II.   Plaintiffs Are Not Entitled to Discovery ...............................................12

CONCLUSION............................................................................................................19

# TABLE OF AUTHORITIES

## Cases

*Bailey v. Roob*,
  567 F.3d 930 (7th Cir. 2009) .................................................................................... 3

*Bogan v. City of Boston*,
  489 F.3d 417 (1st Cir. 2007) .................................................................................. 15

*Booker v. McDuffie*,
  No. 5:18-CV-208-BQ, 2019 WL 3937225 (N.D. Tex. July 22, 2019) .................................. 18

*Bucklew v. St. Clair*,
  No. 3:18-CV-2117-N (BH), 2019 WL 2251109 (N.D. Tex. May 15, 2019) ........................... 18

*City of Dallas, Tex. v. Hall*,
  No. 3:07- CV-060-P, 2007 WL 3257188 (N.D. Tex. Oct. 29, 2007) .................................... 14

*Colvin v. Caruso*,
  605 F.3d 282 (6th Cir. 2010) .................................................................................. 18

*De Beers Consol. Mines v. United States*,
  325 U.S. 212 (1945) ............................................................................................. 18

*Dep't of Commerce v. New York*,
  139 S. Ct. 2551 (2019) .......................................................................................... 16

*Dep't of Interior v. Klamath Water Users Protective Ass'n*,
  532 U.S. 1 (2001) ................................................................................................. 14

*DHS v. Thuraissigiam*,
  140 S. Ct. 1959 (2020) ........................................................................................... 9

*Franklin Sav. Ass'n v. Ryan*,
  922 F.2d 209 (4th Cir. 1991) .................................................................................. 14

*Heartland Reg'l Med. Ctr. v. Leavitt*,
  415 F.3d 24 (D.C. Cir. 2005) .................................................................................. 17

*In re Cheney*,
  544 F.3d 311 (D.C. Cir. 2008) ................................................................................ 15

*In re Commodity Future Trading Comm'n*,
  941 F.3d 869 (7th Cir. 2019) .................................................................................. 15

*In re Dep't of Commerce,*
  139 S. Ct. 16 (2018) ................................................................................. 16

*In re Dual-Deck Video Cassette Recorder Antitrust Litig.,*
  10 F.3d 693 (9th Cir. 1993) ......................................................................... 3

*In re FDIC,*
  58 F.3d 1055 (5th Cir. 1995) ........................................................ 15, 16, 17

*In re McCarthy,*
  636 F. App'x 142, 145 (4th Cir. 2015) ..................................................... 15

*In re Stone,*
  986 F.2d 898 (5th Cir. 1993) ..................................................................... 16

*In re United States,*
  197 F.3d 310 (8th Cir. 1999) ..................................................................... 15

*In re United States,*
  985 F.2d 510 (11th Cir. 1993) ............................................................ 15, 16

*Infinite Fin. Sols., Inc. v. Strukmyer, LLC,*
  No. 3:14-CV-354-N, 2014 WL 12586282 (N.D. Tex. July 29, 2014) ...................... 18

*Kinnear-Weed Corp. v. Humble Oil & Ref. Co.,*
  441 F.2d 631 (5th Cir. 1971) ..................................................................... 13

*Lederman v. N.Y.C. Dep't of Parks & Recreation,*
  731 F.3d 199 (2d Cir. 2013) ....................................................................... 14

*Loa-Herrera v. Trominski,*
  231 F.3d 984 (5th Cir. 2000) ..................................................................... 19

*Madison Servs., Inc. v. United States,*
  94 Fed. Cl. 501 (2010) ............................................................................... 13

*Morgan v. United States,*
  304 U.S. 1 (1938) ....................................................................................... 14

*Oceana, Inc. v. Ross,*
  920 F.3d 855 (D.C. Cir. 2019) ................................................................... 14

*Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.,*
  810 F.3d 631 (9th Cir. 2015) ..................................................................... 18

iv

*Parsons v. Ryan*,
    949 F.3d 443 (9th Cir. 2020) ................................................................. 3

*Petroleos Mexicanos v. Crawford Enterprises, Inc.*,
    826 F.2d 392 (5th Cir. 1987) ............................................................. 3, 4

*Piggly Wiggly Clarksville, Inc. v. Mrs. Baird's Bakeries*,
    177 F.3d 380 (5th Cir. 1999) ................................................................. 4

*SEIU Nat'l Indus. Pension Fund v. Artharee*,
    48 F. Supp. 3d 25 (D.D.C. 2014) .......................................................... 4

*Shillitani v. United States*,
    384 U.S. 364 (1966) ............................................................................... 3

*Simplex Time Recorder Co. v. Sec'y of Labor*,
    766 F.2d 575 (D.C. Cir. 1985) ........................................................... 15

*Sossamon v. Lone Star State of Texas*,
    560 F.3d 316 (5th Cir. 2009) ....................................................... 1, 2, 3

*Spallone v. United States*,
    493 U.S. 265 (1990) ....................................................................... 4, 14

*State v. U.S. Army Corps of Eng'rs*,
    424 F.3d 1117 (11th Cir. 2005) .......................................................... 18

*Sykes v. Brown*,
    90 F.R.D. 77 (E.D. Pa. 1981) ............................................................. 17

*Test Masters Educ. Servs., Inc. v. Singh*,
    428 F.3d 559 (5th Cir. 2005) ........................................... 4, 11, 12, 13

