# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| STATE OF TEXAS, <br> STATE OF MISSOURI, <br><br> *Plaintiffs,* <br><br> v. <br><br> JOSEPH R. BIDEN, JR., <br> in his official capacity as <br> President of the United States, *et al.*, <br><br> *Defendants.* | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. 2:21-cv-00067-Z |

## DECLARATION OF BLAS NUÑEZ-NETO

I, Blas Nuñez-Neto, pursuant to 28 U.S.C. § 1746, and based upon my personal knowledge, and documents and information made known or available to me from official records and reasonably relied upon in the course of my employment, hereby declare as follows:

1. I am the Acting Assistant Secretary for Border and Immigration Policy as of October 1, 2021. My permanent role is Chief Operating Officer at U.S. Customs and Border Protection (CBP), within the Department of Homeland Security (DHS), which I began on March 5, 2021. Since August 24, 2021, I have been concurrently serving as the Vice Chair for the Secretary of Homeland Security's Southwest Border Taskforce. I also previously served at DHS as an Advisor to CBP Commissioner Gil Kerlikowske from January 12, 2015 to January 16, 2017.

1

2. I have read and am familiar with the declaration of Mark Morgan, the former Acting CBP Commissioner. I also read and am familiar with the *Plaintiffs' Motion to Enforce Permanent Injunction and for Expedited Discovery*, filed Sept. 23, 2021.

*I. Continued Compliance with Court Order*

3. Over the past month, DHS has continued to make substantial progress as it works in good faith to reimplement the Migrant Protection Protocols (MPP). The Department has, among other things: engaged in a number of high-level and ongoing virtual and in-person discussions with the Government of Mexico (GOM); continued to finalize the operational plans that will be required to quickly reimplement MPP; worked closely with the Department of Justice and other interagency partners to ensure that the immigration courts are prepared to hear the cases of those subject to MPP on a timely basis; and issued the contracts required to rebuild soft-sided Immigration Hearing Facilities (IHFs) in Laredo and Brownsville, Texas. As a result of this progress, and dependent on the independent decisions made by the sovereign GOM, DHS anticipates being in a position to reimplement MPP in mid-November.

*A. Discussions with Mexico*

4. DHS, along with the Department of State (DOS), has, since August 2021, been engaged in high-level discussions to coordinate a wide range of border management and migration issues as part of a bilateral U.S.- Mexico working group. In conjunction with those efforts, DHS has had multiple virtual and in-person high-level discussions with the GOM about DHS's planned reimplementation of MPP.

5. Critically, and as described in my prior declaration on September 15, 2021, the U.S. Government cannot unilaterally implement MPP without an independent decision by the

GOM to accept individuals that the United States wishes to send to Mexico. As a sovereign nation, Mexico decides who it allows to cross its borders. In the prior implementation of MPP, for example, the GOM only accepted the return of individuals from Spanish-speaking countries and Brazil; it did not generally accept the return of Haitians, or other nationals from other non-Spanish-speaking countries, unless they were family members of an individual that the GOM accepted.

6. Therefore, before DHS can begin sending individuals back to Mexico, the United States needs Mexico's concurrence, as well as a shared understanding about key details of how MPP will be reimplemented, including, for example: where and what time such entries into Mexico will be permitted; how many individuals and what demographics will be permitted per day at each location; and what nationalities will be accepted for return to Mexico.

7. Mexico's decision to accept individuals returned pursuant to MPP was needed before the program was initiated in 2019, and, because the previous program was terminated, it is needed again now. This is true whether the U.S. seeks to re-implement border-wide, as DHS prefers in order to avoid pushing migratory flows from one part of the border to another, or whether it seeks to adopt a phased approach to reimplementation. Both require a unilateral decision by Mexico to accept those individuals the United States seeks to return to return to Mexico—that decision by the GOM has yet to be made.

8. In the context of the ongoing discussions, the GOM has made clear that it expects to see substantial improvements in how MPP is reimplemented before it can make its decision. The GOM has stated it would not decide to accept MPP enrollees unless and until its concerns about how MPP was previously implemented are addressed. The GOM has identified a number of improvements that it deems critical, including the following key areas of concern:

3

(i) *Length of time for Case Adjudication / Clarity about Timing of Hearings*

9. The GOM expressed significant concerns about the lengthy delays in the adjudication of immigration proceedings under the previous implementation of MPP and has made clear that, in order to accept returns under the program, it needs assurances that proceedings will generally be concluded within six months of an individual's return to Mexico and the initiation of the individual's case. The GOM similarly made clear that it is critical that any individuals awaiting court hearings in Mexico receive timely and accurate information about hearing dates and times and other information about their cases.

(ii) *Access to Counsel*

10. The GOM made clear that enhancing opportunities for MPP enrollees to secure adequate access to counsel is a critical issue that needs to be addressed before it could decide to accept MPP enrollees into Mexico.

