**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION**

|  |  |
|---|---|
| STATE OF TEXAS, <br> STATE OF MISSOURI, <br><br> *Plaintiffs,* <br><br> v. <br><br> JOSEPH R. BIDEN, JR., <br> in his official capacity as <br> President of the United States, *et al.*, <br><br> *Defendants.* | Civil Action No. 2:21-cv-00067-Z |

**<u>DEFENDANTS' MONTHLY REPORT FOR SEPTEMBER 2021</u>**

On August 13, 2021, the Court entered an injunction requiring Defendants to, *inter alia*, "enforce and implement [the Migrant Protection Protocols (MPP)] *in good faith*." ECF No. 94 at 52; *see State v. Biden*, No. 21-10806, 2021 WL 3674780 at *13 (5th Cir. Aug. 19, 2021). "To ensure compliance with this order," the Court provided, "starting September 15th, 2021, the Government must file with the Court on the 15th of each month, a report stating

> (1) the total monthly number of encounters at the southwest border; (2) the total monthly number of aliens expelled under Title 42, Section 1225, or under any other statute; (3) Defendants' total detention capacity as well as current usage rate; (4) the total monthly number of "applicants for admission" under Section 1225; (5) the total monthly number of "applicants for admission" under Section 1225 paroled into the United States; and (6) the total monthly number of "applicants for admission" under Section 1225 released into the United States, paroled or otherwise.

ECF No. 94 at 52-53.

Defendants submit the following Report in compliance with this requirement. This October 15th report reflects data from September 1, 2021 through September 30, 2021.

### 1. Total Monthly Number of Encounters at the Southwest Border

For the month of September 2021, DHS reported 191,677 total encounters at the Southwest Border. Ex. A at 1 (CBP Report – September 2021). This figure combines statistics reported by the U.S. Customs and Border Protection's Office of Field Operations (OFO), which deals with noncitizens seeking to enter at land ports of entry (POE), with statistics from the U.S. Border Patrol (USBP), which apprehends noncitizens seeking to enter between POEs.

### 2. Total Monthly Number of Aliens Expelled Under Title 42, Section 1225, or Under Any Other Statute

For the month of September 2021, DHS reported 107,092 total noncitizens expelled under Title 42 and removed or returned under Title 8 authorities (including 8 U.S.C. § 1225). This figure includes 101,799 Title 42 expulsions and 4,186 Title 8 removals and returns reported by CBP, Ex.

A at 2-3, and 1,107 removals under 8 U.S.C. § 1225 reported by U.S. Immigration and Customs Enforcement (ICE)[1], Ex. B at 3 (ICE Statistics for September 2021). As explained in Exhibit A, CBP's Title 8 removals and returns include several categories of removals and returns conducted by OFO and USBP, including expedited removals, reinstated orders of removal, voluntary returns, returns pursuant to 8 U.S.C. § 1225(b)(2)(C), withdrawals of applications for admission, etc. Ex. A at 2-3. ICE's removals under section 1225 represent expedited removals. Ex. B at 3.

### 3. Total Detention Capacity and Current Usage Rate

For the month of September 2021, DHS reported that its total detention capacity was approximately 32,485, a figure combining CBP's approximate holding capacity of 5,685, Ex. A at 3-4, and ICE's current approximate funded detention capacity of 26,800,[2] Ex. B at 1-2. CBP's approximate holding capacity is the sum of OFO's approximate holding capacity, 935, and USBP's average holding capacity, 4,750. Ex. A at 3-4 & n.12.

DHS reported that the current average daily usage rate throughout September 2021 for CBP detention was 15.9% for OFO facilities and 234.19% for Border Patrol facilities, Ex. A at 3-4 & n.11, and approximately 86.18% for ICE detention facilities. *See* Ex. B at 1-2 (rate equals average daily population of 23,096 for the month of September 2021 over the current approximate total detention capacity of 26,800).

---

[1] ICE removals include noncitizens processed for Expedited Removal (ER) or Voluntary Return (VR) that are turned over to ICE Enforcement and Removal Operations (ERO) for detention. Noncitizens processed for ER and not detained by ERO or VR after June 1, 2013 and not detained by ERO are primarily processed by CBP, and would be included within CBP's data. Ex. B.
[2] ICE has approximately 34,000 funded detention beds available nationwide but its full inventory of bedspace is severely limited to 75% capacity, or approximately 26,800 beds, due to various court orders limiting the intake of noncitizen detainees, an increase in detention facility contract terminations, detention facility contract modifications, and the ongoing COVID-19 pandemic. *See, e.g.*, *Fraihat v. ICE*, 445 F. Supp. 3d 709 (C.D. Cal. Apr. 20, 2020).

