# EXHIBIT 2

U.S. Department of Homeland Security
Washington, DC 20528



December 2, 2021

| | |
|---|---|
| MEMORANDUM FOR: | U.S. Customs and Border Protection<br>U.S. Immigration and Customs Enforcement<br>U.S. Citizenship and Immigration Services<br>Office of Operations Coordination |
| FROM: | Robert Silvers<br>Under Secretary<br>Office of Strategy, Policy, and Plans |
| SUBJECT: | **Guidance regarding the Court-Ordered Reimplementation of the Migrant Protection Protocols** |

Enacted in 1996, Section 235(b)(2)(C) of the Immigration and Nationality Act (INA) allows the Secretary of Homeland Security to return applicants for admission to the contiguous country from which they are arriving on land pending their removal proceedings. In January 2019, the prior Administration announced a novel, programmatic use of Section 235(b)(2)(C) authority to return to Mexico non-Mexican citizens and nationals who crossed into the United States from Mexico in order to await their removal proceedings. This programmatic use of this authority was labeled the "Migrant Protection Protocols," or "MPP" for short.

Within weeks after taking office, President Biden issued an Executive Order directing the Secretary of Homeland Security to review and assess whether to terminate or modify MPP. After a thorough review, Secretary Alejandro Mayorkas concluded that MPP should be terminated, and on June 1, 2021, issued a memorandum to that effect. On August 13, 2021, however, the U.S. District Court for the Northern District of Texas determined that the June 1, 2021 memorandum was not issued in compliance with the Administrative Procedure Act. The Court remanded it to the Department for further consideration, enjoined the termination of MPP, and ordered DHS to "enforce and implement MPP *in good faith*."

After further and more extensive review, including a robust consideration of the benefits and costs of MPP, Secretary Mayorkas announced his decision to terminate MPP and to rescind all prior memoranda relating to MPP. *See* Memorandum from Alejandro N. Mayorkas, Secretary of Homeland Security, *Termination of the Migrant Protection Protocols* (Oct. 29, 2021). The Department is appealing the district court ruling and injunction requiring good faith enforcement and re-implementation of MPP, and the termination of MPP will be implemented as soon as practicable in the event of a final judicial decision to vacate the district court injunction. In the interim, the Department is complying with the district court injunction to reimplement MPP in good faith.

Subject: **Guidance regarding the Court-Ordered Reimplementation of the Migrant Protection Protocols**
Page 2

The U.S. Government, however, cannot reimplement MPP without the Government of Mexico (GOM) making an independent decision to accept the return of individuals enrolled in the program. The GOM raised a number of concerns about the previous implementation of MPP—concerns that are shared by DHS—and made clear that, as a sovereign nation, it would not accept the return of individuals enrolled in the program until its concerns were addressed. The Department has made a number of changes to the previous implementation to address these concerns, and the GOM made its independent decision to accept the return of individuals enrolled in MPP on December 2, 2021. As a result, the Department will begin enrolling certain noncitizens into MPP and processing them for return to Mexico where they will await immigration court hearings in a manner that addresses these shared concerns.

### Guiding Principles for Re-Implementation

Court Hearings: The Department is committed to protecting individuals' rights to a full and fair hearing of their cases. As part of this commitment, and consistent with concerns raised by the GOM, DHS will work with the Department of Justice (DOJ) to ensure that individuals enrolled in MPP have their cases heard by immigration judges in a timely manner and are provided with clearly stated and easy-to-understand information about the location and time of their hearings. DHS will also ensure that individuals enrolled in MPP have meaningful opportunities to access and meet with counsel, as described more fully on page 5.

Protections Against Returns to Persecution or Torture: The Department will, at all times, act consistent with the *non-refoulement* principles contained in Article 33 of the 1951 Convention Relating to the Status of Refugees (1951 Convention)[1] and Article 3 of the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment (CAT).[2] Specifically, all individuals encountered will be affirmatively asked questions by DHS personnel about their potential fear of return to Mexico. No individual who demonstrates *a reasonable possibility* of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion or *a reasonable possibility* of torture in Mexico will be involuntarily returned to Mexico.

