# EXHIBIT 1

ATTORNEY CLIENT PRIVILEGE/ATTORNEY WORK PRODUCT

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# AMARILLO DIVISION

| | |
|---|---|
| STATE OF TEXAS, <br> STATE OF MISSOURI, <br><br> *Plaintiffs,* <br><br> v. <br><br> JOSEPH R. BIDEN, JR., <br> in his official capacity as <br> President of the United States, *et al.*, <br><br> *Defendants.* | Civil Action No. 2:21-cv-00067-Z |

## DECLARATION OF CONNOR W. FLAHERTY

I, Connor W. Flaherty, declare the following under 28 U.S.C. § 1746, and state that under penalty of perjury the following is true and correct to the best of my knowledge and belief:

**I.     Personal Background**

1. I am employed by the U.S. Department of Homeland Security (DHS), U.S. Immigration and Customs Enforcement (ICE), Enforcement and Removal Operations (ERO), as a Management and Program Analyst for the Law Enforcement Systems and Analysis (LESA) Division.  My duties include information technology (IT) project management and portfolio governance.  I have held this position since June 2019.  Prior to this, I worked for LESA as a private contractor since September 2014, performing similar duties.

2. LESA is responsible for helping inform the development of ERO strategies and supporting continuous enhancement of ERO business processes to execute those strategies.  Through data collection and analysis and technology and process improvements, LESA delivers

tools, studies, and recommendations to assist ICE's decision-making and planning (strategic, business, and operational).

3. I am familiar with this Court's August 13, 2021 opinion and order imposing reporting requirements to ensure compliance with the preliminary injunction. I am also familiar with this Court's November 18, 2021 order modifying and adding to those reporting requirements.

## II.   ICE Practices Nationwide

4. As an operational program of ICE, ERO is responsible for the planning, management, and direction of broad programs relating to the supervision, detention, and removal of noncitizens from the United States under U.S. immigration laws. ERO's statutory responsibilities include the detention, as appropriate, of noncitizens during the pendency of proceedings to determine whether they will be removed from the United States, as well as noncitizens subject to administratively final removal orders, pending their removal from the United States.

## III.   Tracking of Release from ICE Custody

5. The ENFORCE Alien Detention Module (EADM) is a Web-based application used by ERO field agents and officers to book subjects into and out of detention facilities.

6. As of October 1, 2019, the number of noncitizens paroled or released into the United States based on ICE's lack of detention capacity is not an available data point in EADM or any other data systems managed by LESA.

7. A Book Out Release Reason is required for all releases from ICE detention. ERO officers log each release from ICE detention by selecting a single Book Out Release Reason.

8. Current Book Out Release Reasons in EADM are: Bonded Out (with two subcategories); Died; Escaped; ORR – Runaway; Order of Recognizance (with two subcategories); Order of Supervision (with four subcategories); Paroled (with three subcategories); Proceedings Terminated; Relief Granted by IJ; Removed; Voluntary Return; Voluntary Departure; and Withdrawal.  None of the current Book Out Release Reasons or subcategories relates to lack of detention capacity.

9. On October 1, 2019, ERO deployed updates to the Book Out Release Reasons in EADM. Among the updates was the removal of several release reasons, including: Bonded Out – lack of space; Order of Recognizance – lack of space; Order of Supervision – lack of space; Paroled – lack of space; Voluntary Departure – lack of space; and Withdrawal – lack of space.  Those "lack of space" release reasons were a remnant of a discontinued application called the Deportable Alien Control System (DACS) and were carried over to EADM in or about 2008.  ICE removed the "lack of space" release reasons to more closely align the release codes with the legal basis for a release rather than an assessment of logistical capability.  Additionally, these changes were implemented to simplify reporting processes and capture key statistics more accurately.

10. The selection of one release code depends on the individual assessment of the officer processing the release or parole of a noncitizen from ICE custody at the time of release. There is no supervisory review of Book Out Release Reasons.  When the "lack of space" release codes were in effect prior to October 1, 2019, officers chose among codes related to legal reasons for release and the legacy codes related to logistical capabilities, such as lack of space. This resulted in data quality issues because more than one code could apply to a single release.  For example, if an individual was eligible for release on recognizance

3

due to multiple factors, the officer processing the release could select "lack of space" or another release code (not both) tied to Order of Recognizance. Additionally, a decision to release on the basis of a lack of space may only be reflective of a lack of *local* space as perceived by the officer. As a result, it was determined that data relating to logistical capabilities, such as capacity, was unreliable.

11. Because ICE's data systems have not captured release or parole based on lack of detention capacity since September 2019, pulling that data from ICE systems for January 2021 to the present is impossible. Furthermore, ERO Officers are not required to append notes to the subject record indicating any information associated with release rationale. Therefore, attempting to re-create that data from January 2021 to the present, through manual review or otherwise, would be operationally impossible because the data for that time period does not exist in any form.

12. Reinstituting the discontinued "lack of space" release codes going forward would result in the same or similar data quality issues that arose before ICE removed the codes in October 2019 and would impact ICE's ability to capture the accurate legal reason for release of a noncitizen. Reinstituting the discontinued release codes would also require significant personnel resources, time, and procurement of funding sources to re-program agency IT systems and re-train thousands of officers on the use of these systems.

This declaration is based upon my personal and professional knowledge, information obtained from other individuals employed by ICE, and information obtained from various records and systems maintained by DHS. I provide this declaration based on the best of my knowledge, information, belief, and reasonable inquiry for the above captioned case.

Signed on this 2nd day of December 2021 Herndon, Virginia.

**CONNOR W FLAHERTY**
Digitally signed by CONNOR W FLAHERTY
Date: 2021.12.02 17:27:53 -05'00'

_____
Connor W. Flaherty
Management and Program Analyst
Law Enforcement Systems and Analysis
Enforcement and Removal Operations
U.S. Immigration and Customs Enforcement
U.S. Department of Homeland Security