**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**AMARILLO DIVISION**

|  |  |
|---|---|
| STATE OF TEXAS, <br> STATE OF MISSOURI, <br><br> *Plaintiffs,* <br><br> v. <br><br> JOSEPH R. BIDEN, JR., <br> in his official capacity as <br> President of the United States, *et al.*, <br><br> *Defendants.* | Civil Action No. 2:21-cv-00067-Z |

**DEFENDANTS' MONTHLY REPORT FOR NOVEMBER 2021**
**PLUS REPORTING DATA BEGINNING JANUARY 21, 2021**

On August 13, 2021, the Court entered an injunction requiring Defendants to, *inter alia*, "enforce and implement [the Migrant Protection Protocols (MPP)] *in good faith*." ECF No. 94 at 52; *see State v. Biden*, No. 21-10806, 2021 WL 3674780 at *13 (5th Cir. Aug. 19, 2021). "To ensure compliance with this order," the Court provided, "starting September 15th, 2021, the Government must file with the Court on the 15th of each month, a report stating

> (1) the total monthly number of encounters at the southwest border; (2) the total monthly number of aliens expelled under Title 42, Section 1225, or under any other statute; (3) Defendants' total detention capacity as well as current usage rate; (4) the total monthly number of "applicants for admission" under Section 1225; (5) the total monthly number of "applicants for admission" under Section 1225 paroled into the United States; and (6) the total monthly number of "applicants for admission" under Section 1225 released into the United States, paroled or otherwise.

ECF No. 94 at 52-53. Further, on November 18, 2021, the Court granted in part and denied in part Plaintiffs' Motion to Enforce Permanent Injunction and for Expedited Discovery. ECF No. 116. As part of the relief, the Court added the following requirements to Defendants' reporting:

- Defendants must file with the Court **on or before December 15, 2021** a report showing the five categories of information required by the injunction broken down monthly beginning January 21, 2021;

- Defendants' reports filed with the Court in compliance with the injunction, including the report required by subsection (b), must include - as a part of categories (5) and (6) - the number of applicants paroled or released into the United States based on DHS's lack of detention capacity; and

- Defendants' reports filed with the Court in compliance with the injunction, including the report required by subsection (b), must show data on Haitian migrants in all categories.

ECF No. 116 at 9.

Defendants submit the following Report in compliance with these requirements. First, the attached reports and tallies below reflect the monthly data from November 1, 2021, through November 30, 2021, in compliance with Defendants' routine monthly reporting and the additional

1

provisions in the Court's November 18 order. Second, as also stated in that order, the attached data reports submitted by U.S. Customs and Border Protection (CBP) and U.S. Immigration and Customs Enforcement (ICE) address the categories of information required by the injunction broken down monthly beginning January 21, 2021.

1. **Total Monthly Number of Encounters at the Southwest Border**

For the month of November 2021, DHS reported 173,620 total encounters at the Southwest Border (SWB). Ex. A at 1-2 (CBP Report). This figure combines statistics reported by the U.S. Customs and Border Protection's Office of Field Operations (OFO), which deals with noncitizens seeking to enter at land ports of entry (POE), with statistics from the U.S. Border Patrol (USBP), which apprehends noncitizens seeking to enter between POEs. This figure reflects the sum of all Title 8 Apprehensions between the ports of entry along the SWB and Title 8 Inadmissibles at land ports of entry along the SWB, 86,279, and all Title 42 Expulsions at and between the ports of entry along the SWB, 87,341, reported by OFO and USBP . Ex. A at 1-2.

DHS also reported, for the month of November 2021, 1,015 total encounters with Haitian nationals. Ex. A at 2-3. This figure similarly reflects the sum of all Haitian Title 8 Apprehensions between the ports of entry along the SWB and Title 8 Inadmissibles at land ports of entry along the SWB, 809, and all Title 42 Expulsions at and between the ports of entry along the SWB, 206, reported by OFO and USBP. Ex. A at 2-3.

