## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## AMARILLO DIVISION

|  |  |  |
|---|---|---|
| THE STATE OF TEXAS and | § | |
| | § | |
| THE STATE OF MISSOURI, | § | |
| | § | |
| Plaintiffs, | § | Case No. 2:21-cv-00067-Z |
| | § | |
| v. | § | |
| | § | |
| JOSEPH R. BIDEN, JR., in his official capacity | § | |
| as President of the United States of | § | |
| America, *et al.*, | § | |
| | § | |
| Defendants. | § | |

### PLAINTIFFS' MEMORANDUM IN OPPOSITION
### TO DEFENDANTS' MOTION FOR RECONSIDERATION

Defendants ask the Court, ECF No. 118 (the "Motion for Reconsideration"), to backtrack on its Memorandum Opinion and Order that granted Plaintiffs' motion for post-judgment discovery, ECF No. 116 (the "Order"). The purpose of the Order was to enable Plaintiffs and the Court to determine whether Defendants are "in good faith" implementing the Migrant Protection Protocols ("MPP") pursuant to the permanent injunction. Defendants attack the Order on several grounds: (1) that the Court lacked jurisdiction to issue it because the final judgment is on appeal; (2) that the discovery it authorized is moot because Defendants have reached agreement with Mexico on the framework to re-implement MPP and have begun to implement the program; and (3) that the discovery the Court permitted by the Order is overly intrusive.

Defendants' jurisdictional argument relies on ignoring the substance of what the Order authorized—post-judgment discovery, not a modified injunction. Their argument on mootness ignores that the permanent injunction requires Defendants not merely to put in place a renewed MPP—it requires them to enforce and implement that program in good faith. And Defendants' arguments on the intrusiveness of the discovery just repeat the arguments the Court already rejected in the Order.

## I.     The Court had jurisdiction to enter its discovery order.

First, Defendants argue that the Order "modified" the permanent injunction, and that the Court lacked jurisdiction to do so because they have filed a notice of appeal. *See* Motion for Reconsideration at 3–5. That is wrong for at least two reasons.

*First*, the Court did not actually "modify" the permanent injunction, even though it used that word to describe its actions. *See* Order at 3 ("[T]he Court finds good reason to modify the injunction to allow *limited* discovery to ensure continued compliance with the injunction."). The Fifth Circuit recognizes a clear distinction between orders where a court "grants, continues, modifies, refuses, or dissolves an injunction," *In re Ingram Towing Co.*, 59 F.3d 513, 516 (5th Cir. 1995) and "orders that

1

merely interpret or clarify an injunction." *Id.* (quoting *Motorola, Inc. v. Computer Displays Int'l*, 739 F.2d 1149, 1155 (7th Cir. 1984). "The line between modification and interpretation is a functional one, and the dispositive issue is whether 'the ruling appealed from can fairly be said to have changed the underlying decree in a jurisdictionally significant way.'" *Martin's Herend Imports, Inc. v. Diamond & Gem Trading U.S.A. Co.*, 195 F.3d 765, 769 (5th Cir. 1999) (quoting *Sierra Club v. Marsh*, 907 F.2d 210, 212 (1st Cir. 1990)); *cf. Morales Feliciano v. Rullan*, 303 F.3d 1, 7 (1st Cir. 2002) (holding that, for purposes of 28 U.S.C. § 1292(a)(1), an order *modifies*—rather than interprets—an injunction "if it substantially readjusts the legal relations of the parties, and does not relate simply to the conduct or progress of litigation") (internal citation omitted). Courts are to "look beyond labels such as 'clarification' or 'modification' to consider the actual effect of the order." *Gautreaux v. Chi. Hous. Auth.*, 178 F.3d 951, 956–57 (7th Cir. 1999). A court order requiring the production of information—whether to other litigants or the Court itself—does not readjust the legal relations of the parties but merely relates to the conduct of litigation, and is not a modification of the permanent injunction in this case.

