**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION**

|  |  |  |
|---|---|---|
| STATE OF TEXAS,<br>STATE OF MISSOURI,<br><br>    *Plaintiffs,*<br><br>v.<br><br>JOSEPH R. BIDEN, JR.,<br>in his official capacity as<br>President of the United States, *et al.*,<br><br>    *Defendants.* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 2:21-cv-00067-Z |

<u>**DEFENDANTS' MONTHLY REPORT FOR DECEMBER 2021**</u>

On August 13, 2021, the Court entered an injunction requiring Defendants to, *inter alia*, "enforce and implement [the Migrant Protection Protocols (MPP)] *in good faith*." ECF No. 94 at 52; *see State v. Biden*, No. 21-10806, 2021 WL 3674780 at *13 (5th Cir. Aug. 19, 2021). "To ensure compliance with this order," the Court provided, "starting September 15th, 2021, the Government must file with the Court on the 15th of each month, a report stating

> (1) the total monthly number of encounters at the southwest border; (2) the total monthly number of aliens expelled under Title 42, Section 1225, or under any other statute; (3) Defendants' total detention capacity as well as current usage rate; (4) the total monthly number of "applicants for admission" under Section 1225; (5) the total monthly number of "applicants for admission" under Section 1225 paroled into the United States; and (6) the total monthly number of "applicants for admission" under Section 1225 released into the United States, paroled or otherwise.

ECF No. 94 at 52-53. Further, on November 18, 2021, the Court granted in part and denied in part Plaintiffs' Motion to Enforce Permanent Injunction and for Expedited Discovery. ECF No. 116. As part of the relief, the Court added the following requirements to Defendants' monthly reporting:

- Defendants' reports filed with the Court in compliance with the injunction, including the report required by subsection (b), must include - as a part of categories (5) and (6) - the number of applicants paroled or released into the United States based on DHS's lack of detention capacity; and

- Defendants' reports filed with the Court in compliance with the injunction, including the report required by subsection (b), must show data on Haitian migrants in all categories.

ECF No. 116 at 9.

Defendants submit the following Report in compliance with these requirements.

### 1.   Total Monthly Number of Encounters at the Southwest Border

For the month of December 2021, DHS reported 178,840 total encounters at the Southwest Border (SWB). Ex. A at 1 (CBP Report). This figure combines statistics reported by the U.S. Customs and Border Protection's Office of Field Operations (OFO), which deals with noncitizens

seeking to enter at land ports of entry (POE), with statistics from the U.S. Border Patrol (USBP), which apprehends noncitizens seeking to enter between POEs. This figure reflects the sum of all Title 8 Apprehensions between the ports of entry along the SWB and Title 8 Inadmissibles at land ports of entry along the SWB, 100,251, and all Title 42 Expulsions at and between the ports of entry along the SWB, 78,589, reported by OFO and USBP . Ex. A at 1.

DHS also reported, for the month of December 2021, 7,075 total encounters with Haitian nationals. Ex. A at 1. This figure similarly reflects the sum of all Haitian Title 8 Apprehensions between the ports of entry along the SWB and Title 8 Inadmissibles at land ports of entry along the SWB, 5,176, and all Title 42 Expulsions at and between the ports of entry along the SWB, 1,899, reported by OFO and USBP. Ex. A at 1.

## 2. Total Monthly Number of Aliens Expelled Under Title 42, Section 1225, or Under Any Other Statute

For the month of December 2021, DHS reported 86,342 total noncitizens expelled under Title 42 and removed or returned under Title 8 authorities (including 8 U.S.C. § 1225). This figure includes 78,589 Title 42 expulsions and 6,881 Title 8 removals and returns reported by CBP, Ex. A at 2-3, and 872 removals under 8 U.S.C. § 1225 reported by ICE[1], Ex. B at 2 (ICE Report).

DHS also reported, for the month of December 2021, 2,124 total Haitian nationals expelled under Title 42 and removed or returned under Title 8 authorities (including 8 U.S.C. § 1225). This figure includes 1,899 Haitian national Title 42 expulsions and 12 Title 8 removals and returns reported by CBP, Ex. A at 2-3, and 213 removals of Haitian nationals under 8 U.S.C. § 1225 reported ICE, Ex. B at 2.

---

[1] ICE removals include noncitizens processed for Expedited Removal (ER) or Voluntary Return (VR) that are turned over to ICE Enforcement and Removal Operations (ERO) for detention. Noncitizens processed for ER and not detained by ERO or VR after June 1, 2013 and not detained by ERO are primarily processed by CBP, and would be included within CBP's data. Ex. B.

