# UNITED STATES DISTRICT COURT

For the

## NORTHERN DISTRICT OF TEXAS

## AMARILLO DIVISION



STATE OF TEXAS,

    *Plaintiff*,                    2-21-CV-067-Z

v.

                                      MOTION TO

JOSEPH R. BIDEN JR. in his official    INTERVENE
Capacity as President of the United
States, *et. al.*                           JANUARY 24, 2022

    *Defendants*.

### PLAINTIFF INTERVENOR'S MOTION TO INTERVENE

1. Throughout the history of the United States, Democratic Administrations have engaged in crimes against humanity where the crimes were against people residing in the United States. Starting with President Grant several administrations were responsible for crimes against Native Americans in the West. During World War II, President Roosevelt ordered the interment of citizens of Japanese descent on the West Coast. But these and other crimes were committed at a time when International

Law provided that public officials could not be held civilly or criminally responsibile for crimes against a nation's own citizens on its own soil. That all changed after WW II and the Nuremberg Trials.

2. Faced with crimes committed against German Jews in Germany, International Law changed radically. A new concept developed named *Jus Cogens* which holds that public officials can be held to be civilly and criminally liable for crimes against humanity where the victims are citizens of the state within which the officials have authority. As is discussed in the Intervenor's Complaint, U.S. District Courts have had subject matter jurisdiction over International Law since the Federal Judiciary Act of 1789. *Jus Cogens* is now the law of the United States.

3. First the Obama Administration and now the Biden Administration have engaged in crimes against the American People which have resulted in disease, paralysis and death. These crimes include accepting into the United States children from Guatemala, El Salvador and Honduras who are carrying a virus referred to as D 68 which in turn is carrying two strains of Polio not blocked by the Sabin I vaccine. Thousands of American children have suffered paralysis while dozens if not hundreds have died. The Defendants currently before this Court, and others, are

liable under U.S. Law civilly and criminally for these crimes. Furthermore, at the center of the commission of these crimes is the Remain in Mexico Policy currently at the center of this litigation.

4. In June, 2014 as a result of the Open Borders Policy of the Obama Administration, 12,000 of these Latin American children were allowed to enter the United States through the Southern Border and were welcomed by the Administration. After arrival the Departments of Health and Human Services and Homeland Security distributed these children throughout the United States. Between August, 2014 and January, 2015 1,500 American children suffered lung damage, loss of the use of an arm or leg or total paralysis. Medical researchers refer to this outbreak as the New Polio. According to an independent study, during 2014 and 2015 the state which received the most unaccompanied minor children from Latin America was Texas.

5. The Sabin 1 Vaccine developed in the 1950's to eradicate Polio in the United States and still administered to every person born in the United States is ineffective in preventing Americans from infection by the strains of Polio contained in D 68 and carried by children entering the United States from Honduras, Guatemala and El Salvador. The opening of the

Southern Border of the United States by the Obama Administration explains the outbreaks of New Polio in 2014, 2016 and 2018. These out breaks saw paralysis and death among Americans, primarily children, numbering into the thousands.

6. When President Trump took office, he attempted to close the Southern Border but was initially blocked by Congress and the courts. This delay caused another surge in New Polio cases in 2018. By 2019 he had begun to build the Wall and negotiated the Remain in Mexico program with Mexico. As a result, according to the CDC's own records 2020 saw a dramatic decrease in New Polio cases. Upon taking office, the Defendants opened the Southern Border and suspended the Remain in Mexico program. As a result, the United States will see another dramatic surge in New Polio Cases in 2022. The Defendants are wholly responsible for this surge.

7. If this motion is granted the Intervening Plaintiff will immediately file a Moton for an Order to Show Cause why this Court should not order the Defendants to close the Southern Border to all illegal immigrants seeking to enter the United States. That Motion will be supported by five (5) medical studies by independent, highly respected medical scholars

directly linking New Polio and the D 68 virus found in children from Guatemala, Honduras and El Salvador. The Motion will also be supported by records kept by the Centers for Disease Control and Prevention which directly link open borders and the increase of New Polio cases in the United States. Finally, it will demonstrate how the Defendants were willing to mislead the general public, and this Court, about the source of disease in order to keep the Southern Border open.

