## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## AMARILLO DIVISION

| | | |
|---|---|---|
| STATE OF TEXAS, | ) | |
| STATE OF MISSOURI, | ) | |
| | ) | |
| *Plaintiffs,* | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:21-cv-00067-Z |
| | ) | |
| JOSEPH R. BIDEN, JR., | ) | |
| in his official capacity as | ) | |
| President of the United States, *et al.*, | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |

## JOINT STATUS REPORT ON FURTHER PROCEEDINGS

On August 6, 2022, the Fifth Circuit issued its mandate, remanding this case to this Court "for further proceedings consistent with the Supreme Court's decision." Order, *Texas v. Biden*, No. 21-10806 (5th Cir Aug. 3, 2022); *Texas v. Biden*, No. 21-10806 (5th Cir. Aug. 6, 2022, 11:14 AM) (mandate order).

The parties have conferred on how this case should proceed. The parties agree that, consistent with the Supreme Court's instruction that "[o]n remand, the District Court should consider in the first instance whether the October 29 Memoranda comply with Section 706 of the [Administrative Procedure Act (APA)]," *Biden v. Texas*, 142 S. Ct. 2528, 2548 (2022), Plaintiffs should amend their complaint to include a claim under the APA that the October 29 Memoranda is arbitrary and capricious. Plaintiffs filed that complaint on August 8, 2022.

Beyond this agreement, the parties otherwise disagree on how the case should proceed. The following are the parties' separate proposals for the remainder of the case.

1

<u>**Plaintiffs' Position**</u>

      **1.  Plaintiffs' proposal on briefing the pending Stay Motion.**

      In its October 29 Termination Memorandum, DHS concluded that the termination of MPP will be implemented as soon as practicable after a final judicial decision to vacate the *Texas* [*v. Biden*] injunction." Supp.App.004. After this Court's vacatur of its permanent injunction in this case yesterday, ECF 147, DHS stated that it was "committed to ending the court-ordered implementation of MPP … quick[ly],"and announced that "[i]ndividuals are no longer being newly enrolled into MPP, and individuals currently in MPP in Mexico will be disenrolled when they return for their next scheduled court date," and that those "disenrolled from MPP will continue their removal proceedings in the United States." DHS Statement on U.S. District Court's Decision Regarding MPP (Aug. 8, 2022), available at https://www.dhs.gov/news/2022/08/08/dhs-statement-us-district-courts-decision-regarding-mpp.

      This Court previously noted that Defendants argued that re-implementing MPP would be difficult because MPP "had been terminated for *some* time," ECF 94 at 48. "In other words, DHS's apparent argument is that … it is simply *too late* for a court to vacate" the termination of MPP. *Id*. Now, this Court's review of the October 29 Memoranda should be allowed to proceed in order.

      Granting Plaintiffs' Motion to Postpone the Effective Date of Agency Action (the "Stay Motion"), ECF 149, before Defendants significantly unwind the re-constituted program is the only way to ensure that irreparable injury does not occur before the Court has an opportunity to make a full merits determination on the lawfulness of the October 29 Memoranda. *See* Stay Motion at 6–7. The Stay Motion serves a similar role as a preliminary injunction under the APA,[1] and this

---

[1] The stay provision of the APA provides that "On such conditions as may be required and to the extent necessary to prevent irreparable injury, the reviewing court, including the court to which a case may be taken on appeal from or on application for certiorari or other writ to a reviewing court, *Continued on next page.*

Court's ability to review the challenged agency action and provide ultimate relief should not be burdened by Defendants' actions.[2]

The Court should order an accelerated briefing schedule on the Stay Motion. Defendants should be ordered to file their response within 10 days, with Plaintiffs filing their reply in support 7 days later.

This Court should consider the Stay Motion without waiting for Defendants to produce an administrative record for the October 29 Memoranda, which will be evaluated in due course in a final determination on the merits. *See, e.g.*, *Texas v. United States*, 555 F. Supp. 3d 351, 417 n.49 (S.D. Tex. 2021) (Tipton, J.) (noting that "the Parties agreed that the full administrative record is not necessary for the Court to rule on the arbitrary and capricious claim" in the preliminary injunction context); *Texas v. Brooks-LaSure*, No. 6:21-CV-00191, 2021 WL 5154219, at *10 (E.D. Tex. Aug. 20, 2021) (Barker, J.) ("Defendants' opposition to a preliminary injunction is thus considered without reference to any unfiled administrative record."); *Franciscan All., Inc. v. Burwell*, 7:16-cv-108-O, 2016 WL 9281524, at *3 (N.D. Tex. Nov. 1, 2016) (O'Connor, J.) (setting a briefing schedule "to consider the pending motion for preliminary injunction" despite "no administrative record" and deferring consideration of summary judgment so that the court could consider the "administrative record in the normal course of this litigation"); *Doe v. Trump*, 3:19-cv-1743, 2020 WL 1853657, at *3 (D. Or. Apr. 13, 2020) (noting that the court relied on a "partial record produced before the preliminary injunction" and then set a later deadline "to supplement the administrative record" after the preliminary injunction decision).

