**FILED**

**September 20, 2022**

KAREN MITCHELL
CLERK, U.S. DISTRICT
COURT

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## AMARILLO DIVISION

| | | |
|---|---|---|
| THE STATE OF TEXAS and | § | |
| | § | |
| THE STATE OF MISSOURI, | § | |
| | § | |
| Plaintiffs, | § | Case No. 2:21-cv-00067-Z |
| | § | |
| v. | § | |
| | § | |
| JOSEPH R. BIDEN, JR., in his official capacity | § | |
| as President of the United States of | § | |
| America, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFFS' SUR-SURREPLY IN SUPPORT OF
## THEIR MOTION TO POSTPONE THE EFFECTIVE DATE OF AGENCY ACTION

Plaintiffs the State of Texas and the State of Missouri respond to the arguments made in Defendants' Surreply in Opposition to Plaintiffs' Motion to Postpone the Effective Date of Agency Action, ECF 169-1 (the "Surreply").

**Timeliness of a Stay of Agency Action.** Defendants dispute it, Surreply at 3–4, but the effective date of the October 29 Memoranda has yet to happen because the "effective date" of an agency action is a term of art tied to publication in the Federal Register. Defendants assume that only agency actions that are required to undergo notice-and-comment rulemaking are required to be published in the Federal Register, Surreply at 3–4, but this is incorrect.

Plaintiffs had cited the publication requirements of 5 U.S.C. § 553—relating to rules subject to notice-and-comment—in their Reply, ECF 168 at 11, because Defendants had cited cases precluding *agencies* from postponing the effective date of agency actions after the effective date had arrived, ECF 163 at 14–16. Those cases reasoned that allowing agencies to do so would permit them to evade their notice-and-comment requirements. *See, e.g., Ctr. for Biological Diversity v. Regan*, No. CV

1

21-119 (RDM), 2022 WL 971067, at *21 (D.D.C. Mar. 30, 2022).

One reason the APA was adopted was "to avoid the inherently arbitrary nature of unpublished ad hoc determinations." *Morton v. Ruiz*, 415 U.S. 199, 232 (1974). To further advance that interest, Congress has required that "substantive rules of general applicability adopted as authorized by law" be published in the Federal Register. 5 U.S.C. § 552(a)(1)(D). But it goes further than agency actions required to undergo notice-and-comment rulemaking, making "statements of general policy or interpretations of general applicability formulated and adopted by the agency," and "each amendment, revision, or repeal" of such agency actions also subject to the publication requirement. *Id.* As the October 29 Memoranda have yet to be published in the Federal Register, their effective date remains in the future.[1]

As courts have repeatedly held, the relevant date for a rule's issuance is therefore the date of publication in the Federal Register. *See, e.g., Nat. Res. Def. Council v. Abraham*, 355 F.3d 179, 196 (2d Cir. 2004) ("[P]ublication in the Federal Register ... is the culminating event in the rulemaking process.").[2] The plain language of the statute authorizes postponement of the "effective date," 5 U.S.C. § 705, not "compliance dates" such as when the October 29 Memoranda began to have legal effect once the permanent injunction was lifted—"effective" and "compliance" dates have distinct meanings. *See Silverman v. Eastrich Multiple Inv'r Fund, L.P.*, 51 F.3d 28, 31 (3d Cir. 1995) ("The mandatory compliance date should not be misconstrued as the effective date of the revisions."); *Nat.*

---

[1] The memoranda implementing MPP were themselves published in the Federal Register. *See Notice of Availability for Policy Guidance Related to Implementation of the Migrant Protection Protocols*, 84 Fed. Reg. 6811 (issued January 25, 2019, but with a publication date of February 25, 2019).

[2] Defendants argue that *Liesegang v. Sec'y of Veterans Affs.*, 312 F.3d 1368 (Fed. Cir. 2002) supports their argument that the date the October 29 Memoranda were "issued" is equivalent to the "effective date" of the agency action. Surreply at 4 n.2. But that case held that "the effective date of the regulation is the date of publication in the Federal Register," *Liesegang*, 312 F.3d at 1370, and rejected the argument that the "effective date" was when the agency action became operational. *Id.* at 1375; *see also id.* at 1376 (distinguishing between "the operative date of the regulation" and "its effective date").

