**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION**

|  |  |  |
|---|---|---|
| STATE OF TEXAS, <br> STATE OF MISSOURI, <br><br> *Plaintiffs,* <br><br> v. <br><br> JOSEPH R. BIDEN, JR., <br> in his official capacity as <br> President of the United States, *et al.*, <br><br> *Defendants.* | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | Civil Action No. 2:21-cv-00067-Z |

<u>**DEFENDANTS' SUPPLEMENTAL RESPONSE BRIEF
IN SUPPORT OF SUMMARY JUDGMENT**</u>

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ...................................................................................................................... 1

    I.    Plaintiffs Must Show Standing to Challenge the October 29 Memoranda. .....................1

    II.    Prior Rulings Do Not Establish Standing for Plaintiffs' Amended Claims. ....................4

        A.    The *Priorities* decision applies to this case. ............................................... 6

        B.    None of the *Priorities* "exceptions" apply here. ........................................ 8

    III.  Plaintiffs Fail to Meet the Remaining Article III Standing Requirements. ....................10

        A. Plaintiffs fail to show that their alleged injuries are traceable or redressable. .......... 10

    IV.  The Court Cannot and Should Not Vacate the October 29 Memoranda. .......................13

        A.    The APA does not authorize nationwide vacatur. .................................... 14

        B.    Section 1252(f)(1) prohibits injunctive-like relief, such as vacatur in this case. ..... 18

CONCLUSION ................................................................................................................. 19

# <u>TABLE OF AUTHORITIES</u>

Page(s)

**Cases**

*Al Hajji v. Obama,*
    No. CIV.05-0429 (RJL), 2009 WL 4251108 (D.D.C. Nov. 23, 2009) .................................... 13

*Arbaugh v. Y&H Corp.,*
    546 U.S. 500 (2006) ......................................................................................................... 6

*Arizona v. Biden,*
    40 F.4th 375 (6th Cir. 2022) ........................................................................................ 11, 12

*Berkemer v. McCarty,*
    468 U.S. 420 ...................................................................................................................... 5

*Biden v. Texas,*
    2021 WL 6206109 (U.S.) ................................................................................................... 5

*Califano v. Yamasaki,*
    442 U.S. 682 (1979) ......................................................................................................... 17

*Cannon v. Principal Health Care of Louisiana,*
    87 F.3d 1311 (5th Cir. 1996) ........................................................................................... 12

*Cardenas v. Smith,*
    733 F.2d 909 (D.C. Cir. 1984) ......................................................................................... 13

*Cargill v. Garland,*
    57 F.4th 447 (5th Cir. 2023) ........................................................................................... 14

*Center for Individual Freedom v. Carmouche,*
    449 F.3d 655 (5th Cir. 2006) ......................................................................................... 3, 4

*DaimlerChrysler Corp. v. Cuno,*
    547 U.S. 332, (2006) ......................................................................................................... 2

*Data Mktg. P'ship, LP v. U.S. Dep't of Labor,*
    45 F.4th 846 (5th Cir. 2022) ........................................................................................... 15

*Davis v. Fed. Election Comm'n,*
    554 U.S. 724 (2008) ........................................................................................................... 3

*Direct Mktg. Ass'n v. Brohl,*
    575 U.S. 1 (2015) ............................................................................................................ 18

*Franciscan All., Inc. v. Becerra,*
　　47 F.4th 368 (5th Cir. 2022) ........................................................................ 15

*Garland v. Aleman Gonzalez,*
　　142 S. Ct. 2057 (2022) ................................................................................. 14

*Gen. Land Off. v. Biden,*
　　71 F.4th 264 (5th Cir. 2023) .......................................................................... 3

*Greater Tampa Chamber of Com. v. Goldschmidt,*
　　627 F.2d 258 (D.C. Cir. 1980) ...................................................................... 13

*Immigrant Defenders Law Center v. DHS,*
　　No. 2:21-cv-00395 (C.D. Cal.) ..................................................................... 17

*Immigrant Defenders Law Center v. Wolf,*
　　No. 2:20-cv-9893 (C.D. Cal.) ....................................................................... 17

*Linda R.S. v. Richard D.,*
　　410 U.S. 614 (1973) ........................................................................................ 7

*Lujan v. Defs. of Wildlife,*
　　504 U.S. 555 (1992) .............................................................................. passim

*Lynch v. Leis,*
　　382 F.3d 642 (6th Cir. 2004) .......................................................................... 3

*Massachusetts v. EPA,*
　　549 U.S. 497 (2007) ...................................................................................... 12

*Massachusetts Coalition for Immigration Reform v. U.S. DHS,*
　　No. 1:20-cv-03438 (D.D.C.) .......................................................................... 17

*Nebraska v. Biden,*
　　143 S. Ct. 2355 (2023) .................................................................................. 10

*Pederson v. Louisiana State Univ.,*
　　213 F.3d 858 (5th Cir. 2000) .......................................................................... 3

*Rockwell Int'l Corp. v. United States,*
　　549 U.S. 457 (2007) ........................................................................................ 2

*S. Utah Wilderness All. v. Palma,*
　　707 F.3d 1143 (10th Cir. 2013) ...................................................................... 3

*Schreiber Foods, Inc. v. Beatrice Cheese, Inc.,*

402 F.3d 1198 (Fed. Cir. 2005) .................................................................... 3

*Sure-Tan, Inc. v. N.L.R.B.*,
  467 U.S. 883 (1984) ........................................................................... 7, 8

*Texas v. Biden (MPP)*,
  20 F.4th 928 (5th Cir. 2021) ............................................................... 5, 9

