**United States District Court**
**Northern District of Texas**
**Amarillo Division**

The State of Texas and
The State of Missouri

    *Plaintiffs,*

     v.

Joseph R. Biden, Jr., In his official capacity as President of the United States of America, *et al.*,

    *Defendants.*

Case No. 2:21-cv-00067-Z

# Plaintiff States' Supplemental Response Brief

## TABLE OF CONTENTS

Table of Contents ............................................................................................................. ii

Argument ......................................................................................................................... 1

    I.    Plaintiff States have standing. ............................................................................ 1

    II.    Review is not foreclosed by statute. ..................................................................... 7

    III.    The October 29 Memoranda should be vacated. ................................................... 8

Conclusion ....................................................................................................................... 9

Certificate of Service...................................................................................................... 11

Pursuant to this Court's order, ECF No. 201, Plaintiffs the State of Texas and the State of Missouri submit this response brief to supplement their previously filed briefs (ECF Nos. 149, 168, and 175), which are adopted by reference here for purposes of summary judgment, as well as their initial supplemental brief (ECF No. 204).

**ARGUMENT**

I. **Plaintiff States have standing.**

Defendants continue to press their argument that the prior determinations that Plaintiff States have standing to challenge the termination of the Migrant Protection Protocols (MPP) by this Court and the Fifth Circuit (explicitly) and the Supreme Court (implicitly) do not constitute law of the case. ECF No. 203 at 11–13; ECF No. 205 at 1–6. But this Court already rejected these arguments when it granted preliminary relief in this case. *Texas v. Biden*, No. 2:21-cv-67, 2022 WL 17718634, *4–5 (N.D. Tex. Dec. 15, 2022) (Kacsmaryk, J.). "In the same way that a preliminary injunction is the temporary form of a permanent injunction, a stay [under Section 705 of the Administrative Procedure Act (APA)] is the temporary form of vacatur." *All. for Hippocratic Med. v. U.S. Food & Drug Admin.*, 78 F.4th 210, 254 (5th Cir. 2023). For the same reasons that Plaintiff States were entitled to a stay of the October 29 Memoranda terminating MPP, they are entitled to vacatur of that action.

Defendants maintain that the Supreme Court in its MPP ruling did not have the issue of standing presented to it. But by reaching the merits, the Court necessarily determined that Plaintiff States had standing to challenge the termination of MPP. *Biden v. Texas*, 142 S. Ct. 2528 (2022). Further, by remanding back to this Court to consider whether the termination of MPP by the October 29 Memoranda was arbitrary and capricious, the Supreme Court "impliedly" determined that this Court Article III had standing to make such a determination. ECF No. 168 at 8–10; *see*

1

*Fisher v. Univ. of Texas at Austin*, 758 F.3d 633, 639–40 (5th Cir. 2014), *aff'd,* 579 U.S. 365 (2016) ("the 'mandate rule,' a corollary of the law of the case doctrine, compels compliance on remand with the dictates of a superior court and forecloses relitigation of issues expressly or impliedly decided by the appellate court") (cleaned up).

In evaluating a new agency action that reimplemented the DACA program after remand from the Fifth Circuit that had previously found standing to challenge the prior iteration of the program, Judge Hanen recently explained why considering standing anew would violate the Fifth Circuit's mandate and the law of the case:

> The Fifth Circuit specifically mandated this Court to determine if there are material differences between the Final Rule and the 2012 DACA Memorandum, and, if so, whether the already established rulings concerning the 2012 DACA Memorandum apply to the Final Rule. While this limited remand does not prohibit the Court from proceeding on the currently filed motions, it clearly does not permit the parties to relitigate previously established issues.
>
> * * *
>
> Despite the Fifth Circuit's instructions, the Federal Defendants and the Defendant-Intervenors are attempting to relitigate a different set of issues than the one remanded to the Court, perhaps because it is abundantly clear from the administrative record that the Final Rule is merely a more formal enactment of the 2012 DACA Memorandum and thus subject to the same deficiencies. For example, the Defendant-Intervenors and the Federal Defendants have asked this Court to reconsider whether the Plaintiff States (and, specifically, Texas, the lead Plaintiff) have standing.
>
> This Court has addressed the topic of standing in great detail and has found that standing exists, and that finding has been affirmed by the Fifth Circuit. Thus, unless ultimately set aside by the Fifth Circuit *en banc* or by the Supreme Court, the Plaintiff States have established standing. Accordingly, the topic of standing is not before this Court.

*Texas v. United States*, No. 1:18-cv-00068, 2023 WL 5951196, at *8 (S.D. Tex. Sept. 13, 2023).

