IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| THE STATE OF TEXAS AND<br>THE STATE OF MISSOURI,<br>   *PLAINTIFFS*,<br>V.<br><br>DONALD J. TRUMP, IN HIS OFFICIAL<br>CAPACITY AS PRESIDENT OF THE UNITED<br>STATES OF AMERICA, *ET AL.*,<br><br>   *DEFENDANTS*. | CASE NO. 2:21-CV-00067-Z |

**PLAINTIFFS' SUPPLEMENTAL BRIEF REGARDING DEVELOPMENTS SINCE 2023**

On December 5, 2025, the Court stated in its Order (ECF No. 235) that the parties "may file supplemental briefing limited to legal and factual developments since October 2023 on or before December 19, 2025". Plaintiffs accordingly file this Supplemental Brief.

The District Court in this case ordered a stay of the October 29 Memoranda[1] and the termination of MPP on December 15, 2022 (ECF No. 178). *Texas v. Biden*, 646 F. Supp. 3d 753 (N. D. Tex. 2022). This Court in its 35-page Opinion and Order recounted the complex procedural history of this case. (*Id.* pp. 1-5). 646 F. Supp. 3d at 761-64. The Court then concluded at that stage of this case that:

 A. Plaintiffs have standing (pages 8-10), 646 F. Supp. 3d at 765-66;

 B. Plaintiffs Asserted a Valid Cause of Action (pages 10-11), 646 F. Supp. 3d at 766;

 C. 8 U. S. C. Section 1252(f)(1) Does not Bar Jurisdiction (pages 11-15), 646 F. Supp. 3d at 766-69; and

 D. Plaintiffs Are Likely to Prevail on the Merits (pages 19-33) 646 F. Supp. 3d at 771-80.

---

[1] The Court defined the "October 29 Memoranda" at page 4 as "two memoranda declaring that [DHS] had made a new decision terminating MPP. See ECF No. 162 at 19-61, Termination of the Migrant Protection Protocols ("Termination Memorandum") and Explanation of the Decision to Terminate the Migration Protection Protocols ("Explanation Memorandum").

E. The Balance of Equities are in the Plaintiff States' Favor and Relief is in the Public Interest (p. 34), 646 F. Supp. 3d at 780-81;

F. The Remedy Need Not be Geographically Limited (p34) 646 F. Supp. 3d at 781..

Thereafter, the parties completed briefing of motions for summary judgment in September and October 2023 (ECF Nos. 203, 204, 205, and 206).

I. **STANDING**

This Court had determined before December 15, 2022, that Plaintiff Texas had standing to bring the claims in this action as to the previous termination of MPP. See ECF No. 94 at 21-26. The Court stated in its Opinion and Order at page 8 that "Plaintiffs have standing to challenge the October 29 Memoranda for the same reasons that they had standing to challenge the previous termination of MPP. *See Env't Tex. Citizen Lobby, Inc. v. ExxonMobil Corp*., 47 F.4th 408, 416 (5th Cir. 2022)".

The Court also noted that its previous standing determination is the "law of the case because the agency action at issue is identical to the previously challenged action." *Id*. The Court also noted that the Fifth Circuit had also previously confirmed the standing of Plaintiffs in *Texas v. Biden*, 20 F.4th 928, 966-76 (5th Cir. 2022).. Thus, Plaintiffs' standing is not subject to re-examination here.

Moreover, "standing is determined as of the date of the filing of the complaint, and subsequent events do not deprive the court of jurisdiction." *Carr v. Alta Verde Indus., Inc*., 931 F.2d 1055, 1061 (5th Cir. 1991). Since 2023, this Court reiterated this principle in *Texas v. EEOC*, 785 F. Supp. 3d 170, 185 (N. D. Tex. 2025):

> Nor does the recent administration changes in the Executive Order or any subsequent DOJ policy affect the Court's determination that Texas established an injury in fact. As the Court has already noted, standing is established at the time the lawsuit is filed. Newman Green, Inc. 490 U. S. at 830. And "subsequent events do not deprive the court of jurisdiction."

