# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# AMARILLO DIVISION

| | |
|---|---|
| THE STATE OF TEXAS AND THE STATE OF MISSOURI,<br>　　*PLAINTIFFS*,<br>V.<br><br>DONALD J. TRUMP, IN HIS OFFICIAL CAPACITY AS PRESIDENT OF THE UNITED STATES OF AMERICA, *ET AL.*,<br><br>　　*DEFENDANTS*. | CASE NO. 2:21-CV-00067-Z |

### RESPONSE TO DEFENDANT'S REFILED MOTION FOR SUMMARY JUDGMENT

Plaintiffs State of Texas and State of Missouri submit this response to Defendants' Refiled Motion for Summary Judgment, ECF Nos. 245, 246.

## TABLE OF CONTENTS

Table Of Contents ........................................................................................................................... ii
Index of Authorities ...................................................................................................................... iii
Introduction .....................................................................................................................................1
Argument ........................................................................................................................................ 2
    I.   Plaintiffs Have Standing to Challenge the October 29 Memoranda Under the Administrative Procedure Act. ................................................................................... 2
    II.  Section 1252(f)(1) Does Not Disturb This Court's Jurisdiction to Grant Relief Under the APA ............................................................................................................3
        A.  Vacatur is Beyond the Scope of §1252(f)(1). ................................................ 4
        B.  Section 1252(f)(1)'s plain meaning merely precludes injunctive relief. ........................ 4
        C.  Injunctions and Vacatur Are Distinct Forms of Relief. ................................................. 6
    III. Nationwide Vacatur of the October 29 Memoranda is an Appropriate Remedy for Arbitrary and Capricious Agency Action Under §706(2) the APA. ................................. 8
        A.  Under Binding Precedent, Vacatur is an Appropriate Remedy for Unlawful Agency Action................................................................................................................... 8
        B.  Defendants' Arguments Against Universal Vacatur Are Otherwise Uncompelling. ... 9
Conclusion ................................................................................................................................... 11
Certificate of Service................................................................................................................... 13

## INDEX OF AUTHORITIES

**Cases**                                                                                                       **Page(s)**

*Alli v. Decker*,
   650 F.3d 1007 (3d Cir. 2011) ............................................................................................... 5

*Almendarez-Torres v. United States*,
   523 U.S. 224 (1998) ............................................................................................................. 5

*Arevalo v. Ashcroft*,
   344 F.3d 1 (1st Cir. 2003) .................................................................................................... 5

*Biden v. Texas*,
   597 U.S. 785 (2022) ................................................................................................... 4, 6, 8

*California v. Arizona*,
   452 U.S. 431 (1979) ............................................................................................................. 5

*Career Colls. & Sch. of Tex. v. United States Dep't of Educ.*,
   98 F.4th 220 (5th Cir. 2024) ............................................................................................. 10

*Corner Post, Inc. v. Bd. Of Governors of the Fed. Rsrv. Sys.*,
   603 U.S. 799 .......................................................................................................................... 9

*Driftless Area Land Conservancy v. Valcq*,
   16 F.4th 508, (7th Cir. 2021) ............................................................................................. 6

*El Paso Natural Gas Co. v. United States*,
   632 F.3d 1272 (D.C. Cir. 2011) ........................................................................................ 8

*Feds for Med. Freedom v. Biden*,
   63 F.4th 366 (5th Cir. 2023) ............................................................................................. 10

*Franciscan All., Inc. v. Becerra*,
   47 F.4th 368, 374-75 (5th Cir. 2022) ............................................................................... 9

*Garland v. Gonzalez*,
   596 U.S. 543 (2022) ........................................................................................................ 4, 7

*Guerrero-Lasprilla v. Barr*,
   140 S. Ct. 1062 (2020) .................................................................................................... 7, 8

*Harmon v. Thornburgh*,
   878 F.2d 484 (D.C. Cir. 1989) .......................................................................................... 9

*Kucana v. Holder*,
   558 U.S. 233 (2010) ..........................................................................................................7, 8

*Lincoln Nat. Life Ins. Co. v. Roosth*,
   306 F.2d 110 (5th Cir. 1962)..................................................................................................3

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992).............................................................................................................. 2

*Missouri v. Iowa*,
   48 U.S. 660 (1849) .................................................................................................................5

*Monsanto Co. v. Geertson Seed Farms*,
   561 U.S. 139, (2010) ..........................................................................................................6, 7