*United States v. Rylander*,
    460 U.S. 752 (1983) ............................................................................... 4

*Walker v. NCNB Nat'l Bank of Fla.*,
    810 F. Supp. 11 (D.D.C. 1993) .......................................................... 16

*Watkins v. Washington*,
    511 F.2d 404 (D.C. Cir. 1975) ........................................................... 17

**Statutes**

8 U.S.C. § 1225(b)(2)(C) ................................................................................. 8

8 U.S.C. § 1229a ................................................................................................................. 8

18 U.S.C. § 207(j)(6)(A) ...................................................................................................... 6

42 U.S.C. § 265 ................................................................................................................... 9

## Regulations

6 C.F.R. § 5.49(a) ............................................................................................................... 6

## INTRODUCTION

The Court should deny Plaintiffs' motion to enforce the Court's injunction and for discovery. The government is implementing the injunction in good faith and is entitled to a presumption of good faith in its actions. *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 325 (5th Cir. 2009) ("government actors in their sovereign capacity and in the exercise of their official duties are accorded a presumption of good faith because they are public servants"). The burden is on Plaintiffs to identify specific non-compliance with the injunction, and they have not met their heavy burden of proof to show the government is not acting in good faith to comply. Rather, Plaintiffs demand an opportunity to examine multiple high-ranking agency officials regarding privileged agency deliberations in order to seek evidence of such non-compliance without first satisfying their heavy evidentiary burden for a motion to enforce. Further, they offer no valid basis for their request for other broad-ranging discovery related to Haitian migrants, who have never previously fallen within the scope of MPP and who have no connection to this lawsuit or the Court's injunction.

The government has already provided the first of the monthly data reports the Court ordered as the means of monitoring compliance with the injunction, and the government will be providing a second report tomorrow. Additionally, although not ordered to do so, the government provided a notice to the Court, accompanied by a declaration, setting out the agency's extensive efforts to re-implement MPP expeditiously. This Court should reject Plaintiffs' assertion that more is required, and their request that the Court micromanage the re-implementation of MPP, international diplomacy with Mexico, and other aspects of how DHS is managing the border unrelated to MPP.

**BACKGROUND**

On August 13, 2021, the Court entered an injunction requiring Defendants to, *inter alia*, "enforce and implement [the Migrant Protection Protocols] *in good faith*." ECF No. 94 at 52; *see also Texas v. Biden*, 10 F.4th 538, 559 (5th Cir. 2021) (noting "injunction only requires good faith on the part of the United States—if the Government's good-faith efforts to implement MPP are thwarted by Mexico, it nonetheless will be in compliance with the district court's order…"). Defendants took immediate steps to comply with the injunction. As explained in the September 15, 2021 Notice of Compliance, ECF No. 105, Defendants are actively moving to re-implement MPP in accordance with the Court's order. Although MPP is not yet operational, Defendants are recreating the administrative, personnel, physical, and policy framework necessary to operate MPP and are prepared to re-implement MPP in mid-November, subject to Mexico's decision to accept those that the U.S. seeks to return. *See* Ex. 1, Declaration of Blas Nuñez-Neto, at ¶ 3. Defendants have also engaged in multiple discussions with the Government of Mexico to explain the re-implementation plans and secure Mexico's independent decision to accept the return of those enrolled in MPP. *Id*. ¶¶ 4-7. As previously explained, Mexico "reaffirmed its sovereign right to admit or reject the entry of foreigners into its territory," when MPP was first announced, AR149 (Statement from Government of Mexico), and again following the injunction, *see* https://www.gob.mx/sre/prensa/posicionamiento-sobreresolucion-de-los-ee-uu-respecto-de-la-implementacion-de-la-seccion-235-b-2-c-de-su-ley-deinmigracion-y-nacionalidad, and MPP cannot be re-implemented without Mexico's decision to accept those enrolled in MPP.

On September 23, 2021, Plaintiffs filed a Motion to Enforce Permanent Injunction and For Expedited Discovery, ECF No. 107. Based on hearsay, out-of-context media reports on unrelated subjects, and speculation, Plaintiffs claim Defendants are not working in good faith to re-

implement MPP, primarily because, according to former Acting Commissioner of U.S. Customs and Border Protection (CBP) Mark Morgan, Defendants are allegedly not following the precise steps taken by the U.S. Department of Homeland Security (DHS) when MPP was first piloted in 2019. *Id.*; *see* ECF No. 108. Additionally, Plaintiffs claim they are entitled to discovery relating to Defendants' compliance—namely, six depositions of high-ranking agency officials—as well as discovery relating to Haitian migrants, who were not previously returned to Mexico pursuant to MPP because Mexico never agreed to accept their return under MPP. Mot. at 9-10. Plaintiffs seek relief in the form of "an order (1) finding that Defendants are not in compliance with the permanent injunction, (2) commanding concrete steps to comply; and (3) allowing expedited discovery relating to compliance and specifically to the current crisis at the border with Haitian migrants." *Id.* at 10.

Plaintiffs' motion is meritless, and their requested relief should be denied.