(iii) *Accounting for Vulnerability:*

11. The GOM expressed concern that, under the previous MPP, DHS returned particularly vulnerable individuals to Mexico, and that this placed an undue burden on the services provided by local communities in Mexico. In particular, the GOM raised concerns about certain populations being enrolled in MPP, including particularly elderly or sick individuals, as well as other populations, such as LGBTQI individuals. GOM made clear that it expects the reimplementation of MPP to address these concerns.

(iv) *Times and Locations of Returns.*

12.     The GOM also expressed concern that under the previous implementation of MPP, individuals were returned to Mexico at locations and times of the day that made it difficult for the GOM officials to adequately receive them in a safe and orderly manner.  It expects that, if the GOM decides to accept such returns, DHS will better coordinate the locations and times of day that individuals are returned to Mexico.

13.     Based on these discussions, DHS is finalizing a plan for the reimplementation of MPP that takes into account these concerns, which it will be communicating to the GOM in the coming days.  The GOM — which has repeatedly emphasized that, as a sovereign nation, Mexico is not subject to the Court's jurisdiction — will need to independently assess the plan to ensure it adequately addresses their concerns.  The GOM will then make an independent decision as to whether it is prepared to accept for entry into Mexico the individuals that the USG seeks to return under MPP.

*B. The U.S. Government's Ongoing Efforts*

14.     However, consistent with its obligation to comply in good faith with the Court's Order, DHS is not waiting for the GOM's decision to put in place what is needed to restart MPP. To the contrary, DHS has made significant progress since we last reported to the Court, including taking the following key steps to begin reimplementing MPP around the middle of November, subject to GOM's response to the reimplementation plan and a decision to accept returns.

15.     First, DHS issued a task order on October 13, 2021, under an existing contract, to rebuild the soft-sided Immigration Hearing Facilities (IHFs) in Laredo and Brownsville, Texas. These facilities will take about 30 days to reconstruct at a cost of approximately $14.1 million to

5

rebuild and $10.5 million per month to operate.  In my prior declaration, I indicated that DHS did not intend to initiate these contracts until the GOM decided to accept returns.  However, after reviewing the substantial progress that has been made in the discussions with the GOM over the past month, DHS believes that it makes sense to proceed with contracting now despite the lack of a final decision by GOM.  This will ensure that DHS is ready to begin implementing the program across the entire border in a timely fashion, even as we await the GOM's unilateral decision about if, when, and where it will accept returns.

16. Second, as noted in my previous declaration, the USG stood up an interagency task force, comprising DHS, the Department of Justice (DOJ), the Department of Health and Human Services (HHS), and DOS, to manage and oversee the reimplementation of MPP.  This interagency taskforce draws on the expertise of a number of career officials who were previously involved in standing up and implementing MPP, includes a large number of working groups that are addressing specific components of the reimplementation, and is working daily to ensure that the policies and processes are in place to be ready to begin reimplementation in mid-November.

17. Among other things, the task force is working with DOJ's Executive Office for Immigration Review (EOIR) to ensure that there is sufficient space available on immigration court dockets so that hearings for individuals in MPP can be done in a timely manner subsequent to enrollment.  This is to address a key concern identified by the GOM, which, as noted above, has expressed its expectation that cases would generally be adjudicated within six months after the case is initiated.

18. Third, as noted in my previous declaration, the current COVID-19 pandemic greatly affects how MPP can be reimplemented.  In response to the unprecedented effects of the global pandemic, the government began postponing immigration court proceedings for MPP

enrollees in March 2020, and ultimately paused them indefinitely in July 2020—significantly before the termination at issue in this case. Although the government developed guidelines for restarting court hearings during the pandemic, those plans were never implemented. Moreover, the unexpected emergence of the highly contagious Delta variant this past year is a significant complicating factor that requires updates to these guidelines. DHS, as a result, is continuing to review the measures needed to ensure that these hearings can take place in a manner that protects government personnel, our communities, and the migrants themselves from the spread of COVID-19. As part of this process, DHS is working with interagency partners, including EOIR and the Centers for Disease Control and Prevention (CDC) at HHS, to evaluate how many people can safely be processed for court hearings on a daily basis, which will in turn affect the setting of court dates and issuance of the requisite Notices to Appear. DHS is also working to update guidance, protocols, and communication plans to ensure that these protections are implemented effectively. All of this work is currently being finalized in order to ensure a timely reimplementation of the program.

*II. Conclusion*

19. In sum, we have made great progress and are, as a result, ready to begin reimplementing MPP in mid-November, subject to the GOM's independent decision to accept those that the USG seeks to return. Critically, DHS and DOS have sufficiently advanced discussions with the GOM to the point that we will shortly finalize and communicate to GOM a plan for reimplementation that addresses the concerns they have identified. DHS has also taken all the necessary steps to reimplement MPP—including contracting for the IHFs, working to establish robust COVID-19 protocols, and updating policies and guidelines. These actions demonstrate that DHS has been working diligently, and will continue to work as expeditiously as possible, to reimplement MPP in good faith, as required by the Court's injunction.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief. Executed on this 14th day of October 2021

_____
Blas Nuñez-Neto
Acting Assistant Secretary
Border and Immigration Policy
Department of Homeland Security
Chief Operating Officer
U.S. Customs and Border Protection