### 4. Total Monthly Number of Applicants for Admission Under § 1225

For the month of September 2021, DHS reported that the total number of applicants for admission under Section 1225 encountered[3] by CBP was 89,878. Ex. A at 4-5. This figure is consistent with CBP's total number of noncitizen encounters subtracting its Title 42 expulsions. *See* Ex. A at 4 n.12; *supra* §§ 1, 2.

### 5. Total Monthly Number of Applicants for Admission Under § 1225 Paroled Into the United States

For the month of September 2021, DHS reported that the total number of applicants for admission under Section 1225 paroled into the United States was 28,372. This figure combines CBP grants of parole – 20,764 USBP Apprehensions with a Parole Disposition, 540 OFO Inadmissible Aliens with a Parole Disposition, and 2,876 individuals categorized as "OFO NTA [Notice to Appear] and Paroled into the U.S. on a case-by-case basis pursuant to 8 U.S.C. § 1182(d)(5)," Ex. A. at 5 – and 4,192 ICE grants of parole, Ex. B at 4.

On this point, Defendants seek to make a clarification. In the report for August 2021, Defendants categorized as a "release other than parole" the CBP OFO's releases described as "OFO NTA- Order of Release on Recognizance." ECF No. 106-1 at 5. As explained in the Declaration of Luis Mejia (attached as Exhibit C), this category was reported in this way in an attempt to align OFO's processing information with USBP's statistics, but the characterization was later realized to be inaccurate. *Id.* ¶ 5. Rather, that population comprises individuals that were

---

[3] An applicant for admission is defined as "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters)." 8 U.S.C. § 1225(a)(1). Thus, an applicant for admission may include noncitizens that have never been encountered by CBP. At this time, CBP does not have a mechanism to track applicants for admission in the United States that are not encountered by CBP. Ex. A at 4 n.12. All references in this document to "applicants for admission" refer to noncitizen applicants for admission encountered at or in-between POEs by CBP.

processed for an OFO NTA and paroled into the United States on a case-by-case basis pursuant to 8 U.S.C. § 1182(d)(5). *Id.* This population has thus been included in this September 2021 report among the total number of CBP releases under a parole disposition under reporting requirement 5, and also identified below in response to reporting requirement 6, and CBP will ensure this data point continues to be properly reflected among the parole count in future monthly reports to the Court. *Id.*

### 6. Total Monthly Number of Applicants for Admission Under § 1225 Released Into the United States, Paroled or Otherwise

For the month of September 2021, DHS reported that the total number of applicants for admission under Section 1225 released into the United States, paroled or otherwise, was 60,670, a figure reflecting CBP's 45,159 total releases across all categories for the month of September, Ex. A at 5,[4] combined with ICE's 15,511 total releases of noncitizens transferred to it from CBP following their apprehension or encounter at the Southwest Border for the month of September, Ex. B at 4.

---

[4] This report does not include data on unaccompanied alien children (UCs), as defined in 6 U.S.C. § 279(g), who the Court recognized are not amenable to MPP, ECF No. 94 at 9, and who are subject to special processing and are transferred to U.S. Department of Health and Human Services Custody pursuant to the Trafficking Victims Protection Reauthorization Act. *See* 8 U.S.C. §§1232(a)(5)(D), 1232(b)(3), 1232(c)(2)(A), 1232(c)( (3); *see also* CBP, Southwest Border Encounters, https://www.cbp.gov/newsroom/stats/southwest-land-border-encounters (providing statistics on UCs encountered by CBP).

Dated: October 15, 2021   Respectfully submitted,

CHAD E. MEACHAM   BRIAN M. BOYNTON
*Acting United States Attorney*   *Acting Assistant Attorney General*

BRIAN W. STOLZ   WILLIAM C. PEACHEY
*Assistant United States Attorney*   *Director*
   Office of Immigration Litigation
   District Court Section

   EREZ REUVENI
   *Assistant Director*

   BRIAN C. WARD
   *Senior Litigation Counsel*

   /s/ *Joseph A. Darrow*
   JOSEPH A. DARROW
   *Trial Attorney*
   U.S. Department of Justice
   Civil Division
   Office of Immigration Litigation
   District Court Section
   P.O. Box 868, Ben Franklin Station
   Washington, DC 20044
   Tel.: (202) 598-7537
   Joseph.a.darrow@usdoj.gov

   *Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on October 15, 2021, I electronically filed the foregoing document with the Clerk of the Court for the United States District Court for the Northern District of Texas by using the CM/ECF system. Counsel in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

/s/ *Joseph A. Darrow*
JOSEPH A. DARROW
U.S. Department of Justice