Safety and Security in Mexico: The U.S. Government is committed to reimplementing MPP in a way that enhances protection for individuals enrolled in the program. DHS is working with the Department of State and the GOM to ensure that individuals enrolled in the program have access

---

[1] The United States is not a party to the 1951 Convention but is a party to the 1967 Protocol Relating to the Status of Refugees (1967 Refugee Protocol), which incorporates Articles 2 to 34 of the 1951 Convention. Article 33 of the 1951 Convention provides that: "[n]o Contracting State shall expel or return (*'refouler'*) a refugee in any manner whatsoever to the frontiers of territories where his life or freedom would be threatened on account of his race, religion, nationality, membership of a particular social group or political opinion."
[2] Article 3 of the CAT states, "No State Party shall expel, return (*'refouler'*) or extradite a person to another State where there are substantial grounds for believing that he would be in danger of being subjected to torture." *See also* Foreign Affairs Reform and Restructuring Act of 1998 (FARRA), Pub. L. No. 105-277, Div. G, Title XXII, § 2242(a) (8 U.S.C. § 1231 note) ("It shall be the policy of the United States not to expel, extradite, or otherwise effect the involuntary return of any person to a country in which there are substantial grounds for believing the person would be in danger of being subjected to torture, regardless of whether the person is physically present in the United States.").

to shelters in Mexico and secure transportation to and from ports of entry to these shelters, so as to enable safe transit to and from court hearings. Additionally, the GOM has committed to ensuring that individuals enrolled in MPP are provided temporary legal status in Mexico and will, as a result, be able to work and access services in Mexico.

Family Unity: Family units will not be separated for purposes of MPP enrollment. Throughout the removal proceedings, every effort will be made to maintain the integrity of family units, consistent with applicable law and policy. For the purposes of MPP, DHS defines a family unit as a group of two or more noncitizens consisting of at least one minor or minors accompanied by his/her/their adult parent(s) or legal guardian(s).

COVID-19 Mitigation: DHS will comply with all applicable guidance from the Centers for Disease Control and Prevention (CDC) related to COVID-19 in order to protect the health and safety of U.S. Government employees and contractors, individuals in MPP, and U.S. and Mexican communities.

Ongoing Improvement: DHS will put in place mechanisms to continuously evaluate MPP's operations and effectiveness, and to make ongoing adjustments, as needed, in order to improve the integrity and operation of MPP, including in response to humanitarian concerns.

Transparency and Accountability: DHS will promote transparency related to MPP's operations. DHS will compile relevant data and publicly report on statistics that can help DHS and others evaluate the effectiveness of the program. DHS will engage in ongoing discussions with stakeholders, the workforce, and the GOM to ensure appropriate oversight and accountability.

## Procedures

Title 42: U.S. Customs and Border Protection (CBP) will continue to assist in enforcing CDC's public health order pursuant to Title 42 for all covered noncitizens, for as long as the CDC Order is in effect. Noncitizens who are not covered by the CDC Order, or are excepted from the CDC Order in accordance with its terms, may be processed pursuant to discretionary Title 8 authorities, including MPP, as appropriate.

Locations: Individuals processed for MPP will be returned to Mexico through the following ports of entry (POEs): San Diego, Calexico, Nogales, El Paso, Eagle Pass, Laredo, and Brownsville. In order to help ensure the safety and security of returned individuals, and in response to concerns raised by the GOM, some individuals processed in the Eagle Pass, Laredo, and Brownsville areas of responsibility may be moved to the interior of Mexico to await their hearings.

Individuals in MPP will enter the United States to attend their court hearings through one of four POEs: San Diego, El Paso, Laredo, and Brownsville.

Subject: **Guidance regarding the Court-Ordered Reimplementation of the Migrant Protection Protocols**
Page 4

- Individuals returned to Mexico at the border in San Diego and Calexico will have their removal proceedings held at the San Diego Executive Office for Immigration Review (EOIR) Immigration Court;
- Individuals returned to Mexico in Nogales and El Paso will have their removal proceedings held at the El Paso EOIR Immigration Court;
- Individuals returned either at the border or to interior cities in Mexico from the Laredo and Eagle Pass areas of responsibility will have their removal proceedings held at the Laredo Immigration Hearing Facility (IHF), a new court facility exclusively dedicated to hearing the cases of MPP enrollees; and
- Individuals returned either at the border or to interior cities in Mexico from the Brownsville area of responsibility will have their removal proceedings held at the IHF in Brownsville, also a new court facility exclusively dedicated to hearing the cases of MPP enrollees.

The Department of State, in coordination with DHS, will assist in coordinating transport to and from these hearings.

Individuals Subject to MPP: Inadmissible noncitizens encountered at the Southwest Border at ports of entry or within 96 hours of crossing between ports of entry are subject to placement in MPP if they are nationals of any country in the Western Hemisphere other than Mexico.[3] The following persons, even if otherwise eligible, are exempted from processing under MPP:

- Unaccompanied children (UC), as defined in 6 U.S.C. § 279(g)(2);[4]
- U.S. lawful permanent residents;
- Noncitizens with an advance parole document or in parole status;
- Noncitizens with criminal history;
- Noncitizens of law enforcement interest to the U.S. or Mexican Governments; and
- Noncitizens with particular vulnerabilities (as described below).