Further, CBP's report includes these categories of data broken down by month beginning with January 21, 2021. Ex. A at 1-3.

2. **Total Monthly Number of Aliens Expelled Under Title 42, Section 1225, or Under Any Other Statute**

For the month of November 2021, DHS reported 96,735 total noncitizens expelled under Title 42 and removed or returned under Title 8 authorities (including 8 U.S.C. § 1225). This figure

includes 87,341 Title 42 expulsions and 8,179 Title 8 removals and returns reported by CBP, Ex. A at 3-4, and 1,215 removals under 8 U.S.C. § 1225 reported by ICE[1], Ex. B (ICE Report) at 14.

DHS also reported, for the month of November 2021, 518 total Haitian nationals expelled under Title 42 and removed or returned under Title 8 authorities (including 8 U.S.C. § 1225). This figure includes 206 Haitian national Title 42 expulsions and two (2) Title 8 removals and returns reported by CBP, Ex. A at 4-5, and 310 removals of Haitian nationals under 8 U.S.C. § 1225 reported ICE, Ex. B at 14.

As explained in Exhibit A, CBP's Title 8 removals and returns include several categories of removals and returns conducted by OFO and USBP, including expedited removals, reinstated orders of removal, voluntary returns, returns pursuant to 8 U.S.C. § 1225(b)(2)(C), withdrawals of applications for admission, etc. Ex. A at 4-5. ICE's removals under section 1225 represent expedited removals. Ex. B at 14-16.

Further, CBP's and ICE's reports include these categories of data broken down by month beginning with January 21, 2021. Ex. A at 3-5; Ex. B at 14-16.

3. **Total Detention Capacity and Current Usage Rate**

For the month of November 2021, DHS reported that its total detention capacity was approximately 34,618, a figure combining CBP's approximate holding capacity of 5,685, Ex. A at 5-6, and ICE's current approximate funded detention capacity of 28,933,[2] Ex. B at 1. CBP's

---

[1] ICE removals include noncitizens processed for Expedited Removal (ER) or Voluntary Return (VR) that are turned over to ICE Enforcement and Removal Operations (ERO) for detention. Noncitizens processed for ER and not detained by ERO or VR after June 1, 2013 and not detained by ERO are primarily processed by CBP, and would be included within CBP's data. Ex. B.

[2] ICE has approximately 34,000 funded detention beds available nationwide but its full inventory of bedspace is currently limited to approximately 28,933 beds, due to various court orders limiting the intake of noncitizen detainees, an increase in detention facility contract terminations, detention facility contract modifications, and the ongoing COVID-19 pandemic. Ex. B at 13; *see, e.g.*, *Fraihat v. ICE*, 445 F. Supp. 3d 709 (C.D. Cal. Apr. 20, 2020).

approximate holding capacity is the sum of OFO's approximate holding capacity, 935, and USBP's average holding capacity, 4,750. Ex. A at 6-7 & n.11.

DHS reported that the current average daily usage rate throughout November 2021 for CBP detention was 14.8% for OFO facilities and 213% for Border Patrol facilities, Ex. A at 6-7, and approximately 80.3% for ICE detention facilities. *See* Ex. B at 13 (rate equals average daily population of 23,244 for the month of November 2021 over the current approximate total detention capacity of 28,933).

Regarding Haitian nationals, for the month of November 2021, DHS reported that, for CBP holding capacity, there was a daily average of 30 Haitian nationals in OFO custody, or 3.2% of overall OFO holding capacity, and a daily average of 136 Haitian nationals held in Border Patrol facilities, which represents 2.86% of overall USBP average holding capacity. Ex. A at 6-8. With respect to ICE, there was a monthly average daily population of 1,736 Haitian nationals in ICE custody, Ex. B at 13, indicating that Haitians accounted for an average daily usage rate of 6.0% of all ICE detention capacity.