As these principles explain, the key inquiry is whether the Court changed its permanent injunction "in a jurisdictionally significant way." *Martin's Herend Imports*, 195 F.3d at 769. Here, the relief granted is not an addition to or modification of the permanent injunction at all. Rather, the Court has only allowed Plaintiffs to conduct post-judgment discovery related to compliance with the permanent injunction. *See* Order at 7 (allowing Plaintiffs' the opportunity conduct "*limited* discovery to ensure Defendants' compliance with the injunction"); *id.* at 8 ("Plaintiffs seek this information to ascertain more fully Defendants' compliance with the injunction."). Of course, injunctive relief and discovery are different in nature. That is why Plaintiffs' prior motion contained two components: one seeking enforcement of the injunction, and one seeking discovery. *See* ECF No. 107 (the "Motion for Discovery"). The Court has not imposed any new substantive obligations on the Defendants—it has only required them to comply with Plaintiffs' discovery requests. *Cf. Adams v. Georgia Gulf Corp.*, 237

F.3d 538, 542 (5th Cir. 2001) (an "order by a federal court that relates only to the conduct or progress of litigation before that court ordinarily is not considered an injunction and therefore is not appealable under 28 U.S.C. § 1292(a)(1)") (quoting *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 279 (1988)); *United States v. Brown*, 218 F.3d 415, 422 n.7 (5th Cir. 2000) ("Whether or not the gag order has the practical effect of granting an injunction against making extrajudicial comments, an order by a federal court that relates only to the conduct or progress of litigation before that court ordinarily is not considered an injunction."); *Hunt v. Bankers Trust Co.*, 799 F.2d 1060, 1066 (5th Cir. 1986) (Section 1292(a)(1) "does not authorize appeals from orders that compel or restrain conduct pursuant to the court's authority to control proceedings before it, even if the order is cast in injunctive terms."). The Court explicitly recognized this difference when it denied Plaintiffs' request to enforce the injunction, but granted their request for discovery. *See* Order at 1 ("Plaintiff' Motion is **GRANTED in part** as to the request for additional discovery and **DENIED** in all other respects."); *id.* at 9 ("Accordingly, Plaintiffs' Motion *seeking limited discovery* should be **GRANTED**.") (emphasis added). The fact that the responses to the discovery requests are filed with the Court and continue month-to-month—reflecting the duties of a litigant to supplement discovery responses as new information arises—does not transform them into injunctive relief.

That the Order requires that Defendants file certain information with the Court is a distinction of form, not substance. In substance, these requirements resemble an order requiring Defendants to comply with Plaintiffs' discovery request than they do like independent injunctive obligations. *Cf. Analytical Eng'g, Inc. v. Baldwin Filters, Inc.*, 425 F.3d 443, 452–54 (7th Cir. 2005) (finding that district court order that "solicited additional information from the parties concerning the nature of the patents at issue in order to assist the district court in addressing [a] motion to enforce" had not "disturbed or revised legal rights and obligations which, by its prior judgment, had been plainly and properly settled with finality"); *M. D. by next friend Stukenberg v. Abbott*, 929 F.3d 272, 280 (5th Cir. 2019) (distinguishing

between "substantive" "injunctive provision" and "administrative" reporting requirements). That is so because the Motion for Discovery requested the information in the form of a discovery request, not as an addition to the permanent injunction. Motion for Discovery at 9 ("Plaintiffs are entitled to discovery relating to facts articulated in Defendants' recently-filed compliance report."). And we know the relief the Court granted in the order must pertain only to discovery because Plaintiffs' request for relief to enforce the permanent injunction was denied.