As explained in Exhibit A, CBP's Title 8 removals and returns include several categories of removals and returns conducted by OFO and USBP, including expedited removals, reinstated orders of removal, voluntary returns, returns pursuant to 8 U.S.C. § 1225(b)(2)(C), withdrawals of applications for admission, etc. Ex. A at 2-3. ICE's removals under section 1225 represent expedited removals. Ex. B at 2. The number of individuals returned under 8 U.S.C. § 1225(b)(2)(C) was 191 individuals.

### 3.   Total Detention Capacity and Current Usage Rate

For the month of December 2021, DHS reported that its total detention capacity was approximately 34,868, a figure combining CBP's approximate holding capacity of 5,935, Ex. A at 3, and ICE's current approximate funded detention capacity of 28,933,[2] Ex. B at 1. CBP's approximate holding capacity is the sum of OFO's approximate holding capacity, 935, and USBP's average holding capacity, 5,000. Ex. A at 3 & n.11.

DHS reported that the current average daily usage rate throughout December 2021 for CBP detention was 32.8% for OFO facilities and 270% for Border Patrol facilities, Ex. A at 3 & n.11, and approximately 75.3% for ICE detention facilities. *See* Ex. B at 1 (rate equals average daily population of 21,793 for the month of December 2021 over the current approximate total detention capacity of 28,933).

Regarding Haitian nationals, for the month of December 2021, DHS reported that, for CBP holding capacity, there was a daily average of 2 Haitian nationals in OFO custody, or less than 1% of overall OFO holding capacity, and a daily average of 1,125 Haitian nationals held in Border

---

[2] ICE has approximately 34,000 funded detention beds available nationwide but its full inventory of bedspace is currently limited to approximately 28,933 beds, due to various court orders limiting the intake of noncitizen detainees, an increase in detention facility contract terminations, detention facility contract modifications, and the ongoing COVID-19 pandemic. Ex. B at 1; *see, e.g.*, *Fraihat v. ICE*, 445 F. Supp. 3d 709 (C.D. Cal. Apr. 20, 2020).

Patrol facilities, which represents 22.5% of overall USBP average holding capacity. Ex. A at 3 & n.11. With respect to ICE, there was a monthly average daily population of 936 Haitian nationals in ICE custody, Ex. B at 1, indicating that Haitians accounted for an average daily usage rate of 3.2% of current approximate funded ICE detention capacity (i.e,, 936 over ICE's current approximate funded detention capacity of 28,933).

### 4. Total Monthly Number of Applicants for Admission Under § 1225

For the month of December 2021, DHS reported that the total number of applicants for admission under Section 1225 encountered[3] by CBP was 100,251. Ex. A at 4. This figure is consistent with CBP's total number of noncitizen encounters subtracting its Title 42 expulsions. Ex. A at 4 n.12; *supra* §§ 1, 2.

Regarding Haitian nationals, DHS reported that the total number of Haitian national applicants for admission under Section 1225 encountered by CBP in December 2021 was 5,176. Ex. A at 4.

### 5. Total Monthly Number of Applicants for Admission Under § 1225 Paroled Into the United States

For the month of December 2021, DHS reported that the total number of applicants for admission under Section 1225 paroled into the United States was 23,098. This figure combines 22,790 total CBP grants of parole in December 2021 for noncitizens apprehended or encountered at the Southwest Border, Ex. A. at 4, and 308 ICE grants of parole, Ex. B at 3.

---

[3] An applicant for admission is defined as "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters)." 8 U.S.C. § 1225(a)(1). Thus, an applicant for admission may include noncitizens that have never been encountered by CBP. At this time, CBP does not have a mechanism to track applicants for admission in the United States that are not encountered by CBP. Ex. A at 4 n.12. All references in this document to "applicants for admission" refer to noncitizen applicants for admission encountered at or in-between POEs by CBP.

Regarding Haitian nationals, for the month of December 2021, DHS reported that the total number of Haitian applicants for admission under Section 1225 paroled into the United States was 479. This number combines 455 CBP grants of parole for Haitian nationals at the Southwest Border, 16, Ex. A at 4, with 24 ICE grants of parole for Haitian nationals transferred to ICE custody after being apprehended or encountered by CBP at the Southwest Border, Ex. B at 3.