8. Only the Intervening Plaintiff is prepared to present evidence linking illegal immigration with the New Polio. Evidence presented connecting the impact of open borders to the spread of New Polio among children in the United States will allow this Court to order the border closed thereby saving hundreds if not thousands of Americans, especially children, from the scourge of Polio.

## ARGUMENT I

### Intervention Should be allowed as a Matter of Right

1) *Plaintiff-Intervenor's Motion is Timely.*

The timeliness of an application for intervention is evaluated "in the context of all relevant circumstances," including: (1) the point to which the suit has progressed;

(2) the purpose for which intervention is sought; (3) the length of time preceding the application during which the proposed intervenors knew or should have known of their interest in the case; (4) the prejudice to the original parties due to the proposed intervenors' failure to promptly intervene after they knew or reasonably should have known of their interest in the case; and (5) the existence of unusual circumstances militating against or in favor of intervention. *Jansen v. City of Cincinnati*, 904 F.2d 336, 340 (6th Cir. 1990); see *United States v. City of Detroit*, 712 F.3d 925, 930-31 (6th Cir. 2013) (same). Here, the case is still at an early stage. The Defendants are still attempting to overturn this Court's earlier decision in the Fifth Circuit. The final remedy has yet to be determined. The parties will not be prejudiced by the intervention.

### 2) The Plaintiff-Intervenor Has a Substantial Legal Interest in the Subject Matter of This Case.

Courts of Appeals around the country have subscribed to a "rather expansive notion of the interest sufficient to invoke intervention of right." *Grutter*, 188 F.3d at 398 (citation omitted); see also *Bradley v. Milliken*, 828 F.2d 1186, 1192 (6thCir. 1987) ("[I]nterest' is to be construed liberally."). No specific legal or equitable interest is required, *see Grutter*, 188 F.3d at 398, and even "close cases" should be "resolved in favor of recognizing an interest under Rule 24(a)," *Mich. State AFL-CIO v. Miller*, 103 F.3d 1240, 1247 (6th Cir. 1997).

The interest of the Intervening Plaintiff could not be more substantial. Although the new outbreaks of New Polio have mainly been among children, in at least one case an adult man, a father, has contracted Polio and died. Similarly, a pregnant woman was infected by D 68 but she and her baby survived. The Intervening Plaintiff has received the Sabin 1 Vaccine but that vaccine offers no protection against the strains of Polio contained in the D 68 virus carried into the United States by children from Guatemala, Honduras and El Salvador. Thus, as the number of illegal minor children from these three countries enter the United States increases, the risk to the Intervening Plaintiff increases.

3) *Intervention in this Case is Necessary to Protect the Plaintiff – Intervenor's Interest*

Under the third intervention prong, "a would-be intervenor must show only that impairment of its substantial legal interest is possible if intervention is denied." Miller, 103 F.3d at 1247. "This burden is minimal," and can be satisfied if a determination in the action may result in "potential stare decisis effects." Id.; see also *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 900 (9th Cir. 2011) ("[I]ntervention of right does not require an absolute certainty that a party's interest will be impaired").

The issues raised in the original complaint share a common ground with the Intervenor's Complaint to the extent the original complaint claims the Biden

Harris's Administrations Immigrant Policies specifically ending the Remain in Mexico Program violate U.S. Law. However, the Intervenor's Complaint goes far beyond the limited violations initially raised and raises issues of life and death for the American People, including the Intervening Plaintiff. Furthermore, the remedy requested by the Intervenor is that all illegal immigration across the Southern Border be terminated immediately and totally. This goes far beyond any relief requested in the original complaint.

4) *The Existing Parties Cannot Protect the Interest of the Plaintiff Intervenor.*

The Plaintiff - Intervenor carries a minimal burden to show that the existing parties to this litigation inadequately represent the United States' interests. *Jordan v. Mich. Conference of Teamsters Welfare Fund*, 207 F.3d 854, 863 (6th Cir. 2000). A potential intervenor "need not prove that the [existing parties'] representation will in fact be inadequate, but only that it 'may be' inadequate." Id. (citations omitted) (emphasis added); see also *Davis v. Lifetime Capital, Inc.*, 560 F. App'x 477, 495 (6th Cir. 2014) ("The proposed intervenor need show only that there is a potential for inadequate representation.") (citation omitted) (emphasis in original). The Plaintiff – Intervenor satisfies this burden.