---

may issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings" 5 U.S.C. §705.

[2] Plaintiffs have explained why 8 U.S.C. §1252(f)(1) does not preclude the relief sought in the Stay Motion. *See* ECF 149 at 22–23.

In the event the Court believes that the administrative record should be considered for the Stay Motion, Plaintiffs alternatively propose that Defendants be required to produce the administrative record in 7 days and proceed on the same schedule for briefing set forth above. This is not an unreasonable schedule, as demonstrated by how this case proceeded earlier. *See* ECF 94 at 2 (noting that Defendants filed their response to Plaintiffs' motion for preliminary injunction 3 days after producing the administrative record).

### 2.  Plaintiffs' position on jurisdictional discovery and further proceedings.

Defendants are not entitled to any jurisdictional discovery because the only jurisdictional issue for which discovery could theoretically be relevant—Plaintiffs' standing—has already been determined by this Court and the Fifth Circuit and left undisturbed by the Supreme Court. Therefore, reconsideration of that issue by this Court—which has already held a bench trial in this case—would violate the law of the case and exceed the scope of the Supreme Court's and Fifth Circuit's limited remand.

Specifically, the Fifth Circuit's undisturbed holding affirming this Court's conclusion that Plaintiffs have standing to challenge the termination of MPP based the factual findings of this Court after a bench trial, *see Texas v. Biden*, 20 F.4th 928, 966–75 (5th Cir. 2021) (*Biden II*), is the law of the case. *See Transverse, L.L.C. v. Iowa Wireless Servs., L.L.C.*, 992 F.3d 336, 345–46 (5th Cir. 2021) ("[T]his Court [on an earlier appeal] held that IWS qualified as a prevailing person under the [Act] and was entitled to a mandatory fee award. This holding met the [Act's] requirements and became law of the case, which the district court was not at liberty to revisit."). "The law-of-the-case doctrine generally provides that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Musacchio v. United States*, 136 S. Ct. 709, 716 (2016) (quotation omitted). "An appellate court

decision rendered at one stage of a case constitutes the 'law of the case' in all succeeding stages."

*Knotts v. United States,* 893 F.2d 758, 761 (5th Cir. 1990). An issue will be precluded from reconsideration by the law of the case "regardless of whether the issue was decided explicitly or by necessary implication." *Crowe v. Smith,* 261 F.3d 558, 562 (5th Cir. 2001).

The doctrine plainly applies here. Plaintiffs provided this Court ample evidence of the injuries termination of MPP would inflict on them, of the fact that the termination of MPP caused those injuries, and that a setting aside the termination would address those harms; after a bench trial with factual findings, this Court found that that evidence established standing; the Fifth Circuit upheld that determination; and the Supreme Court did not question it. It would be hard to find better examples for applying the law-of-the-case doctrine. And because any new reasons that Defendants give for terminating MPP in the October 29 Memoranda go to the merits of Plaintiffs' claims, not to standing, *see*, *e.g.*, *Hill v. City of Houston*, 764 F.2d 1156, 1159 (5th Cir. 1985) (calling standing "a separate inquiry from whether the party should prevail"), or finality, *see*, *e.g.*, *Biden III*, 142 S. Ct. at 2545 (providing the factors for determining when agency action is final), they do not change the calculus. The October 29 memoranda, as the Supreme Court described it, "again announced the termination of MPP," *Biden III*, 142 S. Ct. at 2537 (emphasis added)—the same action earlier determined by every Court to address it to injure Plaintiffs and provide them standing.

Likewise, the doctrinally related mandate rule—which provides that a district court comply on remand with the appellate court's mandate by addressing "only those discrete, particular issues identified by the appeals court for remand," *United States v. Lee,* 358 F.3d 315, 320–21 (5th Cir. 2004)—forecloses Defendants' attempt to reopen discovery on settled jurisdictional issues.

5

Here, the Supreme Court expressly said "[o]n remand, the District Court should consider in the first instance whether the October 29 Memoranda comply with section 706 of the APA." *Biden III*, 142 S. Ct. at 2548. The remand plainly did not include re-litigating every jurisdictional issue already determined in this case at every level of the federal judiciary; it covered only the issue of the October 29 Memoranda's compliance with the APA. That does not warrant reopening the settled issue of standing, which is what Defendants seek through jurisdictional discovery. To the contrary, the Fifth Circuit indicated it would be improper when it held that a district court's holding of new evidentiary hearings on remand violated the mandate rule:

> In this court's opinion on remand, the panel expressly noted that the Government failed to present any evidence either in the trial transcript or in the presentence report that established that Bowerman possessed a firearm in connection with his drug offense. Neither in this court's opinion nor in its mandate did it direct the district court to conduct additional fact-finding on this issue. The Government fails to offer any explanation for why this evidence could not have been presented to this court in the first appeal or in a motion for reconsideration. *See United States v. Becerra,* 155 F.3d 740, 754 (5th Cir. 1998). The Government's failure to meet its burden of proof is not a cognizable exception to the law of the case doctrine. *See Lee,* 358 F.3d at 320 n. 3. Accordingly, the district court's consideration of the additional evidence is barred by the law of the case doctrine and the mandate rule. *See Becerra,* 155 F.3d at 754.