*Res. Def. Council, Inc. v. U.S. Envtl. Prot. Agency*, 683 F.2d 752, 762 (3d Cir. 1982) (stating an effective date is "an essential part of any rule: without an effective date, the agency statement could have no future effect, and could not serve to implement, interpret, or prescribe law or policy") (internal quotation marks omitted); *California v. U.S. Bureau of Land Mgmt.,* 277 F.Supp.3d 1106, 1117–20 (N.D. Cal. 2017) (rejecting conflation of "compliance date" and "effective date" of agency action); *Becerra v. U.S. Dep't of Interior*, 276 F.Supp.3d 953, 963–65 (N.D. Cal. 2017) (same).

The Surreply argues that the "effective date" of the October 29 Memoranda was when it was "issued"—that is, October 29, 2021. Surreply at 4 n.2. But the caselaw does not support classifying an agency action as "issued" when it is signed, but when it is published in the Federal Register. *See Pub. Citizen Inc. v. Mineta*, 343 F.3d 1159, 1161 (9th Cir. 2003) ("We hold that an order has not been 'issued' until it has been filed with the Office of the Federal Register and thus made available for public inspection."); *Fla. Manuf. Housing Ass'n, Inc. v. Cisneros*, 53 F.3d 1565, 1573 (11th Cir. 1995) (rejecting argument "that the rule was issued when the rulemaking decision was dated, not when it was published"); *Nat. Res. Def. Council v. U.S. Dep't of Energy*, 362 F. Supp. 3d 126, 151–52 (S.D.N.Y. 2019) (rejecting argument that agency action was "issued" on date of its signature line).

Regardless, Defendants do not address the aspect of cases where courts issued stays under Section 705 of agency action *after* the effective date of that action, as cited by Plaintiffs in their Reply. ECF 168 at 10.[3] "Section 705 confers a broader authority on reviewing courts [than on agencies],

---

[3] Defendants also maintain that *BST Holdings, LLC v. Occupational Safety & Health Admin., United States Dep't of Lab.*, 17 F.4th 604 (5th Cir. 2021) did not involve a stay under Section 705 but was "injunctive relief." Surreply at 1. The opinion refers repeatedly to staying agency action pending a merits determination. *See BST Holdings, LLC*, 17 F.4th at 609 ("An array of petitioners seeks a stay barring OSHA from enforcing the Mandate during the pendency of judicial review. On November 6, 2021, we agreed to stay the Mandate pending briefing and expedited judicial review. Having conducted that expedited review, we reaffirm our initial stay."); *id.* at 610 ("The petitioners seek a stay—and ultimately a permanent injunction—of the Mandate's enforcement pending full judicial review of the Mandate. We address their request for a stay today."). The briefing in that case also relied explicitly on Section 705. *See* Motion for Stay Pending Disposition of Petitioners' Petition for Review, *Texas Trucking Ass'n v. Occupational Safety & Health Admin., United States Dep't of Lab.*, Case No. 21-60845, Doc. No. 00516088649 at 4, 6, 21, 22 (5th Cir.) (repeatedly referencing Section 705 in requesting a stay of agency action).

permitting the court 'to postpone the effective date ... *or to preserve* status or *rights* pending conclusion of the review proceedings,'" *Ctr. for Biological Diversity v. Regan*, No. CV 21-119 (RDM), 2022 WL 971067, at *21 (D.D.C. Mar. 30, 2022) (emphases in original). ECF 168 at 10–11. Even if the effective date of the October 29 Memoranda had passed, this Court has the authority to stay them pending review on the merits, to preserve the *status quo.*

Defendants also argue that a stay of the October 29 Memoranda would not *preserve* the *status quo* but *alter* it. Surreply at 2. But the Fifth Circuit has recently explained that vacating an agency action "does nothing but re-establish the status quo absent the unlawful agency action," and "[a]part from the constitutional or statutory basis on which the court invalidated an agency action, vacatur neither compels nor restrains further agency decision-making." *Texas v. United States*, 40 F.4th 205, 220 (5th Cir. 2022); *see also Wages & White Lion Invs., LLC v. United States Food & Drug Admin.*, 16 F.4th 1130, 1144 (5th Cir. 2021) ("the *status quo* [is] the state of affairs before the" challenged agency action). As a stay under Section 705 of the APA is just the interim equivalent of a vacatur under Section 706, this analysis holds here.