*Texas v. Biden (MPP)*,
  142 S. Ct. 2528 (2022) ...................................................... 4, 6, 11, 14

*Texas v. Biden (Priorities)*,
  143 S. Ct. 1964 (2023) ................................................................. passim

*Texas v. Biden*,
  554 F. Supp. 3d 818 (N.D. Tex. 2021) ................................................ 9

*Texas v. United States*,
  40 F.4th 205 (5th Cir. 2022) ............................................................... 19

*Texas v. United States*,
  50 F.4th 498 (5th Cir. 2022) ............................................... 12, 15, 17

*Texas Ass'n of Manuf'rs v. U.S. Consumer Prod. Safety Comm'n*,
  989 F.3d 368 (5th Cir. 2021) ............................................................. 14

*United States Parole Comm'n v. Geraghty*,
  445 U.S. 388 (1980) ........................................................................... 3, 4

*United States v. Matthews*,
  312 F.3d 652 (5th Cir. 2002) ............................................................... 6

*United States v. Texas*,
  2022 WL 12591050 (U.S.) .................................................................. 12

*VeroBlue Farms USA, Inc. v. Wulf*,
  465 F. Supp. 3d 633 (N.D. Tex. 2020) ........................................... 5, 11

**Statutes**

5 U.S.C. § 703 .................................................................................... 16

5 U.S.C. § 705 .................................................................................... 16

5 U.S.C. § 706(1) ............................................................................... 16

5 U.S.C. § 706(2) ............................................................................... 15

5 U.S.C. § 706(2)(A) .................................................................................................... 15

8 U.S.C. § 1225 ........................................................................................................... 14

8 U.S.C. § 1225(b)(2)(A) ............................................................................................... 9

8 U.S.C. § 1225(b)(2)(C) ............................................................................... 4, 9, 14, 19

8 U.S.C. § 1226(a) .......................................................................................................... 9

8 U.S.C. § 1226(a)(3) ..................................................................................................... 9

8 U.S.C. § 1252(f)(1) ............................................................................................... 4, 14

**Regulations**

8 C.F.R. § 274a.12(c)(11) ............................................................................................ 10

**Other Authorities**

John Harrison, *Section 706 of the Administrative Procedure Act Does Not Call for Universal
    Injunctions or Other Universal Remedies*, 37 Yale J. on Reg. Bull. 37 (2019-2020) .............. 15

Press Release 33, Secreteria de Relaciones Exteriores, , "Foreign Ministry rejects having
    migrants stay in Mexico under reimplementation of US Immigration and Nationality Act
    Section 235(b)(2)(C)," Feb. 6, 2023, https://www.gob.mx/sre/prensa/foreign-ministry-rejects-
    having-migrants-stay-in-mexico-under-reimplementation-of-us-immigration-and-nationality-
    act-section-235-b-2-c .............................................................................................. 13

U.S. CBP, Custody and Transfer Statistics FY 2023, "USBP Monthly Southwest Border
    Encounters by Processing Disposition." https://www.cbp.gov/newsroom/stats/custody-and-
    transfer-statistics (last modified September 14, 2023) ............................................ 9

**INTRODUCTION**

The Court should grant summary judgment to Defendants on Plaintiffs' challenges to the October 29, 2021 memoranda terminating the Migrant Protection Protocols (MPP). Rather than raise allegations against the October 29 memoranda specifically, Plaintiff States merely lean on the Court's findings about the June 2021 MPP termination memoranda. However, as the Supreme Court has explained, the June 2021 memoranda were a different agency action. Even if the agency actions address the same issue, previous determinations regarding jurisdiction and the merits cannot be imputed to new agency actions. Plaintiffs must establish jurisdiction to challenge the October 29 memoranda specifically, and must demonstrate that *those* memoranda fail Administrative Procedure Act (APA) review. They have not done either.

Defendants are entitled to summary judgment for the reasons Defendants previously provided in briefing, ECF Nos. 163, 173. Additionally, in supplemental briefing, Defendants provided four additional reasons the Court should enter summary judgment in Defendants' favor: (1) Plaintiffs fail to offer evidence sufficient to carry their burden to establish standing on summary judgment; (2) an intervening ruling by the U.S. Supreme Court indicates that Plaintiffs lack a cognizable injury, traceability, or redressability to support standing; (3) Plaintiffs cannot show redressability for several reasons, including that Mexico has stated it will no longer allow MPP returns; and (4) 8 U.S.C. § 1252(f)(1) and traditional APA principles bar injunctive or vacatur relief in this case. None of Plaintiffs' prior or supplemental arguments, ECF No. 204, persuasively counter these points or otherwise demonstrate Plaintiffs are entitled to summary judgment and relief from the October 29 memoranda.

**ARGUMENT**

**I.     Plaintiffs Must Show Standing to Challenge the October 29 Memoranda.**

Contrary to their contention, Plaintiffs cannot rely on the findings of standing for their

claims challenging the June 2021 memoranda but must independently demonstrate standing to challenge the October 29 memoranda. *See* ECF No. 204 at 2-3. "[A] plaintiff must demonstrate standing for each claim he seeks to press." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352, (2006) (rejecting notion that standing was "commutative" from one claim to the next or covered all claims arising from the same set of facts). Plaintiff has replaced its claim challenging the June 2021 memorandum with new claims challenging the October 29 memoranda. Plaintiff cannot rely on the finding of standing for the earlier, replaced claims in its original complaint, and must establish standing for its new claims.