This Court's understanding of the proper role of a trial court after remand is not an outlier. The effect of the October 29 Memoranda is analytically identical to the previous termination action

because they do the same thing: terminate MPP. That the particular reasons given for performing each action differ does not change the effect of the action on the Plaintiff States.

But Defendants are even wrong that the Supreme Court has not faced the issue of standing in this case. They carefully state that "[s]tanding was not a question raised or briefed in Defendants' petition for a writ of certiorari or in merits argument before the Supreme Court." ECF No. 203 at 13. But when the Defendants *sought a stay* of this Court's ruling, they argued in the Supreme Court that Plaintiff States did not have standing to challenge the termination of MPP. *See Application for a Stay of the Injunction Issued by the United States District Court for the Northern District of Texas and for an Administrative Stay* 15–17, available at https://www.scotusblog.com/wp-content/uploads/2021/08/21A21.pdf.

The Court was not convinced—it rejected the application because Defendants "had failed to show a likelihood of success on the claim that the [original MPP termination memorandum] was not arbitrary and capricious." *Biden v. Texas*, 142 S. Ct. 926 (2021) (mem.). So, the Supreme Court rejected the application on the basis that the Plaintiff States had likely succeeded *on the merits* of the same claim of the functionally identical agency action here—that the termination of MPP was arbitrary and capricious.

And the Supreme Court's recent decision that Defendants heavily rely on—*United States v. Texas (Enforcement Priorities)*, 143 S. Ct. 1964 (2023)—carves out the challenge to the termination of MPP from its rule against standing. *See id.* at 1974 (citing *Biden v. Texas*, 142 S. Ct. 2528 (2022), as raising different standing issues).

On this, Defendants maintain that the termination of MPP is not a "policy governing the continued detention of noncitizens." ECF No. 203 at 19 (cleaned up). But *Enforcement Priorities*

3

cited the MPP case as concerning that very issue. *Enforcement Priorities*, 143 S. Ct. at 1974. And the law of the case is that the termination of MPP concerns that issue. *See Texas v. Biden*, 554 F. Supp. 3d 818, 845 (N.D. Tex. 2021) ("Moreover, the MPP program is not about enforcement proceedings *at all*. Any alien eligible for MPP has already been placed into enforcement proceedings under Section 1229a. The only question MPP answers is *where* the alien will *be* while the federal government pursues removal—in the United States or in Mexico.") (emphases in original); *see also Texas v. Biden (MPP)*, 20 F.4th 928, 987 (5th Cir. 2021) (endorsing this point).

Defendants press their argument that the existence of an amended complaint changes everything. ECF No. 205 at 2–3. But Plaintiff States have explained that where the same parties have standing at the time of the original complaint, Article III is satisfied even where the complaint is amended. ECF No. 204 at 2–3; *see also Lynch v. Leis*, 382 F.3d 642, 647 (6th Cir. 2004) (rejecting the argument that the time of the most recent amended complaint is the relevant time period); *Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 460 (5th Cir. 2005) ("We do not think, however, that the actual use of checkpoints in 1997, 1998, and 1999 is relevant on the issue of standing because all of these events occurred after [the plaintiff] filed her original complaint") (quoting *Park v. Forest Serv. of the United States,* 205 F.3d 1034, 1037 (8th Cir. 2000)).

Defendants further argue that the Plaintiff States' injuries are self-inflicted because "they are the result of their own lawmakers' choices" to provide certain benefits. ECF No. 203 at 21–22. But, again, it is the law of the case here that has already rejected that argument:

> Finally, the Government says Texas's injuries are self-inflicted and therefore entirely irrelevant to the standing inquiry. *See Pennsylvania v. New Jersey*, 426 U.S. 660, 664 (1976) (per curiam). Our court addressed and rejected precisely this argument in *DAPA*. *See* 809 F.3d at 157–60 (citing *Wyoming v. Oklahoma*, 502 U.S. 437 (1992)). The Government does not acknowledge that exhaustive, precedent-based treatment of the issue, and it offers no reason at all for holding that Texas's

> injury is self-inflicted in this case when it was not in *DAPA*. Here, as there, Texas is injured by the "Hobson's choice of spending millions of dollars to subsidize driver's licenses or changing its statutes." *Id.* at 163.

*MPP*, 20 F.4th at 972 (citations truncated).

Defendants also attempt to relitigate whether Texas has shown injury due to its subsidized driver's licenses. ECF No. 203 at 22–23. But this is subject to a now-familiar response: the law of the case prevents a new evaluation of this evidence. The Fifth Circuit has held that "each additional customer seeking a Texas driver's license imposes a cost on Texas," *MPP*, 20 F. 4th at 968; that "the record" in this case shows "that Texas incurs a cost for each driver's license application it reviews," *id.*; and "the record shows the State incurs a cost for actually granting licenses." *Id.* at 969.