The Court's reasoning in determining that Texas has standing in this case has been strongly bolstered since 2023 by the Fifth Circuit's decision in the *DACA* case, *Texas v. United States*, 126 F.4th 392, 407-12 (5th Cir. 2025). There, the Fifth Circuit noted that it had previously ruled in *Texas v. United States*, 50 F.4th 498 (5th Cir. 2022) ("*Texas II*") that injuries like those shown by Texas were sufficient to establish standing. The Fifth Circuit then held that the law of the case doctrine applied to that holding in *Texas II* unless the Supreme Court had made a contrary decision since *Texas II*. See 126 F.4th at 405-06 & n.12.

The Fifth Circuit in the DACA Case affirmed the District Court's conclusion that Texas had standing because it had shown "pocketbook injury" from the increased presence of illegal aliens in Texas caused by the challenged immigration policies of Defendants. The Court rejected Defendants' argument that the Supreme Court's decision in *United States v. Texas*, 599 U. S. 670 (2023) ("*Immigration Priorities*") had undermined Fifth Circuit law establishing standing in cases in which standing is based on injuries to Texas like increased social-services spending. *Id.* at 411.

Thus, as here, the law of the case applied in the DACA Case so as to confirm that Texas had established standing. But even apart from the law of the case doctrine, the DACA Case confirms that the injuries Texas has shown in this case are legally sufficient to establish its standing in *MPP*. The Court was and is on very solid ground in so concluding.

Finally, the "mandate rule" compels the same conclusion that Plaintiffs have standing here for yet another reason. This case was remanded by the Supreme Court with the direction that the Court should consider "whether the October 29 Memoranda comply with Section 706 of the APA." *Texas v. Biden*, 597 U. S. 785, 814, 142 S. Ct. 2528, 2548 (2022). The Fifth Circuit remanded to this Court "for further proceedings consistent with the Supreme Court's decision". *Texas v. Biden*, 43 F.4th 446, 447 (5th Cir. 2022).

The mandate rule "requires a district court on remand to effect [the] mandate and do nothing else." *United States v. Matthews*, 312 F.3d 652, 657 (5th Cir. 2002). The Fifth Circuit reiterated and applied the mandate rule several times since 2023. *See First Baptist Church of Iowa v.*

3

*Church Mut. Ins. Co.*, 2025 U. S. App. LEXIS 14824, 2025 WL 1683537 (5th Cir. 2025): *Franklin v. Regions Bank*, 125 F.4th 613, 629 (5th Cir. 2025); *Lion Elastomers, L.L.C. v. NLRB*, 108 F.4th 252, 257 (5th Cir. 2024). As stated in *First Baptist Church*:

> The law of the case doctrine dictates that a decision of a legal issue or issues by an appellate court establishes the "law of the case" and must be followed in all subsequent proceedings in the same case in the trial court, or on a later appeal in the appellate court. This doctrine requires that the district court abstain from reexamining an issue of fact or law that has already been decided on appeal. The proscription applies regardless of whether the issue was decided explicitly or by necessary implication. Relatedly, the mandate rule requires the district court on remand to affect our mandate and to do nothing else. Under the mandate rule, a district court on remand must implement both the letter and spirit of the appellate court's mandate and may not disregard the explicit directions of that court.

2025 U. S. App. LEXIS at **6-7 (punctuation omitted). Because neither the Supreme Court nor the Fifth Circuit upset this Court's ruling that Texas has standing nor remanded this case with directions to reconsider Plaintiffs' standing, the Court's holding on that issue remains solid.