*Nebraska v. Wyoming*,
   534 U.S. 40 (2001) .................................................................................................................5

*Nken v. Holder*,
   556 U.S. 418 (2009) ........................................................................................................5, 6, 7

*Purl v. United States HHS*,
   787 F. Supp. 3d 284 (N.D. Tex 2025) .............................................................................. 6, 7, 11

*Reno v. American-Arab Anti-Discrimination Comm.*,
   525 U.S. 471 (1999) ............................................................................................................3, 4

*Rodriguez v. Hayes*,
   591 F.3d 1105 (9th Cir. 2010)..................................................................................................5

*Shelley v. Kramer*,
   334 U.S. 1(1948)......................................................................................................................5

*Society of Separationists, Inc. v. Herman*,
   939 F.2d 1207 (5th Cir. 1991).................................................................................................3

*Tex. Med. Ass'n v. United States HHS*,
    110 F. 4th 762, (5th Cir. 2024)........................................................................................... 8, 9

*Texas v. Biden*,
   554 F. Supp. 3d 818 (N.D. Tex. 2021) ................................................................................... 9

*Texas v. Biden*,
   646 F. Supp. 3d 753 (N.D. Tex. 2022)................................................................................... 11

*Texas v. United States (DACA)*,
   50 F.4th 498 (5th Cir. 2022) ................................................................................................4, 7

*Texas v. United States (DAPA)*,
  809 F.3d 134 (5th Cir. 2015) .............................................................................. 10, 11

*Texas v. United States*,
  126 F.4th 392 (5th Cir. 2025) ................................................................................ 3, 4, 8

*Texas v. United States*,
  40 F.4th 205 (5th Cir. 2022) ................................................................................. 4, 6, 11

*Texas v. United States*,
  50 F.4th 498 (5th Cir. 2022) ................................................................................. 3

*Trump v. CASA, Inc.*,
  606 U.S. 831 (2025) ............................................................................................. 9

*United States v. Taylor*,
  596 U.S. 845, 856 (2022) ..................................................................................... 10

*United States v. Texas*,
  599 U.S. 670 (2023) ............................................................................................. 2

*United States v. Zuniga-Salas*,
  945 F.2d 1302 (1991) ........................................................................................... 3

*VanDerStok v. Garland*,
  2023 U.S. App. LEXIS 26499 (5th Cir. Oct. 2, 2023) ........................................ 11

*White v. Murtha*,
  377 F.2d 428 (5th Cir. 1967) ................................................................................ 2

*Winter v. Nat. Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) .................................................................................................. 7

**Constitutional Provisions & Statutes**

5 U.S.C. §705 ............................................................................................................. 10

5 U.S.C §706 ........................................................................................................ passim

8 U.S.C. §1252(f)(1) ................................................................................................... 4

U.S. Const. art. I, § 8 ................................................................................................. 11

**Other Authorities**

*5 Oxford English Dictionary* 756 (2d ed. 1989) ...................................................... 5

*Black's Law Dictionary* 550 (7th ed. 1999) ............................................................. 5

*Black's Law Dictionary* (12th ed. 2024) .................................................................. 6

*Black's Law Dictionary* 1537 (4th ed. 1951) ............................................................................... 9

*Black's Law Dictionary* 1612 (3d ed. 1933) ............................................................................... 8

*Black's Law Dictionary* 529 (6th ed. 1990) ............................................................................... 4

*Garner's Dictionary of Modern Legal Usage* 295 (3d ed. 2011) ............................................... 5

Howard C. Joyce, *A Treatise on the Law Relating to Injunctions* § 1, at 2-3 (1909) .............................. 6

John C. Harrison, *Vacatur of Rules Under the Administrative Procedure Act*, 40 YALE J. REG. BULL. 119, 120 (2023) ....................................................................................................................... 11

Mila Sohoni, *The Power to Vacate a Rule*, 88 GEO. WASH. L. REV. 1121, 1169 (2020) ........................ 9

**INTRODUCTION**

On January 16, 2026, Defendants refiled their motion for summary judgment. *See* ECF No. 242. They refiled the following associated briefing:

- ECF No. 243, Defendants' Response in Opposition to Plaintiffs' Motion to Postpone the Effective Date of Agency Action, previously filed at ECF No. 163;
- ECF No. 244, Defendants' Sur reply in Opposition to Plaintiffs' Motion to Postpone the Effective Date of Agency Action, previously filed at ECF No. 173;
- ECF No. 245, Defendants' Supplemental Brief in Support of Summary Judgment, previously filed at ECF No. 203; and
- ECF No. 246, Defendants' Supplemental Response Brief in Support of Summary Judgment, previously filed at ECF No. 205.