## STANDARD

Courts have the power to enforce compliance with their lawful orders. *See Shillitani v. United States*, 384 U.S. 364, 370 (1966) ("There can be no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt."). However, in moving to enforce an injunction, the "movant … bears the burden of establishing by clear and convincing evidence … that the respondent failed to comply with the court's order." *Petroleos Mexicanos v. Crawford Enterprises, Inc.*, 826 F.2d 392, 401 (5th Cir. 1987); *see also Parsons v. Ryan*, 949 F.3d 443, 471 (9th Cir. 2020) ("the burden of proof properly rest[s] with Plaintiff[] as the party seeking to demonstrate Defendants' non-compliance"); *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993). A party moving for enforcement is not entitled to a presumption of non-compliance, and a movant cannot show clear and convincing

3

evidence by a combination of attenuated inferences and unsupported hearsay. *See Bailey v. Roob*, 567 F.3d 930, 935 (7th Cir. 2009). "The evidence must be 'so clear, direct and weighty and convincing as to enable the fact finder to come to a clear conviction, without hesitancy, of the truth of the precise facts of the case.'" *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 582 (5th Cir. 2005) (quoting *Piggly Wiggly Clarksville, Inc. v. Mrs. Baird's Bakeries*, 177 F.3d 380, 383 (5th Cir. 1999)).[1]

Even if Plaintiffs could establish by clear and convincing evidence that Defendants have failed to perform "certain conduct" required by the injunction, Defendants "can defend against it by showing a present inability to comply with the subpoena or order." *Petroleos Mexicanos*, 826 F.2d at 401 (citing *United States v. Rylander*, 460 U.S. 752, 757 (1983)); *accord SEIU Nat'l Indus. Pension Fund v. Artharee*, 48 F. Supp. 3d 25, 30 (D.D.C. 2014) ("[A] party can justify its failure to comply with a court order by establishing [an] inability to comply or good faith substantial compliance.").

Finally, when ordering compliance, a court "is obliged to use the least possible power adequate to the end proposed." *Spallone v. United States*, 493 U.S. 265, 276 (1990) (citations and quotation marks omitted).

## ARGUMENT

### I.      Plaintiffs Fail to Show Defendants Are Not Re-implementing MPP in Good Faith.

Defendants are re-implementing MPP in good faith, in as reasonably expeditious a manner as is feasible. Plaintiffs' unsubstantiated inferences and speculation do not prove otherwise, much less by clear and convincing evidence. Plaintiffs' motion rests on five contentions that Defendants

---

[1] Plaintiffs do not dispute that they bear the burden of showing non-compliance by clear and convincing evidence. *See* Mot. at 5.

are not implementing MPP in good faith: (1) Defendants can fully re-implement MPP without any engagement and consultation with Mexico; (2) Defendants have not implemented MPP on a rolling basis in a "phased" approach as they did when initially piloting MPP; (3) Defendants are allegedly waiting to have physical structures across the entire southwest border in place before re-implementing MPP; (4) health measures necessitated by the COVID-19 pandemic have no bearing on how expeditiously MPP can be re-implemented; and (5) "the present Haitian-migrant crisis" could be addressed by the reimplementation of MPP. Plaintiffs' theories lack merit.

First, Defendants have made clear they are taking steps to re-implement MPP as expeditiously as possible. The original implementation of MPP did not happen overnight. To the contrary, it required, in addition to the agreement of Mexico, the creation of substantial physical and operational infrastructure, which took time to put in place. Similar foundational work is necessary now to re-establish MPP, which has been dormant for months, as resources were directed to other operations. Defendants have detailed their comprehensive efforts to re-lay this foundation, which includes engaging diplomatically with Mexico to explain the implementation plan and attempt to secure its decision to accept MPP enrollees; rebuilding infrastructure and reorganizing resources and personnel along the southwest border that are necessary to operate MPP; developing space and capacity on immigration court dockets to accommodate immigration court hearings for individuals returned to Mexico pursuant to MPP; identifying funding and obtaining contracts to rebuild court hearing facilities used for immigration court hearings; and drafting both internal guidance for DHS agents and officers who will be implementing MPP and informational materials for the noncitizens who will be subject to it. *See* ECF No. 105 at 1-4; ECF No. 105-1 ¶¶ 2-13; Ex. 1, ¶¶ 3-7. And while obtaining Mexico's decision to accept MPP enrollees is essential to make MPP operational, as explained further below, "DHS is not waiting for these

negotiations to conclude … before taking steps to reimplement MPP." ECF No. 105-1 ¶ 5.

Plaintiffs' suggestion that MPP's re-implementation should be proceeding on a different course appear to be based on the claims of former Acting CBP Commissioner Mark Morgan. *See* ECF No. 108. But Morgan's declaration actually supports Defendants' explanation that securing Mexico's decision to accept MPP enrollees is a necessary prerequisite to MPP's reimplementation. He acknowledges that MPP was implemented in 2019 pursuant to "an agreement … obtained between the two countries" that was made "following extensive diplomatic and logistical coordination," and that the items requiring Mexico's agreement are "foundational" to the operation of MPP. *Id.* ¶ 17. Further, while Morgan describes MPP as initially being implemented in a "phased" approach, he fails to note that Mexico's independent decision to accept returns to Mexico was necessary even in the places in which MPP was initially implemented. He also fails to address how long it took from the initial agency decision to create MPP until the phrased approach was ready to be implemented, which is of obvious relevance to MPP's current reimplementation. *See id.* ¶ 19. Indeed, it was not until over five weeks *after* the United States had originally secured Mexico's cooperation for MPP—from December 20, 2018 to January 28, 2019—that DHS began the *first* stage of the phased rollout of MPP. AR 149, 155, 156, 684. As of this date, discussions with Mexico are ongoing. Mexico, however, has not yet exercised its sovereign prerogative to accept any returns, ECF No. 105 ¶ 4.[2]

---

[2] In addition, the Court should disregard Morgan's opinions because federal regulations preclude him from offering them in these circumstances. Except in situations inapplicable here, regulation provides that "[DHS] employees shall not provide opinion or expert testimony based upon information which they acquired in the scope and performance of their official Department duties, except on behalf of the United States or a party represented by the Department of Justice." 6 C.F.R. § 5.49(a). With regard to former employees, such testimony is excepted only to the extent it "involves only general expertise gained while employed at the Department." *Id.* § 5.49(b). Morgan's opinions about the details of MPP's development and rollout clearly exceed "general expertise."