Vulnerability Assessments: Under the prior implementation of MPP, those with a known physical or mental health issue that affected their fitness for travel were considered not to be subject to MPP because of their specific vulnerabilities. The GOM has expressed concerns, shared by DHS, that this prior vulnerability exception was too narrowly constructed and applied, and has required, as a condition of accepting MPP enrollees, additional measures to protect particularly vulnerable individuals from being enrolled in the program. As a result, the following

---

[3] This may change based on further deliberations with the GOM which, as a sovereign nation, has the ability to restrict or add to the list of nationalities that are considered subject to MPP and thus allowed to remain in Mexican territory. Further, on a case-by-case basis, there may be situations where individuals who would otherwise not be subject to MPP based on nationality, but who are in a family unit with individuals who are subject to MPP, will be enrolled into MPP for the purpose of maintaining family unity. The GOM will also place limits on the number of citizens from non-Spanish-speaking countries who may be enrolled in MPP.

[4] Any child who arrives at the border and is determined to be a UC will be processed as such by CBP in accordance with existing UC processing procedures, including transfer to the Department of Health and Human Services (HHS) and, generally, placement in removal proceedings pursuant to Section 240 of the INA.

Case 2:21-cv-00067-Z   Document 117-2   Filed 12/02/21   Page 6 of 11   PageID 3440
Subject: **Guidance regarding the Court-Ordered Reimplementation of the Migrant Protection Protocols**
Page 5

individuals will be presumed to be exempted from processing under MPP due to their particular vulnerabilities:

- Those with a known mental or physical health issue, including a disability or a medical condition related to pregnancy;
- Those with particular vulnerabilities given their advanced age; and
- Those at increased risk of harm in Mexico due their sexual orientation or gender identity.

Each assessment will be made on a case-by-case basis, based on the totality of the circumstances.

Unaccompanied Children:  All UCs will be processed by CBP in accordance with the Trafficking Victims Protection Reauthorization Act of 2008 and applicable policies.  CBP will ensure that it shares information with HHS's Office of Refugee Resettlement (ORR), and if appropriate with U.S. Immigration and Customs Enforcement's (ICE) Office of the Principal Legal Advisor (OPLA), if it encounters a UC who it reasonably assesses was previously processed as part of a family unit and returned to Mexico under MPP.

COVID-19 Mitigation:  All DHS employees, contractors, and noncitizens enrolled in MPP will adhere to CDC's COVID-19 guidance and relevant policies at DHS facilities pertaining to social distancing; cleaning/disinfecting in the facilities where individuals in MPP would be processed, held or transported; and masking.  All individuals in MPP will be provided with facial coverings as long as their use is recommended by CDC.

Everyone in MPP will undergo a routine health screening upon enrollment in MPP and again each time they return to the United States to attend a court hearing.  The results of the health screening will be recorded on a form that will be provided to the MPP enrollee for presentation to the GOM.

All individuals enrolled in MPP who meet COVID-19 vaccine eligibility criteria will be provided vaccinations.  Proof of COVID-19 vaccination will be required for re-entry into the United States.

*Non-Refoulement* Protections:  DHS is reimplementing MPP consistent with the *non-refoulement* principles contained in Article 33 of the 1951 Convention—as incorporated in the 1967 Refugee Protocol—and Article 3 of the CAT.  DHS will take the following steps for individuals being considered for enrollment into MPP:
1. CBP officials will proactively ask questions upon initial enrollment to determine whether an individual being considered for enrollment in MPP possesses a fear of return to Mexico.
2. If, in response to those questions, or at any other point in the removal process, an individual in the United States expresses to a U.S. Government official a fear of harm if returned to Mexico, the individual will be referred to U.S. Citizenship and Immigration Services (USCIS) for a *non-refoulement* interview.

Case 2:21-cv-00067-Z   Document 117-2   Filed 12/02/21   Page 7 of 11   PageID 3441
Subject: **Guidance regarding the Court-Ordered Reimplementation of the Migrant Protection Protocols**
Page 6

3. Individuals will receive 24 hours to consult with a representative of their choosing prior to the *non-refoulement* interview, unless they choose to waive this consultation period and proceed with an interview as soon as possible.
4. This 24-hour consultation period will take place in DHS facilities, and DHS will ensure that individuals have access to legal resource packets, the ability to use telephonic or virtual means to contact counsel in a confidential space, and translation services if needed.
5. Individuals may retain a legal representative of their choosing to participate telephonically in the *non-refoulement* interview, so long as doing so does not unreasonably delay the process.
6. Individuals who establish that there is a "reasonable possibility" that they will be persecuted on account of a statutorily protected ground (race, religion, nationality, membership in a particular social group or political opinion) or that they will be tortured in Mexico are not subject to MPP and will not be returned to Mexico.