Further, CBP's and ICE's reports include these categories of data broken down by month beginning with January 21, 2021. Ex. A at 6-8; Ex. B at 1-13.

**4. Total Monthly Number of Applicants for Admission Under § 1225**

For the month of November 2021, DHS reported that the total number of applicants for admission under Section 1225 encountered[3] by CBP was 86,279. Ex. A at 9. This figure is

---

[3] An applicant for admission is defined as "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters)." 8 U.S.C. § 1225(a)(1). Thus, an applicant for admission may include noncitizens that have never been encountered by CBP. At this time, CBP does not have a mechanism to track applicants for admission in the United States that are not encountered

consistent with CBP's total number of noncitizen encounters subtracting its Title 42 expulsions. *See* Ex. A at 9 n.13; *supra* §§ 1, 2.

Regarding Haitian nationals, DHS reported that the total number of Haitian national applicants for admission under Section 1225 encountered by CBP was 809. Ex. A at 9.

Further, CBP's report includes this data broken down by month beginning with January 21, 2021. Ex. A at 9.

**5. Total Monthly Number of Applicants for Admission Under § 1225 Paroled Into the United States**

For the month of November 2021, DHS reported that the total number of applicants for admission under Section 1225 paroled into the United States was 15,353. This figure combines 9,866 total CBP grants of parole in November 2021 for noncitizens apprehended or encountered at the Southwest Border, Ex. A. at 10, and 5,487 ICE grants of parole, Ex. B at 17.

Regarding Haitian nationals, for the month of November 2021, DHS reported that the total number of Haitian applicants for admission under Section 1225 paroled into the United States was 30. This number combines 29 CBP grants of parole for Haitian nationals at the Southwest Border, 16, Ex. A at 10, with one (1) ICE grant of parole for Haitian nationals transferred to ICE custody after being apprehended or encountered by CBP at the Southwest Border, Ex. B at 18.

Further, CBP's and ICE's reports include these categories of data broken down by month beginning with January 21, 2021. Ex. A at 10; Ex. B at 17-20.

Regarding the number of applicants paroled into the United States based on DHS's lack of detention capacity, Border Patrol reported 133 noncitizens paroled at the Southwest Border in November 2021 due to lack of detention space. Ex. A at 12. However, this number may not account

---

by CBP. Ex. A at 9 n.13. All references in this document to "applicants for admission" refer to noncitizen applicants for admission encountered at or in-between POEs by CBP.

for all such paroles: Lack of detention capacity is not a required field in BP's system of record. Ex. A at 12 n.19. Some paroles were documented in the system using a descriptor of "lack of space," but since it is not a required field, the descriptor is not consistently utilized and documented in the system. *Id.* As Defendants previously explained, "The number of noncitizens paroled or released into the United States by CBP based on DHS's lack of detention capacity is not a reliable data point in CBP's electronic systems of records. CBP's data processes do not accurately capture release or parole data uniformly." ECF No. 118-2 ¶ 5.

Data on the number of applicants paroled into the United States based on lack of detention capacity from OFO is currently unavailable. Ex. A at 11 n.14. In the case of OFO encounters, the relevant decision not detain is made by ICE. *Id.* OFO is able to provide data on noncitizens paroled and released into the United States; however, is not able to provide specific reasons as to why detention was declined. *Id.* Specific reasons for denial are not captured in the agency's electronic systems of record nor is it provided when that decision is reached. *Id.*; *see* ECF No. 118-2 ¶ 5.