But even if the reporting requirements were injunctive in nature, this relief merely constitutes an "interpretation" or "clarification" of preexisting reporting requirements. *In re Ingram Towing Co.*, 59 F.3d at 516. Indeed, the Order requires Defendants to provide certain information related to the reports they are *already required to file. See* Order at 8 ("Plaintiffs request information related to the monthly reporting that *the injunction already requires*.") (emphasis added). In this respect, the substance of the Order is to clarify that which is required by the permanent injunction, not impose new substantive requirements. True, the Court found there is good reason to "modify the injunction to allow *limited* discovery," but courts are directed to "look beyond labels such as 'clarification' or 'modification.'" *Gautreaux*, 178 F.3d at 956–57. The Order is not a modification of the permanent injunction. It is an order allowing Plaintiffs to conduct discovery. At most, it also clarifies Defendants' reporting obligations under the permanent injunction.[1]

---

[1] Defendants' other objections to the information requirements fare no better. *First*, as Defendants apparently concede, their request relating to the Order's requirement that they provide certain information by December 15 is moot, Motion for Reconsideration at 15–17, as they have complied with that requirement. *See* ECF No. 119. That they have done so also undercuts their arguments as to the burden of these requirements on a month-to-month basis. Motion for Reconsideration at 8–9. *Second*, their argument that the information regarding the parole of aliens that they do not have the capacity to detain is unrelated to the permanent injunction is puzzling—the Court made clear in its permanent injunction order that Defendants' use of class-wide parole was relevant to their violations under 8 U.S.C. § 1225. ECF No. 94 at 31, 43 n.11; *id.* at 52 (requiring MPP to be enforced and implemented in good faith until Defendants have "sufficient detention capacity to detain all aliens subject to mandatory detention under Section 1225 without releasing any aliens *because of* lack of detention resources"–i.e., through parole). *Third*, Defendants' objection that the information back to the beginning of the Administration is not relevant, Motion for Reconsideration at 9–10, is just a rehash of what the Court already rejected. Order at 9 (noting this data could "confirm whether Defendants' current actions and results represent a change in the time period before the

4

*Second*, Defendants are simply wrong when they contend that their notice of appeal divests the Court of jurisdiction to enforce the permanent injunction, or issue related orders. It is true that, "under the usual rule, the district court loses all jurisdiction over matters brought to [the appellate court] upon the filing of a notice of appeal." *Winchester v. U.S. Att'y for S. District of Tex.*, 68 F.3d 947, 948 (5th Cir. 1995). But it is a well-established exception to that rule that a district court "retain[s] jurisdiction to supervise its injunction" pending appeal, provided that "no stay of the injunction ha[s] been granted." *United States v. Revie*, 834 F.2d 1190, 1205 (5th Cir. 1987); *see also Ross v. Marshall*, 426 F.3d 745, 751 (5th Cir. 2005) (explaining that a district court retains jurisdiction to "enforce its judgment so long as the judgment has not been stayed or superseded"). This residual jurisdiction includes interpreting and clarifying the scope of a prior injunction. *See Martin's Herend Imports*, 195 F.3d at 769. The Court rightly recognized as much in its Order. *See* Order at 9 ("The Court retains jurisdiction over this matter for the purpose of construction, modification, and enforcement of the permanent injunction.").

And while "[i]t is the general rule that a district court is divested of jurisdiction upon the filing of the notice of appeal with respect to any matters involved in the appeal[,] . . . the district court *may still proceed with matters not involved in the appeal*." *Alice L. v. Dusek*, 492 F.3d 563, 564–65 (5th Cir. 2007) (involving interlocutory appeal) (citation omitted, emphasis added); *see also Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982) ("The filing of a notice of appeal is an event of jurisdictional

---

injunction"). *Finally*, Defendants' objection that the information relating to Haitian migrants is not relevant to compliance with the injunction because Haitians were not subject to MPP in its past incarnation, Motion for Reconsideration at 10, is belied by (1) the Court's consistent concession that reimplementation of MPP was not required to follow all the details of the previous version, Order at 4, 5, 7—Defendants cannot use this as a ratchet to drop previous aspects of MPP while insisting any concerns be limited to the specifics of the previous program; and (2) the fact that the recent reimplementation of MPP in fact does include Haitian migrants. *See* Dec. 2, 2021 Memorandum from Robert Silvers*, Guidance regarding the Court-Ordered Reimplementation of the Migrant Protection Protocols*, ("Individuals Subject to MPP: Inadmissible noncitizens encountered at the Southwest Border at ports of entry or within 96 hours of crossing between ports of entry are subject to placement in MPP if they are nationals of any country in the Western Hemisphere other than Mexico."), available at https://www.dhs.gov/sites/default/files/publications/21_1202_plcy_mpp-policy-guidance_508.pdf.