Regarding the number of applicants paroled into the United States based on DHS's lack of detention capacity, Border Patrol reported 431 noncitizens paroled at the Southwest Border in December 2021 due to lack of detention space. Ex. A at 5. However, this number may not account for all such paroles: Lack of detention capacity is not a required field in BP's system of record. Ex. A at 5 n.18. Some paroles were documented in the system using a descriptor of "lack of space," but since it is not a required field, the descriptor is not consistently utilized and documented in the system. *Id.* As Defendants previously explained, "The number of noncitizens paroled or released into the United States by CBP based on DHS's lack of detention capacity is not a reliable data point in CBP's electronic systems of records. CBP's data processes do not accurately capture release or parole data uniformly." ECF No. 118-2 ¶ 5.

Data on the number of applicants paroled into the United States based on lack of detention capacity from OFO is currently unavailable. Ex. A at 5 n.13. In the case of OFO encounters, the relevant decision not to detain is made by ICE. *Id.* OFO is able to provide data on noncitizens paroled and released into the United States; however, is not able to provide specific reasons as to why detention was declined. *Id.* Specific reasons for denial are not captured in the agency's electronic systems of record nor is it provided when that decision is reached. *Id.*; *see* ECF No. 118-2 ¶ 5.

As for ICE, "ICE's data systems have not captured release or parole based on lack of

5

detention capacity since September 2019" and therefore "pulling that data from ICE systems" through "the present is impossible." ECF No. 118-1 ¶ 11. ICE's data systems capture "the following release reasons: Bonded Out, Order of Recognizance, Order of Supervision, Paroled, or Prosecutorial Discretion." Ex. B at 5. ICE does not track the number of applicants paroled or released into the United States based on DHS's lack of detention capacity. Id. ICE officers are not required to note in the subject's record any information associated with the rationale for the release determination. ECF No. 118-1 ¶ 11. "Therefore, attempting to re-create that data … through manual review or otherwise, would be operationally impossible because the data … does not exist in any form." *Id.*

Regarding the number of Haitian applicants paroled into the United States based on DHS's lack of detention capacity, Border Patrol reported 8 paroles of Haitian nationals at the Southwest Border in December 2021 due to lack of detention space. Ex. A at 5. Again, however, this number may be incomplete, as lack of detention capacity is not a required field in BP's system of record. Ex. A at 5 n.18; *see* ECF No. 118-2 ¶ 5.

Data on the number of the number of Haitian applicants paroled into the United States in December 2021 based on lack of detention capacity is currently unavailable from OFO, as the relevant decision not to detain is made by ICE and the reasons are not captured in OFO's electronic record-keeping system. Ex. A at 5 n.13; *see* ECF No. 118-2 ¶ 5. Such data is likewise unavailable from ICE, as explained above. ECF No. 118-1 ¶ 11; Ex. B at 5.

### 6. Total Monthly Number of Applicants for Admission Under § 1225 Released Into the United States, Paroled or Otherwise

For the month of December 2021, DHS reported that the total number of applicants for admission under Section 1225 released into the United States, paroled or otherwise, was 74,799, a figure reflecting CBP's 55,626 total releases across all categories for the month of December 2021,

Ex. A at 5,[4] combined with ICE's 19,173 total releases of noncitizens transferred to it from CBP following their apprehension or encounter at the Southwest Border for the month of December 2021, Ex. B at 3.

Regarding Haitian nationals, for the month of December 2021, DHS reported that the total number of Haitian national applicants for admission under Section 1225 released into the United States, paroled or otherwise, was 1,731. This figure combines 1,542 releases of Haitian nationals by CBP at the Southwest Border, Ex. A at 5, with 189 releases by ICE of Haitian nationals transferred to it from CBP following their apprehension or encounter at the Southwest Border, Ex. B at 3.

Regarding the number of applicants released into the United States, paroled or otherwise, based on DHS's lack of detention capacity, Border Patrol reported a total of 12,008 noncitizens released at the Southwest Border in December 2021 due to lack of detention space (431 released on parole and 11,577 released on Notice to Appear – Order of Release on Recognizance (NTA/OR)). Ex. A at 5. However, this number may not account for all such releases: Lack of detention capacity is not a required field in BP's system of record. Ex. A at 5 nn.16-18. Some releases were documented in the system using a descriptor of "lack of space," but since it is not a required field, the descriptor is not consistently utilized and documented in the system. *Id.* at 5 nn.16-18; *see* ECF No. 118-2 ¶ 5.[5]

---

[4] This report does not include data on unaccompanied alien children (UCs), as defined in 6 U.S.C. § 279(g), who the Court recognized are not amenable to MPP, ECF No. 94 at 9, and who are subject to special processing and are transferred to U.S. Department of Health and Human Services Custody pursuant to the Trafficking Victims Protection Reauthorization Act. *See* 8 U.S.C. §§1232(a)(5)(D), 1232(b)(3), 1232(c)(2)(A), 1232(c)( (3); *see also* CBP, Southwest Border Encounters, https://www.cbp.gov/newsroom/stats/southwest-land-border-encounters (providing statistics on UCs encountered by CBP).