The Plaintiff – Intervenor has a personal interest in terminating illegal immigration across the Southern Border. Plaintiff Intervenor's Sabin 1 Polio

Vaccination will not protect him if he is exposed to Migrant Polio. The Defendants in their Brief in Opposition to the State's Motion for a Preliminary Injunction has argued strongly that the State lacks standing to raise *parens patria* issues on behalf of its citizens and this Court has agreed. The Intervening Plaintiff has standing to raise these health issues on his own behalf. Without his presence, these critically important issues will not be raised.

## Argument II

### The Plaintiff - Intervenor Should Be Allowed to Intervene by Permission

The Plaintiff - Intervenor may also be granted leave to intervene by permission. Rule 24(b)(2) permits intervention on timely motion by anyone who has "a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). "In exercising its discretion," a court "must consider whether intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

The Motion to Intervene is timely. Further, the Plaintiff-Intervenor will assert issues that would require the Court to resolve questions of fact and law that are common to—and in some instances, identical to _ questions raised by the existing parties.

This is a parallel case except that the Intervening Plaintiff alleges violation of International Law and not just precedent and U.S. Law. The Intervening Plaintiff, who seeks relief similar to the relief sought by the State of Texas, has as stronger a case than the State of Texas. They should clearly be allowed to work together to protect the citizens of the State of Texas and the citizens of the United States,

For the foregoing reasons, the Plaintiff-Intervenor respectfully requests that the Court grant the Plaintiff – Intervenor's Motion to Intervene.

The Intervening Plaintiff

Robert A. Heghmann

P.O. Box 2108

Leander, TX  78646

Bob_Heghmann@Reagan.com

(603) 866-3089

## CERTIFICATE OF CONFERENCE

I certify that, on or about January 14, 2022, I served via e-mail counsel for the Defendants and counsel for the Plaintiffs this Motion and asked them to respond

stating whether the supported or opposed this Motion. None of the other attorneys responded to me.

_____

### CERTIFICATE OF SERVICE

I certify that, on July 24, 2022, I mailed a copy of this Motion to the Court and caused service of this this Motion through the CM/ECF upon the Defendants and the Plaintiffs.

_____

UNITED STATES POSTAL SERVICE

PRIORITY®

PRESS FIRMLY TO SEAL

PRIORITY MAIL
FLAT RATE ENVELOPE
POSTAGE REQUIRED

PRESS FIRMLY TO SEAL

FLAT RATE ENVELOPE
ONE RATE ■ ANY WEIGHT
TRACKED ■ INSURED

- Expected delivery date specified for domestic use.
- Most domestic shipments include up to $50 of insurance (restrictions apply).*
- USPS Tracking® included for domestic and many international destinations.
- Limited international insurance.**
- When used internationally, a customs declaration form is required.

*Insurance does not cover certain items. For details regarding claims exclusions see the Domestic Mail Manual at http://pe.usps.com.
** See International Mail Manual at http://pe.usps.com for availability and limitations of coverage.

EP14F May 2020
OD: 12 1/2 x 9 1/2

PS00001000014

PRIORITY MAIL 2-DAY®

US POSTAGE PAID
$8.95
Origin: 78641
02/10/22
4850400688-08
Retail

0 Lb 13.10 Oz
1004

EXPECTED DELIVERY DAY: 02/14/22

C002

SHIP TO:
205 SE 5TH AVE
AMARILLO TX 79101-1559

USPS TRACKING #
9505 5143 9582 2041 9440 95

FROM:
R.A. Heghmann
P.O. Box 2108
Leander, TX 78646-2108

U.S. District Court
205 SE 5th Ave.
Room 133
Amarillo, TX
79101-1559

RECEIVED
FEB 14 2022
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® and Priority Mail International® shipments. Misuses may be a violation of federal law. This package is not for resale. EP14F © U.S. Postal Service; May 2020; All rights reserved.