*United States v. Bowerman*, 131 F. App'x 992, 993 (5th Cir. 2005) (per curiam).

As the Fifth Circuit has already determined that Plaintiffs have standing due to their injuries from a termination of MPP in upholding this Court's determinations after a bench trial, Defendants are not entitled to submit new evidence on this issue. It follows that they therefore have no entitlement to jurisdictional discovery to make that submission.

**<u>Defendants' Position</u>**

As explained below, Defendants believe that the most efficient and fair way to resolve the new APA claim Plaintiffs raise with respect to the October 29 Memorandum is for the parties to conduct limited jurisdictional discovery, followed by Defendants filing a motion to dismiss and, if

warranted, an answer, and then to serve the administrative record, and proceed to summary judgment briefing on the merits should the claim not be dismissed.

*First*, Plaintiffs' proposal contemplates that the Court would first resolve their motion to postpone the effective date of the October 29 Memorandum under Section 705 of the APA. But this Court does not have authority to enter an order postponing the effective date of the Memorandum—in effect, enjoining it from coming into force—in light of the Supreme Court's decision in this case and *Garland v. Aleman Gonzalez*, 596 U.S. ___ (2022)). As a result, briefing and deciding Plaintiffs' motion—which cannot result in the relief Plaintiffs seek—would be an inefficient and wasteful use of the Court and the parties' time.[3]

Section 1252(f)(1) provides that: "Regardless of the nature of the action or claim or of the identity of the party or parties bringing the action, no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of the provisions of part IV of this subchapter … other than with respect to the application of such provisions to an individual alien against whom proceedings under such part have been initiated." 8 U.S.C. § 1252(f)(1). The Supreme Court held that Section 1252(f)(1) "generally prohibits lower courts from entering injunctions that order federal officials to take or to refrain from taking actions to enforce, implement, or otherwise carry out the specified statutory provisions." *Texas*, 142 S. Ct. at 2538 (quoting *Garland v. Aleman Gonzalez*, 596 U.S. ___ (2022)). Section 1225(b)(2)(C) is one of the statutory provisions covered by Section 1252(f)(1), and so "[t]he District Court's [previous] injunction in this case violated that provision." *Id*. Section 1252(f)(1) thus eliminates the Court's

---

[3] Defendants do not here submit an exhaustive brief on this subject, providing only sufficient briefing to allow the Court to address the parties' competing scheduling proposals. Defendants will brief the issues discussed in this joint statement concerning Section 705 in their opposition to the motion to postpone should the Court adopt Plaintiffs' proposal on how to proceed.

authority—and the authority of any court other than the Supreme Court—to grant coercive relief with respect to Section 1225.

A postponement under Section 705 is such coercive relief. *See, e.g.*, *D&G Holdings, LLC v. Sylvia Mathews Burwell*, 156 F. Supp. 3d 798, 811 (W.D. La. 2016) ("Section 705 of the APA does not serve as a grant of the subject matter jurisdiction necessary for this Court to issue the injunctive relief sought by Plaintiff" where other provisions—there, in the Medicare Act— precluded authority to issue injunctive relief). Section 705 provides that where a rule has not yet become effective, "[o]n such conditions as may be required and to the extent necessary to prevent irreparable injury, the reviewing court, including the court to which a case may be taken on appeal from or on application for certiorari or other writ to a reviewing court, may issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings." 5 U.S.C. § 705. Courts routinely note that the standard for a Section 705 stay "is the same as the standard for issuance of a preliminary injunction." *Monumental Task Comm., Inc. v. Foxx*, 157 F. Supp. 3d 573, 586 (E.D. La. 2016), *aff 'd sub nom. Monumental Task Comm., Inc. v. Chao*, 678 F. App'x 250 (5th Cir. 2017); *see, e.g.*, *Texas v. U.S. Env't Prot. Agency*, 829 F.3d 405, 424 (5th Cir. 2016); *Cronin v. USDA*, 919 F.2d 439, 446 (7th Cir. 1990); *D&G Holdings*, 156 F. Supp. 3d at 811; *Texas v. United States*, 95 F. Supp. 3d 965, 973 (N.D. Tex. 2015); *Sierra Club v. Jackson*, 833 F. Supp. 2d 11, 19 (D.D.C. 2012). Likewise, because Section 705 stays are tantamount to preliminary injunctions, Section 705 stays are appealable for the same reasons preliminary injunctions are. *See Wyoming v. U.S. Dep't of Interior*, 2018 WL 2727031, at *1 (10th Cir. June 4, 2018) ("The district court's 'stay' effectively enjoins enforcement of the Rule."). Moreover, an order under Section 705 postponing the effective date of the October 29 Memorandum "order[s] federal officials to take or *to refrain*

*from taking* actions to enforce, implement, or otherwise carry out the specified statutory provisions."[4] *Texas*, 142 S. Ct. at 2538 (emphasis added).