The Supreme Court also articulated this understanding of the *status quo* and stays of agency action:

> An alien seeking a stay of removal pending adjudication of a petition for review does not ask for a coercive order against the Government, but rather for the temporary setting aside of the source of the Government's authority to remove. Although such a stay acts to "ba[r] Executive Branch officials from removing [the applicant] from the country," *post,* at 1767 (ALITO, J., dissenting), it does so by returning to the status quo—the state of affairs before the removal order was entered.

*Nken v. Holder*, 556 U.S. 418, 429 (2009).

Staying the October 29 Memoranda would therefore preserve the *status quo ante* and allow review on the merits of the lawfulness of the agency action.

**Authority of District Courts to Stay Agency Action.** Defendants maintain that district courts lack the authority to stay agency action—that only appellate courts have this power. Surreply

4

at 1. But district courts have the same authority as appellate courts in issuing stays under Section 705 because of the nature of judicial review of agency action.

The APA allows for judicial review in any court "of competent jurisdiction," absent a "special statutory review proceeding." 5 U.S.C. § 703. Unless there is a special statutory provision, agency actions may not be directly reviewed in the courts of appeals. *In re Sch. Bd. of Broward Cnty.*, 475 F.2d 1117, 1119 (5th Cir. 1973). "Unless a statute provides otherwise, persons seeking review of agency action go first to district court rather than to a court of appeals." *Int'l Bhd. of Teamsters v. Pena*, 17 F.3d 1478, 1481 (D.C. Cir. 1994) (citing 5 U.S.C. § 703); *see also id.* (referring to initial review of agency action in district court as "the normal default rule"). So, "appeals of federal agency decisions are generally heard by federal district courts." Joseph W. Mead & Nicholas A. Fromherz, *Choosing A Court to Review the Executive*, 67 Admin. L. Rev. 1, 28 (2015); *id.* at 15–16 (noting that despite many specific provisions provide for initial review in the courts of appeals, "an untold number of agency decisions are left to the default route of initial district court review.").

"Modern administrative law is built on the appellate review model of the relationship between reviewing courts and agencies [and] the reviewing court conceives of its role vis-à-vis the administrative agency in terms of the conventions that govern the appeals court–trial court relationship." Thomas W. Merrill, *Article III, Agency Adjudication, and the Origins of the Appellate Review Model of Administrative Law*, 111 Colum. L. Rev. 939, 940–41 (2011). Therefore, "when a party seeks review of agency action under the APA, the district judge sits as an appellate tribunal." *Am. Bioscience, Inc. v. Thompson,* 269 F.3d 1077, 1083 (D.C. Cir. 2001).

All federal courts have "inherent" authority "to hold an order in abeyance while [they] assess[] the legality of the order." *Nken*, 556 U.S. at 426. This authority is "preserved" in the provisions of the All Writs Act, 28 U.S.C. § 1651(a), *Nken*, 556 U.S. at 426, which provides that "[t]he Supreme Court *and all courts established by Act of Congress* may issue all writs necessary or appropriate in aid of their

respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. §1651(a) (emphasis added). And the APA's stay provision is not limited to appellate courts: "*the reviewing court* … may issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings." 5 U.S.C. § 705 (emphasis added).

The "historic pedigree and importance of the power" to stay agency action pending judicial review means that even if Section 705 or some other provision did not explicitly authorize it, that "should not be taken as an implicit denial of that power." *Nken*, 556 U.S. at 426 (citing *Scripps–Howard Radio, Inc. v. FCC,* 316 U.S. 4 (1942)). Here, both the All Writs Act and the APA reaffirm that power in district courts—this Court therefore has the same remedial authority as an appellate court when reviewing an agency action under the APA.