In rebuttal, Plaintiffs argue that, except for mootness, jurisdiction depends only on the facts existent when the initial complaint is filed. Their argument does not impute to an amended complaint.  As the Supreme Court explained, "when a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction." *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 473–74 (2007) (internal citations omitted). Here, Plaintiffs withdrew the allegations in their initial complaint and replaced them with ones challenging the October 29 memoranda. Plaintiffs cannot rely on findings applicable to those withdrawn claims and must demonstrate standing based on evidence marshalled in support of their new allegations. *See id.* They have failed to do.

Indeed, Plaintiffs cite cases consistent with this legal principle in that they (1) did not involve an amended complaint, (2) held that standing must be judged at the time of an amended complaint, or (3) deal with diversity jurisdiction or other types of claims (none at issue here) where courts have held that plaintiffs cannot fix a jurisdictional defect by later amending their complaint, thus requiring a determination that plaintiffs have standing at the time of both the original and amended complaints. *See* ECF No. 204 at 2-3. Many of Plaintiffs' cases did not deal with an

amended complaint at all. *See Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) (rejecting argument that actions and choices by a third party subsequent to operative complaint could defeat standing); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 570 n.5 (1992) (issue was whether fact that case had made it to Supreme Court could confer redressability); *Pederson v. Louisiana State Univ.*, 213 F.3d 858, 870 (5th Cir. 2000) (trial court improperly looked at facts at "the time of trial" to determine standing, not when the complaint was filed); *Gen. Land Off. v. Biden*, 71 F.4th 264, 272 n.12 (5th Cir. 2023) (no amended complaint; footnote addressed merely whether subsequent *factual developments* could defeat standing). Also, Plaintiffs' reliance on *Lynch v. Leis*, 382 F.3d 642 (6th Cir. 2004), is also unavailing, as that court noted only that federal jurisdiction "may not be *created* by amendment" (emphasis added), not destroyed, and held that the relevant jurisdictional facts were to be determined as of the filing of the second amended complaint in that case. *Id.* at 647 & n.4. Finally, although Plaintiffs rely on *Southern Utah Wilderness Alliance v. Palma*, 707 F.3d 1143, 1153 (10th Cir. 2013), that case is an outlier insofar as it states that standing is to be determined based on the original complaint even if it is amended, and the case it cites to support that proposition, *Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198, 1203 (Fed. Cir. 2005), explained that patent-infringement suits represent an exception to the normal rule permitting parties to cure jurisdictional defects by amendment.

The Government of Mexico's announcement that it will no longer accept returns under MPP also defeats this Court's jurisdiction. This is true whether the Court views this development through the lens of standing or mootness. Mootness has been described as "'the doctrine of standing in a time frame. The requisite personal interest that must exist at the commencement of litigation (standing) must continue throughout its existence (mootness).'" *Center for Individual Freedom v. Carmouche*, 449 F.3d 655, 661 (5th Cir. 2006) (quoting *U.S. Parole Comm'n v.*

*Geraghty*, 445 U.S. 388, 397 (1980)). As a result, "any set of circumstances that eliminates actual controversy after the commencement of a lawsuit renders that action moot." *Id.* As Defendants explained, Mexico announced it will no longer accept returns under 8 U.S.C. § 1225(b)(2)(C) pursuant to MPP. ECF No. 203 at 9. Because the United States cannot unilaterally return noncitizens to Mexico under MPP without Mexico's consent, their withdrawal of consent renders restarting MPP impossible. *See Texas (MPP)*, 142 S. Ct. at 2543. Even if the Court could provide redress before, it cannot now redress Plaintiff's alleged injuries from the termination of MPP, rendering the case moot. *See Center for Individual Freedom v. Carmouche*, 449 F.3d at 661.

Plaintiffs argue that, because Mexico agreed to participate in MPP in the recent past, it is theoretically possible it could do so again in the future, notwithstanding Mexico's unequivocal refusal. ECF No. 204 at 14. Plaintiffs' argument is ungrounded in any evidence suggesting Mexico is likely to change its mind and cannot meet the Article III standard, which requires that it "be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (internal quotation marks omitted). Further, as explained at length *infra*, under 8 U.S.C. § 1252(f)(1), the Court cannot require the U.S. Government to negotiate with Mexico to restart MPP, an order which would also violate separation of power principles. And to provide adequate redress, a remedy cannot merely attempt to "inspire or shame others into acting differently" but must "compel" the relevant parties "to change" their conduct in the necessary way. *United States v. Texas (Priorities)*, 143 S. Ct. 1964, 1979 (2023) (Gorsuch, J., concurring).

## II. Prior Rulings Do Not Establish Standing for Plaintiffs' Amended Claims.

As Defendants explained, prior rulings do not establish Plaintiffs' standing to challenge the October 29 memoranda. Plaintiffs' new claims in their Second Amended Complaint at issue on summary judgment challenge the October 29 memoranda, a new agency action not addressed

by either this Court's or the Fifth Circuit's prior rulings on standing. Even if they were law of the case, new facts and intervening precedent undermines those earlier conclusions and make that doctrine inapplicable to Plaintiffs' claims.

Plaintiffs' argument to the contrary relies on general unobjectionable precepts that law-of-the-case doctrine applies to subject-matter jurisdiction, and that previous precedential findings can be law of the case. While those points are correct as a general matter, Plaintiffs fail to grapple with the fact that the Fifth Circuit's previous standing determination addressed a challenge to a different agency action, not the October 29 memoranda, which the Fifth Circuit expressly refused to recognize. *Texas (MPP)*, 20 F.4th at 957 (refusing to treat the October 29 memoranda as a separate final agency action, a holding the Supreme Court reversed). The Fifth Circuit addressed only standing to challenge the June 1 memorandum. Further, Plaintiffs filed an amended complaint, substituting their original claims with claims challenging the new MPP termination decision. Their wholesale amendment "wipe[s] the slate clean" in the case. *VeroBlue Farms USA, Inc. v. Wulf*, 465 F. Supp. 3d 633, 649 n.12 (N.D. Tex. 2020).