Defendants point to the Fifth Circuit's ruling in *Texas v. United States (DAPA)*, 809 F.3d 134, 162 (5th Cir. 2015), as limiting standing based on the driver's license rationale to large influxes of eligible aliens. ECF No. 203 at 23. But the Fifth Circuit *in this case* has explained that that limitation is no longer good law:

> The Government also seeks to differentiate this case from *DAPA* on grounds of magnitude—it seems to suggest there's no standing here because the damages may not total to millions of dollars. Our court noted that Texas's injuries in that case largely depended on its "need to hire employees, purchase equipment, and obtain office space"—"steps that would be unnecessary" with smaller numbers of new applicants. *DAPA*, 809 F.3d at 162. Regardless of what *DAPA* had to say on the magnitude of injury required for standing, the Supreme Court has since clarified that "[f]or standing purposes, a loss of even a small amount of money is ordinarily an injury." *Czyzewski v. Jevic Holding Corp.*, --- U.S. ----, 137 S. Ct. 973, 983 (2017) (quotation omitted); *see also Uzuegbunam v. Preczewski*, --- U.S. ----, 141 S. Ct. 792, 801–02 (2021) (nominal damages sufficient for standing's redressability prong).

*MPP*, 20 F.4th at 974–75 (citations truncated).

5

Defendants also challenge traceability because, they say, Plaintiff States "cannot establish that any noncitizens to whom they provide services reside in their States as a result of the termination of MPP rather than a host of other possible reasons," including "on parole or a host of other immigration statutes for which they would be eligible regardless of whether MPP is in operation." ECF No. 203 at 24. Again, the law of the case here has already rejected this reasoning:

> The Government says [showing that the challenged agency action would increase the number of aliens paroled into Texas is] not enough because Texas has not shown it has already issued any licenses to immigrants who became eligible because of MPP's termination. Tellingly, however, it offers no hint as to how Texas could make that showing—nor why we should require it to do so. Imagine Texas had produced copies of driver's license applications from paroled aliens. Would that have counted as evidence that Texas had, in the Government's words, "issued a single additional driver's license as a result" of MPP's termination? Of course not: There would always remain some possibility that *any given parolee* would have been paroled even under MPP. MPP is precisely the sort of large-scale policy that's amenable to challenge using large-scale statistics and figures, rather than highly specific individualized documents. And Texas's standing is robustly supported by just such big-picture evidence. There is nothing "conjectural" or "hypothetical" about that.

*MPP*, 20 F.4th at 971. "To the contrary, given both MPP's effect of increasing the number of parolees and the fact that many of those parolees will apply for Texas licenses, it's impossible to imagine how the Government could terminate MPP *without* costing Texas any money." *Id*.

Defendants also contend that because the Government of Mexico is an obstacle to reimplementing MPP, there is no redressability. ECF No. 205 at 12–13. But Plaintiff States have explained why this is not so. ECF No. 204 at 13–14.

Defendants further maintain that this Court cannot rely on special solicitude. ECF No. 205 at 12. Of course, that the Plaintiff States are entitled to such solicitude is the law of the case. And *Enforcement Priorities* did not overrule that doctrine; it merely held it had no application where the States sought to interfere with executive discretion to arrest aliens. *Enforcement Priorities,* 143 S. Ct 1975 n.6.

6

Finally, Defendants argue this case is moot. ECF No. 205 at 3–4. But "the burden of proving mootness is higher than simply showing a lack of standing." *Franciscan All., Inc. v. Becerra*, 47 F.4th 368, 377 n.40 (5th Cir. 2022). A case is moot if "it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, (2012) (quotation omitted). "[A]s long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Ellis v. Railway Clerks,* 466 U.S. 435, 442 (1984). Defendants do not meet their heavy burden of showing the impossibility of Mexico cooperating with MPP.

## II. Review is not foreclosed by statute.

Defendants press the idea that review of the decision to terminate MPP is barred by 8 U.S.C. § 1252(a)(2)(B)(ii). ECF No. 203 at 30–31. But the law of the case has already rejected this. "To the contrary, the entirety of the text and structure of § 1252 indicates that it operates only on denials of relief for individual aliens." *MPP*, 20 F.4th at 977 (rejecting argument that "an *entire program*—operating across an international border and affecting thousands or millions of people and dollars—is rendered unreviewable by § 1252(a)(2)(B)(ii)") (emphasis in original); *see also Roe v. Mayorkas*, No. 22-cv-10808, 2023 WL 3466327, at *8–9 (D. Mass. May 12, 2023) ("the Court agrees with Plaintiffs that § 1252(a)(2)(B)(ii) does not bar all judicial review of agency action taken under § 1182(d)(5)(A)" and collecting cases holding the same thing); *id.* at *9 (DHS parole policies at issue in the case were reviewable under the APA, because "the guidelines in § 1182(d)(5)(A) provide sufficient guidance such that the [Federal] Defendants' actions are not unreviewable under the narrow exception articulated in § 701(a)(2).").