## II.    VALID CAUSE OF ACTION

This Court previously rejected two stock arguments of Defendants: that its actions as to MPP were "committed to agency discretion" and that Plaintiffs' claims challenging the termination of MPP were "outside the zone of interests" of the INA. The Fifth Circuit affirmed this Court's rejection of those arguments. *Texas v. Biden*, 20 F.4th 928, 975-76, 978-88 (5th Cir. 2022). Thus, the law of the case doctrine and the mandate rule both bar relitigating them now.

Decisions since briefing was completed in this case in October 2023 confirm the correctness of the Court's rulings on these issues. The Southern District of Texas in *Gen. Land Office of Texas v. Biden*, 722 F. Supp. 3d 700 (S. D. Tex. 2024), stated:

> The APA establishes a basic presumption of judicial review for one suffering a legal wrong because of agency action. This presumption can be rebutted by a showing that the agency action is committed to agency discretion by law. However, to honor the presumption of review, this exception to Section

> 701(a)(2) is to be construed quite narrowly, and applies only in those rare circumstances where the relevant statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion.

*Id.* at 730 (citations omitted.) The Court contrasted agency decisions like the allocation of funds from a lump-sum appropriation, which provide no meaningful standard for judicial review, with the defendants' decision to spend funds for purposes not authorized by the relevant statute. Such decisions – there, to spend funds allocated for border wall construction for other purposes -- are not committed to agency discretion and were found to be contrary to law. *Id.*

The Court in *State v. United States Dep't of Homeland Security*, 736 F. Supp. 3d 310, 337(E. D. Tex. 2024), also rejected an argument by DHS that its challenged "parole in place" Rule was a matter "committed to agency discretion". Judge Barker described that the "committed to agency discretion" exception was "very narrow" and that the "narrow exception does not apply here" to the challenged parole statute.

The Fifth Circuit in the DACA Case, 126 F.4th 392 (5th Cir. 2025), rejected Defendants' "zone of interests" argument. It stated that the zone of interests test was "not intended to be especially demanding" and that "Texas need only show that it has an interest in the INA's enforcement and that its interest is arguably within the zone of interests the INS aims to advance. 126 F.4th at 415-16. The Court relied on its previous holding that the "interests the states seek to protect fall within the zone of the INA" because "Congress had "explicitly allowed states to deny public benefits to illegal aliens", 809 F.3d at 163. The Fifth Circuit concluded: "The interests the states seek to protect fall within the zone of interests of the INA. 126 F.4th at 416.

In *Texas v. Dept. of Homeland Security*, 2023 U. S. Dist. LEXIS 212676, 2023 WL 8285223 (W. D. Tex. Nov. 29, 2023), Chief Judge Moses stated that the harm asserted by Texas in that case "satisfies the additional "zone of interests" standing requirement, citing *Texas v. United States*, 50 F.4th 498, 521 (5th Cir. 2022). *Id.* at **18-19. The Court denied a preliminary injunction in that case based on its conclusion that the APA had not waived sovereign immunity of defendants as to Texas's common law claims. However, the Fifth Circuit later reversed that conclusion and issued

a preliminary injunction in favor of Texas. *State v. United States Dep't of Homeland Security,* 123 F.4th 186 (5th Cir. 2024). The Fifth Circuit thus implicitly affirmed the District Court's conclusion that Texas was within the "zone of interests" and had standing to sue DHS.

Texas and other States in 2024 also challenged the DHS "parole in place" Rule. *State v. United States Dep't of Homeland Security*, 756 F. Supp. 3d 310 (E. D. Tex. 2024). Defendants alleged that the Plaintiff States were not within the "zone of interests" of the APA and the INA, but the District Corut disagreed. It stated: "The plaintiff States' interest in border control is also within the zone of interests pf the INA". *Id*. at 336-37.

This Court in 2024 also found that a claim by Texas against DHS was within the zone of interests of the INA. In *Texas v. Mayorkas,* 2024 U. S. Dist. LEXIS 21947 (N. D. Tex. 2024), the Court denied a motion to dismiss a challenge by Texas to an Interim Final Rule known as the "Asylum Officer Rule". The court found that Texas's claims "easily satisfy the [zone of interests] test." Id. At *10-11.