Also on January 16, 2026, Plaintiffs filed their Brief in Support of Plaintiffs' Re-urged Motion for Summary Judgment, in which they adopted the following briefs by reference, and included them as exhibits in an Appendix to the brief. *See* ECF No. 248-1.

- App. 1-33, ECF No. 248-1: Plaintiffs' Motion to Postpone the Effective Date of Agency Action, previously filed at ECF No. 149;
- App. 34-56, ECF No. 248-1: Plaintiffs' Motion to Postpone the Effective Date of Agency Action, previously filed at ECF No. 168;
- App. 57-67, ECF No. 248-1: Plaintiffs' Sur-Sur Reply in Support of their Motion to Postpone the Effective Date of Agency Action, previously filed at ECF No. 175;
- App. 68-100, ECF No. 248-1: Plaintiff States' Supplemental Brief, previously filed at ECF No. 204;
- App. 101-114, ECF No. 248-1: Plaintiff States' Supplemental Response Brief, previously filed at ECF No. 206; and
- App. 115-125, ECF No. 248-1: Plaintiffs' Supplemental Brief Regarding Developments Since 2023, previously filed at ECF No. 237.

1

Defendants did not file any new briefing, so the briefs that Plaintiffs refiled are fully responsive to Defendants' Refiled Motion for Summary Judgment. To avoid duplicative briefing, Plaintiffs incorporate by reference the already-filed briefs, as if fully set forth herein. *See* ECF No. 248-1. Defendants further respond that this Court should deny Defendants' Refiled Motion for Summary Judgment.

## ARGUMENT

This Court should deny Defendants' Refiled Motion for Summary Judgment. Plaintiffs also urge the Court to find that Plaintiffs have standing and that vacatur of the October 29 Memoranda under Section 706 of the Administrative Procedure Act is the appropriate remedy.

### I. Plaintiffs Have Standing to Challenge the October 29 Memoranda Under the Administrative Procedure Act.

This Court has already correctly ruled that Texas has proven the necessary elements of standing for its Administrative Procedure Act ("APA") claims in this suit regarding the prior termination of the Migrant Protection Protocols ("MPP"). *See* ECF No. 94 at 21-26. Injury-in-fact, traceability, and redressability are the essential components of standing and Texas has already met its burden to prove those elements for its claimed violations of the APA. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).

Defendants argue that an intervening precedential decision abrogates this Court's prior holding that Plaintiffs have suffered an injury-in-fact that is cognizable under Article III. *See* ECF No. 245 at 15-27 (arguing that the Supreme Court's ruling in *United States v. Texas*, 599 U.S. 670 (2023) effectively overrules this Court's prior determination and Fifth Circuit precedent on Plaintiffs' standing in this case). Defendants' argument is foreclosed by the law of the case doctrine, which this Court has already recognized. *See* ECF No. 94; *White v. Murtha*, 377 F.2d 428, 431-32 (5th Cir. 1967).

Because this Court's prior opinion is law of the case, it may not be disturbed unless new, substantially different evidence has been introduced, controlling authority has changed, or maintaining the decision works manifest injustice. *White*, 377 F.2d at 431-32; *Lincoln Nat. Life Ins.*

*Co. v. Roosth*, 306 F.2d 110, 113 (5th Cir. 1962). Defendants have failed to demonstrate that any of those exceptions to the law of the case doctrine are applicable here.

Additionally, this Court has accurately adduced that Fifth Circuit precedent has established that Plaintiffs can demonstrate standing based on pocketbook injuries caused by Defendants' policies that increase the number of illegal aliens located within a Plaintiff state. *Texas v. United States*, 126 F.4th 392 (5th Cir. 2025) (ruling that law of the case doctrine applies to previous ruling unless intervening Supreme Court precedent has changed); *Texas v. United States*, 50 F.4th 498 (5th Cir. 2022) (repudiating federal government's argument that *United States v. Texas*, 599 U.S. 670 (2023) has overruled Fifth Circuit precedent finding standing based on pocketbook injuries such as an increase in public social services expenditures). This Court should decline Defendants' invitation to disregard controlling precedent. The United States Supreme Court has unequivocally overruled these holdings, so this Court should not reconsider Plaintiffs' standing here. *See Society of Separationists, Inc. v. Herman*, 939 F.2d 1207, 1211 (5th Cir. 1991); *United States v. Zuniga-Salas*, 945 F.2d 1302, 1306-07 (1991).