Second, Plaintiffs' argument regarding Mexico's cooperation fails to identify any noncompliance by Defendants. Even if the initial announcement of MPP was made before Mexico's decision to accept returns had been obtained, Mexico's decision was a necessary prerequisite to the implementation of MPP, and it is likewise a necessary prerequisite to the re-implementation of MPP. Ex. 1 ¶¶ 4-13. Among the many considerations, MPP cannot be restarted absent a shared understanding of key aspects of the program, including "the demographic make-up of individuals who can be returned to Mexico pursuant to MPP; in what circumstances and locations returns and reentry for court-related matters can occur; how many individuals can be enrolled in given locations; and what kind of support these individuals will receive while in Mexico." ECF No. 105-1 ¶ 4; *see also* Ex. 1 ¶¶ 6, 11-12. Recognizing the import of this requirement, the Fifth Circuit noted that Mexico has the power to undermine re-implementation of MPP if it does not agree with the United States' planned implementation. *See Texas v. Biden*, 10 F.4th 538, 559 (5th Cir. 2021) (noting that "if the Government's good-faith efforts to implement MPP are thwarted by Mexico, it nonetheless will be in compliance with the district court's order…").

Plaintiffs assert that Defendants are improperly waiting to secure agreements with Mexico before taking any steps to re-implement MPP. *See* Mot. at 6. But Plaintiffs also acknowledge "certain portions of MPP do depend on Mexico's assent," *id.*, and their declarant agrees that aspects of MPP that Defendants cited as still awaiting Mexico's assent are "foundational" aspects of the program, ECF No. 108 ¶ 17. Moreover, as explained further below, "DHS is not waiting for these negotiations to conclude … before taking steps to reimplement MPP," and is instead fully engaged in recreating the domestic administrative, personnel, and physical structures necessary to

operationalize the program once Mexico independently decides to accept individuals for return under the MPP. ECF No. 105-1 ¶ 5.[3]

Plaintiffs also overlook the limitations on the statutory return authority under 8 U.S.C. § 1225(b)(2)(C) when they claim that the U.S. government does not need Mexico's decision to accept MPP enrollees to restart the program because the U.S. can simply "refuse admission" to noncitizens amendable to MPP at ports of entry. Mot. at 6. MPP is not, and was never, a simple refusal to admit noncitizens at ports of entry. Rather, MPP was applied only to noncitizens who have crossed the border and are physically present *in the U.S.* and involves a process by which they are placed into removal proceedings. Indeed, to be amenable to return under Section 1225(b)(2)(C), a noncitizen must both (1) "arriv[e] on land" from a foreign contiguous territory to the United States and (2) be placed into removal proceedings under 8 U.S.C. § 1229a. *See* 8 U.S.C. § 1225(b)(2)(C) ("In the case of an alien described in subparagraph (A) who is arriving on land (whether or not at a designated port of arrival) from a foreign territory contiguous to the United States, the [Secretary] may return the alien to that territory pending a proceeding under section 1229a of this title."[4]); ECF No. 105-1 ¶ 6 ("Before individuals can be placed into MPP, they must be placed into removal proceedings ...."). Neither requirement can be met for noncitizens who have not yet entered the United States. These noncitizens have not arrived in the United States and

---

[3] Notably, while Plaintiffs argue here that "Defendants do not need an agreement with Mexico," Mot. at 6, Texas has argued in briefs filed in other cases in this district that the relief granted in this case "ensures only that the Defendants will attempt to re-establish the Migrant Protection Protocols in good faith; it cannot require Mexico to agree to reconstitute the program on the same terms as previously existed, and even if it could do so it could not bind Mexico to those terms." Texas's Consolidated Reply at 12-13, *Texas v. Biden*, No. 4:21-cv-579 (N.D. Tex. Oct. 11, 2021).

[4] Section 1225 refers to the Attorney General, but those functions have been transferred to the Secretary of Homeland Security. *See DHS v. Thuraissigiam*, 140 S. Ct. 1959, 1965 n.3 (2020).

therefore cannot be placed in removal proceedings. In short, the statute itself requires that noncitizens must be on U.S. soil before they may be eligible for consideration for contiguous-territory *return*.[5]