Access to Counsel: DHS officials will ensure that those processed into MPP have reasonable and meaningful opportunities to access legal information in a language they understand and to access counsel or legal representation for *non-refoulement* interviews and removal proceedings.

This will include the following:
1. CBP will provide all MPP enrollees with legal resource packets.
2. CBP will provide MPP enrollees information provided by the Department of State about where they can locate places in Mexico to engage in telephonic or video communications with counsel.
3. All persons enrolled in MPP will have access to telephones (and, when feasible, video connection) to make calls free of charge to speak with counsel in a confidential setting during their time in DHS custody, including during the 24-hour consultation period prior to the *non-refoulement* interview.
4. As noted above, individuals referred to USCIS for a *non-refoulement* interview will have the option to have counsel participate telephonically during their interviews.
5. On the day of their hearings, all persons enrolled in MPP will have an opportunity to meet with counsel, in a confidential setting, prior to the start of their hearings.
6. All individuals enrolled in MPP will have an opportunity to have retained counsel present —either in-person or by video—during their court hearings.

Enrollment Process: Those being enrolled into MPP will be issued a Notice to Appear (NTA), placed into Section 240 removal proceedings, and provided a specific date and time for the first immigration court hearing. (See Annex for additional guidance.)

Document Service: Prior to being returned to Mexico, noncitizens will be provided with an NTA, along with relevant information that advises enrollees of their initial court date, processing information, legal resources, and other relevant information, including information developed and approved by other U.S. agencies that is provided to CBP for provision to MPP enrollees.

Case 2:21-cv-00067-Z Document 117-2 Filed 12/02/21 Page 8 of 11 PageID 3442
Subject: **Guidance regarding the Court-Ordered Reimplementation of the Migrant Protection Protocols**
Page 7

If the official providing this information packet is not fluent in the noncitizen's preferred language, in-person or telephonic interpretation should be used to complete, serve, and explain the documents to the noncitizen. If the noncitizen has a disability or impairment, the noncitizen will be provided with the accommodations needed to provide effective and meaningful access to the information. (See Annex for additional guidance.)

Court Hearings: DHS will coordinate with EOIR to align the number of new MPP enrollments with the number of cases EOIR states it generally can complete within 180 days of filing the NTA with EOIR.[5]

CBP will set up and manage the process for individuals enrolled in MPP to return through the four designated POEs for their hearings. The Department of State will assist in coordinating safe transportation in Mexico to and from the POEs for noncitizens enrolled in MPP. ICE Enforcement and Removal Operations (ERO) will coordinate safe transportation to and from the POE and the court facility in San Diego and El Paso.

## Implementation

The Secretary's October 29, 2021 memorandum superseded any prior guidance implementing MPP. This memorandum replaces prior guidance and outlines the principles, protocols, and practices that will govern the court-ordered reimplementation of MPP. The memorandum is subject to modification following implementation, based on input from stakeholders, the workforce, and the GOM.

Consistent with the guidance set forth in this memorandum, CBP, ICE, and USCIS should issue additional appropriate internal guidance or training, as needed to comply with the court injunction and reimplement MPP.

This document is not intended to, and does not, create any obligations that are privately enforceable against the government in judicial or administrative proceedings.

---

[5] It will remain within the discretion of individual immigration judges whether to grant noncitizen requests for continuances based on "good cause shown." *See* 8 C.F.R. § 1003.29.

**Annex: Additional Operational Guidance**

Additional Guidance on Family Unity

If, for any reason, the individual cases of family unit members processed pursuant to MPP have not already been consolidated in a single case, DHS entities should work with DOJ, to the extent possible, to identify and consolidate the cases of individual members of a family unit. DHS and DOJ may also consider on a case-by-case basis case consolidations in other reasonable instances, such as domestic partnerships.

If any member of a family unit in MPP expresses a fear of returning to Mexico, the family unit will be kept together until the outcome of the *non-refoulement* interview is determined. If any member of a family unit establishes a reasonable possibility of persecution on account of a statutorily protected ground or torture in Mexico, the entire family unit will not be enrolled in MPP. If the family unit is currently enrolled in MPP, the family unit will be removed from MPP, will not returned to Mexico, and will await their pending INA section 240 removal proceedings in the United States.