As for ICE, "ICE's data systems have not captured release or parole based on lack of detention capacity since September 2019" and therefore "pulling that data from ICE systems for January 2021 to the present is impossible." ECF No. 118-1 ¶ 11. ICE's data systems capture only "the following release reasons: Bonded Out, Order of Recognizance, Order of Supervision, Paroled, or Prosecutorial Discretion." Ex. B at 22. ICE officers are not required to note in the subject's record any rationale for the release determination. ECF No. 118-1 ¶ 11. "Therefore, attempting to re-create that data from January 2021 to the present, through manual review or otherwise, would be operationally impossible because the data for that time period does not exist in any form." *Id.*

Regarding the number of Haitian applicants paroled into the United States based on DHS's

6

lack of detention capacity, Border Patrol reported no paroles of Haitian nationals at the Southwest Border in November 2021 due to lack of detention space. Ex. A at 13. Again, however, this number may be incomplete, as lack of detention capacity is not a required field in BP's system of record. Ex. A at 12 n.19; *see* ECF No. 118-2 ¶ 5.

Data on the number of the number of Haitian applicants paroled into the United States in November 2021 based on lack of detention capacity is currently unavailable from OFO, as the relevant decision not to detain is made by ICE and the reasons are not captured in OFO's electronic record-keeping system. Ex. A at 11 n.14; *see* ECF No. 118-2 ¶ 5. Such data is likewise unavailable from ICE. ECF No. 118-1 ¶ 11; *see* Ex. B at 22.

Further, to the extent it is available, CBP's report includes this data broken down by month beginning January 1, 2021. Ex. A at 10-13.

### 6. Total Monthly Number of Applicants for Admission Under § 1225 Released Into the United States, Paroled or Otherwise

For the month of November 2021, DHS reported that the total number of applicants for admission under Section 1225 released into the United States, paroled or otherwise, was 83,725, a figure reflecting CBP's 43,113 total releases across all categories for the month of November 2021, Ex. A at 11,[4] combined with ICE's 40,612 total releases of noncitizens transferred to it from CBP following their apprehension or encounter at the Southwest Border for the month of November 2021, Ex. B at 17.

---

[4] This report does not include data on unaccompanied alien children (UCs), as defined in 6 U.S.C. § 279(g), who the Court recognized are not amenable to MPP, ECF No. 94 at 9, and who are subject to special processing and are transferred to U.S. Department of Health and Human Services Custody pursuant to the Trafficking Victims Protection Reauthorization Act. *See* 8 U.S.C. §§1232(a)(5)(D), 1232(b)(3), 1232(c)(2)(A), 1232(c)( (3); *see also* CBP, Southwest Border Encounters, https://www.cbp.gov/newsroom/stats/southwest-land-border-encounters (providing statistics on UCs encountered by CBP).

Regarding Haitian nationals, for the month of November 2021, DHS reported that the total number of Haitian national applicants for admission under Section 1225 released into the United States, paroled or otherwise, was 416. This figure combines 277 releases of Haitian nationals by CBP at the Southwest Border, Ex. A at 11, with 139 releases by ICE of Haitian nationals transferred to it from CBP following their apprehension or encounter at the Southwest Border, Ex. B at 18.

Further, CBP's and ICE's reports include these categories of data broken down by month beginning with January 21, 2021. Ex. A at 11; Ex. B at 17-20.

Regarding the number of applicants released into the United States, paroled or otherwise, based on DHS's lack of detention capacity, Border Patrol reported a total of 12,697 noncitizens released at the Southwest Border in November 2021 due to lack of detention space (133 released on parole and 12,564 released on Notice to Appear – Order of Release on Recognizance (NTA/OR)). Ex. A at 12. However, this number may not account for all such releases: Lack of detention capacity is not a required field in BP's system of record. Ex. A at 12 n.19. Some paroles were documented in the system using a descriptor of "lack of space," but since it is not a required field, the descriptor is not consistently utilized and documented in the system. *Id.*; *see* ECF No. 118-2 ¶ 5.[5]

Data from OFO on the number of applicants released into the United States, paroled or otherwise, based on lack of detention capacity is currently unavailable. Ex. A at 11 n.14. In the case of OFO encounters, the relevant decision not detain is made by ICE. *Id.* OFO is able to provide

---

[5] Similarly, as CBP's report reflects, some noncitizens were in previous months released on Notices to Report (NTRs) when BP holding capacity was exceeded or when resources became overwhelmed; however, lack of detention capacity is not a required field in BP's system of record. Ex. A at 12 & n.18; *see* ECF No. 118-2 ¶ 5.

data on noncitizens paroled and released into the United States; however, is not able to provide specific reasons as to why detention was declined. *Id.* Specific reasons for denial are not captured in the agency's electronic systems of record nor is it provided when that decision is reached. *Id.*; *see* ECF No. 118-2 ¶ 5.