significance—it confers jurisdiction on the court of appeals and divests the district court of its control *over those aspects of the case involved in the appeal*.") (emphasis added). "Although appeals transfer jurisdiction from the district court to the appellate court concerning those aspects of the case involved in the appeal, the district court is nonetheless free to adjudicate matters that are not involved in that appeal." *Whole Woman's Health v. Jackson*, 13 F.4th 434, 445–47 (5th Cir. 2021) (interlocutory appeal) (quoting *Weingarten Realty Invs. v. Miller*, 661 F.3d 904, 908 (5th Cir. 2011) (cleaned up)

"[T]he powers of the district court over an injunction pending appeal should be limited to maintaining the status quo and ought not to extend to the point that the district court can divest the court of appeals from jurisdiction while the issue is before us on appeal." *Coastal Corp. v. Texas E. Corp.*, 869 F.2d 817, 819–21 (5th Cir. 1989). Issues of post-judgment discovery are not—indeed, could not be—the subject of the appeal of the final judgment in this case, so could not be aspects of the case on appeal, and could never serve to moot that appeal.  Enforcing the unstayed permanent injunction in this case serves to uphold the status quo—and the Court receiving information on compliance is necessary and ancillary to that task.

The logical conclusion of Defendants' argument is that the Court has no power to stop them from violating its permanent injunction, even while it remains in effect due to all of their stay requests being rejected at every level of the federal judiciary. If Defendants were right, there would be no reason to move for an injunction to be stayed pending appeal: The party on the losing end of a stay motion could simply violate the injunction, with no fear of recourse from the district court until the appellate court remanded the case. But a district court retains jurisdiction to enforce its unstayed injunction, even on appeal. Any other result would make no sense.

## II.     The Court properly allowed the four depositions to proceed.

Defendants also protest the Court's allowing Plaintiffs to take the deposition of four lower-level agency officials, but like their others, this concern is overstated. Their primary defense is that the

6

depositions are moot in light of their recent commitment to reimplementing MPP. Motion for Reconsideration at 12. But that is not how mootness works. Defendants have certainly *not* fully-reimplemented MPP, and Plaintiffs—and the Court—are entitled to ensure that they do.

### A.    The issue of whether Defendants are complying with the permanent injunction is not moot.

Defendants have opposed reimplementation of MPP at every turn. Acting DHS Secretary Pekoske issued the January 20 Memorandum, but Plaintiffs sought injunctive relief. *See* ECF No. 30. To avoid litigating the prior memorandum, Secretary Mayorkas issued the June 1 Memorandum. *See* ECF No. 46. Again, Plaintiffs sought injunctive relief. *See* ECF No. 53. The Court granted that request and entered a permanent injunction, requiring Defendants to implement MPP and give monthly updates on the status of that obligation. *See* ECF Nos. 94, 95. Defendants appealed the Court's order, and sought a stay pending appeal. *See* ECF Nos. 96, 98. The stay request, *see* ECF No. 101, and the underlying appeal were both denied. *See Texas v. Biden*, ---F.4th---, 2021 WL 5882670 (5th Cir. Dec. 13, 2021). And in fact, Defendants were so committed to opposing the reimplementation of MPP that Plaintiffs were forced to move to enforce the permanent injunction.

Although Defendants have voluntarily ceased refusing to reinstitute MPP as a program, the depositions at issue here are highly relevant to ensuring that they do in fact carry out reimplementation. *See* ECF No. 94 at 52 (Defendants are **ORDERED** to enforce and implement MPP in good faith."). The four depositions will allow Plaintiffs to gather information on the actions Defendants are taking to reimplement MPP, and on the state of reimplementation generally. That controversy is not moot. In light of the Biden Administration's continuing and express desire to terminate MPP, quite the opposite is true. These depositions are a limited and appropriate way to monitor the Defendants' begrudging compliance with the Court's permanent injunction.