[5] Similarly, as CBP's report reflects, some noncitizens were in previous months released on

Data from OFO on the number of applicants released into the United States, paroled or otherwise, based on lack of detention capacity is currently unavailable. Ex. A at 5 n.13. In the case of OFO encounters, the relevant decision not to detain is made by ICE. *Id.* OFO is able to provide data on noncitizens paroled and released into the United States; however, is not able to provide specific reasons as to why detention was declined. *Id.* Specific reasons for denial are not captured in the agency's electronic systems of record nor is it provided when that decision is reached. *Id.*; *see* ECF No. 118-2 ¶ 5.

As for ICE, "ICE's data systems have not captured release or parole based on lack of detention capacity since September 2019" and therefore "pulling that data from ICE systems" through "the present is impossible." ECF No. 118-1 ¶ 11. ICE's data systems capture "the following release reasons: Bonded Out, Order of Recognizance, Order of Supervision, Paroled, or Prosecutorial Discretion." Ex. B at 5. ICE does not track the number of applicants paroled or released into the United States based on DHS's lack of detention capacity. *Id.* ICE officers are not required to note in the subject's record any information associated with the rationale for the release determination. ECF No. 118-1 ¶ 11. "Therefore, attempting to re-create that data … through manual review or otherwise, would be operationally impossible because the data … does not exist in any form." *Id.*

Regarding the number of Haitian applicants released into the United States, paroled or otherwise, based on DHS's lack of detention capacity, Border Patrol reported a total of 433 Haitian nationals released at the Southwest Border in December 2021 due to lack of detention space (425

---

Notices to Report (NTRs) when BP holding capacity was exceeded or when resources became overwhelmed; however, lack of detention capacity is not a required field in BP's system of record. Further, no noncitizens were released on NTR by BP in December 2021. Ex. A at 5 & n.17; *see* ECF No. 118-2 ¶ 5.

released on NTA/OR and 8 paroles). Ex. A at 5. However, this number may not account for all

such releases: Lack of detention capacity is not a required field in BP's system of record. Ex. A at

5 nn. 16-18. Some releases were documented in the system using a descriptor of "lack of space,"

but since it is not a required field, the descriptor is not consistently utilized and documented in the

system. *Id.* at 5 nn. 16, 18; *see* ECF No. 118-2 ¶ 5.[6]

Data on the number of the number of Haitian applicants released into the United States in

December 2021 based on lack of detention capacity is currently unavailable from OFO, as the

relevant decision not to detain is made by ICE and the reasons are not captured in OFO's electronic

record-keeping system. Ex. A at 5 n.13; *see* ECF No. 118-2 ¶ 5. Such data is likewise unavailable

from ICE, as explained above. ECF No. 118-1 ¶ 11; Ex. B at 5.

<table>
<tr><td>Dated: January 14, 2022</td><td>Respectfully submitted,</td></tr>
<tr><td>

CHAD E. MEACHAM
*Acting United States Attorney*

BRIAN W. STOLZ
*Assistant United States Attorney*

</td><td>

BRIAN M. BOYNTON
*Acting Assistant Attorney General*

WILLIAM C. PEACHEY
*Director*
Office of Immigration Litigation
District Court Section

EREZ REUVENI
*Assistant Director*

BRIAN C. WARD
*Senior Litigation Counsel*

/s/ *Joseph A. Darrow*
JOSEPH A. DARROW
*Trial Attorney*
U.S. Department of Justice

</td></tr>
</table>

---

[6] Similarly, as CBP's report reflects, some Haitian nationals were released on NTRs in previous months when BP holding capacity was exceeded or when resources became overwhelmed; however, lack of detention capacity is not a required field in BP's system of record. Further, no Haitian nationals were released on NTR by BP in December 2021. Ex. A at 5 & n.17; *see* ECF No. 118-2 ¶ 5.

Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel.: (202) 598-7537
Joseph.a.darrow@usdoj.gov

*Counsel for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 14, 2022, I electronically filed the foregoing document with the Clerk of the Court for the United States District Court for the Northern District of Texas by using the CM/ECF system. Counsel in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

/s/ *Joseph A. Darrow*
JOSEPH A. DARROW
U.S. Department of Justice