*Second*, even if Section 1252(f) does not apply, Section 705 by its own terms does not authorize a stay here, and so, again, litigating this motion now is an inefficient use of the Court and the parties' time as it cannot result in the relief Plaintiffs seek. Courts construing Section 705 have concluded that the phrase "postpone the effective date" of an agency action authorizes the "postpone[ment of] the effective date of a not yet effective rule, pending judicial review," but not suspension a rule that is already in effect. *See, e.g.*, *Safety-Kleen Corp. v. EPA*, Nos. 92-1629, 92-1639, 1996 U.S. App. LEXIS 2324, at *2-3 (D.C. Cir. Jan. 19, 1996); *Ctr. for Biological Diversity v. Regan*, No. CV 21-119 (RDM), 2022 WL 971067, at *21 (D.D.C. Mar. 30, 2022) (same, collecting cases). And while these cases address an agency decision to "postpone the effective date," Section 705 uses identical language when referring to "the reviewing court . . . postpon[ing] the effective date of an agency action." The use of an identical phrase in the first and second sentences of Section 705 must be presumed to be intentional. *E.g.*, *Sorenson v. Sec'y of Treasury*, 475 U.S. 851, 860 (1986) ("The normal rule of statutory construction assumes that identical words

---

[4] This distinguishes an order under Section 705 here from the stay of an order of removal at issue in *Nken v. Holder*, 556 U.S. 418 (2009), relied on by Plaintiffs. Dkt. 149 at 22-23. There, the Court explained, a different provision of the INA, 8 U.S.C. § 1252(f)(2)—which only prohibited "enjoin[ing] the removal of any alien, and contained no restriction on "restraints" like Section 1252(f)(1)—did not preclude individual stays of the order of removal pending review. *Id.* at 428. The stay of the removal order, the Court reasoned, "operate[d] upon the [administrative or] judicial proceeding itself." *Id.* at 428. But Plaintiffs do not ask this Court to stay an individual removal order or some other agency adjudication pending judicial review of that adjudication. They ask this court to "restrain" the government by "prevent[ing]" it from its chosen "course of action" in implementing Section 1225(b)(2)(C). *See Aleman Gonzalez*, 142 S. Ct. at 2063, 2065 (order requiring government to "refrain from actions that (again in the Government's view) are allowed" by a covered provisions are bare by Section 1252(f)); *accord Brown v. Gilmore*, 533 U.S. 1301, 1303 (2001) (Rehnquist, C.J., in chambers) ("[A]pplicants are seeking not merely a stay of a lower court judgment, but an injunction against the enforcement of a presumptively valid state statute").

used in different parts of the same act are intended to have the same meaning."). And when given its plain meaning, the language in Section 705 allowing a court or agency to "postpone the effective date" can only be read to mean that the statute allows the court "to put off until a future time," "defer," or "delay" the "operative" date of the agency action. See Postpone, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/postpone (last visited Mar. 17, 2021); Effective, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/effective (last visited Mar. 17, 2021); see also BLACK'S LAW DICTIONARY ONLINE (2d. Ed.) (defining "postpone" as "to put off; defer; delay; continue"). One cannot "defer" or "put off" an action that has already occurred; thus, it would be unreasonable to interpret the statute as permitting the issuance of a stay after the operative date of the challenged rule has already passed.

Here, the October 29 Memorandum became "effective immediately" upon its publication. *See* https://www.dhs.gov/sites/default/files/publications/21_1029_mpp-termination-memo.pdf ("I am hereby terminating MPP. Effective immediately, I hereby supersede and rescind the June 1 memorandum, Secretary Nielsen's January 25, 2019 memorandum, and any other guidance or other documents prepared by the Department to implement MPP."). And although the October 29 memorandum delayed "implement[ation]" of the Secretary's termination until the injunction was "vacated," *id.*, that is irrelevant to whether the memo was in effect earlier. Courts distinguish between the effective date and implementation or compliance date for purposes of Section 705. *See, e.g.*, *Becerra v. United States Dep't of Interior*, 276 F. Supp. 3d 953, 963 (N.D. Cal. 2017). In any event, even the implementation date has now come to pass. This Court vacated its permanent injunction shortly after 4:00 PM CST on August 8, 2022. Dkt. 147. That same day, DHS announced that new enrollments in MPP would cease immediately and that no individuals

10

physically present in the United States for an MPP hearing would be returned to Mexico. *See* DHS Statement on U.S. District Court's Decision Regarding MPP, *available at* https://www.dhs.gov/news/2022/08/08/dhs-statement-us-district-courts-decision-regarding-mpp. Thus, there is no plausible basis for Plaintiffs to argue that the October 29 Memorandum is "not yet effective." *Safety-Kleen Corp.*, 1996 U.S. App. LEXIS 2324, at *2-3.[5]