**Section 1252(f)(1) and Stays of Agency Action.** Defendants argue that Section 1252(f)(1) bars all equitable relief. Surreply at 2 (arguing that "to the extent Section 705 is read to preserve a district court's authority to grant equitable relief, Section 1252(f)(1) expressly removes that authority here"). This broad interpretation of Section 1252(f)(1) is wrong.

For example, even though "the vacatur inquiry is an equitable one," *Texas v. Biden*, 20 F.4th 928, 998 (5th Cir. 2021) (cleaned up), that remedy is not precluded by Section 1252(f)(1). *Texas*, 40 F.4th at 219. Defendants argue that because "a stay would prevent the agency from relying on the October 29 [Memoranda]" such a remedy would be "practically equivalent to an injunction compelling the agency to rescind or stop implementing the [Memoranda]." Surreply at 3. But the Fifth Circuit has rejected this same argument relating to vacatur. *See Texas*, 40 F.4th at 219 (rejecting DHS argument that Section 1252(f)(1) applied because "vacatur 'prohibits' DHS from implementing the [challenged agency action] and *de facto* 'enjoin[s] or restrain[s]' the agency's enforcement decisions.").

Defendants also maintain that the term "restrain" in Section 1252(f)(1) sweeps beyond

injunctive relief. Surreply at 2. But the word "'restrain' in Section 1252(f) is best read to refer to temporary injunctive relief." *Rodriguez v. Hayes*, 591 F.3d 1105, 1119 (9th Cir. 2010); *Alli v. Decker*, 650 F.3d 1007, 1013 (3d Cir. 2011) ("'restrain' refers to one or more forms of temporary injunctive relief, such as a temporary restraining order or preliminary injunction"); *Arevalo v. Ashcroft,* 344 F.3d 1, 7 (1st Cir. 2003) ("The most sensible way to give operative effect to both words in this statutory scheme is to treat the word 'enjoin' as referring to permanent injunctions and the word 'restrain' as referring to temporary injunctive relief....").

Statutory context also leads to the conclusion that Section 1252(f)(1) does not preclude stays of agency action under Section 705 because it does not specifically refer to that relief:

> The Clean Air Act does not displace Section 705, the general APA provision governing stays pending judicial review. The Clean Air Act expressly provides that several provisions of the APA—5 U.S.C. §§ 553–557 and 706—"shall not, except as expressly provided in this subsection, apply to actions to which this subsection applies." 42 U.S.C. § 7607(d)(1). Section 705 is not on that list. By contrast, Congress has displaced Section 705 in other statutory regimes. *Cf.* 16 U.S.C. § 1855(f)(1) (fishery management regulations subject to judicial review in accordance with Administrative Procedure Act, but not with Section 705); *id.* § 3636(c) (Pacific salmon fishing regulations subject to judicial review in accordance with Administrative Procedure Act, but not with Section 705). Had Congress wanted to prevent courts in Clean Air Act cases from issuing stays under Section 705, Congress could have done so.

*Mexichem Specialty Resins, Inc. v. EPA*, 787 F.3d 544, 562 n.1 (D.C. Cir. 2015) (Kavanaugh, J., dissenting in part). This same principle precludes interpreting Section 1252(f)(1) as forbidding all equitable relief:

> We therefore turn to the statutory context of § 1252(f)(1). A closely adjacent provision, § 1252(e)(1)(A), precludes courts from entering "declaratory, injunctive, or other equitable relief in any action pertaining to an order to exclude an alien...." This provision is compelling evidence that Congress knew how to preclude declaratory relief, but chose not to in § 1252(f)(1). *See INS v. Cardoza–Fonseca,* 480 U.S. 421, 432 (1987) ("'[Where] Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" (quoting *Russello v. United States,* 464 U.S. 16, 23 (1983))). In *Nken v. Holder,* the Supreme Court followed this presumption in interpreting § 1252(f)(2), immediately adjacent to the provision at issue here, and noted that the presumption was "particularly true ... where [the] subsections ... were enacted as part of a unified overhaul of judicial review procedures." *See Nken v. Holder,* 556 U.S. 418 (2009).