Plaintiffs further argue that the Supreme Court's opinion in this case "'impliedly' found standing to challenge the termination of MPP" because "it reached the merits and remanded to this Court to evaluate the merits of whether the termination was arbitrary and capricious." ECF No. 204 at 4. That argument is incorrect. First, the Supreme Court could not have considered standing to challenge the October 29 memoranda in its review of the Fifth Circuit's decision because the Fifth Circuit did not address those memoranda as a distinct agency action. *See id.* at 966-75. Moreover, standing was not an issue presented to the Supreme Court in the petition for certiorari, *see* Pet. for Writ of Cert., *Biden v. Texas*, 2021 WL 6206109 (U.S.); *Berkemer v. McCarty*, 468 U.S. 420, 443, n. 38 (1984) ("Absent unusual circumstances, . . . we are wary of considering issues

not presented in petitions for certiorari"), and was not addressed by the Court in its opinion, *Biden v. Texas*, 142 S. Ct. 2528 (2022). Plaintiffs offer no legal support for their suggestion that merely because the Supreme Court addressed some issues in a case, it impliedly passed on others never presented or argued. *Cf. Arbaugh v. Y&H Corp.*, 546 U.S. 500, 511 (2006) (denying any precedential effect to "such unrefined dispositions as 'drive-by jurisdictional rulings'").

### A. The *Priorities* decision applies to this case.

As Defendants explained in the supplemental brief, the Supreme Court's intervening decision addressing standing to challenge immigration priorities is directly applicable to this case and requires dismissal.  As Defendants explained, ECF No. 203 at 14, law-of-the-case doctrine has an exception where "there has been an intervening change of law by a controlling authority." *United States v. Matthews*, 312 F.3d 652, 657 (5th Cir. 2002). The Supreme Court's decision in *Texas (Priorities)*, issued after the Fifth Circuit's decision in this case, represents just such an intervening change of law by a controlling authority, and is irreconcilable with Plaintiffs' theory of standing.

Plaintiffs argue that the Supreme Court's holding in *Priorities* that the States lacked a cognizable Article III injury "was based *solely* on the rule that a party typically lacks standing to compel the arrest and prosecution of another." ECF No. 204 at 5 (emphasis in original). That argument misreads the *Priorities* decision and does not distinguish this case.  Indeed, the exact concerns that animated the Court's decision in *Priorities* are squarely presented in this case: the lack of any historical precedent for third parties to challenge how the government enforces the immigration laws against individuals.  Furthermore, the Supreme Court considered the same type of injuries on which the States rely here—such as their alleged need to "incarcerate or supply social services such as healthcare and education to noncitizens" present in the state as an alleged result of the challenged governmental action—and found those injuries wanting, as "indirect." 143 S. Ct.

at 1969, 1972 n.3. The same reasoning applies to this case.  States face a high burden to establish that such indirect costs are cognizable injuries.

In explaining why States lack standing to challenge the federal government's immigration enforcement decisions, the Court in *Priorities* emphasized that the Executive's discretion in immigration enforcement implicates not just setting prosecutorial priorities about how to pursue immigration enforcement in this country, but also "foreign-policy objectives," 143 S. Ct. at 1972. That is even more profoundly true in this case, where any decision to pursue (or not to pursue) MPP directly implicates relations with Mexico, and where U.S.-Mexico agreement is a necessary component of the policy. ECF No. 203 at 16-19.

The *Priorities* decision was also not limited to Texas's narrow view of a "prosecution or arrest policy."  While the principle that a party lacks a cognizable interest in the prosecution or nonprosecution of another was an important aspect of the Court's decision, *see Texas (Priorities)*, 143 S. Ct. at 1970 (quoting *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)), the decision was not limited to that rationale.  To the contrary, the Court held more generally that, for indirect monetary injuries such as those alleged by the States there (and here) to suffice under Article III, they "must be legally and judicially cognizable," which "requires, among other things," that the "dispute is traditionally thought to be capable of resolution through the judicial process"—in other words, that "the asserted injury is traditionally redressable in federal court." *Texas (Priorities)*, 143 S. Ct. at 1970. *Priorities* did not limit this requirement to state cases challenging arrest and prosecution policies. *See id.*

Further, *Priorities* acknowledged that the Court had previously held third parties have "'no judicially cognizable interest in procuring enforcement of the immigration laws.'" *Id.* at 1970 (quoting *Sure-Tan, Inc. v. N.L.R.B.*, 467 U.S. 883, 897 (1984)). On that point, *Sure-Tan* opinion

had nothing to do with the government's decision whether to arrest or prosecute noncitizens, but rather whether Sure-Tan, Inc. had "committed an unfair labor practice by reporting their undocumented [noncitizen] employees to the INS in retaliation for participating in union activities." *Sure-Tan*, 467 U.S. at 894. The historic lack of a cognizable Article III injury in parties such as states procuring immigration enforcement against noncitizens is based on a broader rationale, and extends further than an overly narrow view of what qualifies as prosecution or arrest.

### B. None of the *Priorities* "exceptions" apply here.

The *Priorities* Court, in dicta, stated: "[W]e do not suggest that federal courts may never entertain cases involving the Executive Branch's alleged failure to make more arrests or bring more prosecutions," and gave five examples of types of claims where the Court's analysis might differ. 143 S. Ct. at 1973-74. But saying there "might" be standing does not mean there is standing, particularly when the rationale of *Priorities* has direct application to this case.  In any event, none of the Court's examples apply to the October 29, 2021 termination of MPP.