7

Plaintiff States have also addressed Defendants' argument, ECF No. 203 at 30, that the Supreme Court's decision in *Patel v. Garland*, 142 S. Ct. 1614 (2022), has any relevance here. *See* ECF No. 168 at 14 n.3.

### III. The October 29 Memoranda should be vacated.

Defendants rely heavily on the three-Justice concurrence in *Enforcement Priorities* in support of their argument that the APA does not authorize the remedy of vacatur. ECF No. 205 at 14–17. As explained by the Plaintiff States, binding Fifth Circuit precedent—including in this very case—rejects this argument. ECF No. 204 at 15–19. And even Justice Gorsuch's concurrence in *Enforcement Priorities* takes no position on whether vacatur is an available remedy under the APA. *See Enforcement Priorities*, 143 S. Ct. at 1985 ("courts can at least arguably trace their authority to order vacatur to language in a statute and practice in some lower courts. But the questions here are serious ones. And given the volume of litigation under the APA, this Court will have to address them sooner or later. Until then, we would greatly benefit from the considered views of our lower court colleagues."). Defendants can cite no judicial authority in support of their radical argument.

Vacatur is proper based on consideration of "(1) the seriousness of the deficiencies of the action, that is, how likely the agency will be able to justify its decision on remand; and (2) the disruptive consequences of the action." *Texas v. United States (DACA)*, 50 F.4th 498, 529 (5th Cir. 2022) (citation omitted).

As Plaintiff States have explained, the agency has already had two opportunities to justify a termination of MPP. ECF No. 204 at 23. And the Supreme Court has held that an agency action "must be vacated" even where the sole infirmity is arbitrary-and-capricious decisionmaking. *DHS v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1901 (2020).

8

As to the second factor—disruptiveness—Defendants may not rely on the "uncertainty that typically attends vacatur of any rule." *Nat. Res. Def. Council*, 955 F.3d at 85 (rejecting agency's disruption argument). And no foreign policy concerns can serve to preclude vacatur. "Our precedents, old and new, make clear that concerns of national security and foreign relations do not warrant abdication of the judicial role." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 34 (2010). While "[t]he [G]overnment's interest in efficient administration of the immigration laws at the border is ... weighty," "control over matters of immigration is a sovereign prerogative, largely within the control of the executive *and the legislature*." *Landon v. Plasencia*, 459 U.S. 21, 34 (1982) (emphasis added). By making agencies such as DHS subject to judicial review under the APA, Congress has asserted its foreign policy prerogatives over that of the agencies, including requiring reasoned decisionmaking in this area.

## CONCLUSION

The Court should grant summary judgment on Plaintiff States' claim that the October 29 Memoranda are arbitrary and capricious; issue declaratory relief to that effect; and set aside, *i.e.*, vacate the October 29 Memoranda.

Dated: October 6, 2023

Respectfully submitted.

| | |
|---|---|
| ANDREW BAILEY<br>Attorney General of Missouri | KEN PAXTON<br>Attorney General of Texas |

JOSHUA M. DIVINE, Mo. Bar #69875
Solicitor General

BRENT WEBSTER
First Assistant Attorney General

*/s/ Maria Lanahan*
MARIA LANAHAN, Mo. Bar #65956
Deputy Solicitor General
Missouri Attorney General's Office
Post Office Box 899
Jefferson City, Missouri 65102
Tel: (573) 751-8870
Maria.Lanahan@ago.mo.gov

GRANT DORFMAN
Deputy First Assistant Attorney General

RALPH MOLINA
Deputy Attorney General for Legal Strategy

*/s/ Ryan D. Walters*
RYAN D. WALTERS
Chief, Special Litigation Division
*Attorney-in-Charge*
Texas Bar No. 24105085

**Counsel for Plaintiff State of Missouri**

MUNERA AL-FUHAID
Special Counsel
Texas Bar No. 24094501

Office of the Attorney General
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Tel.: (512) 463-2100
Fax: (512) 457-4410
ryan.walters@oag.texas.gov
munera.al-fuhaid@oag.texas.gov

**Counsel for Plaintiff State of Texas**

10

## CERTIFICATE OF SERVICE

I certify that a true and accurate copy of the foregoing document was filed and served electronically (via CM/ECF) on October 6, 2023.

/s/ Ryan D. Walters
RYAN D. WALTERS