### III.     8 U. S. C. SECTION 1252(f)(1)

Defendants argued that this Court lacked jurisdiction to grant relief under Section 705 of the Administrative Procedure Act. The argument pertained to this Court's authority to issue a stay of the October 29 Memoranda.  The Court concluded that Section 1252(f)(1) does not prohibit vacatur under Section 706, as the Fifth Circuit decided in *Texas v. United States*, 40 F.4th 205, 219-20 and *Texas v. United States*, 50 F.4th 498, 528 (5th Cir. 2022).  That is the principal final relief that Plaintiffs now seek.

Since 2023, the Fifth Circuit reiterated its 2022 holding that Section 1252(f)(1) does not bar vacatur. In January 2025, the Fifth Circuit made short work of Defendants' argument:

> The government attempts to evade review entirely by theorizing that 8 U.S.C. § 1252(f)(1) strips the district court of jurisdiction to enjoin and vacate the Rule.40 But we rejected that theory in *Texas II, see* 50 F.4th at 529, and that holding controls.

*Texas v. United States,* 123 F.4th 392, 419 (5th Cir. 2025).

## IV. PLAINTIFFS SHOULD PREVAIL ON THE MERITS.

Plaintiffs are unaware of any developments since 2023 that cast any doubt on the conclusions the Court reached in its careful consideration of the merits of this case. See 646 F. Supp. 3d at 771-80. Time has only made more apparent the flaws in Defendants' decision making with respect to the October 29 Memoranda. 2023 and 2024 saw illegal immigration surge to unprecedented level along the Texas Border and elsewhere. "Catch and release" policies necessitated in part by the termination of MPP allowed millions of illegal aliens to enter the United States without detention or even any supervision. This surge overwhelmed Defendants' capacity to detain such aliens as required by the INA.

The defects the Court found in Defendants' decision making in the October 29 Memoranda have cost America – and Texas and its citizens – dearly:

a. *Defendants failed to adequately consider how using contiguous-territory return authority would allow them to avoid violations of the INA's detention mandate.*

b. *Defendants failed to adequately examine whether DHS's rescission of MPP causes it to violate the limits on it parole authority.*

c. *Defendants failed to adequately account for several key benefits of MPP.*

d. *Defendants failed to adequately justify factual determinations regarding in absentia removal orders.*

e. *Defendants failed to adequately consider costs to States and their reliance interests.*

Since 2023, the Court in *State v. United States Dep't of Homeland Security*, 756 F. Supp. 2d 310 (E. D. Tex. 2024), found that Defendants did violate their parole authority when they adopted the "parole-in-place" Rule in 024. In November 2024, American voters elected a new President

7

who campaigned on promises to strongly enforce United States laws against illegal immigration. When the new President took office in January 2025, once of his first actions was to sign Executive Orders restricting abuse of Defendants' parole authority. Another was his reinstatement of MPP.

On February 11, 2025, the Immigration Defenders Law Center filed an ex parte application in the Central District of California seeking a nationwide stay of the reimplementation of MPP. I*mm. Def, L. Ctr. v. Noem*, 2025 U. S. Dist. LEXIS 90171 (C. D. Cal. 2025) at **11-12. The District Court granted that application on April 18, 2025. The Government promptly appealed that ruling and moved to stay the District Court's Order pending appeal. The District Court denied the motion to stay. *Id.*

In a 2-1 opinion, the Ninth Circuit Court of Appeals on July 18, 2025, granted a partial stay by limiting the District Court's stay of reimplementation of MPP to the plaintiff and its clients. *Imm. Def. L. Ctr. v. Noem*, 145 F.4th 972 (9th Cir. 2025). However, the panel majority stated that the Plaintiff "has shown a likelihood of success on the merits of its APA claims" *Id*. at 994. It stated further:

> At this stage, we find that the substantial and concrete harm that ImmDef will suffer upon reimplementation of MPP likely outweighs the harm to the government and public's interest in the Executive Branch exercising its contiguous-territory return authority without restriction in the form of the Remain in Mexico policy.