This suit has been pending since 2021. It will never end if the Court allows Defendants to relitigate the issue of Plaintiffs' standing anew. This Court's prior rulings are faithful to Fifth Circuit and Supreme Court precedent regarding standing doctrine, so this Court's prior holdings control.

## II. Section 1252(f)(1) Does Not Disturb This Court's Jurisdiction to Grant Relief Under the APA

Defendants contend that 8 U.S.C. §1252(f)(1) bars vacatur. Yet the "plain terms" of the statute suggest no such thing. *See Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 481 (1999). Section 1252(f)(1) directs, in relevant part, that "no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of" §§ 1221-1232 of the INA. 8 U.S.C. §1252(f)(1). Put differently, it "withdraws a district court's 'jurisdiction or authority' to grant a particular form of relief." *Biden v. Texas*, 597 U.S. 785, 798 (2022). That "particular form of relief" is injunctive relief. *Id.* at 797-98. At best, §1252(f)(1) is "nothing more

3

. . . than a limit on *injunctive* relief." *Reno*, 525 U. S. at 481 (emphasis added). The statute speaks nothing of vacatur, which is wholly distinct from the remedy of an injunction. *Texas v. United States (DACA)*, 50 F.4th 498, 528-29 (5th Cir. 2022). Accordingly, § 1252(f)(1) does not disturb this Court's jurisdiction to vacate the October 29 Memoranda as "arbitrary and capricious" action under §706 of the APA.

### A. Vacatur is Beyond the Scope of §1252(f)(1).

As an initial matter, the Fifth Circuit has made it abundantly clear: "[Section] 1252(f)(1) does not apply to vacatur." *DACA*, 50 F.4th at 529; *Texas v. United States*, 40 F.4th 205, 219-20 (5th Cir. 2022) (discussing vacatur as beyond the reach of §1252(f)(1)); *Texas v. United States*, 126 F.4th 392, 419 (5th Cir. 2025) (same). That is because §1252(f)(1), by its ordinary meaning, "generally prohibits lower courts from *entering injunctions* that order federal officials to take or to refrain from taking actions to enforce . . . [certain] statutory provisions" in the INA. *Garland v. Gonzalez*, 596 U.S. 543, 550 (2022) (emphasis added); *Texas*, 40 F.4th at 219. So, while the statute "bars . . . class-wide [injunctive] relief," it stops short of foreclosing vacatur as a legitimate remedy under the APA. *Texas*, 40 F.4th at 219 (citing *Garland*, 596 U.S. at 544).

### B. Section 1252(f)(1)'s plain meaning merely precludes injunctive relief.

Start with the text of §1252(f)(1). Section 1252(f)(1) merely strips district courts of jurisdiction to issue remedies that would "enjoin or restrain the operation of" certain statutory provisions in the federal immigration code. 8 U.S.C. §1252(f)(1). The plain meaning of the word "enjoin" is "to 'require,' 'command,' or . . . to 'require a person to perform, or to abstain . . . from, some act.'" *Garland*, 596 U.S. at 548 (quoting *Black's Law Dictionary* 529 (6th ed. 1990)). Thus "a court 'enjoins' conduct" when it enters "an 'injunction,' which is a judicial order that 'tells someone what to do or what not to do.'" *Id.* at 549 (quoting *Nken v. Holder*, 556 U.S. 418, 428 (2009)). Meanwhile, the term "restrain" means "to 'check, hold back, or prevent a person or thing from some course of action.'" *Id.* (quoting 5 Oxford English Dictionary 756 (2d ed. 1989) (emphasis deleted)). The verbs "enjoin or restrain," operating together, show §1252(f)(1)

4

typically prevents district courts from entering injunctions that compel federal officers "to take or to refrain from taking [enforcement] actions . . . [under] . . . specified statutory provisions." *Id.* at 550 ("[p]utting these terms together" to construe §1252(f)(1)).