Third, Plaintiffs wrongly assert that Defendants are awaiting construction of physical Immigration Hearing Facilities (IHFs) before re-implementing MPP. Mot. at 6-7. To the contrary, Defendants reported that there are already "some immigration courts near the border" that can be used for MPP, ECF No. 105-1 ¶ 7, but that "these [pre-existing immigration courts] were not sufficient to meet the program's needs." *Id*. And on October 13, DHS issued a task order under an existing contract to rebuild the IHFs in Laredo and Brownsville, Texas. Ex. 1 ¶ 15. These facilities will take about 30 days to construct at a cost of approximately $14.1 million to build and $10.5 million per month to operate, and will allow DHS to re-implement MPP border-wide, which it currently deems preferable to operating MPP in only certain segments of the border. *Id*. ¶ 7. Moreover, Defendants' explanation that "DHS is taking steps to rebuild the infrastructure needed for MPP and redeploy resources as needed" does not reference merely the *physical* infrastructure, but the entire administrative, operational, personnel and policy edifice necessary to operate MPP, all of which are underway regardless of the timing of IHF construction. ECF No. 105-1 ¶ 7; *see, e.g., id*. ("Restarting MPP requires operational adjustments."); *id*. ¶ 5 ("The task force is meeting regularly to quickly and efficiently rebuild the infrastructure and reapportion the staffing required to reimplement MPP."); *id*. ¶ 9 (agency taskforce is reviewing and making "updates to past protocols and practices, as well as updated guidance to the workforce").

---

[5] The majority of individuals who were previously placed in MPP were individuals who had already entered the United States between ports of entry. *See* https://www.cbp.gov/newsroom/stats/migrant-protection-protocols; https://www.cbp.gov/newsroom/stats/migrant-protection-protocols-fy-2020.

Fourth, Defendants are not delaying re-implementation of MPP due to COVID-19 or Title 42, as Plaintiffs hypothesize. *See* Mot. at 8-9. Defendants simply explained that many noncitizens are currently being expelled under Title 42 and, therefore, would not be processed for return under MPP even if the program was fully operational at this time. ECF No. 105 at 4. Defendants also noted that re-implemented MPP procedures and facilities will have to account for the health risk posed by COVID-19. *Id.* at 3. And despite the fact that the government previously developed guidelines for restarting court hearings for MPP cases during the pandemic, those plans were developed prior to the arrival of the Delta variant and never implemented. Ex. 1 ¶ 18. The unexpected emergence of the highly contagious Delta variant this past year added an additional complicating factor that requires updates to these guidelines. *Id.* As a result, DHS is continuing to review—and in the course of finalizing—the measures needed to ensure that hearings can take place in a manner that protects government personnel, communities, and migrants from the spread of COVID-19. *Id.*

Fifth, Plaintiffs suggest that the "present Haitian-migrant crisis" demonstrates that Defendants are not re-implementing MPP in good faith and that MPP must be made fully operational immediately to handle the crisis. Mot. at 9; *see id.* at 2-4. But the recent influx of Haitians has no bearing on the re-implementation of MPP: In the prior implementation of MPP, Mexico accepted the return only of Spanish-speaking nationals and Brazilians in certain locations. Ex. 1 ¶ 5. Mexico did not agree to accept the return of Haitians or other nationals of non-Spanish-speaking nations under MPP. *Id.*; *see also* CBP, Migrant Protection Protocol Guidance, p. 21, https://www.cbp.gov/sites/default/files/assets/documents/2021-Aug/ Migrant%20Protection%20Protocols%2001.pdf; Cong. Res. Serv., "Supreme Court Grants Stay in MPP Case," Mar. 8, 2020 (noting that CBP guidance "exclude[s] some other populations from

the program, such as aliens from non-Spanish speaking countries other than Brazil"); Spagat, Elliot, "Guidelines ask agents to target Spanish speakers at the border," AP News (Mar. 7, 2019), https://apnews.com/article/caribbean-border-patrols-az-state-wire-tx-state-wire-central-america-cb7a2d4f524945949901e985fa7611f3.[6]

Thus, Plaintiffs fail to establish by "clear, direct and weighty and convincing" evidence that Defendants have failed to comply with the Court's injunction. *Test Masters Educ. Servs., Inc.*, 428 F.3d at 582. Defendants continue to seek Mexico's assent, as required to fully implement MPP. Defendants cannot, despite their ongoing good faith efforts to secure this assent, direct Mexico's foreign policy or control when Mexico will reach a decision. Plaintiffs' motion to enforce the injunction should be denied.

## II.     Plaintiffs Are Not Entitled to Discovery.

Plaintiffs also request broad-ranging discovery, including depositions of multiple high-ranking agency officials, and discovery related to Haitian migrants (who would not have been returned under MPP) for time periods well before the start of this case. Mot. at 9-10. The Court should reject this extraordinary request.

---

[6] Because the number of Haitian migrants arriving at the southwest border is not related to the prior termination of MPP, Plaintiffs' assertions with respect to these migrants is not evidence of non-compliance with the injunction. In any event, DHS has already addressed the other measures it is using to address Haitian migrants arriving at the border: "The majority of migrants continue to be expelled under CDC's Title 42 authority. Those who cannot be expelled under Title 42 and do not have a legal basis to remain will be placed in expedited removal proceedings. DHS is conducting regular expulsion and removal flights to Haiti, Mexico, Ecuador, and Northern Triangle countries." https://www.dhs.gov/news/2021/09/18/dhs-outlines-strategy-address-increase-migrants-del-rio.

i.       There is no basis for Plaintiffs to depose agency officials.