Where mixed-nationality family units include an individual who is of a nationality not generally subject to MPP, all members of the family may nevertheless be considered for processing through MPP if doing so maintains family unity. If a family unit contains Mexican nationals, the family unit should not be enrolled in MPP, unless the Mexican national agrees to voluntarily withdraw his or her application for admission.

Additional Guidance on COVID-19 Vaccines and Testing

CBP contract staff will provide vaccines to individuals who are enrolled in MPP.

Individuals older than 18 years will be vaccinated with a single dose of the Johnson & Johnson COVID-19 vaccine, while individuals between 5-18 years of age will be vaccinated with the first dose of a CDC approved two-dose regime. Second doses for children will be offered upon the next MPP-related encounter that occurs *after* the appropriate waiting period.

Proof of COVID-19 vaccination will be required for re-entry into the United States.

Additional Guidance on USCIS *Non-refoulement* Interview

At the time of the interview, the USCIS asylum officer will verify that the noncitizen understands that he or she may be subject to return to Mexico pending his or her removal proceedings. The officer should also confirm that the noncitizen understands the interview process and ensures that language and disability access are provided.

Each assessment shall be reviewed by a supervisory asylum officer. DHS staff will inform the noncitizen of the outcome of the final assessment.

Noncitizens who are found to have a reasonable possibility of persecution or torture in Mexico will not be returned to Mexico pursuant to MPP. Those who do not establish a reasonable possibility of persecution or torture in Mexico will be issued an NTA and processed into MPP, or remain in MPP, if applicable.

Additional Guidance on Enrollment Process

CBP will set the court date for the initial hearing, using EOIR's Interactive Scheduling System (ISS).

CBP will transport any noncitizen initially processed under MPP to the appropriate vaccination location (if a separate location) prior to return to Mexico. Following vaccination, the individuals will be transported to a POE, so that the noncitizen can be returned to Mexico pending their INA section 240 removal proceedings.

Additional Guidance on Document Service

When filling out the NTA for noncitizens being placed into MPP, officials should affirmatively inquire as to whether the noncitizen has an address in Mexico. CBP will record the noncitizen's answer to this question on the NTA filed with the immigration court.

If the noncitizen cannot provide an address in Mexico, CBP should notate on the NTA that the noncitizen "failed to provide address" and advise the noncitizen of the need to update this information by filling out the EOIR-33 Form once an address is secured.

The following should be provided to those enrolled in MPP:
- Form I-862 Notice to Appear
- CBP Form 838 or Form 839 Initial Processing Information

- EOIR-33 Change of Address*
- As appropriate and available, other resources approved by other U.S. agencies that are provided to CBP for provision to MPP enrollees.

*These forms should be location specific.

Additional Guidance on Court Hearings

CBP will receive individuals returning to for court hearings and process them at designated POEs.

Individuals requiring transportation to an interior EOIR facility to attend their hearing will be paroled utilizing a CBP Form 840 for ICE transportation pursuant to INA section 212(d)(5)(A).

Subject: **Guidance regarding the Court-Ordered Reimplementation of the Migrant Protection Protocols**
Page 10

Once processed at the POE, the noncitizens will be turned over to ICE or contract staff for transportation and/or escort to the relevant court facility. ICE or contract staff will ensure that there is sufficient transportation capacity to accommodate daily transportation requirements to and from court facilities, making appropriate use of contract support and complying with applicable requirements concerning the transportation of noncitizens

While EOIR is responsible for security inside the courtroom, and DHS employees and contractors should generally defer to immigration judges' wishes concerning their presence in the courtroom, DHS is ultimately responsible for maintaining custody of the noncitizen.

After a noncitizen's immigration court hearing is over, ICE or contract staff will transport/escort the noncitizen back to the POE for return to Mexico or to retrieve property, as applicable.

If the noncitizen has been ordered released, granted other relief or protection, or issued an administratively final order of removal, ICE will coordinate with appropriate agencies in making case processing and detention determinations. If an individual has been granted relief or protection from removal, and ICE seeks to appeal, the individual will remain in the United States pending appeal. If, however, the individual is ordered removed, and the individual seeks to appeal, the individual and his or her family members will be returned to Mexico by CBP for the pendency of the appeals process.

CBP will continue to follow all generally applicable standards, guidance, and protocols, including the National Standards on Transport, Escort, Detention and Search for all individuals in their custody.

All DHS employees and contract staff will continue to follow all generally applicable standards, guidance, and protocols, including those pertaining to the use of restraints. All U.S.-based facilities must also follow all generally applicable standards, guidance, and protocols, including those relating to the prevention of sexual assault or harassment.