As for ICE, "ICE's data systems have not captured release or parole based on lack of detention capacity since September 2019" and therefore "pulling that data from ICE systems for January 2021 to the present is impossible." ECF No. 118-1 ¶ 11. ICE's data systems capture only "the following release reasons: Bonded Out, Order of Recognizance, Order of Supervision, Paroled, or Prosecutorial Discretion." Ex. B at 22. ICE officers are not required to note in the subject's record any rationale for the release determination. ECF No. 118-1 ¶ 11. "Therefore, attempting to re-create that data from January 2021 to the present, through manual review or otherwise, would be operationally impossible because the data for that time period does not exist in any form." *Id.*

Regarding the number of Haitian applicants released into the United States, paroled or otherwise, based on DHS's lack of detention capacity, Border Patrol reported a total of 89 Haitian nationals released at the Southwest Border in November 2021 due to lack of detention space (89 released on NTA/OR and no recorded paroles). Ex. A at 12. However, this number may not account for all such releases: Lack of detention capacity is not a required field in BP's system of record. Ex. A at 12 n.19. Some paroles were documented in the system using a descriptor of "lack of space," but since it is not a required field, the descriptor is not consistently utilized and documented in the system. *Id.*; *see* ECF No. 118-2 ¶ 5.[6]

---

[6] Similarly, as CBP's report reflects, some Haitian nationals were released on NTRs in previous months when BP holding capacity was exceeded or when resources became overwhelmed;

Data on the number of the number of Haitian applicants released into the United States in November 2021 based on lack of detention capacity is currently unavailable from OFO, as the relevant decision not to detain is made by ICE and the reasons are not captured in OFO's electronic record-keeping system. Ex. A at 11 n.14; *see* ECF No. 118-2 ¶ 5. Such data is likewise unavailable from ICE. ECF No. 118-1 ¶ 11; *see* Ex. B at 22.

Further, to the extent it is available, CBP's report includes this data broken down by month beginning January 1, 2021. Ex. A at 10-13.

| | |
|---|---|
| Dated: December 15, 2021 | Respectfully submitted, |
| CHAD E. MEACHAM<br>*Acting United States Attorney* | BRIAN M. BOYNTON<br>*Acting Assistant Attorney General* |
| BRIAN W. STOLZ<br>*Assistant United States Attorney* | WILLIAM C. PEACHEY<br>*Director*<br>Office of Immigration Litigation<br>District Court Section |
| | EREZ REUVENI<br>*Assistant Director* |
| | BRIAN C. WARD<br>*Senior Litigation Counsel* |
| | /s/ *Joseph A. Darrow*<br>JOSEPH A. DARROW<br>*Trial Attorney*<br>U.S. Department of Justice<br>Civil Division<br>Office of Immigration Litigation<br>District Court Section<br>P.O. Box 868, Ben Franklin Station<br>Washington, DC 20044<br>Tel.: (202) 598-7537<br>Joseph.a.darrow@usdoj.gov |
| | *Counsel for Defendants* |

---

however, lack of detention capacity is not a required field in BP's system of record. Ex. A at 12 & n.18; *see* ECF No. 118-2 ¶ 5.

**CERTIFICATE OF SERVICE**

I hereby certify that on December 15, 2021, I electronically filed the foregoing document with the Clerk of the Court for the United States District Court for the Northern District of Texas by using the CM/ECF system. Counsel in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

/s/ *Joseph A. Darrow*
JOSEPH A. DARROW
U.S. Department of Justice