### B.    Defendants recycle arguments the Court has already rejected.

A motion to reconsider may not be used to relitigate old matters or to present evidence or

arguments that should have been offered before judgment was entered. *Banister v. Davis*, 140 S. Ct. 1698, 1703 (2020); *see also Marseilles Homeowners Condo Ass'n v. Fidelity Nat. Ins. Co.*, 542 F.3d 1053, 1058 (5th Cir. 2008). Defendants' only other defense to these depositions is to reassert three arguments the Court has already rejected.

*First*, Defendants insist the four deponents are high-ranking officials, Motion for Reconsideration at 7, but the Court has already determined they are "lower-level agency officials." This is an inappropriate basis for seeking reconsideration because nothing has changed since the Court issued its Order. As before, the four officials in question are (i) Blas Nuñez-Neto, the Acting Assistant Secretary of DHS, (ii) David Shahoulian, a former Assistant Secretary of DHS, (iii) Daniel H. Weiss, a Principal Deputy Chief Immigration Judge, and (iv) Ricado Zúniga, a Principal Deputy Assistant Secretary. As before, those officials hold lower-level positions when compared with the rank of officials the apex doctrine is designed to protect. *See* Defendants' Response to Plaintiffs Motion to Enforce, ECF No. 110 at 14–15 (citing cases addressing high-ranking officials like the EPA Administrator, the Vice President's Chief of Staff, the Attorney General, and the Deputy Attorney General).

*Second*, Defendants reraise their concern that the depositions call for "complex questions" involving privileged information. Motion for Reconsideration at 11–12. But the Court has already rejected this theory, and nothing has changed in the interim. *See* Order at 8 ("Defendants cannot assert privilege or status to avoid depositions of lower-level officials limited to explaining decisions and actions taken to implement those decisions. . . . [The deliberative process privilege] does not protect information explaining a decision, and it certainly does not protect factual information."). Plaintiffs seek only information within the scope of that identified in the Court's order. That is, Plaintiffs seek only information strictly related to Defendants' compliance with the permanent injunction, which does not at all require Defendants to divulge protected information concerning an agency's

deliberative process. *See, e.g., NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151–152 (1975). In addition, as has been previously explained, a party cannot avoid a deposition by making a "blanket assertion" of privilege. *See, e.g., Advanced Tech. Incubator, Inc. v. Sharp Corp.*, 263 F.R.D. 395, 398–99 (W.D. Tex. 2009); *Nguyen v. Excel Corp.*, 197 F.3d 200, 206 n.16 (5th Cir. 1999).

      *Third*, Defendants rehash theories about why the depositions of particular officials are inappropriate, but none of their theories have merit, let alone identify "newly discovered evidence" or a "manifest error in law of fact." *Trevino v. City of Fort Worth*, 944 F.3d 567, 570 (5th Cir. 2019). They note that Nuñez-Neto and Shahoulian have held the same position, Motion at 13, and contend that this renders their depositions redundant. But if their knowledge were redundant, Defendants would not have offered declarations from *both of them* to substantiate the difficulties that they allegedly face in reimplementing MPP. ECF No. 105-1 (Nuñez-Neto declaration, offered in support of Defendants' compliance report); ECF No. 98-1 (Shahoulian declaration, offered in support of Defendants' emergency motion to stay the permanent injunction). Defendants argue the same with respect to Zúniga, contending his declaration "covers a subset of issues that are duplicative of issues addressed by Acting Assistant Secretary Nuñez-Neto in his declarations." Motion for Reconsideration at 13. Again, this is directly undercut by the fact that Defendants found it necessary and relevant to offer Zúniga's declaration in previous filings.