*Third*, defendants anticipate raising a factual attack on Texas's standing to bring its new claim and that this attack will require jurisdictional discovery. "[W]here issues arise as to jurisdiction or venue, discovery is available to ascertain the facts bearing on such issues." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n.13 (1978); *see In re MPF Holdings US LLC*, 701 F.3d 449, 457 (5th Cir. 2012) (noting "some jurisdictional discovery may be warranted if the issue of subject matter jurisdiction turns on a disputed fact"). In the context of threshold

---

[5] The fact that Section 705 is disjunctive, permitting reviewing courts to "postpone the effective date of an agency action *or* to *preserve status or rights* pending conclusion of the review proceedings," (emphasis added), cannot change this result. That second clause is subject to the same temporal limitation as the first clause for the simple reason that the status quo once a rule goes into effect is that the rule is in effect. And order staying a rule after it goes into effect thus does not preserve, but alters, the status quo. *See, e.g.*, *Ne. Ohio Coal. for Homeless & Serv. Emps. Int'l Union, Loc. 1199 v. Blackwell*, 467 F.3d 999, 1006 (6th Cir. 2006) (explaining an order "preventing the implementation of new regulations" would "disturb[]" rather than preserve "the status quo"). The status quo presently is that the October 29 memorandum is operative and DHS has ceased new enrollments in MPP or returning individuals to Mexico present in the United States for their court hearings. Moreover, an order preserving the status quo before a rule goes into effect is by definition an injunction. *See, e.g.*, *see, e.g.*, *D&G Holdings*, 156 F. Supp. 3d at 811 (movant seeks "a status quo injunction under 5 U.S.C. § 705"); *Native Angels Home Health, Inc. v. Burwell*, No. 5:15-CV-234-FL, 2015 WL 12910710, at *1 (E.D.N.C. June 4, 2015) ("Section 705 allows the court to issue TROs and injunctions to preserve the status quo"); *Sierra Club v. Jackson*, 833 F. Supp. 2d 11, 19 (D.D.C. 2012) (similar); *accord Sambrano v. United Airlines, Inc*., No. 21-11159, 2022 WL 486610, at *4 (5th Cir. Feb. 17, 2022) ("purpose of a preliminary injunction is to preserve the status quo); *Wenner v. Tex. Lottery Comm'n*, 123 F.3d 321, 326 (5th Cir. 1997) ("prohibitory injunction freezes the status quo, and is intended to preserve the relative positions of the parties until a trial on the merits can be held"). And so any order to "preserve status or rights," 5 U.S.C. § 705, is also an injunction barred by Section 1252(f).

challenges to jurisdiction under Rule 12(b)(1), "courts have permitted jurisdictional discovery to determine whether the court has subject matter jurisdiction." *Hunter v. Branch Banking & Tr. Co.*, No. 3:12- CV-2437-D, 2012 WL 5845426, at *1 (N.D. Tex. Nov. 19, 2012); *see, e.g., Food & Water Watch v. Trump*, 357 F. Supp. 3d 1, 3 (D.D.C. 2018) (holding that limited jurisdictional discovery for purposes of deciding a Rule 12(b)(1) motion to dismiss was appropriate). As this Court recently held, jurisdictional discovery, even before an answer or motion to dismiss is filed, is appropriate where a party intends to raise a factual attack on a party's Article III standing. *See* Order at 5-6 (Dkt. 72) at 2-6, *Texas v. Mayorkas*, no. 22-cv-94 (N.D. Tex.) ("Ruling otherwise could preclude the adjudication of a Rule 12(b)(1) motion, standing alone, any time a plaintiff seeks permanent injunctive relief.").

Plaintiffs' amended complaint raises a new claim challenging a new, distinct agency action, and Plaintiffs have the burden to establish standing for this new claim and the new forms of relief they now seek. "[A] plaintiff must demonstrate standing for each claim he seeks to press," and "must demonstrate standing separately for each form of relief sought." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006). This Court's and the Fifth Circuit's now-reversed prior decisions in this case address Plaintiffs' standing with respect to different claims challenging different agency actions thus do not and cannot resolve the standing question with respect to Plaintiffs' new claims.[6]

---

[6] Because Plaintiffs have amended their complaint to add a new claim concerning a new policy document not previously addressed by this Court, the Court's prior conclusions of fact and law on Article III standing are not determinative and present no reason to skip jurisdictional discovery at this stage. *See, e.g.*, *VeroBlue Farms USA, Inc. v. Wulf*, 465 F. Supp. 3d 633, 649 (N.D. Tex. 2020) (explaining that "Plaintiffs' Amended Complaint" "wipe[s] the slate clean" and "provide[s] Defendants a new, unobstructed opportunity to submit a" motion to dismiss). Indeed, those findings were premised on, among other things, data concerning encounters that is now stale and have been superseded by more recent events, the regulatory state of affairs that existed then, and declarations submitted by Plaintiffs, *Texas*, 554 F. Supp. 3d at 837, all of which Defendants are
*Continued on next page.*