*Alli*, 650 F.3d at 1012–13 (citations truncated). Similarly, if Congress had wanted to preclude stays or other equitable relief in Section 1252(f)(1), it knew how do so.

Any construction to the contrary in the face of any ambiguity would violate "a familiar principle of statutory construction: the presumption favoring judicial review of administrative action." *Guerrero-Lasprilla v. Barr*, 140 S. Ct. 1062, 1069 (2020) (quoting *Kucana v. Holder*, 558 U.S. 233, 251 (2010)). That presumption means that, "when a statutory provision 'is reasonably susceptible to divergent interpretation, we adopt the reading that accords with traditional understandings and basic principles: that executive determinations generally are subject to judicial review.'" *Guerrero-Lasprilla*, 140 S. Ct. at 1069 (quoting *Kucana*, 558 U.S. at 251). That "well-settled" and "strong presumption" in favor of judicial review applies even when determining the scope of statutory provisions specifically designed to limit judicial review. *See Guerrero-Lasprilla*, 140 S. Ct. at 1068; *see also Kucana*, 558 U.S. at 251–252; *El Paso Natural Gas Co. v. United States*, 632 F.3d 1272, 1276 (D.C. Cir. 2011) ("Th[e] presumption applies even where, as here, the statute expressly prohibits judicial review—in other words, the presumption dictates that such provisions must be read narrowly."). That "well-settled" presumption can be overcome only by "clear and convincing evidence" of congressional intent to preclude judicial review. *See, e.g.*, *Kucana*, 558 U.S. at 252. Defendants fail to meet that standard.

This Court should reject Defendants' "far-reaching position that §1252(f)(1) does indeed bar APA review." *Biden v. Texas*, 142 S.Ct. 2528, 2552 (2022) (Alito, J., dissenting). Because damages are not available in an APA action, Defendants' construction of Section 1252(f)(1) as precluding not only injunctive relief, but also declaratory relief, vacatur, and stays, would make agency actions implementing the relevant provisions of the INA completely immune from judicial review.

Dated: September 19, 2022

Respectfully submitted,

ERIC S. SCHMITT
Attorney General of Missouri

KEN PAXTON
Attorney General of Texas

/s/ D. JOHN SAUER
D. JOHN SAUER, #58720MO*
Solicitor General

BRENT WEBSTER
First Assistant Attorney General

MICHAEL E. TALENT, #73339MO *
Deputy Solicitor General

JUDD E. STONE II
Solicitor General
Texas Bar No. 24076720

OFFICE OF THE ATTORNEY GENERAL
Supreme Court Building
207 West High Street
P.O. Box 899
Jefferson City, Missouri 65102
Tel. (573) 751-8870
Fax (573) 751-0774
John.Sauer@ago.mo.gov

PATRICK K. SWEETEN
Deputy Attorney General for Special Litigation
Texas Bar No. 00798537

WILLIAM T. THOMPSON
Deputy Chief, Special Litigation Unit
*Attorney-in-Charge*
Texas Bar No. 24088531

*Counsel for Plaintiff*
*State of Missouri*

/s/ Ryan D. Walters
RYAN D. WALTERS
Special Counsel
Texas Bar No. 24105085

*Admitted pro hac vice

OFFICE OF THE ATTORNEY GENERAL
SPECIAL LITIGATION UNIT
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Tel.: (512) 936-1414
Fax: (512) 457-4410
patrick.sweeten@oag.texas.gov
will.thompson@oag.texas.gov
ryan.walters@oag.texas.gov

*Counsel for Plaintiff*
*State of Texas*

**CERTIFICATE OF SERVICE**

I certify that on September 19, 2022, a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) and served on all counsel of record.

*/s/ Ryan D. Walters*
RYAN D. WALTERS

10