Plaintiffs mistakenly contend that two of these alleged "exceptions" apply to this case. First, they rely on the *Priorities* statement that "a challenge to an Executive Branch policy that involves both the Executive Branch's arrest or prosecution priorities *and* the Executive Branch's provision of legal benefits or legal status could lead to a different standing analysis." ECF No. 204 at 8 (quoting *Texas (Priorities)*, 143 S. Ct. at 1974). This argument fails because the October 29 memoranda do not provide "legal benefits or legal status." Plaintiffs contend Defendants provide parole to many of these individuals and parole "makes recipients eligible for various federal and state benefits," namely work authorization and the state services the state chooses to provide. ECF No. 204 at 9. The October 29 memoranda do not authorize parole to any person or group of persons, nor does they direct or require parole of noncitizens who are not returned.  Likewise, terminating MPP does not provide lawful status or protection from removal. To the contrary, any

noncitizen who could be eligible for return under MPP necessarily must be in proceedings to seek their removal from the United States. *See* 8 U.S.C. § 1225(b)(2)(A), (C).

Under other policies and procedures not challenged in this case, DHS makes those placement determinations utilizing a multitude of processing options, including detention. In August 2023, U.S. Border Patrol paroled *only nine noncitizens*, in contrast to 18,779 it transferred to ICE with a warrant for detention, 24,775 it voluntary returned, 29,052 it expeditiously removed, and 100,585 it served with a Notice to Appear in removal proceedings and released on recognizance under 8 U.S.C. § 1226(a). Work authorization is unavailable to noncitizens released on their own recognizance, 8 U.S.C. § 1226(a)(3). U.S. CBP, Custody and Transfer Statistics FY 2023, "USBP Monthly Southwest Border Encounters by Processing Disposition," https://www.cbp.gov/newsroom/stats/custody-and-transfer-statistics (last modified Sept. 14, 2023). Plaintiffs cannot bootstrap these policies to create standing in this case, nor can they conclude that the October 29 memoranda likely lead to parole of noncitizens.

Defendants acknowledge that the Fifth Circuit previously concluded that "MPP's termination has increased the number of aliens released on parole into the United States, including Texas and Missouri," *Texas v. Biden,* 20 F.4th 928, 966 (5th Cir. 2021), and that this Court concluded that "parole *does* create affirmative benefits for aliens such as work authorization," *Texas v. Biden*, 554 F. Supp. 3d 818, 845 (N.D. Tex. 2021). But these indirect injury theories do not survive the *Priorities* decision.  Moreover,  the border encounter statistics cited above indicate that there is no direct causal link between the October 29 memoranda and the current number of paroles (which have decreased) or noncitizens in Texas and Missouri with work authorization.[1]

---

[1] Plaintiffs rely on the federal student loan forgiveness case, *Nebraska v. Biden*, 143 S. Ct. 2355 (2023), to argue that their injuries are direct, but that case does not support them. The governmental

Further, even for the small number of noncitizens paroled in August, work authorization is not available because of any provision of the October 29 memoranda, but because parolees are generally able to apply for work authorization under long-standing regulations that Plaintiffs do not challenge here. *See* 8 C.F.R. § 274a.12(c)(11).

The second exception mentioned, but not developed, by Plaintiffs also does not apply:  the October 29 memoranda are not a "polic[y] governing the continued detention of noncitizens who have already been arrested," *Texas (Priorities),* 143 S. Ct. at 1974, for the reasons Defendants have explained. ECF No. 203 at 18-19.

## III.   Plaintiffs Fail to Meet the Remaining Article III Standing Requirements.

As Defendants explained, Plaintiffs' alleged indirect financial injury is too attenuated from the challenged action to be "fairly traceable" to the termination of MPP, *Lujan*, 504 U.S. at 561, and they lack the likelihood of redressability.  *Id.*  Mexico has indicated it will not accept returns under MPP; DHS officers still retain discretion not to return noncitizens even under a reinstated MPP; reinstating MPP would not necessarily reduce border encounters and the number of noncitizens in the Plaintiff States; and section 1252(f)(1) deprives the Court of effective means of granting relief. ECF No. 203 at 20-31.

### A. Plaintiffs fail to show that their alleged injuries are traceable or redressable.

Plaintiffs argue the "*Priorities* majority addressed only whether there was a judicially cognizable injury in fact" and therefore that opinion has no effect on the traceability and redressability requirements of Article III. ECF No. 204 at 12.

However, the Court's discussion of the "attenuat[ion]" problem created by indirect state

---

loan forgiveness at issue there directly harmed the State of Missouri because it reduced the revenue of MOHELA, a Missouri state entity which serviced federal student loans for the federal government in return for an administrative fee.  143 S. Ct. at 2365–66. This case involves no direct revenue reduction that would otherwise be paid to the state under a contract between the two.

costs has implications for causation and redressability. *See* 142 S. Ct. at 1972 n.3. The Court's recognition that such injuries are "indirect" stems from the fact that any costs that might accrue to the plaintiffs derive not from the federal government's direct regulation of the states, but rather from independent actions of third parties in response to federal action directed to *them*. Like other immigration enforcement guidance, the October 29 memoranda "do[] not impose any direct costs on the States or threaten the loss of any federal funding." *Arizona v. Biden*, 40 F.4th 375, 386 (6th Cir. 2022). "Any downstream costs of [such guidance] to the States come about via individual officers' discretionary enforcement choices, noncitizens' actions in response to those choices, the States' own crime-and-punishment decisions, and the States' other social-welfare policy choices." *Id.* And the Supreme Court has previously explained that such indirect costs raise concerns about causation and redressability as well as injury in fact. *Lujan*, 504 U.S. at 562 ("When . . . a plaintiff's asserted injury arises from the government's allegedly unlawful regulation . . . of someone else … causation and redressability ordinarily hinge on the response of the regulated (or regulable) third party to the government action" and thus standing becomes "substantially more difficult to establish.").