145 F.4th at 995.

A petition for rehearing *en banc* was filed by the Government and is pending. In addition, the appeal was briefed and oral argument took place in the Ninth Circuit on August 21, 2025. No decision on the appeal has yet been announced.

8

Plaintiffs conclude that the proceedings in the Central District of California and the Ninth Circuit in the I*mmDef* case do not impede in any way the ability of this Court to rule on the pending summary judgment motions in this case. Moreover, the Court's conclusions in its Opinion and Order, 646 F. Supp. 3d 763 (N. D. Tex.), have only been strengthened and confirmed by relevant factual and legal developments since October 2023.

## V. NATIONWIDE VACATUR IS APPROPRIATE.

Vacatur is a longstanding remedy under Section 706 of the APA and is recognized as distinct from injunctive relief in both its effect and its history. The Supreme Court in *Trump v. CASA, Inc.*, 606 U. S. 831 (2025), was careful to make clear that the geographical limits on injunctive relief discussed in that case did not affect remedies available under the APA. As stated in *Asylum Seeker Advoc. Project v. United Staes Citizenship & Imm. Servs.*, 2025 U. S. Dist. LEXIS 213791, 2025 WL 3029552 (D. Md. 2025) at *28:

> [I]n its recent decision limiting universal injunctions, the Supreme Court explicitly stated that its decision did not concern "whether the Administrative Procedure Act authorizes federal courts to vacate federal agency action." Trump v. CASA, Inc., 606 U. S. 831, 847 n.10 (2025). This Court concludes, consistent with other recent cases addressing this issue, that the decision in CASA does not apply to relief under the APA.

Accordingly, Plaintiffs respectfully request that the Court grants summary judgment in their favor and vacate the October 29 Memoranda.

| | |
|---|---|
| Date: December 19, 2025 | Respectfully submitted. |
| **KEN PAXTON**<br>Attorney General of Texas | **CATHERINE L. HANAWAY**.<br>Attorney General of Missouri |
| **BRENT WEBSTER**<br>First Assistant Attorney General | **LOUIS J. CAPOZZI III**<br>Solicitor General<br>Bar #327251 (Pa) |
| **RALPH MOLINA**<br>Deputy First Assistant Attorney General | |
| **RYAN D. WALTERS**<br>Deputy Attorney General for Legal Strategy | */s/ Maria Lanahan*<br>**MARIA LANAHAN**<br>Deputy Solicitor General<br>MO Bar No. 65956 |
| **RYAN G. KERCHER**<br>Chief, Special Litigation Division | |
| */s/ David Bryant*<br>**DAVID BRYANT**<br>*Attorney-in-Charge*<br>Senior Special Counsel<br>Texas Bar No. 03281500 | **MISSOURI ATTORNEY GENERAL'S OFFICE**<br>815 Olive St, Suite 200<br>St. Louis, MO 63101<br>Phone: (314) 340-7366<br>Maria.lanahan@ago.mo.gov |
| **MUNERA AL-FUHAID**<br>Special Counsel<br>Texas Bar No. 24094501 | **COUNSEL FOR THE STATE OF MISSOURI** |
| **OFFICE OF THE ATTORNEY GENERAL OF TEXAS**<br>Special Litigation Division<br>P.O. Box 12548, Capitol Station<br>Austin, Texas 78711-2548<br>Tel.: (512) 463-2100<br>David.bryant@oag.texas.gov<br>Munera.al-fuhaid@oag.texas.gov | |
| **COUNSEL FOR THE STATE OF TEXAS** | |

### CERTIFICATE OF SERVICE

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on December 19, 2025 and that all counsel of record were served by CM/ECF.

*/s/ David Bryant*
**DAVID BRYANT**

10