As previously noted, "restrain" and "enjoin" are "common doublets in legal writing" frequently functioning as "coupled synonyms." ECF No. 204, at 21 (Ex. D) (quoting *Garner's Dictionary of Modern Legal Usage* 295-96 (3d ed. 2011)); *Garner's Dictionary of Modern Legal Usage* 292, 294 (2d ed. 2001) (same). Tellingly, American courts have long used the doublets to signify injunctive relief. *See. e.g., Missouri v. Iowa*, 48 U.S. 660, 679 (1849); *Shelley v. Kramer*, 334 U.S. 1,7(1948); *California v. Arizona*, 452 U.S. 431, 432 (1979); *Nebraska v. Wyoming*, 534 U.S. 40, 50 (2001).

But even when construed independently rather than in conjunction, the words "enjoin" and "restrain," as invoked in §1252(f)(1), nonetheless point toward injunctive relief. ECF No. 204, at 20 (Ex. D). Again, the very definition of "enjoin" is to "*restrain by injunction*." *Black's Law Dictionary* 550 (7th ed. 1999) (emphasis added). And the word "restrain" in §1252(f)(1) "is best read to refer to temporary injunctive relief." *Rodriguez v. Hayes*, 591 F.3d 1105, 1119 (9th Cir. 2010); *Alli v. Decker*, 650 F.3d 1007, 1013 (3d Cir. 2011) (explaining "'restrain' refers to one or more forms of temporary injunctive relief, such as a temporary restraining order or preliminary injunction"); *Arevalo v. Ashcroft*, 344 F.3d 1, 7 (1st Cir. 2003)(treating " the word 'enjoin' as referring to permanent injunctions and the word 'restrain' as referring to temporary injunctive relief").

It is well settled that the heading of a section is a valuable "tool for the resolution of doubt about the meaning of a statute." *Almendarez-Torres v. United States*, 523 U.S. 224, 234 (1998) (internal quotations and citations omitted). Here, the title of § 1252(f), "'Limit on injunctive relief,'" hints at the kind of remedy precluded by §1252(f)(1) and further evinces "the narrowness of [of the provision's] scope." *See Biden*, 597 U.S. at 798. If Congress had wanted the "carefully worded" statute to bar vacatur, "it could have said so." *See id.* at 798-99. But it did not.

5

### C. Injunctions and Vacatur Are Distinct Forms of Relief.

Defendants nevertheless argue vacatur is functionally equivalent to an injunction and therefore precluded by §1252(f)(1). ECF No. 245 at 31-32. Not so. In *Texas*, DHS similarly claimed vacatur effectively "enjoin[s] or restrain[s] the operation of" agency enforcement actions in violation §1252(f)(1). 40 F.4th at 219. The Fifth Circuit disagreed, drawing upon the meaningful distinctions between injunctions and vacatur. *Id;* ECF No. 204 at 20-22 (Ex. D) (contrasting injunctions and vacatur). Here, as in *Texas*, Defendants' sweeping construction of §1252(f)(1) cannot elide those meaningful distinctions.

By definition, an injunction is distinct from vacatur. "[A]n injunction is a judicial process or mandate operating *in personam* by which, upon certain established principles of equity, a party is required to do or refrain from doing a certain thing." *Injunction*, *Black's Law Dictionary* (12th ed. 2024) (quoting 1 Howard C. Joyce, *A Treatise on the Law Relating to Injunctions* § 1, at 2-3 (1909)). An injunction is inherently coercive because "it directs the conduct of a party[.]" *Nken*, 556 U.S. at 428.

Now to turn to vacatur. Vacatur, which "empowers courts to set aside—*i.e.*, formally nullify and revoke—an unlawful agency action," does not operate *in personam*. *Purl v. United States HHS*, 787 F. Supp. 3d 284, 327 (N.D. Tex 2025) (citing *Data Mktg. P'ship, LP v. U.S. Dep't of Lab.*, 45 F.4th 846, 859 (5th Cir. 2022)). Instead, it "undoes or expunges a past [agency] action," effectively "unwind[ing] the challenged agency action." *Driftless Area Land Conservancy v. Valcq*, 16 F.4th 508, 522 (7th Cir. 2021). Given vacatur "neither compels nor restrains . . . agency decision-making," it cannot be said to possess the coercive nature of an injunction. *Texas*, 40 F.4th at 220 (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010)). Vacatur, then, finds no home in §1252(f)(1), a jurisdictional bar limited to relief that commands "the actions of officials or other persons who implement" the provisions specified under the statute. *Gonzalez*, 596 U.S. at 549. Indeed, when an agency rule is vacated, a court does not "tell [agencies or their officials] what to do or not to do." *See Nken*, 556 U.S. at 428.

Injunctions and vacatur differ in other important ways, too. For starters, "[a]n injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course."