Plaintiffs assert they "are entitled to discovery relating to the facts articulated in Defendants' recently filed compliance report," and request that they "be allowed to examine" Blas Nuñez-Neto, Chief Operating Officer at U.S. Customs and Border Protection (CBP),[7] regarding "the full scope of and basis for Defendants' actions." Mot. at 9. But Plaintiffs offer no specific argument for why they should be allowed to depose Mr. Nuñez-Neto. Mot. at 9. Plaintiffs further assert they "should be allowed to depose" now-former DHS Assistant Secretary for Border Security and Immigration David Shahoulian,[8] Principal Deputy Chief Immigration Judge Daniel H. Weiss, and Senior Bureau Official in the Bureau of Western Hemisphere Affairs at the U.S. Department of State Ricardo Zúniga.[9] *Id*. Plaintiffs acknowledge, however, that these high-ranking officials did not submit declarations with Defendants' notice to the Court on compliance with the injunction, and Plaintiffs offer no other specific argument to justify these depositions beyond stating that they would like to question these officials "on the actions that have actually been undertaken to implement MPP." *Id*. Finally, Plaintiffs assert they "should be allowed to take the depositions of two other officials": "CBP's Acting Deputy Commissioner Benjamine 'Carry' Huffman[,] … regarding CBP procurement," and "Deputy Undersecretary for Management Randolph D. 'Tex' Alles," also regarding "DHS's procurement." Mot. at 9. But neither of these individuals has previously submitted a declaration in this case, and Plaintiffs provide no further justification for these depositions.

Plaintiffs have not met their substantial burden to establish they are entitled to discovery

---

[7] Mr. Nunez-Neto is currently detailed to the position of Acting Assistant Secretary of Homeland Security for Border Security and Immigration.

[8] David Shahoulian has left the Department of Homeland Security.

[9] Ricardo Zúniga is now Principal Deputy Assistant Secretary for the Bureau of Western Hemisphere Affairs.

or depositions. Plaintiffs certainly have not provided clear and convincing evidence of non-compliance. *See, e.g.*, *Kinnear-Weed Corp. v. Humble Oil & Ref. Co*., 441 F.2d 631, 634 (5th Cir. 1971) ("Speculation and suspicion are just not any evidence at all" and cannot satisfy "burden of producing clear and convincing evidence."); *Madison Servs., Inc. v. United States*, 94 Fed. Cl. 501, 507-08 (2010) (noting "it is one thing to allege, it is another to prove" and finding clear-and-convincing standard not met where "[f]or its proof, plaintiff basically spins three inferences drawn from [defendants'] Declaration and then weaves a smorgasbord of steps to account for the alleged bad faith"). As Defendants have explained, MPP cannot be re-implemented without concurrence and support from Mexico, *see supra* 5-8, MPP cannot be implemented border-wide without redeploying staff and resources and rebuilding certain infrastructure, *see supra* 9-10, and MPP has never been applied to Haitians, *see supra* 10-11. In the portion of their motion seeking discovery, *see* Mot. at 9-10, Plaintiffs put forth no additional arguments on these points to justify their request for this additional relief. Plaintiffs are not entitled to conduct a fishing expedition merely to assuage their unsupported concerns that the government is not complying with the injunction.

Even if Plaintiffs had provided a basis for seeking discovery, they still could not meet the standard for seeking depositions of high-ranking agency officials. *See Spallone v. United States*, 493 U.S. 265, 276 (1990) (When ordering compliance, a court "is obliged to use the least possible power adequate to the end proposed." (citations and quotation marks omitted)). First, Plaintiffs' requested depositions to explore the thought processes of high-ranking agency officials and internal agency planning and decision-making are likely to intrude on the deliberative process privilege. "The deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance the quality of agency decisions, by protecting open and

frank discussion among those who make them within the Government." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8-9 (2001). Plaintiffs cite no cases in support of their assertion that they are entitled to probe internal agency deliberations. *Cf. Oceana, Inc. v. Ross*, 920 F.3d 855, 865 (D.C. Cir. 2019) ("[A]bsent a showing of bad faith or improper behavior, '[a]gency deliberations … are deemed immaterial.'"); *City of Dallas, Tex. v. Hall*, No. 3:07- CV-060-P, 2007 WL 3257188, at *4 (N.D. Tex. Oct. 29, 2007) (noting agency procedures are "entitled to a presumption of administrative regularity"). Plaintiffs' contrary request would "improperly probe the thought and decision making processes of administrators." *Morgan v. United States*, 304 U.S. 1, 18 (1938). And, in this case, because implementing MPP requires sensitive negotiations with Mexico, Plaintiffs' request improperly seeks to probe internal agency deliberations with respect to foreign relations and sensitive negotiations about how to manage an international border.

Plaintiffs' demand for depositions is also inappropriate under the well-recognized principle that high-ranking government officials, both current and former, should not—absent exceptional circumstances—be deposed or called to testify regarding their reasons for taking official action. *See, e.g., Franklin Sav. Ass'n v. Ryan*, 922 F.2d 209, 211 (4th Cir. 1991); *Lederman v. N.Y.C. Dep't of Parks & Recreation*, 731 F.3d 199, 203-04 (2d Cir. 2013) (addressing both current and former officials); *Bogan v. City of Boston*, 489 F.3d 417, 423 (1st Cir. 2007); *Simplex Time Recorder Co. v. Sec'y of Labor*, 766 F.2d 575, 586-87 (D.C. Cir. 1985). In *Morgan*, the Supreme Court overturned the district court's order permitting the deposition of the Secretary of Agriculture on his process in reaching an official decision, admonishing that he "should have never been subjected to this examination." 313 U.S. at 421-22. It is thus "a settled rule in this circuit that 'exceptional circumstances must exist before the involuntary depositions of high agency officials are permitted," and "it will be the rarest of cases . . . in which exceptional circumstances can be

14

shown where the testimony is available from an alternate witness." *In re FDIC*, 58 F.3d at 1060, 1062. "[T]op executive department officials should not, absent extraordinary circumstances, be called to testify regarding their reasons for taking official actions." *Simplex Time Recorder Co. v. Sec'y of Labor*, 766 F.2d 575, 586-87 (D.C. Cir. 1985); *see also In re Cheney*, 544 F.3d 311, 314 (D.C. Cir. 2008) ("The duties of high-ranking executive officers should not be interrupted by judicial demand for information that could be obtained elsewhere.").