      In truth, Defendants make this redundancy argument now to bolster their argument that, if depositions are needed at all, Plaintiffs should only take Nuñez-Neto's deposition. *See id.* ("If the Court concludes that depositions are appropriate . . . the Court should limit Plaintiffs to one deposition of DHS Acting Assistant Secretary Blas Nuñez-Neto."). Nuñez-Neto is all Plaintiffs need, Defendants argue, because his declaration is the only one that really said anything. To the contrary, each deposition addresses specific topics, and each declarant has relevant information concerning discrete reimplementation issues—presumably this is why Defendants decided to offer each one. The Court

correctly determined that deposing each of the four officials would aid Plaintiffs in ensuring Defendants' compliance with the permanent injunction. Nothing Defendants say here changes that analysis.

As an alternative to the four depositions, Defendants propose that the Court allow Plaintiffs to conduct written discovery. Motion for Reconsideration at 14–15. That argument is unavailing because it is based on the erroneous contention that the depositions would be "intrusive." To the contrary, taking the deposition of a declarant who offers opposition testimony is just standard litigation practice, and "post-judgment discovery is broad." *JP Morgan Chase Bank, N.A. v. DataTreasury Corp.*, 936 F.3d 251, 259 (5th Cir. 2019); *Republic of Argentina v. NML Cap., Ltd.*, 573 U.S. 134, 138–39 (2014) ("the rules governing discovery in postjudgment execution proceedings are quite permissive"). Though parties may resist, federal courts routinely order the deposition of an opposing party's declarant. *See, e.g., Worsham v. B.G. Prop. Mgmt. LLC*, No. 4:16-cv-2712, 2020 WL 7353906, at *7 (S.D. Tex. Sept. 4, 2020); *Klein v. Fed. Ins. Co.*, No. 7:03-cv-102, 2015 WL 1525109, at *4 (N.D. Tex. Apr. 5, 2015); *Berthelot v. Am. Postal Workers Union, Local 185*, No. 4:10-cv-18, 2012 WL 289869, at *2 (S.D. Tex. Jan. 31, 2012). Plaintiffs—like any other party in federal litigation—are entitled to depose the four declarants listed above, question them on the subject of reimplementation efforts, and generally test the accuracy and credibility of their prior statements. By offering their declarations, Defendants asserted that the four individuals in question have knowledge on the issues relating to the reimplementation of MPP. Deposing those declarants is an ordinary part of the litigation process, not an "intrusive" anomaly, as Defendants contend.

## CONCLUSION

Plaintiffs respectfully request that the Court reject Defendants' plea for reconsideration of its order granting post-judgment discovery.

Dated: December 22, 2021

ERIC S. SCHMITT
Attorney General of Missouri

D. JOHN SAUER, #58720MO*
Solicitor General

/s/ JESUS A. OSETE
JESUS A. OSETE, #69267MO*
Deputy Solicitor General

OFFICE OF THE ATTORNEY GENERAL
Supreme Court Building
207 West High Street
P.O. Box 899
Jefferson City, Missouri 65102
Tel. (573) 751-8870
Fax (573) 751-0774
John.Sauer@ago.mo.gov

*Counsel for Plaintiff State of Missouri*

*Admitted pro hac vice

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

JUDD E. STONE II
Solicitor General
Texas Bar No. 24076720

PATRICK K. SWEETEN
Deputy Attorney General for Special Litigation
Texas Bar No. 00798537

WILLIAM T. THOMPSON
Deputy Chief, Special Litigation Unit
*Attorney-in-Charge*
Texas Bar No. 24088531

/s/ RYAN D. WALTERS
RYAN D. WALTERS
Special Counsel
Texas Bar No. 24105085

OFFICE OF THE ATTORNEY GENERAL
SPECIAL LITIGATION UNIT
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Tel.: (512) 463-2100
Fax: (512) 457-4410
patrick.sweeten@oag.texas.gov
will.thompson@oag.texas.gov
ryan.walters@oag.texas.gov

*Counsel for Plaintiff State of Texas*

**CERTIFICATE OF SERVICE**

I certify that on December 22, 2021, a true and accurate copy of the foregoing document was

filed electronically (via CM/ECF) and served on all counsel of record.

/s/ RYAN D. WALTERS
RYAN D. WALTERS