Because Plaintiffs have amended their complaint to add a new claim concerning a new policy document not previously addressed by this Court, the Court's prior conclusions of fact and law on Article III standing are not determinative and present no reason to skip jurisdictional discovery at this stage. *See, e.g.*, *VeroBlue Farms USA, Inc. v. Wulf*, 465 F. Supp. 3d 633, 649 (N.D. Tex. 2020) (explaining that "Plaintiffs' Amended Complaint" "wipe[s] the slate clean" and "provide[s] Defendants a new, unobstructed opportunity to submit a" motion to dismiss); Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). Those findings were premised on, among other things, data concerning encounters that is now stale and have been superseded by more recent events, the regulatory state of affairs that existed then, and declarations submitted by Plaintiffs, *Texas*, 554 F. Supp. 3d at 837, all of which Defendants are entitled to question through discovery with respect to Plaintiffs' *present* injury stemming from the new policy. Likewise new data and evidence concerning enforcement policies and encounters, expenditures by Plaintiffs, and other new information that impacts alleged costs to the plaintiffs is all relevant to their current injury under Article III and any harm they allege they are suffering. In such circumstances, courts routinely find the law of the case doctrine does not apply. *See, e.g.*, *Omega Hosp., LLC v. United Healthcare Servs., Inc*., 345 F. Supp. 3d 712, 723 (M.D. La. 2018) (prior ruling on facial attack on standing is not law of the case and does not bar subsequent motion to dismiss now raising factual attack to standing); *Bishop v. Smith*, 760 F.3d 1070, 1086 (10th Cir. 2014) (submission of new evidence not

---

entitled to question through discovery. *See, e.g.*, *Omega Hosp., LLC v. United Healthcare Servs., Inc*., 345 F. Supp. 3d 712, 723 (M.D. La. 2018) (prior ruling on facial attack on standing is not law of the case and does not bar subsequent motion to dismiss now raising factual attack to standing); *Bishop v. Smith*, 760 F.3d 1070, 1086 (10th Cir. 2014) (submission of new evidence not provided or available at time of earlier decision prior to amended complaint is an exception to the law-of-the-case doctrine and proper basis to reverse earlier finding that plaintiff had standing).

provided or available at time of earlier decision prior to amended complaint is an exception to the law-of-the-case doctrine and proper basis to reverse earlier finding that plaintiff had standing); *accord Green v. Dep't of Commerce*, 618 F.2d 836, 839 n.9 (D.C. Cir. 1980) ("[T]he doctrine of 'law of the case' does not apply to the fundamental question of subject matter jurisdiction."); *Gonzalez v. ICE*, 975 F.3d 788, 805 (9th Cir. 2020) (same). And jurisdictional discovery is especially appropriate here where, unlike previously in this case with respect to different claims, Defendants intend to challenge the factual bases for Plaintiffs' Article III injury and harm stemming from their new claim. *See Texas v. Biden*, 20 F.4th 928, 967 (5th Cir. 2021), *as revised* (Dec. 21, 2021), *rev'd and remanded*, 142 S. Ct. 2528 (2022) (faulting Defendants for "offer[ing] no such evidence" as to Article III injury in the district court); *Texas*, 554 F. Supp. 3d at 837 (relying on uncontested declarations submitted by Texas). Discovery will provide a full record for this Court's factual and legal conclusions, and for any review on appeal, should either party appeal.

Nor does the "mandate rule," relied on by Plaintiffs, *supra* 5-6, require otherwise. "The mandate rule is a corollary of the law of the case doctrine providing that a lower court on remand must implement both the letter and the spirit of the appellate court's mandate, and may not disregard the explicit directives of that court." *Fuhrman v. Dretke*, 442 F.3d 893, 897 (5th Cir. 2006) (cleaned up). But this case does not involve any limiting directive, explicit or otherwise. Rather, the Fifth Circuit remanded for "for further proceedings consistent with the Supreme Court's decision," Order, Texas v. Biden, No. 21-10806 (5th Cir Aug. 3, 2022), without further limitations on what the lower Court could and could not address on remand. The Supreme Court in turn stated "[w]e therefore reverse the judgment of the Court of Appeals and remand the case for further proceedings consistent with this opinion. On remand, the District Court should consider in the first instance whether the October 29 Memoranda comply with section 706 of the

14

[Administrative Procedure Act (APA)]." *Biden v. Texas*, 142 S. Ct. 2528, 2548 (2022). The only direction in that remand order is again, for "further proceedings consistent with this opinion," including addressing a new APA claim. Nothing in that remand order limits the lower courts assessing only the *merits* of that claim. Concluding otherwise would subvert bedrock Article III principles. *See Lewis v. Casey,* 518 U.S. 343, 357 (1996) ("The actual-injury requirement would hardly serve the [its] purpose ... if once a plaintiff demonstrated harm from one particular inadequacy in government administration, the court were authorized to remedy *all* inadequacies in that administration."). Indeed, the mandate rule, even if applicable, expressly contemplates lower courts "consider[ing] new evidence." *Webb v. Davis*, 940 F.3d 892, 897 (5th Cir. 2019).