Regardless, even if the *Priorities* decision dealt solely with injury in fact, it does not follow, as Plaintiffs argue, that this Court's and Fifth Circuit's previous findings regarding causation and redressability apply to Plaintiffs' new claims challenging the October 29 memoranda. As explained, Plaintiffs' amendment of their complaint to challenge the October 29 memoranda "wipe[s] the slate clean." *See VeroBlue Farms USA,* 465 F. Supp. 3d at 649 n.12. Further, even if those earlier opinions were deemed to create law of the case as to the challenge to the October 29 memoranda, "the availability of new evidence" would still exempt this case from that doctrine. *Cannon v. Principal Health Care of La.*, 87 F.3d 1311 (5th Cir. 1996). Newly available evidence

11

(including border-encounter statistics showing that reinstating MPP following the injunction of the June 2021 memorandum did not reduce border migration) and Mexico's announcement that it would not accept returns if MPP is reinstated again prevent application of past findings to the current claims and undermine the States' argument for causation and redressability, as the Government explained. ECF No. 203 at 14, 27-28.

Next, Plaintiffs argue (ECF No. 204 at 13) that they should still get "special solitude' in the standing inquiry in the face of *Priorities* decision.  They should not.  As previously explained, the States expressly sought "special solitude" in that case, and it was not provided.  *See* Br. for Respondents, *United States v. Texas*, 2022 WL 12591050 (U.S.) at 16.  Justice Gorsuch, speaking for three concurring justices, would have gone even further, suggesting "that lower courts should just leave that idea on the shelf" henceforth. *Texas (Priorities)*, 143 S. Ct. at 1977 (internal citations omitted) (Gorsuch, Thomas, Barrett, JJ, concurring). The Supreme Court has not afforded states "special solitude" in any case since *Massachusetts v. EPA*, 549 U.S. 497 (2007). And it declined to do so in *Priorities*.  This Court should follow suit.

And in any event, "special solitude" merely relaxes imminence and redressability requirements, *see Texas v. United States*, 50 F.4th 498, 514 (5th Cir. 2022), but does "not free [the States] from establishing causation and redressability," *Arizona*, 40 F.4th at 387. As Defendants argued, undisputed evidence precludes Plaintiffs from establishing that there are more noncitizens accruing costs to their programs as a result of the termination of MPP, or that there is even "some possibility" that the Court can redress any injuries caused by the termination of MPP. ECF No. 203 at 24, 27-31.

On this point, Plaintiffs maintain there is "some possibility" of redress in the form of Mexico again cooperating with returns under MPP, for no other reason than that Mexico has agreed

to participate in MPP in the recent past. ECF No. 204 at 13-14.   But Plaintiffs have not pointed to any evidence suggesting that Mexico will change its mind and reverse its unequivocal statement that it will not participate in MPP in the future. Nor have they offered any evidence suggesting what action this Court could take that would influence Mexico to reverse course, especially considering that Mexico's announcement contemplated (and nevertheless rejected) the scenario where the Court would order MPP to be reinstated again. *See* Press Release 33, Secretaria de Relaciones Exteriores, "Foreign Ministry rejects having migrants stay in Mexico under reimplementation of US Immigration and Nationality Act Section 235(b)(2)(C)," Feb. 6, 2023, https://www.gob.mx/sre/prensa/foreign-ministry-rejects-having-migrants-stay-in-mexico-under-reimplementation-of-us-immigration-and-nationality-act-section-235-b-2-c. Plaintiffs' averment of "some possibility" that Mexico might reverse course represents the mere "speculati[on]" the Supreme Court has made clear cannot support a finding of redressability. *See Lujan*, 504 U.S. at 561. Courts routinely reject claims of adequate redress that hinge on obtaining the consent or action of foreign governments. *See, e.g., Cardenas v. Smith*, 733 F.2d 909, 914 (D.C. Cir. 1984) (redressability lacking where relief "could be obtained only through the consent of the Swiss government"); *Greater Tampa Chamber of Com. v. Goldschmidt*, 627 F.2d 258, 263 (D.C. Cir. 1980) (redressability lacking where it required assumption United Kingdom would be willing to renegotiate a contract on different terms); *Al Hajji v. Obama*, No. CIV.05-0429 (RJL), 2009 WL 4251108, at *2 (D.D.C. Nov. 23, 2009) (rejecting redressability where it would require action by "the foreign governments currently holding petitioners").  This case is no different.

## IV.    The Court Cannot and Should Not Vacate the October 29 Memoranda.

If the Court finds any legal defects with the October 29 memoranda, the appropriate remedy would be to remand the memoranda to DHS to fix those defects *without* nationwide vacatur. At the threshold, 8 U.S.C. § 1252(f)(1) precludes this Court from vacating the memoranda, ordering

the reinstatement of MPP, or requiring the government to make returns under section 1225(b)(2)(C). That statute provides that "no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of the provisions of part IV of this subchapter," including 8 U.S.C. § 1225, "other than with respect to the application of such provisions to an individual alien against whom proceedings under such part have been initiated." 8 U.S.C. § 1252(f)(1). The "Court's injunction in this case violated that provision." *Texas (MPP)*, 142 S. Ct. at 2538.