6

*Monsanto Co.*, 561 U.S. at 165. Vacatur, however, is "a less drastic remedy" preferred over injunctive relief when "sufficient to redress [the alleged] injury[.]" *Id.* at 166. In this circuit, vacatur, as the default remedy for unlawful agency action, is the norm. *Cargill v. Garland*, 57 F. 4th 447, 472 (5th Cir. 2023) (en banc).

Further, obtaining the "extraordinary remedy" of an injunction, *see Monsanto Co.*, 561 U.S. at 165, requires a more demanding showing than vacatur. ECF No. 204, at 21 (Ex. D). Plaintiffs seeking an injunction must establish they are "likely to succeed on the merits, that [they are] likely to suffer irreparable harm" absent injunctive relief, "that the balance of equities tip in [their] favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

By contrast, those onerous standards are not required to vacate an agency action overstepping statutory authority. Under the APA, "[t]he reviewing court shall . . . set aside [unlawful] agency action [.]" 5 U.S.C. §706(2). The appropriateness of vacatur turns on a merits inquiry: "(1) the seriousness of the deficiencies of the [challenged] action, that is, how likely the agency will be able to justify its decision on remand; and (2) the disruptive consequences of the action." *DACA*, 50 F.4th at 529; ECF No. 248 at 8-9 (arguing the October 29 Memoranda should be vacated). So, unlike an injunction, vacatur "does not require consideration of the equities." *Purl*, 787 F. Supp. 3d 284, 327 (N.D. Tex. 2025).

To the extent that any ambiguity lingers concerning the breadth of §1252(f)(1)'s scope, the Court should look to "a familiar principle of statutory construction: the presumption favoring judicial review of administrative action." *Guerrero-Lasprilla v. Barr*, 140 S. Ct. 1062, 1069 (2020) (quoting *Kucana v. Holder*, 558 U.S. 233, 251 (2010)). Plaintiff States have explained the "strong presumption" favoring judicial review applies "even when determining the scope of statutory provisions specifically designed to limit judicial review." ECF No. 175 at 8 (Ex. C) (citing *Guerrero-Lasprilla*, 140 S Ct. at 1068; *Kucana*, 558 U.S. at 251–252; and *El Paso Natural Gas Co. v. United States*, 632 F.3d 1272, 1276 (D.C. Cir. 2011)). To overcome that presumption, there must be "clear and convincing evidence" of legislative intent to foreclose judicial review of agency action. *See, e.g., Kucana*, 558 U.S. at 252. Of course, Defendants have not made that showing, nor can they.

Summarily, Defendants' "far-reaching position that section 1252(f)(1) . . . bar[s]" vacatur under the APA is at odds with the plain meaning of 1252(f)(1) and prevailing precedent. *See Biden*, 597 U.S. at 822 (Alito, J., dissenting). Section 1252(f)(1) in no way strips this Court of its jurisdiction to vacate the October 29 Memoranda.

### III. Nationwide Vacatur of the October 29 Memoranda is an Appropriate Remedy for Arbitrary and Capricious Agency Action Under §706(2) the APA.

In a last-ditch effort to skirt judicial review of the October 29 Memoranda, Defendants assert the APA provides no basis for nationwide vacatur of agency actions. ECF No. 245 at 33-36. But to date, they can cite no binding precedent advancing such a notion. Defendants' dubious construction of §706(2) not only contravenes the text and structure of the APA but also undermines longstanding judicial practice.

#### A. Under Binding Precedent, Vacatur is an Appropriate Remedy for Unlawful Agency Action.

At the outset, Defendants' argument that "the APA does not authorize universal vacatur" *see* ECF No. 245 at 33, is hamstrung by "[b]inding Fifth Circuit precedent recogniz[ing] this remedy[.]" *Texas*, 126 F. 4th at 418 (quoting *Tex. Med. Ass'n v. United States HHS*, 110 F. 4th 762, 779 (5th Cir. 2024)).

Section 706(2) of the APA directs, among other things, that "[t]he reviewing court *shall* . . . hold unlawful and set aside agency action . . . found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C §706(2)(A) (emphasis added). In other words, the APA "commands courts to 'set aside' unlawful agency actions." *Tex. Med. Ass'n*, 110 F.4th at 779. Dictionaries contemporaneous with the APA's 1946 enactment defined the phrase "set aside" as "cancel, annul, or revoke." *Black's Law Dictionary* 1612 (3d ed. 1933); *Black's Law Dictionary* 1537 (4th ed. 1951) (same). "Much, then, turns on the semantic content of the phrase 'set aside.'" Mila Sohoni, *The Power to Vacate a Rule*, 88 Geo. Wash. L. Rev. 1121, 1169 (2020).