Accordingly, the Fifth Circuit and other courts have applied this doctrine to issue writs of mandamus to preclude depositions or testimony by high-ranking executive branch officials. *See, e.g.*, *In re FDIC*, 58 F.3d 1055, 1063 (5th Cir. 1995) (members of the Board of Directors of the Federal Deposit Insurance Corporation); *In re McCarthy*, 636 F. App'x 142, 145 (4th Cir. 2015) (EPA Administrator); *In re Commodity Future Trading Comm'n*, 941 F.3d 869, 875 (7th Cir. 2019) (CFTC chairman, commissioners, and staff); *In re Cheney*, 544 F.3d 311, 314 (D.C. Cir. 2008) (Vice President's Chief of Staff); *In re United States ("Holder")*, 197 F.3d 310, 316 (8th Cir. 1999) (Attorney General and Deputy Attorney General); *In re United States ("Kessler")*, 985 F.2d 510, 513 (11th Cir. 1993) (per curiam) (FDA Commissioner). Like the record rule and the deliberative process privilege, the "apex doctrine" recognized in these cases is designed to protect constitutional separation of powers principles, and to prevent revealing the thoughts and mental processes by which high-ranking agency officials exercise their official discretion. *See Morgan*, 313 U.S. at 422 ("Just as a judge cannot be subjected to such a scrutiny, . . . so the integrity of the administrative process must be equally respected." (citations omitted)). The Supreme Court has thus repeatedly confirmed that, absent "a strong showing of bad faith or improper behavior," discovery into "the mental processes of administrative decisionmakers" is unwarranted. *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2573-74 (2019) (citation omitted); *see also In re Dep't*

15

*of Commerce*, 139 S. Ct. 16 (2018) (staying the district court's order authorizing the deposition of the Secretary of Commerce about his decisionmaking). Plaintiffs have not made any showing of bad faith, let alone the strong showing of bad faith action that at a minimum must be established before requesting discovery.

Moreover, subjecting high-ranking agency officials to testimony here would impede the exercise of official duties, including those related to implementing the injunction and managing the border. *See In re FDIC,* 58 F.3d 1055, 1060 (5th Cir. 1995) ("High ranking government officials have greater duties and time constraints than other witnesses."); *In re United States*, 985 F.2d 510, 512 (11th Cir. 1993) ("[t]he reason for requiring exigency before allowing the testimony of high officials is obvious. High ranking government officials have greater duties and time constraints than other witnesses"). "[S]ubjecting officials to interrogation about how they reached particular decisions would impair that decision-making process by making officials less willing to explore and discuss all available options." *Walker v. NCNB Nat'l Bank of Fla.*, 810 F. Supp. 11, 12 (D.D.C. 1993); *In re Stone*, 986 F.2d 898, 904 (5th Cir. 1993) ("[h]igh-ranking officials of cabinet agencies could never do their jobs if they could be subpoenaed for every case involving their agency."); *see also Sykes v. Brown*, 90 F.R.D. 77, 78 (E.D. Pa. 1981) ("Should the agency head be subject to deposition in every resulting case and be repeatedly required to explain the various mental steps he took to reach his decision, the decision may be his last."). Plaintiffs' demand that multiple agency officials be required to devote the time and attention necessary to prepare and sit for depositions would impede those individuals' ability to do their critical jobs. Plaintiffs have not shown "exceptional circumstances" or that this is the "rarest of cases" where such testimony might be warranted. *In re FDIC*, 58 F.3d at 1060, 1062.

      ii.     There is no basis for Plaintiffs to seek discovery related to Haitian migrants.

Plaintiffs next seek a range of discovery related to "Haitian migrants" that is unrelated to the injunction and, in fact, unrelated to this case as a whole. Mot. at 9. The Court should reject this request as well.

Plaintiffs first seek discovery to determine whether "Defendants are releasing Haitian migrants," who they argue "would be amenable to MPP if it were operational." Mot. at 9. But as noted above, in the prior implementation of MPP, Mexico placed limitations on the categories of individuals it would accept to be returned under MPP, and never accepted individuals from Haiti. *See supra* 10-11; Ex. 1 ¶ 5. Thus, discovery into the circumstances of Haitians' migration is completely irrelevant to Plaintiffs' fundamental demand in this case that Defendants reinstate MPP. Success on a motion to enforce a judgment gets a plaintiff only 'the relief to which [the plaintiff] is entitled under [its] original action and the judgment entered therein.'" *Heartland Reg'l Med. Ctr. v. Leavitt*, 415 F.3d 24, 29 (D.C. Cir. 2005) (quoting *Watkins v. Washington*, 511 F.2d 404, 406 (D.C. Cir. 1975)). Plaintiffs cannot seek broad-ranging discovery related to other categories of noncitizens who were not previously returned to Mexico pursuant to MPP or the subject of this lawsuit in the guise of seeking to enforce the Court's order to re-implement MPP.[10]