*Fourth*, any schedule, be it on a motion to postpone under 5 U.S.C. § 705, or motions for summary judgment on the merits, must account for the fact that Plaintiffs raise only an APA challenge to the October 29 Memorandum, and therefore require production of an administrative record for effective judicial review. *See, e.g.*, *Medina Cty. Env't Action Ass'n v. Surface Transp. Bd.*, 602 F.3d 687, 706 (5th Cir. 2010); Order at 3-4 (Dkt. 52), *Texas v. Biden*, No. 21-cv-67 (N.D. Tex.). Here, the challenged memoranda span 43 singled spaced pages, and so the administrative record is likely to be voluminous and take significant time and resources to compile. *See* https://www.dhs.gov/publication/migrant-protection-protocols-termination-memo.

## 1. Defendants' proposal on further proceedings.

Given the foregoing, Defendants thus propose that the Court stay Defendants deadline to answer or otherwise respond to the amended complaint through the completion of jurisdictional discovery, and set a deadline for Defendants to respond to the complaint after discovery closes to allow Defendants to obtain transcripts from any depositions, to review all discovery obtained, and to have a reasonable amount of time to draft the motion to dismiss following the close of discovery.

Defendants also propose that the Court deny without prejudice or stay Plaintiffs' request for postponement of the effective date of the October 29 Memorandum. Defendants thus propose the following schedule:

> • Parties complete all jurisdictional discovery by October 9, 2022;

> • Defendants answer or otherwise respond to the complaint by October 28, 2022.

Defendants suggest that the Court issue a schedule for the remainder of the case after ruling on Defendants' motion to dismiss, to the extent any claims remain at that point. Even if the Court does not dismiss this case in its entirety, Defendants' anticipated factual and legal challenges under Rule 12 to Texas' ability to pursue its claims could substantially narrow the claims in the case. The Court's ruling on the motion to dismiss will thus affect the scope and timing of this case, and also affect the time the parties will require to provide any further briefing that may be necessary. *See* Order (Dkt. 72) at 2-6, *Texas v. Mayorkas*, no. 22-cv-94 (N.D. Tex.). The Court's ruling on standing and jurisdiction based on a motion to dismiss raising a factual attack will resolve those issues and allow the parties' later briefs to focus on the merits if any claim remains. This proposal is similar to the schedule adopted by this Court in *Texas v. Mayorkas*, No. 22-cv-94 (N.D. Tex.) (Order (Dkt. 72) at 2-6).

Any claim that survives a motion to dismiss in this case can be resolved on cross motions for summary judgment, following the production of an administrative record. Texas' complaint raises five reasons why the October 29 Memorandum should be held "unlawful and set aside," all of which are based on the APA. Compl. ¶¶ 64–86, Prayer for Relief ¶ b. In APA cases, the Court reviews the administrative record to determine whether an agency has complied with the APA. *See, e.g.*, *Medina Cty. Env't Action Ass'n v. Surface Transp. Bd.*, 602 F.3d 687, 706 (5th Cir. 2010). "In reviewing administrative agency decisions, the function of the district court is to

determine whether as a matter of law, evidence in the administrative record permitted the agency to make the decision it did." *Texas Comm. on Nat. Res. v. Van Winkle*, 197 F. Supp. 2d 586, 595 (N.D. Tex. 2002). "Nor are courts permitted to consider evidence outside the administrative record" with respect to APA claims. *Louisiana ex rel. Guste v. Verity*, 853 F.2d 322, 327 (5th Cir. 1988). A trial or evidentiary hearing is thus generally not necessary or appropriate in an APA case.

Accordingly, to the extent this case is not dismissed under Rule 12, it can be resolved based on cross motions for summary judgment. Because the Court's ruling on a motion under Rule 12 will affect the timing and scope of those motions for the reasons noted above, Defendants respectfully suggest that the Court set a deadline 7 days after it rules on the motion to dismiss for the parties to confer and submit proposals for the timing of briefing and a hearing on cross motions for summary judgment.

### 2. Defendants' alternative proposal on further proceedings

Alternatively, should the Court agree that a motion for postponement of the effective date under 5 U.S.C. § 705 should not proceed at this time, but does not adopt Defendants' proposal to proceed to jurisdictional discovery followed by a motion to dismiss, Defendants propose that any motion to dismiss be combined with a motion for summary judgment, to be filed after the filing of an answer, the production of an administrative record, and completion of jurisdictional discovery. Defendants propose the following schedule under that proposal:

- September 7: answer deadline

- September 14: service of administrative record

- October 9: parties complete jurisdictional discovery

- October 28: Plaintiffs file motion for summary judgment

- November 18: Defendants file opposition and cross-motion for summary judgment

- December 2: Plaintiffs file opposition and reply

- December 16: Defendants file reply

**3. Further proceedings should the Court adopt Plaintiffs' proposal to litigate a motion to postpone under 5 U.S.C. § 705 now**

Finally, Defendants submit that the Court should allow jurisdictional discovery before deciding the motion to postpone. *See, e.g.*, *Texas v. Mayorkas*, No. 22-cv-94 (N.D. Tex.) (Order (Dkt. 60) at 2-6) (ordering jurisdictional discovery, and staying deadlines on Plaintiffs motion for preliminary injunction). If it does so, the Court should stay briefing on the motion to postpone.