Section 1252(f) bars nationwide vacatur because it operates in the same way as an injunction: it "restrain[s]" the Government from implementing the covered immigration provisions in its desired manner.  As the Supreme court explained "the 'operation of' the relevant statutes is best understood to refer to the Government's efforts to enforce or implement them." *Garland v. Aleman Gonzalez*, 142 S. Ct. 2057, 2064 (2022); *see* ECF No. 203 at 31-33. Further, as Defendants argued, nationwide vacatur is also not a remedy traditionally available under the APA. ECF No. 203 at 33-36. Absent the availability of injunctive relief and nationwide vacatur, the appropriate remedy in this case, should the Court deem one necessary, is remand without vacatur. *See Texas Ass'n of Manuf'rs v. U.S. Consumer Prod. Safety Comm'n*, 989 F.3d 368, 389 (5th Cir. 2021).

### A.  The APA does not authorize nationwide vacatur.

In response, Plaintiffs first argue that nationwide vacatur is "a legitimate remedy" under the APA. ECF No. 204 at 15-19. Plaintiffs rely on authority upholding vacatur in APA cases. *Id*. However, many of those cases did not address the argument that vacatur is not a remedy available under the APA, but rather other arguments against vacatur, and simply assumed that the authority to "set aside" agency action in 5 U.S.C. § 706(2)(A) includes the authority to vacate rules. *See, e.g., Cargill v. Garland*, 57 F.4th 447, 472 (5th Cir. 2023); *Texas v. United States*, 50 F.4th 498, 530 (5th Cir. 2022); *Franciscan All., Inc. v. Becerra*, 47 F.4th 368, 374–75 (5th Cir. 2022). Nor

did those cases have occasion to address the *Priorities* concurrence's persuasive argument that "set aside" does not mean "vacate," and against the advisability of nationwide vacatur generally. *Texas (Priorities)*, 143 S. Ct. at 1982 (Gorsuch, J., concurring in the judgment) (Section 706(2) "does not say anything about 'vacating' agency action ('wholesale' or otherwise)").

Defendants recognize that several courts have relied on section 706(2)(A) to vacate agency action under the APA. *See Data Mktg. P'ship, LP v. U.S. Dep't of Labor*, 45 F.4th 846, 859 (5th Cir. 2022). However, as Justice Gorsuch explained in *Priorities*, this practice depends on the assumption that "set aside" in section 706(A)(2) means "vacate," and traditional understandings of the meaning of "set aside" suggest that assumption is incorrect. 143 S. Ct. at 1981 ("There are many reasons to think § 706(2) uses "set aside" to mean "disregard" rather than "vacate."). That is, 5 U.S.C. § 706(2) directs a court to disregard unlawful "agency action, findings, and conclusions" in resolving the case before it, not invalidate them wholesale. *See* John Harrison, *Section 706 of the administrative Procedure Act Does Not Call for Universal Injunctions or Other Universal Remedies*, 37 Yale J. on Reg. Bull. 37, 42 (2019-2020). There is no reason to think that, after "nodd[ing] to traditional standing rules and remedial principles" in Section 703, "Congress proceeded just a few paragraphs later to plow right through those rules and empower a single judge to award a novel form of relief affecting parties and nonparties alike." *Texas (Priorities)*, 143 S. Ct. at 1983 (Gorsuch, J., concurring in the judgment).

Plaintiffs contend that "set aside" means "vacate," arguing that "[w]hen Congress adopted the APA, "set aside" meant "to cancel, annul, or revoke." ECF No. 204 at 17 (quoting *Black's Law Dictionary* 1612 (3d ed. 1933)). However, that definition does not resolve the matter, because it does not indicate whether an APA court can "cancel, annul, or revoke" the effect of an unlawful agency action only with respect to the parties in the litigation or for the entire country. Plaintiffs

further argue that the ability of a court engaged in APA review to vacate an agency action is consistent with the court's ability to postpone the effective date of agency action under 5 U.S.C. § 705 and "compel agency action unlawfully withheld or unreasonably delayed" under 5 U.S.C. § 706(1). ECF No. 204 at 17. Again, however, these other APA provisions do not address the central issue of whether the court is postponing or compelling the agency action with respect to the parties in the litigation or generally. Rather, as Justice Gorsuch explained in his *Priorities* concurrence, section 706(2) merely addresses "scope of review or decisional process. The statute tells judges to resolve the cases that come to them without regard to deficient agency action, findings, or conclusions—an instruction entirely consistent with the usual 'negative power' of courts 'to disregard' that which is unlawful." 143 S. Ct. at 1982. In contrast, Section 703 is the APA provision addressing remedies, and that permits aggrieved persons to bring "any applicable form of legal action, including actions for declaratory judgments or writs of prohibitory or mandatory injunction or habeas corpus" —it does not mention vacatur. 5 U.S.C. § 703. Applying these principles here, the APA would permit the Court to, if it found an APA defect, disregard the October 29 memoranda's termination of MPP and remand them to the agency to consider the issue anew.