Relevant here, the Fifth Circuit understands §706(2)'s use of the phrase "set aside" to "allow[] a district court's vacatur[.]" *Tex. Med. Ass'n,* 110 F. 4th at 779. Indeed, "the mandatory

language of the APA has led [this circuit and other] courts to make remand and vacatur the default remedy for agency action that violates the [statute]." *Texas v. Biden*, 554 F. Supp. 3d 818, 853 (N.D. Tex. 2021); *Data Mktg. P'Ship*, 45 F.4th at 856 n.2. The D.C. Circuit—known to adjudicate many of the nation's administrative law cases—has for decades embraced that very construction of §706(2), treating vacatur as the "ordinary result" when it has "determine[d] that agency regulations are unlawful." *Harmon v. Thornburgh*, 878 F.2d 484, 495 n.21 (D.C. Cir. 1989). And despite arguments to the contrary, "recogniz[ing] vacatur as the usual relief" under §706(2) comports with longstanding Supreme Court precedent "affirm[ing] decisions that vacated agency actions, including agency rules." *Corner Post, Inc. v. Bd. Of Governors of the Fed. Rsrv. Sys.*, 603 U.S. 799, 830-31 (Kavanaugh, J., concurring) (compiling cases).

Going further, the Supreme Court's relatively recent ruling in *Trump v. CASA, Inc.,* 606 U.S. 831 (2025) does nothing to disturb this circuit's determination that "vacatur is the only statutorily prescribed remedy for a successful APA challenge." *See Franciscan All., Inc. v. Becerra*, 47 F.4th 368, 374-75 (5th Cir. 2022); ECF No. 245 at 10. In *CASA*, the Supreme Court "put[] an end to the . . . practice of federal courts issuing universal injunctions," *see CASA*, 606 U.S. at 865, but it expressly declined to opine on the availability of vacatur as a remedy under the APA. *Id.* at 847 n.10. Thus, even in wake of *CASA*, it is well within this Court's jurisdiction to vacate the October 29 Memoranda as "arbitrary and capricious" agency action.

### B. Defendants' Arguments Against Universal Vacatur Are Otherwise Uncompelling.

To be sure, Defendants' arguments casting doubt on the propriety of universal vacatur as a remedy under the APA are uncompelling, even aside from binding the binding precedent which squarely forecloses them.

Defendants maintain, for example, that §706(2) does not concern remedies whatsoever. ECF No. 245 at 34. Their view that the statutory provision simply "directs a court to disregard unlawful 'agency action, findings, and conclusions' in resolving the case before it" is belied by the text and structure of the APA. *Id.* Section 706(1), which instructs courts to "compel agency

9

action," clearly affords a judicial remedy for "unlawfully withheld or unreasonably delayed" agency action. 5 U.S.C. §706(1). Section 706(2), then, operates in the inverse by supplying a judicial remedy for "unlawful" agency action: the "setting aside" of such action. §706(2). Turning to the statute's structure, the immediately proceeding section, §705 empowers the reviewing court to "postpone the effective date of [challenged] agency action[.]" 5 U.S.C. §705. It would be strange for the APA to afford interim judicial relief under §705 but then leave courts powerless to effectuate final relief under §706. The "usual rule of statutory interpretation that a law's terms are best understood by the company [they] kee[p]" looms large here. *United States v. Taylor*, 596 U.S. 845, 856 (2022) (cleaned up). Section 706(2)'s proximity to §705 and §706(1) suggest the provision contemplates judicial remedies, and vacatur at that.

Defendants further contend that even if vacatur is a viable remedy under the APA, nationwide vacatur nonetheless runs afoul of "constitutional and equitable limitations." ECF No. 245 at 33, 35. That view "do[es] not hold water." *Career Colls. & Sch. of Tex. v. United States Dep't of Educ.*, 98 F.4th 220, 255 (5th Cir. 2024). "[G]eneral equitable and constitutional principles" do not always "require the [court] to limit any relief to the named parties[.]" Certainly, "as a general rule, American courts of equity did not provide relief beyond the parties to the case," however, "[a]s with all general rules . . . [it] was subject to exceptions—the most important of which was that [the relief] *could* benefit non-parties as long as 'that benefit was merely incidental.'" *Feds for Med. Freedom v. Biden*, 63 F.4th 366, 387 (5th Cir. 2023) (en banc) (citations omitted).