---

[10] For injunctive relief to be proper, "there must be a relationship between the injury claimed in the motion for injunctive relief and the conduct asserted in the underlying complaint." *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 636 (9th Cir. 2015). Because Plaintiffs' complaint does not raise challenges related to Haitian migrants, but rather challenges related to MPP—which has never been applied to Haitian migrants—Plaintiffs have no basis to seek relief related to Haitian migrants in this case, nor do they have any basis to seek information or relief related to such migrants. There is no basis to order relief that is unrelated to the "conduct asserted in the underlying complaint." *De Beers Consol. Mines v. United States*, 325 U.S. 212, 219 (1945) (the issuance of injunctive relief "presupposes or assumes ... that a decree may be entered after a trial on the merits enjoining and restraining the defendants from certain future conduct"). A ruling extending relief to claims not contained in the complaint would be an abuse of discretion. *See, e.g.*, *Pac. Radiation Oncology, LLC*, 810 F.3d at 637; *Colvin v. Caruso*, 605 F.3d 282, 300

Further, Plaintiffs seek information related to Haitian migrants "broken down on a monthly basis beginning January 21, 2021," Mot. at 10, which is well before the injunction was issued—and before this case was even filed—further undermining Plaintiffs' argument that their request is related to compliance with the injunction and the Court's ruling on their claims.

Second, Plaintiffs seek information related to Defendants' parole practices with respect to Haitian migrants. Mot. at 10. This request is irrelevant for the same reasons—MPP did not apply to individuals from Haiti. And, more broadly, this request is unrelated to the injunction or any claims in this case, as Plaintiffs conceded at argument:

> **THE COURT**: Isn't Plaintiffs' case truly a challenge to the government's parole practices and not the termination of MPP?
>
> **MR. THOMPSON**: No, Your Honor. We're not challenging, you know, any kind of individual grant of parole or even the parole policies.

Trial Tr. at 63:17-21. There is no basis to order discovery into parole practices Plaintiffs did not challenge in this case and which Plaintiffs affirmatively waived any challenge to, or their application to individuals who were not amenable to MPP in any event.[11] Nor, as noted previously,

---

(6th Cir. 2010) (plaintiff "had no grounds to seek an injunction pertaining to allegedly impermissible conduct not mentioned in his original complaint"); *State v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1134 (11th Cir. 2005) (explaining that "relief must relate in some fashion to the relief requested in the complaint"); *see also Bucklew v. St. Clair*, No. 3:18-CV-2117-N (BH), 2019 WL 2251109, at *2 (N.D. Tex. May 15, 2019); *Booker v. McDuffie*, No. 5:18-CV-208-BQ, 2019 WL 3937225, at *2 (N.D. Tex. July 22, 2019); *Infinite Fin. Sols., Inc. v. Strukmyer, LLC*, No. 3:14-CV-354-N, 2014 WL 12586282, at *9 (N.D. Tex. July 29, 2014) (where plaintiff's "motion raises issues different from those presented in the complaint, the court has no jurisdiction over the motion").

[11] Plaintiffs argue that Defendants did not challenge the district court's statement that "[w]ithout MPP, Defendants are forced to release and parole aliens into the United States because Defendants simply do not have the resources to detain aliens as mandated by the statute." Mot. at 10 (citing ECF No. 94 at 17). But Defendants have challenged that finding. *See* Emergency Motion For Stay Pending Appeal, No. 21-10806 (5th Cir. Aug. 17, 2021), at 7 (arguing there was no

could Plaintiffs challenge parole practices. *See Loa-Herrera v. Trominski*, 231 F.3d 984, 991 & n.12 (5th Cir. 2000) ("'[Secretary's] discretionary judgment regarding the application of' parole—including the *manner* in which that discretionary judgment is exercised, and whether the procedural apparatus supplied satisfies regulatory, statutory, and constitutional constraints—is 'not ... subject to review.'").

## CONCLUSION

For these reasons, the Court should deny the motion.

---

evidence before the district court showing an increase in the number of noncitizens released or paroled as a result of MPP's termination); Brief for Appellants, No. 21-10806 (5th Cir. Sept. 20, 2021), at 12-14, 37. This Court acknowledged in its ruling that "a perusal of the *entire* administrative record shows *zero* evidence of DHS's detention capacity." ECF No. 94 at 42.

Dated: October 14, 2021                  Respectfully submitted,

CHAD E. MEACHAM                          BRIAN M. BOYNTON
*Acting United States Attorney*          *Acting Assistant Attorney General*

BRIAN W. STOLZ                           WILLIAM C. PEACHEY
*Assistant United States Attorney*       *Director*
                                         Office of Immigration Litigation
                                         District Court Section

                                         EREZ REUVENI
                                         *Assistant Director*

                                         JOSEPH A. DARROW
                                         *Trial Attorney*

                                         /s/ *Brian C. Ward*
                                         BRIAN C. WARD
                                         *Senior Litigation Counsel*
                                         U.S. Department of Justice
                                         Civil Division
                                         Office of Immigration Litigation
                                         District Court Section
                                         P.O. Box 868, Ben Franklin Station
                                         Washington, DC 20044
                                         Tel.: (202) 616-9121
                                         brian.c.ward@usdoj.gov


                                         *Counsel for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 14, 2021, I electronically filed this response with the Clerk of the Court for the United States District Court for the Northern District of Texas by using the CM/ECF system. Counsel in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

/s/ *Brian C. Ward*
BRIAN C. WARD
U.S. Department of Justice

21