Should the Court decide it appropriate to proceed with a motion to postpone under 5 U.S.C. § 705 prior to any jurisdictional discovery and notwithstanding 8 U.S.C. § 1252(f) and the fact that the October 29 Memorandum is already in effect, Defendants propose the following schedule, which allows the government time to produce what is likely to be a voluminous administrative record. The Court previously issued similar orders in this case and others. *See* Order at 3-4 (Dkt. 52), *Texas v. Biden*, No. 21-cv-67 (N.D. Tex.) (providing Defendants 14 days to produce the record because "the Court finds that the inclusion of the administrative record will provide a firm basis for the Court's analysis of Plaintiffs APA claims"); Order at 2-3 (Dkt. 24), *Texas v. Mayorkas*, No. 22-cv-94 (N.D. Tex.) (similar).[7] The record is a necessary part of any judicial review of the motion, because, as noted, the standard for issuing a Section 705 stay is the same as the standard for

_____

[7] Although this Court does not have a local rule governing when an administrative record should be produced, fellow district courts usually do not require the production of an administrative record until Defendants file an answer to a complaint. *See, e.g.*, D.D.C. L. Civ. R. 7(n)(1) (filing of administrative record after answer); D. Kansas L. Civ. R. 83.1(c)(1) (filing of administrative record with answer); D. Utah L. Civ. R. 7-4(a)(4–5) (filing of administrative record after ruling on motion to dismiss); N.D. Cal. Local Rule 16-5 (in cases seeking "District Court review on an administrative record, the defendant must serve and file an answer, together with a certified copy of the transcript of the administrative record, within 90 days of receipt of service of the summons and complaint").

issuance of a preliminary injunction. *See supra* 8-9. Plaintiffs must demonstrate, among other things, a likelihood of success on the merits of their APA claim. *See, e.g.*, *Texas*, 829 F.3d at 424;. *Foxx*, 157 F. Supp. 3d at 586. And as this Court has previously determined, in such circumstances, effective judicial review requires production of the administrative record. *See* Order at 3-4 (Dkt. 52), *Texas v. Biden*, No. 21-cv-67 (N.D. Tex.); Order at 2-3 (Dkt. 24), *Texas v. Mayorkas*, No. 22-ccv-94 (N.D. Tex.). Accordingly, Defendants propose the following schedule:

- August 23: Defendants produce the administrative record

- August 29: Defendants' opposition

- September 12: Plaintiffs' reply.

Should the Court adopt this schedule or any other concerning a motion to postpone, Defendants also request that the Court stay Defendants' deadline to file an answer or other responsive pleading pending resolution of the motion to postpone.

//

//

Dated August 9, 2022.

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

JUDD E. STONE II
Solicitor General
Texas Bar No. 24076720

PATRICK K. SWEETEN
Deputy Attorney General for Special Litigation
Texas Bar No. 00798537

WILLIAM T. THOMPSON
Deputy Chief, Special Litigation Unit
*Attorney-in-Charge*
Texas Bar No. 24088531

*/s/ Ryan D. Walters*
RYAN D. WALTERS
Special Counsel
Texas Bar No. 24105085

OFFICE OF THE ATTORNEY GENERAL
SPECIAL LITIGATION UNIT
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Tel.: (512) 463-2100
Fax: (512) 457-4410
patrick.sweeten@oag.texas.gov
will.thompson@oag.texas.gov
ryan.walters@oag.texas.gov

*Counsel for Plaintiff State of Texas*

ERIC S. SCHMITT
Attorney General of Missouri

*/s/ D. JOHN SAUER*
D. JOHN SAUER, #58720MO*
Solicitor General

Respectfully submitted,

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney General*

WILLIAM C. PEACHEY
*Director*

*/s/ Erez Reuveni*
EREZ REUVENI
*Assistant Director*
U.S. Department of Justice, Civil Division
Office of Immigration Litigation,
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel: (202) 307-4293
Email: erez.r.reuveni@usdoj.gov

BRIAN C. WARD
*Senior Litigation Counsel*

JOSEPH A. DARROW
*Trial Attorney*

*Counsel for Defendants*

MICHAEL E. TALENT, #73339MO *
Deputy Solicitor General

OFFICE OF THE ATTORNEY GENERAL
Supreme Court Building
P.O. Box 899
Jefferson City, Missouri 65102
Tel. (573) 751-8870
Fax (573) 751-0774
John.Sauer@ago.mo.gov

*Counsel for Plaintiff State of Missouri*

*Admitted pro hac vice

**CERTIFICATE OF SERVICE**

I hereby certify that on August 9, 2022, I electronically filed this motion with the Clerk of the Court for the United States District Court for the Northern District of Texas by using the CM/ECF system. Counsel in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

*/s/ Ryan D. Walters*
RYAN D. WALTERS