Plaintiffs further contend that nationwide vacatur, not merely limited to the parties in this dispute, is appropriate. However, they focus on a geographically limited injunction, which is a remedy unavailable here under section 1252(f)(1). ECF No. 204 at 18. At issue here is vacatur of the October 29 memoranda, which would necessarily have a nationwide effect, versus a more tailored form of relief such as remand without vacatur that would permit Defendants to address the source of Plaintiffs' alleged injuries, *i.e.*, the alleged failure of the October 29 memoranda to comply with the APA, without unnecessary disruption to the federal government's border

management program writ large and diplomatic relations with Mexico. *See Texas v. United States*, 50 F.4th 498, 529 (5th Cir. 2022) (noting that potential "disruptive consequences" from vacatur are a factor counseling against vacating when remanding). Relief should "be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979). But national vacatur "render[s] the[ agency's guidance] inoperable with respect to any person anywhere" and "nullif[ies]" it "with respect to anyone anywhere." *Priorities*, 143 S. Ct. at 1981 (Gorsuch, J., concurring). While there might be cases where such national action is necessary, "an extraordinary remedy like vacatur would demand truly extraordinary circumstances to justify it," *id.* at 1985, and this case does not present those circumstances. In addition to the disruptive consequences of vacating the October 29 memoranda (and thus reviving the 2019 memorandum creating MPP) for diplomatic relations with Mexico, which has indicated it will no longer permit MPP returns, a national remedy would potentially conflict with the orders of other courts currently addressing MPP. *See Mass. Coalition for Immigration Reform v. U.S. DHS*, No. 1:20-cv-03438 (D.D.C.); *Immigrant Defenders Law Center v. DHS*, No. 2:21-cv-00395 (C.D. Cal.); *Immigrant Defenders Law Center v. Wolf,* No. 2:20-cv-9893 (C.D. Cal.).

    Plaintiffs argue that the October 29 memoranda should be vacated because they "have serious deficiencies as they perpetuate the same unlawful action on one of the same bases that this Court previously held as unlawful—arbitrary and capricious decisionmaking." ECF No. 204 at 22. However, that finding concerned the June 1, 2021 MPP memorandum. The October 29 memoranda, a different discrete agency action, were significantly more robust in their explanations for the various factors that contributed to the decision to terminate MPP and addressed at length and responded to the items the Court had found to be arbitrary and capricious in the June 2021 memorandum. *See, e.g.*, AR00002 ("I also examined considerations that the District Court

determined were insufficiently addressed in the June 1 memo, including claims that MPP discouraged unlawful border crossings, decreased the filing of non-meritorious asylum claims, and facilitated more timely relief for asylum seekers, as well as predictions that termination of MPP would lead to a border surge, cause the Department to fail to comply with alleged detention obligations under the Immigration and Nationality Act, impose undue costs on states, and put a strain on U.S.-Mexico relations."); *see also* AR00015, 22-34. Thus, not only is it unlikely that the Court would find the October 29 memoranda arbitrary and capricious on the same bases as the June 1 memorandum (if at all), but the October 29 memoranda also illustrates the agency's ability to address on remand any additional deficiencies that the Court might find with the MPP termination.

In sum, even were vacatur a remedy available under the APA, which an accurate understanding of the phrase "set aside" in Section 706(2)(A) suggests is unlikely, remand without vacatur would be the more appropriate form of relief here, should the Court find for Plaintiffs on the merits. Such a remedy would address Plaintiffs' concerns with the October 29 memoranda while remaining consistent with traditional principles limiting relief to the party's injury and avoid the potentially internationally disruptive consequences of nationwide vacatur.

**B.  Section 1252(f)(1) prohibits injunctive-like relief, such as vacatur in this case.**

As Defendants argued, vacatur in these circumstances has the same coercive effect as an injunction because it "restrict[s] or stop[s] official action," *Direct Mktg. Ass'n v. Brohl*, 575 U.S. 1, 13 (2015), by prohibiting officials from relying on the October 29 memoranda terminating MPP, the agency's current chosen means of implementing section 1225(b)(2)(C). Accordingly, vacatur here would "restrain the operation of the provisions of part IV of" the INA in violation of section 1252(f)(1). ECF No. 203 at 31-33.

Plaintiffs argue, as Defendants previously acknowledged, that the Fifth Circuit has held

section 1252(f)(1) does not bar vacatur. ECF No. 204 at 19-20. The Fifth Circuit explained that vacatur does not "enjoin or restrain" the agency because "a vacatur does nothing but re-establish the status quo absent the unlawful agency action" and so "neither compels nor restrains further agency decision-making." *Texas v. United States*, 40 F.4th 205, 220-221 (5th Cir. 2022). However, this rationale does not squarely apply here, because vacating the October 29 memoranda would not merely "re-establish the status quo," which would be DHS's default ad hoc return authority that has existed since 8 U.S.C. § 1225(b)(2)(C) was enacted, but rather would revive the MPP implementation memorandum, thus "compel[ling]" agency action in accordance with that memorandum in the interim,[2] and potentially harming the U.S.-Mexico relationship. In these circumstances, vacatur would have coercive effect "restrain[ing]" Defendants' border management agenda and thus is prohibited by section 1252(f)(1).

## CONCLUSION

The Court should enter summary judgment in Defendants' favor.

---

[2] Of course, the Government cannot comply with the memorandum creating MPP since Mexico is withholding cooperation.

Dated: October 6, 2023

Respectfully submitted,

LEIGHA SIMONTON
*United States Attorney*

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney General*

BRIAN W. STOLTZ
*Assistant United States Attorney*

WILLIAM C. PEACHEY
*Director*
Office of Immigration Litigation
District Court Section

EREZ REUVENI
*Assistant Director*

BRIAN C. WARD
*Senior Litigation Counsel*

/s/ *Joseph A. Darrow*
JOSEPH A. DARROW
*Trial Attorney*
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel.: (202) 598-7537
Joseph.a.darrow@usdoj.gov

*Counsel for Defendants*

20

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 6, 2023, I electronically filed this brief with the Clerk of the Court for the United States District Court for the Northern District of Texas by using the CM/ECF system. Counsel in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

/s/ *Joseph A. Darrow*
JOSEPH A. DARROW
U.S. Department of Justice