Here, it would make no sense for the Court to vacate the October 29 Memoranda only as to Texas. Such a remedy would be no real remedy at all—not when "there is a substantial likelihood that geographically-limited [relief] would be ineffective[.]" *Texas v. United States (DAPA)*, 809 F.3d 134, 188 (5th Cir. 2015). At the end of the day, "aliens would simply enter the United States through a non-party State." *Texas v. Biden*, 646 F. Supp. 3d 753, 781 (N.D. Tex. 2022). Plaintiff States' challenge implicates immigration policy and necessarily demands "broad relief . . . to ensure uniformity and consistency in enforcement." *Texas*, 40 F.4th at 229 n.18. The uniform enforcement of this nation's immigration law is both a constitutional and statutory

command. *DAPA*, 809 F.3d at 187 (noting "[t]he Constitution requires 'an uniform Rule of Naturalization'" (quoting U.S. Const. art. I, § 8, cl. 4) (emphasis in original)); *id.* at 187–88 ("Congress has instructed that 'the immigration laws of the United States should be enforced vigorously and uniformly,'" (quoting Immigration Reform and Control Act of 1986, Pub. L. No. 99–603, § 115(1), 100 Stat. 3359, 3384) (emphasis in original)).

In any event, "[i]t is unclear that there is [even] such a thing as an 'as-applied vacatur' remedy under the APA." *VanDerStok v. Garland*, 2023 U.S. App. LEXIS 26499, at *8 (5th Cir. Oct. 2, 2023) (per curiam) (citation omitted). Afterall, "[a]n injunction can be limited to the defendant's actions concerning the plaintiff, and its preclusive effect can be limited to the relations between the parties," but the same is not true of vacatur, which "by contrast, eliminates a rule's binding force altogether." John C. Harrison, *Vacatur of Rules Under the Administrative Procedure Act*, 40 YALE J. REG. BULL. 119, 120 (2023); *see* ECF No. 204 at 17 (Ex. D) (exploring other "unanswerable questions" raised by Defendants' textual reading of §706(2)). As this Court has noted, vacatur is "not 'a remedy familiar to courts sitting in equity,' so it is not subject to many of the typical equitable constraints," anyway. *Purl*, 787 F. Supp. at 328.

Accordingly, universal vacatur stands as the appropriate remedy for arbitrary and capricious agency action under §706 of the APA. For reasons already discussed at length, *see* ECF No. 248 at 5 (citing briefs), the Court should find the October 29 Memoranda unlawful and vacate the agency action.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' Refiled Motion for Summary Judgment.

11

Date: February 6, 2026

**KEN PAXTON**
Attorney General

**BRENT WEBSTER**
First Assistant Attorney General

**RALPH MOLINA**
Deputy First Assistant Attorney General

**RYAN D. WALTERS**
Deputy Attorney General for Legal Strategy

**RYAN G. KERCHER**
Chief, Special Litigation Division

*/s/ David Bryant*
**DAVID BRYANT**
*Attorney-in-Charge*
Senior Special Counsel
Texas Bar No. 03281500

**MUNERA AL-FUHAID**
Special Counsel
Texas Bar No. 24094501

**OFFICE OF THE ATTORNEY GENERAL OF TEXAS**
Special Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Tel.: (512) 463-2100
David.bryant@oag.texas.gov
Munera.al-fuhaid@oag.texas.gov

**COUNSEL FOR THE STATE OF TEXAS**

Respectfully submitted.

**CATHERINE HANAWAY**
Attorney General of Missouri

**LOUIS J. CAPOZZI III**
Solicitor General
Bar #327251 (Pa)

*/s/ Joseph Kiernan*
**JOSEPH KIERNAN**
Assistant Solicitor General
Texas Bar No. 24144241

**MISSOURI ATTORNEY GENERAL'S OFFICE**
815 Olive St, Suite 200
St. Louis, MO 63101
Phone: (314) 340-7366
joseph.kiernan@ago.mo.gov

**COUNSEL FOR THE STATE OF MISSOURI**

12

**CERTIFICATE OF SERVICE**

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on February 6, 2026, and that all counsel of record were served by CM/ECF.

*/s/ David Bryant*
**DAVID BRYANT**